UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: 1:19-CV-695 |
| DANIELLE MORALES, MICHAEL STRAHAN, AND MARK HERTEL, | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Genesys Telecommunications Laboratories, Inc. ("Genesys"), for its Complaint against Danielle Morales ("Morales"), Michael Strahan ("Strahan"), and Mark Hertel ("Hertel") (collectively "Defendants"), states:

## INTRODUCTION AND NATURE OF THE CASE

1.      Since the early 1990s, Genesys has been a longstanding and market leading provider of cloud and on-premises customer experience and contact center solutions. Genesys offers customer experience platforms that enable enterprises to orchestrate and monitor multimodal omnichannel journeys and interactions.

2.      Talkdesk, Inc. ("Talkdesk") is an upstart competitor in the market and competes with Genesys. On October 3, 2018, Talkdesk announced that it had raised $100 million in Series B funding, which it claims is "the largest round ever raised for a private company in the contact center industry." *See* TALKDESK RAISES $100 MILLION TO POWER THE CONTACT CENTER OF THE FUTURE, https://www.talkdesk.com/news-and-press/press-releases/talkdesk-raises-100-million-to-power-the-contact-center-of-the-future/.

3.     Flush with capital and eager to make a splash in the market, Talkdesk began an aggressive growth and recruitment strategy aimed at its competitor, Genesys. In particular, Talkdesk aggressively targeted Genesys sales employees in Genesys mid-market segment.

4.     In a short time span starting in September 2018, more than one dozen Genesys employees recruited by Talkdesk left the company for Talkdesk. These Genesys employees were strategically targeted by Talkdesk, with Talkdesk's behavior described in an email by one of the Genesys employees it poached as the "harvesting" of Genesys employees.

5.     With multiple former Genesys mid-market sales employees in its corner, Talkdesk began targeting customers and prospects that those former Genesys employees were familiar with. Within weeks of the employees leaving, Talkdesk underbid Genesys on multiple key opportunities for Genesys customers, including opportunities where Talkdesk was able to win the business over Genesys.

6.     Morales, Strahan, and Hertel were highly compensated, trusted employees of Genesys, and were entrusted by Genesys with substantial trade secrets of Genesys to perform their duties. Within weeks of each other, these Defendants all abruptly resigned their employment with Genesys to work for Talkdesk. In the process of doing so, Genesys trade secrets were misappropriated. In addition, Defendants have breached contractual agreements with Genesys in disclosing confidential information and soliciting Genesys employees and customers.

7.     Morales, one of Talkdesk's targeted recruits, secretly downloaded more than 700 confidential and proprietary Genesys documents, data and materials on her way out of Genesys after Talkdesk's recruitment.  Hertel likewise downloaded confidential and proprietary Genesys data and materials.  Morales and Hertel both failed to return and account for such Genesys property and trade secrets upon separating from Genesys, and in fact represented falsely otherwise.

8.     This lawsuit, based on federal question jurisdiction and supplemental jurisdiction, seeks redress from the Defendants.

## PARTIES

9.     Genesys is a corporation which has a significant presence in Indiana, specifically with corporate offices in Indianapolis and more than 700 employees working from those Indianapolis offices.

10.     Strahan is a citizen of Indiana who executed an agreement with an Indiana forum-selection clause, Morales is a citizen of California, and Hertel is a citizen of California who executed an agreement with an Indiana forum-selection clause.

## JURISDICTION AND VENUE

11.     Subject-matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367, as this action arises in part under both the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and pursuant to 28 U.S.C. § 1367 because all supplemental state law claims arise out of the same case or controversy as the federal claims over which this Court has original jurisdiction.

12.     This Court has personal jurisdiction over Strahan because Strahan is domiciled within this District, Strahan consented to this Court's jurisdiction through a forum selection clause, and also because this action arises from Strahan's knowing and intentional breach of certain contractual, common law, and statutory obligations owed to Genesys while acting within and causing injury within this State and District.

13.     This Court has personal jurisdiction over Hertel because Hertel consented to this Court's jurisdiction through an Indiana forum selection clause and also because this action arises from Hertel's knowing and intentional breach of certain contractual, common law, and statutory obligations owed to Genesys while acting within and causing injury within this State and District.

14.     This Court has personal jurisdiction over Morales because she worked for Genesys with its significant presence in Indiana where many of its trade secrets are located, interacted with Genesys staff from Indiana, attended lengthy onsite training in Indiana, and because this action arises from Morales' knowing and intentional breach of certain contractual, common law, and statutory obligations owed to Genesys causing injury within this State and District.

15.     Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events giving rise to this action occurred in this District. Further, trade secrets misappropriated by Defendants have their situs in this District.  Additionally, Defendant Strahan agreed to litigation in Indiana and this District pursuant to forum selection clauses requiring them to litigate in this District.

## FACTUAL ALLEGATIONS REGARDING TALKDESK

16.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

17.     Genesys is a leading provider of both cloud and on-premises customer experience solutions. Genesys conducts substantial business in the state of Indiana.

18.     Talkdesk is a direct competitor of Genesys in the cloud-based call center software business, and conducts substantial business in Indiana.

19.     Since September 2018, at least one dozen Genesys employees have left their employment with Genesys and accepted employment with Talkdesk.

20.     These former Genesys employees include Defendants Morales, Strahan, and Hertel.

21.     Talkdesk underbid Genesys for the business of a Genesys customer located in Hawaii, a bidding process that Hertel and Strahan were involved in while working for Genesys.

22.     Subject to a reasonable opportunity for investigation and discovery, Hertel and Strahan misappropriated Genesys confidential information, including but not limited to pricing and quote information, to underbid Genesys for that business.

23.     Further, Talkdesk recently won the business of another Genesys prospect based in California, a prospect that Hertel and Strahan were involved in while working for Genesys.  Subject to a reasonable opportunity for investigation and discovery, proprietary Genesys information, supplied by Mark Hertel, was used in the bid for that business.

24.     Genesys has been irreparably damaged and continues to be irreparably damaged by Defendants' illegal conduct.

25.     Genesys has invested significant money in attorneys' fees to investigate and seek to stop Defendants' illegal conduct.

**FACTUAL ALLEGATIONS REGARDING DANIELLE MORALES**

26.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

27.     Danielle Morales was an Account Executive employed by Genesys. In that position, Morales was responsible for making sales to Genesys customers and potential customers and managing customer accounts and relationships.

28.     As a condition of her employment, Morales entered into several contractual agreements with Genesys that survive her employment.

29.     These contractual agreements include restrictive covenants prohibiting her from disclosing confidential information and soliciting Genesys employees for 12 months, and from soliciting customers for 6 months after leaving employment with Genesys.

30.     Morales affirmed these contractual obligations at the end of her employment with Genesys in September 2018.

31.     In her job as Account Executive, Morales had access to confidential information including but not limited to Genesys intellectual property, account and sales plans, pricing, territory information, customer documents, and product information.

32.     On July 24, 2018, Talkdesk contacted Morales "wondering" if Morales was "open to conversations at this time."

33.     On August 23, 2018, Talkdesk contacted Morales regarding a potential "opportunity" with Talkdesk and calling her a "great fit for Talkdesk."

34.     Beginning in early September and continuing until her departure, Morales secretly downloaded hundreds of files of Genesys confidential information from her Genesys computer drive. Among these downloaded files include 21 files from a folder titled "Pricing," 19 files from a folder titled "QBR," nearly 50 files from a folder titled "Competition," a folder titled "RFP Information," nearly 100 files from a folder titled "Campaigns & Prospecting," nearly 100 files from a folder titled "Sales," nearly 50 files from a folder titled "Accounts" and over 150 files from a folder titled "Product Information."

35.     A sampling of the files downloaded by Morales before leaving Genesys include the following thirty confidential and proprietary documents:

| Document Name | Description |
| --- | --- |
| 2018 Enterprise Accounts.xlsx | Spreadsheet list of Genesys Enterprise Account Executives and their customer accounts in 2018. |
| Danielles Protected Prospect List 010218.xlsx | Spreadsheet list of over 160 prospects and information including call center size, industry, current call center system being utilized and where that prospect originated from, which often was another list belonging to a different Genesys account executive. |
| Copy of SoCal Customer Accounts - Second Pass.xlsx | Spreadsheet list of Genesys customer accounts and which account executive the account belongs to, including those in mid-market, but also the other segments including enterprise and commercial. |

| | |
|---|---|
| Mark Hertel Assigned Accounts 2.xlsx | Spreadsheet list of over 50 customers and prospects that belong to Hertel, including date of last activity, who Hertel assigned the account or prospect to, and what current system the entity is using. |
| SoCal CU List - MM - 2.8.18.xlsx | Spreadsheet list of prospects in Southern California, including information on status of Morales progress with each prospect, prospect contact information, employee/agent size and current call center systems used. |
| Danielle's Prospect List 031218 rev 2.csv | Spreadsheet list of over 100 prospects Danielle targeted while working for Genesys, with information on each customer including industry. |
| Danielle's Final Master List 022118.xlsx | Spreadsheet list including information on over 100 prospects, including prospects who had already gone to other account executives within Genesys. |
| PureCloud-User-Price-and-Feature-Matrix-1.pdf | Document containing confidential pricing information for Genesys PureCloud product. |
| PCV-INTL-TFN-Pricing.pdf | Spreadsheet list of the pricing for PureCloud Voice International Toll Free calls in each international country. |
| PureCloud_Offer_Update_New Fees in 2018.pdf | Presentation summarizing changes to Genesys fees in 2018 and also explaining services that will become available in 2018. |
| PRI - PureConnect Cloud - CaaS Price List USD - INT.pdf | Spreadsheet containing Genesys PureConnect product pricing, including base pricing and the price of certain add-ons and other monthly prices. Price sheet contains over 250 individual price points for various PureConnect services. |
| PRI - PureConnect Subscription Price List NA CAD - INT.pdf | Updated price list of Genesys PureConnect Subscription prices for 2018, including base price and other add-ons and monthly prices. |
| PRI - PureEngage Subscription Price List NA USD - INT.pdf | Price list of Genesys PureEngage Subscription prices for 2018 including base package and available add-ons. |
| [Partner 1] Quote for [Customer 1], LLC HRA 050218.pdf[1] | Quote for PureCloud services for Customer-1, includes Genesys End User Agreement for PureCloud and PureCloud Voice. Quote includes list price, partner price and discounts offered by Genesys and Partner 1. |

[1] Genesys is redacting the names of its Partners and Customers that are included in the file names to preserve confidentiality.

| | |
|---|---|
| [Customer 1]- HRA -SOW 033018.docx | An analysis created by Genesys Financial Analytics & Strategy Team for Customer 1 to examine potential ROI that may be realized by deploying proposed Genesys solutions. |
| [Customer 2] Discount comparison.xlsx | Spreadsheet calculation of discount being offered to Customer 2. |
| PureCloud Evaluation for [Customer 3] MS060617.pdf | Evaluation created for Customer 3 in attempt to sell Genesys PureCloud product. Document includes a quote for a 30-day trial, Genesys normal terms and conditions for a trial period and a required NDA. |
| 5 x 5 ST - Deal Review Template Oct 2016 - INT.pptx | Presentation summarizing key confidential information from Customer 4. Presentation includes information on a prospect's current call center problems, value of account, cost of Genesys products, discount rates being offered to prospect, organizational chart of the prospect. |
| [Customer 1] Customer Data confirmation updated 081718.xlsx | Data analysis of Customer 1's use of Genesys product, including how often call center agents are using the product and how they are spending that time. |
| Genesys Structure and Breakdown of Services.jpg | A picture taken of a whiteboard with information written on the board pertaining to each of Genesys sales segments and how they interact with each of Genesys products and services. |
| CI - Competitive Landscape Report February 2018 - INT (2).pdf | Report based on competitive information collected by Genesys. Presentation has a disclaimer on the first slide explaining that it is confidential and for internal use only - each slide contains a footer with a similar disclaimer. Report contains an aggregation of competitor revenue information, acquisition and other business changes of competitors, collected and summarized by Genesys Competitive Intelligence Team. |
| Genesys-Chart-Results-to-Date_v4.pdf | PowerPoint containing confidential revenue information for Genesys, including value of its North American pipeline and also value of "wins." Document also differentiates by Genesys product and segmentation and shows where pipeline value is coming from. Document contains a spreadsheet of all Genesys marketing events and pipeline touched and sourced from each event. |

| | |
|---|---|
| PAN - Product Roadmap - PureConnect - PDF Version.pdf | Document explaining what each of Genesys products offers and what they will be offering in the near future. Document explains that in order to share with partners or customers an NDA needs to be signed. |
| PPT - PureBridge 2.0 Sales Presentation.pptx | Sales presentation explaining Genesys PureBridge customer service program and how it can improve customer experience. Presentation includes incentives that Genesys is offering for customers to migrate to Genesys from a competing product. Presentation includes proprietary data gathered from customer accounts about their customer experience and the financial benefits it has derived, it also includes several customer names and customer testimonials. |
| Mid-Market West Team (2).png | Graphic depicting the layout of Genesys Mid-Market West team territories. |
| Territory Assignmetns spreadsheet.xlsx | Spreadsheet listing what Account Executive is assigned to which territory within the Mid-Market West territory. |
| PureCloud Quoting Guide.pdf | Training document detailing how an account executive can use Genesys system to produce a quote for a prospect. |
| 2018 Rules of Engagement Full.pdf | Genesys proprietary and confidential PowerPoint explaining changes to how its accounts are segmented by call center seat count in 2018. |
| Configuration Tool.xlsm | Spreadsheet with built in formulas that can be used to provide a customer with a detailed quote for Genesys products and services. |
| Margin calculatorV2.xlsx | Spreadsheet with built in formulas that can calculate the cost to Genesys Partners after available discounts. |

36.     The confidential information downloaded by Morales includes Genesys intellectual property, account and sales plans, pricing information, territory information, marketing information, customer account information and documentation, product information, and presentations.

37.     On September 25, 2018, Morales secretly forwarded two emails from a Genesys customer to her personal email account, both dealing with challenges the customer was facing with Genesys product.

38.     Morales resigned her employment with Genesys effective September 28, 2018.

39.     Morales is now employed as an Enterprise Account Executive with Talkdesk.

40.     Subject to a reasonable opportunity for investigation and discovery, Morales has recruited other Genesys employees to work at Talkdesk.

41.     Subject to a reasonable opportunity for investigation and discovery, Morales has used confidential Genesys information to solicit Genesys customers.

42.     Genesys has been irreparably damaged and continues to be irreparably damaged by Morales' illegal conduct.

43.     Genesys has invested significant money in attorneys' fees to investigate and seek to stop Morales' illegal conduct.  Genesys demanded by written letter dated November 15, 2018, that Morales cease and desist her conduct; Morales responded and did not disclose her downloading and continued possession of Genesys confidential, proprietary data and materials.

44.     Genesys seeks preliminary and permanent injunctive relief against Morales, and recovery of attorneys' fees and costs.

**FACTUAL ALLEGATIONS REGARDING MARK HERTEL**

45.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

46.     Hertel was initially hired by Interactive Intelligence, now part of Genesys, as West Area Director in November 2013.

47.     Hertel was most recently an Area Director of Sales at Genesys. In that position, Hertel oversaw all sales activity in Genesys West Region and managed a team of Account Executives.

48.     As a condition of his employment, Hertel entered into several contractual agreements with Interactive Intelligence that survive his employment and are binding on him and inure to the benefit of Genesys as Interactive Intelligence's successor and assign.

10

49.     These contractual agreements include agreements not to disclose confidential information and not to solicit Genesys employees or customers for 12 months after leaving employment with Genesys.

50.     In his job as Area Director of Sales in the West Region, Hertel had access to confidential information including but not limited to Genesys intellectual property, account and sales plans, pricing, territory information, customer docs, product information, and employee salary data.

51.     Upon and after separation from Genesys, Hertel retained downloaded Genesys confidential, proprietary data and materials, and failed to return this Genesys property upon separation.

52.     Hertel had knowledge of Genesys' attempts to win the business of various Genesys prospects.

53.     The relevant bids were run by a west region Account Executive under Hertel's supervision.

54.     Hertel had knowledge of the prices Genesys quoted in those bids, the proprietary information used in those bids, and the proprietary information used by the Account Executive in pursuing the business on behalf of Genesys.

55.     For example, Hertel participated in one of the customer's "game plan" meetings with the Account Executive and other Genesys sales employees.

56.     Hertel exchanged several communications with the Account Executive regarding a specific deal, including strategy on prices and other credits and discounts that Genesys could give to the customer so that the customer would remain a customer of Genesys.

57.     Hertel received communications from representatives of the customer regarding the potential deal and costs of that deal just days before leaving Genesys.

58.     Hertel's employment with Genesys ended on September 28, 2018.

59. Hertel is now employed as a Vice President of Sales with Talkdesk.

60. Subject to a reasonable opportunity for investigation and discovery, Hertel solicited customers and active prospects of Genesys on behalf of Talkdesk.

61. Subject to a reasonable opportunity for investigation and discovery, Hertel has taken Genesys proprietary and confidential information used for bids and used it for the benefit of Talkdesk in attempting to win the business of those companies.

62. Specifically, in October 2018, Hertel disclosed Genesys' proprietary and confidential information to a Talkdesk Executive Vice President for the purpose of using the information in Talkdesk's bid with the California-based customer.

63. Subject to a reasonable opportunity for investigation and discovery, Talkdesk used this information in its bid to win that business.

64. Talkdesk recently won the business of the customer over Genesys.

65. Subject to a reasonable opportunity for investigation and discovery, Hertel has recruited other Genesys employees to work at Talkdesk.

66. Subject to a reasonable opportunity for investigation and discovery, Hertel has used other confidential Genesys information to solicit Genesys employees and customers.

67. Genesys has been irreparably damaged and continues to be irreparably damaged by Hertel's illegal conduct.

68. Genesys has invested significant money in attorneys' fees to investigate and seek to stop Hertel's illegal conduct.

69. Genesys demanded by written letter dated November 14, 2018, that Hertel cease and desist his conduct; Hertel did not respond.

70. Genesys seeks preliminary and permanent injunctive relief against Hertel, as well as damages, royalties, liquidated damages, treble damages, punitive damages, costs, and attorneys' fees.

## FACTUAL ALLEGATIONS REGARDING MICHAEL STRAHAN

71.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

72.    Michael Strahan was initially hired by Interactive Intelligence, now part of Genesys, as a Test Engineer in September 2000.

73.    Strahan was most recently an Area Director of Sales at Genesys. In that position, Strahan oversaw all sales activity in Genesys' Central Region and managed a team of Account Executives.

74.    As a condition of his employment, Strahan entered into several contractual agreements with Interactive Intelligence that survive his employment and are binding on him and inure to the benefit of Genesys as Interactive Intelligence's successor and assign.

75.    These contractual agreements include agreements not to disclose confidential information and not to solicit Genesys employees or customers for 18 months after leaving employment with Genesys.

76.    In his job as an Area Director of Sales, Strahan had access to confidential information including but not limited to Genesys intellectual property, account and sales plans, pricing, territory information, customer docs, product information, and employee salary data.

77.    In his job as an Area Director of Sales, Strahan had access to confidential information related to Genesys' bid to keep the business of a customer located in Hawaii and also win the business of another customer located in California, including the quote and prices offered to those companies.

78.    Prior to leaving his employment with Genesys, Strahan deleted several files and documents from his computer drive.

79.    Strahan's employment with Genesys ended on September 30, 2018.

80.    Strahan is now employed as a Vice President of Sales with Talkdesk.

81.     Strahan received communications from Talkdesk identifying his orientation and "Day One" occurring on September 17, 2018.

82.     Between September 17 and September 30, Strahan continued to email customers on behalf of Genesys from his Genesys email account.

83.     Strahan traveled to Hawaii as a representative of Talkdesk to pitch the customer in an attempt to win their business.

84.     Strahan used confidential Genesys information to undercut the price of Genesys' bid to that customer in an attempt to win that business for Talkdesk.

85.     Subject to a reasonable opportunity for investigation and discovery, Strahan used confidential Genesys information to assist in winning the business of another customer based in California, on behalf of Talkdesk.

86.     Subject to a reasonable opportunity for investigation and discovery, Strahan has recruited other Genesys employees to come work at Talkdesk.

87.     Subject to a reasonable opportunity for investigation and discovery, Strahan has used confidential Genesys information to solicit other Genesys employees and customers.

88.     Genesys has been irreparably damaged and continues to be irreparably damaged by Strahan's illegal conduct.

89.     Genesys has invested significant money in attorneys' fees to investigate and seek to stop Strahan's illegal conduct.  Genesys demanded by written letter dated November 15, 2018, that Strahan cease and desist his conduct; Strahan did not respond.

90.     Genesys seeks preliminary and permanent injunctive relief against Strahan, as well as damages, royalties, liquidated damages, treble damages, punitive damages, costs, and attorneys' fees.

## SPECIFIC COUNTS AGAINST DEFENDANT DANIELLE MORALES

**Count I – Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.**

91.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

92.     Genesys developed and maintained substantial trade secrets.

93.     Under DTSA, Morales has a duty not to misappropriate information she knows or has reason to know is trade secret information.

94.     Morales knew or had reason to know that Genesys confidential and proprietary information she downloaded was trade secret information.

95.     Morales misappropriated Genesys trade secrets by downloading confidential and proprietary information from her computer drive in the weeks leading up to her departure from Genesys and then retaining that information after her employment ended and further disclosing that information to Talkdesk.

96.     Morales misappropriated Genesys trade secrets by sending customer emails and information to her private email account in the days leading up to her departure from Genesys, and then retaining that information after her employment ended and further disclosing that information to Talkdesk.

97.     Morales' conduct was willful.

98.     Genesys has been damaged by Morales' misappropriation of trade secrets.

**Count II – Computer Fraud and Abuse Act, 18 U.S.C. § 1030.**

99.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

100.     Genesys internal network and related company-owned electronic devices, accounts, and databases are "protected computers" under the Computer Fraud and Abuse Act.

101.     Morales knowingly and intentionally accessed Genesys internal network and company-owned computer without authorization and/or in excess of her authorized access, with intent to defraud Genesys and with an intent to misappropriate its confidential, proprietary, and trade secret information for use in competition against Genesys following resignation of her employment.

102.     As a direct and proximate result of Morales' unauthorized access to its internal network and company-owned computer, and subsequent misappropriation of its confidential, proprietary and trade secret information, Genesys has suffered and will continue to suffer losses in excess of $5,000 during the applicable one-year period.

**Count III – Indiana Computer Trespass Law, Ind. Code Ann. § 34-43-2-3.**

103.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

104.     Genesys internal network and company-owned computers constitute "computer systems" and "computer networks" under the Indiana Computer Trespass law.

105.     Morales knowingly and intentionally accessed Genesys internal network and company-owned computer without the consent of Genesys when she misappropriated its confidential, proprietary, and trade secret information from Genesys internal network and/or Genesys company-owned computer.

106.     Genesys has been damaged by Morales' violation of the Indiana Computer Trespass law and subsequent misappropriation of its trade secret information thereby.

107.     Morales' violation of the Indiana Computer Trespass law falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Genesys to treble damages and attorney's fees.

**Count IV – Conversion.**

108.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

109.    Morales converted Genesys property while employed by downloading confidential and proprietary information with no legitimate business purpose during her employment with Genesys, and by continuing to possess this information after her employment with Genesys terminated.

110.    Genesys has been damaged by Morales' conversion of Genesys property.

111.    Morales' conversion of Genesys property falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Genesys to treble damages and attorney's fees.

**Count V – Breach Of Contract (Non-Solicitation).**

112.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

113.    Morales entered into a valid and binding agreement with Genesys during her employment.

114.    Morales has solicited, and continues to solicit, both Genesys employees and Genesys customers and prospective customers in violation of that agreement.

115.    Genesys has been damaged as a result of Morales' breach of said agreement.

WHEREFORE, Genesys Telecommunications Laboratories, Inc. prays for judgment against Defendant Danielle Morales and requests the following relief against Morales:

(1)    That the Court issue an Order granting Genesys' Motion for a Preliminary and Permanent Injunction enforcing the contract between Morales and Genesys and prohibiting Morales from misappropriating trade secrets; and

(2)    That Genesys be awarded attorneys' fees and costs associated with bringing and prosecuting this action.

## SPECIFIC COUNTS AGAINST DEFENDANT MICHAEL STRAHAN

**Count VI – Tortious Interference With Contract.**

116.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

117.    Genesys and its employees have contractual agreements.

118.    Strahan knew or should have known about the contractual relationship between former Genesys employees he solicited on behalf of Talkdesk.

119.    Subject to a reasonable opportunity for investigation and discovery, Strahan intentionally solicited Genesys employees to breach their contracts with Genesys, to work for Talkdesk, and to supply Talkdesk with confidential and proprietary information.

120.    Strahan's interference was not justified.

121.    Strahan's interference caused harm to Genesys.

**Count VII – Breach Of Contract (Non-Solicitation).**

122.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

123.    Strahan entered into a valid and binding agreement with Genesys predecessor Interactive Intelligence during his employment.

124.    Those agreements, including the restrictive covenants contained therein, are binding on Strahan and all of Interactive Intelligence's successors and assigns – including Genesys.

125.    Strahan has solicited, and continues to solicit, both Genesys employees and Genesys customers and prospective customers in violation of that agreement.

126.    Genesys has been damaged as a result of Strahan's breach of said agreement.

**Count VIII – Breach Of Fiduciary Duty Of Loyalty.**

127.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

128.     Strahan owed Genesys, as its employee and Area Director of Sales, a fiduciary duty of loyalty.

129.     Strahan breached that duty of loyalty in undertaking activity for the benefit of Talkdesk while still employed with Genesys.

130.     Genesys has been damaged as a result of Strahan's breach of said fiduciary duty of loyalty.

**Count IX - Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq***

131.     Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

132.     Genesys developed and maintained substantial trade secrets.

133.     Under DTSA, Strahan has a duty not to misappropriate information he knows or has reason to know is trade secret information.

134.     Strahan knew or had reason to know that Genesys confidential and proprietary information he downloaded was trade secret information.

135.     Subject to a reasonable opportunity for investigation and discovery, Strahan misappropriated Genesys trade secrets.

136.     In his job as an Area Director of Sales, Strahan had access to confidential information including but not limited to Genesys intellectual property, account and sales plans, Pricing, territory information, customer docs, product information, and employee salary data.

137.     In his job as an Area Director of Sales, Strahan had access to confidential information related to Genesys' bid to keep the business of a customer located in Hawaii and also win the business of another customer located in California, including the quote and prices offered to those companies.

138.     Prior to leaving his employment with Genesys, Strahan deleted several files and documents from his computer drive.

139.     Strahan's employment with Genesys ended on September 30, 2018.

140.     Strahan received communications from Talkdesk identifying his orientation and "Day One" occurring on September 17, 2018.

141.     Between September 17 and September 30, Strahan continued to email Genesys customers from his Genesys email account.

142.     Strahan traveled to Hawaii as a representative of Talkdesk to pitch the customer in an attempt to win their business.

143.     Strahan used confidential Genesys information to undercut the price of Genesys' bid to that customer in an attempt to win that business for Talkdesk.

144.     Subject to a reasonable opportunity for investigation and discovery, Strahan used confidential Genesys information to assist in winning the business of another customer based in California, on behalf of Talkdesk.

145.     Subject to a reasonable opportunity for investigation and discovery, Strahan has recruited other Genesys employees to work at Talkdesk.

146.     Subject to a reasonable opportunity for investigation and discovery, Strahan has used confidential Genesys information to solicit other Genesys employees and customers.

147.     Genesys has been damaged by Strahan's misappropriation of trade secrets.

WHEREFORE, Genesys Telecommunications Laboratories, Inc. prays for judgment against Defendant Michael Strahan and requests the following relief against Strahan:

(1)      That the Court issue an Order granting Genesys' Motion for a Preliminary and Permanent Injunction enforcing the contract between Strahan and Genesys and prohibiting Strahan from interfering with contract;

(2)      That the Court issue a preliminary and permanent injunction prohibiting Strahan from misappropriating Genesys trade secrets;

(3)      That Genesys be awarded actual, compensatory, consequential, liquidated, and special damages in an amount to be determined at trial;

(4)      That Genesys be awarded punitive damages;

(5)      That Genesys be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(6)      That Genesys be awarded prejudgment interest; and

(7)      That Genesys be awarded such other and further relief as this Court deems just and proper.

## SPECIFIC COUNTS AGAINST DEFENDANT MARK HERTEL

### Count X - Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*

148.      Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

149.      Genesys developed and maintained substantial trade secrets.

150.      Under DTSA, Hertel has a duty not to misappropriate information he knows or has reason to know is trade secret information.

151.      Hertel knew or had reason to know that Genesys confidential and proprietary information he downloaded was trade secret information.

152.   Hertel misappropriated Genesys trade secrets by downloading confidential and proprietary information from his computer and then retaining that information after his employment ended.

153.   In his job as Area Director of Sales in the West Region, Hertel had access to confidential information including but not limited to Genesys intellectual property, account and sales plans, pricing, territory information, customer docs, product information, and employee salary data.

154.   Upon and after separation from Genesys, Hertel retained downloaded Genesys confidential, proprietary data and materials, and failed to return this Genesys property upon separation.

155.   Hertel had knowledge of Genesys attempts to win the business of various Genesys prospects.

156.   The relevant bids were run by a west region Account Executive under Hertel's supervision.

157.   Hertel had knowledge of the prices Genesys quoted in those bids, the proprietary information used in those bids, and the proprietary information used by the Account Executive in pursuing the business on behalf of Genesys.

158.   For example, Hertel participated in one of the customer's "game plan" meetings with the Account Executive and other Genesys sales employees.

159.   Hertel exchanged several communications with the Account Executive regarding a specific deal, including strategy on prices and other credits and discounts that Genesys could give to the customer so that the customer would remain a customer of Genesys.

160.   Hertel received communications from representatives of the customer regarding the potential deal and costs of that deal just days before leaving Genesys.

161.   Hertel's employment with Genesys ended on September 28, 2018.

162.    Hertel is now employed as a Vice President of Sales with Talkdesk.

163.    Subject to a reasonable opportunity for investigation and discovery, Hertel solicited customers and active prospects of Genesys on behalf of Talkdesk.

164.    Subject to a reasonable opportunity for investigation and discovery, Hertel has taken Genesys proprietary and confidential information used for bids and used it for the benefit of Talkdesk in attempting to win the business of those companies.

165.    Specifically, in October 2018, Hertel disclosed Genesys proprietary and confidential information to a Talkdesk Executive Vice President for the purpose of using the information in Talkdesk's bid with the California-based customer.

166.    Subject to a reasonable opportunity for investigation and discovery, Talkdesk used this information in its bid to win that business.

167.    Talkdesk recently won the business of the customer over Genesys.

168.    Subject to a reasonable opportunity for investigation and discovery, Hertel has recruited other Genesys employees to come work at Talkdesk.

169.    Subject to a reasonable opportunity for investigation and discovery, Hertel has used other confidential Genesys information to solicit Genesys employees and customers.

170.    Hertel's conduct was willful.

171.    Genesys has been damaged by Hertel's misappropriation of trade secrets.

**Count XI – Conversion.**

172.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

173.    Hertel converted Genesys property while employed by downloading confidential and proprietary information with no legitimate business purpose during his employment with Genesys, and by continuing to possess this information after his employment with Genesys terminated.

174.    Genesys has been damaged by Hertel's conversion of Genesys property.

175.    Hertel's conversion of Genesys property falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Genesys to treble damages and attorney's fees.

**Count XII – Breach of Contract.**

176.    Genesys repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein.

177.    Hertel entered into a valid and binding agreement with Genesys predecessor Interactive Intelligence during his employment.

178.    Those agreements, including the restrictive covenants contained therein, are binding on Hertel and all of Interactive Intelligence's successors and assigns – including Genesys.

179.    Hertel has solicited, and continues to solicit, both Genesys employees and Genesys customers and prospective customers in violation of that agreement.

180.    Genesys has been damaged as a result of Hertel's breach of contract.

WHEREFORE, Genesys Telecommunications Laboratories, Inc. prays for judgment against Defendant Mark Hertel and requests the following relief against Hertel:

(1)    That the Court issue a preliminary and permanent injunction prohibiting Hertel from misappropriating Genesys trade secrets and from possessing converted Genesys property;

(2)    That Genesys be awarded actual, compensatory, consequential, liquidated, treble, and special damages in an amount to be determined at trial;

(3)    That Genesys be awarded punitive damages;

(4)    That Genesys be awarded attorneys' fees and costs associated with bringing and prosecuting this action;

(5)    That Genesys be awarded prejudgment interest; and

(6)     That Genesys be awarded such other and further relief as this Court deems just and proper.

Respectfully submitted,

GENESYS TELECOMMUNICATIONS
LABORATORIES, INC.

By its Attorneys,

February 15, 2019            _s/ John R. Maley_
                            John R. Maley (14300-89)
                            Thomas C. Payne (34727-49)
                            BARNES & THORNBURG LLP

                            11 South Meridian Street
                            Indianapolis, Indiana 46204
                            Telephone: (317) 236-1313
                            Email: jmaley@btlaw.com
                            Email: tpayne@btlaw.com