**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00695-TWP-DML |
| DANIELLE MORALES, MICHAEL STRAHAN, MARK HERTEL, TALKDESK, INC., and RALPH MANNO, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

This matter is before the Court on a Motion to Dismiss or, in the Alternative, to Transfer Venue, filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) by Defendants Talkdesk Inc. ("Talkdesk"), Danielle Morales ("Morales"), Michael Strahan ("Strahan"), Mark Hertel ("Hertel"), and Ralph Manno ("Manno") (collectively, "Defendants") (Filing No. 97). Plaintiff, Genesys Telecommunications Laboratories, Inc. ("Genesys"), initiated this lawsuit, seeking injunctive relief and damages against the Defendants for misappropriation of trade secrets, breach of contract, and tortious interference with contract, among other things. After Genesys filed its Second Amended Complaint, the Defendants filed their Motion to Dismiss based on a lack of personal jurisdiction and the failure to state a plausible claim for relief. The Defendants alternatively ask the Court to transfer this case to the Northern District of California. For the following reasons, the Court **grants in part and denies in part** the Motion to Dismiss and **declines to transfer** the case to the Northern District of California.

# I.  BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended Complaint (Filing No. 89) and draws all inferences in favor of Genesys as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiff Genesys is a California corporation with a significant presence in Indiana and is the successor to a former Indiana company, Interactive Intelligence.  Genesys conducts substantial business in the state of Indiana and has corporate offices in Indianapolis, Indiana.  It employs more than 800 employees in Indiana at its Indianapolis office.  Its corporate headquarters is in California.  Since the early 1990s, Genesys has been a longstanding and market-leading provider of cloud and on-premises customer experience and contact center solutions.  It offers customer-experience platforms that enable enterprises to orchestrate and monitor multimodal omnichannel journeys and interactions (Filing No. 89 at 1, 4, 7; Filing No. 98 at 7).

Defendant Talkdesk is a Delaware corporation with its headquarters in California.  Talkdesk is an upstart company in the cloud-based call center software business.  On October 3, 2018, Talkdesk announced that it had raised $100 million in Series B funding.  Talkdesk is a direct competitor of Genesys, and it does business across the United States, including in Indiana, and employs personnel in Indiana (Filing No. 89 at 2, 4, 7; Filing No. 98 at 7).

Defendant Manno was initially hired by Interactive Intelligence, now part of Genesys, as a Director of Channel Sales in August 2004.  He was most recently a Vice President of Sales at Genesys.  In that executive position, Manno oversaw all sales activities in Genesys' mid-market segment and managed a team of Area Directors and those Directors' Account Executives.  Manno, a citizen of Missouri, signed an employment agreement containing an Indiana forum-selection

clause. *Id* at 4. His executive employment with Genesys ended on October 1, 2018. Manno is now employed as a Vice President of Sales with Talkdesk ([Filing No. 89 at 21](#)–22).

Defendant Hertel was initially hired by Interactive Intelligence, now part of Genesys, as West Area Director in November 2013. Hertel was most recently an Area Director of Sales at Genesys. In that position, he oversaw all sales activities in Genesys' West Region and managed a team of Account Executives. Hertel, a citizen of California, signed an employment agreement containing an Indiana forum-selection clause and Indiana choice-of-law provision. *Id* at 4-5. His employment with Genesys ended on September 28, 2018. Hertel is now employed as a Vice President of Sales with Talkdesk. *Id.* at 14, 17.

Defendant Strahan was initially hired by Interactive Intelligence, now part of Genesys, as a Test Engineer in September 2000. He was most recently an Area Director of Sales at Genesys. In that position, he oversaw all sales activities in Genesys' Central Region and managed a team of Account Executives. Strahan, a resident of Indiana, signed an employment agreement containing an Indiana forum-selection clause. *Id* at 4-5. Strahan's employment with Genesys ended on September 30, 2018. He is now employed as a Vice President of Sales with Talkdesk. *Id.* at 18–19.

Defendant Morales was an Account Executive employed by Genesys. In that position, she was responsible for making sales to Genesys' customers and potential customers and managing customer accounts and relationships. Morales is a citizen of California. Morales resigned her employment with Genesys effective September 28, 2018. She is now employed as an Enterprise Account Executive with Talkdesk. *Id.* at 9, 13.

Manno, Hertel, Strahan, and Morales were highly-compensated, trusted executives of Genesys and were entrusted by Genesys with substantial trade secrets to perform their duties. *Id*.

at 3.  Manno, Hertel, Strahan, and Morales each entered into employment contracts that prohibited them from disclosing confidential information, soliciting Genesys' employees for a period of time after leaving employment with Genesys, and soliciting Genesys' customers for a period of time after leaving employment with Genesys.

Talkdesk began a targeted strategy aimed at its competitor, Genesys, to recruit Genesys' sales employees in the Genesys mid-market segment (Filing No. 89 at 2). "Talkdesk's targeted raid of Genesys['] mid-market segment, including all of its top leadership, was carried out with the purpose of crippling Genesys['] mid-market sales organization." *Id.* at 49.  In a short time span beginning in September 2018, at least fourteen Genesys employees targeted by Talkdesk left their employment with Genesys and accepted employment with Talkdesk.  Half of the Genesys mid-market Vice Presidents left Genesys for Talkdesk, two-thirds of the mid-market Area Directors went to Talkdesk, and approximately a quarter of the Genesys mid-market sales executives across the country left Genesys to work for Talkdesk. A Technical Sales Consultant also left Genesys for Talkdesk.  *Id.* at 2.  Four of these former Genesys employees are Defendants Morales, Strahan, Hertel, and Manno.  During the recruiting process, Talkdesk encouraged Genesys' employees to conduct a demonstration using Genesys' products to disclose and discuss proprietary and confidential information relating to Genesys for the benefit of Talkdesk.  *Id.* at 7.

In or around August 2018, Talkdesk CEO Tiago Paiva ("Paiva") personally recruited Strahan, Hertel, Manno, and others during a conference call.  Paiva encouraged these Genesys executives to come to Talkdesk and build up Talkdesk's sales organization contrary to their contractual obligations to Genesys.  Hertel and Strahan had between six and ten conversations around this time, and the two influenced each other to leave Genesys for Talkdesk.  Manno and Hertel had between ten and fifteen discussions, during which Manno influenced Hertel to leave

Genesys and build Talkdesk's sales organization. Manno also informed Hertel that he was recruiting others, including Strahan. *Id.* at 7, 16, 19, 22.

While still employed by Genesys but having committed to joining Talkdesk, Manno, Hertel, and Strahan recruited other Genesys personnel, including Morales, on behalf of and for the benefit of Talkdesk. They continued these efforts after joining Talkdesk. They accomplished this by utilizing their trade secret knowledge of the Genesys team's performance, compensation, level of job satisfaction, and account relationships that they had learned in their leadership roles at Genesys. *Id.* at 2–3, 8.

With multiple former Genesys mid-market managers and sales executives now at Talkdesk, Talkdesk began aggressively targeting customers and prospects with whom the former Genesys employees were familiar. Talkdesk utilized Genesys' trade secrets in doing so. Within weeks of the employees leaving, Talkdesk targeted and underbid Genesys on multiple key opportunities for Genesys' customers. Hertel, Strahan, and Manno misappropriated Genesys' confidential information, including but not limited to pricing, quote information, and product roadmap information, and while employed by Talkdesk in senior sales roles, they used this information to underbid Genesys for business. Talkdesk usurped the business of Genesys' customers or potential customers in California and Hawaii using misappropriated trade secrets. The individual Defendants breached their contractual agreements with Genesys by disclosing confidential information and soliciting Genesys' employees and customers (Filing No. 89 at 3, 8).

Before leaving Genesys to join Talkdesk, Morales secretly downloaded more than 700 confidential and proprietary Genesys documents, data, and materials constituting trade secrets. *Id.* at 3. Beginning in early September and continuing until her departure, Morales took Genesys' intellectual property, account and sales plans, pricing information, territory information, marketing

information, customer account information and documentation, product information, and presentation. Among the files that Morales downloaded were twenty-one files from a folder titled "Pricing," nineteen files from a folder titled "QBR," nearly fifty files from a folder titled "Competition," a folder titled "RFP Information," nearly one hundred files from a folder titled "Campaigns & Prospecting," nearly one hundred files from a folder titled "Sales," nearly fifty files from a folder titled "Accounts," and more than one hundred fifty files from a folder titled "Product Information." Morales took this confidential, propriety, and trade secret information to Talkdesk and has used this information for Talkdesk's benefit. *Id.* at 3, 9–14.

Similar to Morales, Hertel accessed and converted over 24,000 of Genesys' documents, many of which included confidential and proprietary Genesys data and materials constituting trade secrets, when he left Genesys and joined Talkdesk. Hertel took Genesys' proprietary and confidential information used for bids and used the information for the benefit of Talkdesk in attempting to win business for Talkdesk. In October 2018, Hertel disclosed Genesys' proprietary and confidential information to a Talkdesk executive vice president for the purpose of using the information in Talkdesk's bid with a California customer. Genesys demanded that Hertel cease his conduct, but he has persisted. *Id.* at 3, 15, 17.

Strahan received communications from Talkdesk that identified September 17, 2018 as his orientation and "Day One". Between September 17 and September 30, 2018, Strahan continued to email customers on behalf of Genesys from his Genesys email account. Unbeknownst to Genesys, during this same period of time, Strahan also completed training for Talkdesk, attended a sales conference on behalf of and paid for by Talkdesk, listened in on at least four live Talkdesk sales calls, listened to two other recorded sales calls, and took a trip to New Jersey on behalf of Talkdesk. Strahan was paid by Genesys up through his last day of work with Genesys, which was

September 30, 2018.  Prior to leaving his employment with Genesys, Strahan deleted several files and documents from his computer drive.  Strahan also received and possessed Genesys' confidential information and trade secrets and used this information to usurp business for the benefit of Talkdesk.  *Id.* at 19–20.

On February 15, 2019, Genesys initiated this lawsuit ([Filing No. 1](#)).  On July 2, 2019, Genesys filed a Second Amended Complaint, which is the operative complaint ([Filing No. 89](#)).  In the Second Amended Complaint, Genesys requests injunctive relief and damages for the Defendants' misappropriation of trade secrets, breach of contract, and tortious interference with contract among other things.  On July 11, 2019, the Defendants filed the instant Motion to Dismiss ([Filing No. 97](#)), arguing a lack of personal jurisdiction and a failure to state a claim for relief.  Alternatively, the Defendants ask the Court to transfer the case to the Northern District of California.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint where there is a "lack of personal jurisdiction" over the defendant.  Fed. R. Civ. P. 12(b)(2).  When deciding a Rule 12(b)(2) motion, the court accepts the factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff if they weigh on the issue of personal jurisdiction.  *Int'l Medical Group, Inc. v. American Arbitration Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001).  But where a complaint consists of conclusory allegations unsupported by factual assertions, the complaint fails even under the liberal standard of Rule 12(b).  *Id.*

When considering a motion to dismiss for lack of personal jurisdiction, the court examines the sufficiency of the complaint, not the merits of the lawsuit.  *Id.*  The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss

the action under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The court may consider affidavits and all other documentary evidence that have been filed, and any conflicts must be resolved in favor of the plaintiff as the non-moving party. *Int'l Medical Group*, 149 F. Supp. 2d at 623.

The level of the plaintiff's burden to show personal jurisdiction depends on whether an evidentiary hearing has been held. *Purdue Research*, 338 F.3d at 782. Where a hearing has been conducted, the plaintiff must show by a preponderance of the evidence that personal jurisdiction exists. *Id.* Where no hearing is conducted and the motion to dismiss is decided solely on written materials, the plaintiff must establish a *prima facie* case that personal jurisdiction exists. *Id.*

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of

a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. <u>DISCUSSION</u>

The Defendants seek dismissal of this action based on a lack of personal jurisdiction over Talkdesk, Morales, Hertel, and Manno and, alternatively, based on the failure to state a claim for which relief can be granted. The Defendants also alternatively ask the Court to transfer the case to the Northern District of California.

As another district court within the Seventh Circuit succinctly noted, "jurisdiction is a threshold requirement that must be satisfied before a court can pass judgments on the merits." *Rawlins v. Select Specialty Hosp. of Nw. Ind., Inc.*, 2014 U.S. Dist. LEXIS 57076, at *4 (N.D. Ill. Apr. 23, 2014). "The court must satisfy itself that it can exercise personal jurisdiction over [defendants] before it addresses the merits of the case. Accordingly, the court must consider [the] motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) before it can address the Rule 12(b)(3) and Rule 12(b)(6) motions." *Id.* at *5. "If the court determines that it lacks personal jurisdiction over [defendants], it would be improper for this court to reach the merits of the case." *Id.* "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *United States v. Rachuy*, 743 F.3d 205, 211 (7th

Cir. 2014) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). For this reason, the Court first reviews the Defendants' Motion to Dismiss under Rule 12(b)(2).

## A.     <u>Personal Jurisdiction over Talkdesk, Morales, Hertel, and Manno</u>

"If jurisdiction is exercised on the basis of a federal statute that does not authorize nationwide service of process, the law requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction."[1] *Philpot v. Dot Com Plus, LLC*, 2015 U.S. Dist. LEXIS 105016, at *2–3 (S.D. Ind. Aug. 11, 2015) (citation omitted). Indiana's long-arm statute, Indiana Trial Rule 4.4(A), governs personal jurisdiction in Indiana. "Although Rule 4.4(A) enumerates eight bases for the assertion of jurisdiction on the basis of a defendant's actions, the rule also includes a provision that 'a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States.'" *Annie Oakley Enters. v. Sunset Tan Corporate & Consulting, LLC*, 703 F. Supp. 2d 881, 886 (N.D. Ind. 2010) (quoting Ind. R. Tr. P. 4.4(A)). Therefore, a court has personal jurisdiction to the limit allowed by the Federal Due Process Clause. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 966–67 (Ind. 2006).

For a court to have personal jurisdiction over a defendant, the Due Process Clause requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Under federal due process standards, personal jurisdiction can be either specific or general. "If the defendant's contacts with the state are so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the courts of that state for any matter, then the

---

[1] The federal statute serving as the basis for this litigation, the Defend Trade Secrets Act, does not authorize nationwide service of process. *See Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 706 (N.D. Ill. 2017). Therefore, determining personal jurisdiction in this case is governed by Indiana law.

defendant is subject to general jurisdiction." *LinkAmerica*, 857 N.E.2d at 967 (citing *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)). "If the defendant's contacts with the forum state are not 'continuous and systematic,' specific jurisdiction may be asserted if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* (citing *Helicopteros*, 466 U.S. at 418 & n.8). "Specific jurisdiction requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

Specific jurisdiction exists when a defendant has deliberately directed its activities toward the forum and the cause of action results from alleged injuries that arise out of or relate to those activities. *See Burger King*, 471 U.S. at 472. In *Burger King*, the Supreme Court explained the "constitutional touchstone" of "minimum contacts" for personal jurisdiction:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 474–76 (internal citations, quotation marks, and footnote omitted).

Strahan is a citizen of the state of Indiana, and the parties do not dispute that this Court has personal jurisdiction over Strahan. Genesys does not assert that the Court has general jurisdiction over the other Defendants; therefore, the Court focuses its discussion on specific jurisdiction.

### 1. The Forum Selection Clauses

First, the Defendants argue that the forum selection clauses in the employment contracts of Hertel and Manno are unreasonable and unjust and also violate California's public policy; thus, the Indiana forum selection clauses are invalid and cannot provide consent to personal jurisdiction in Indiana. Quoting Indiana case law, the Defendants assert that forum selection clauses are enforceable only "if they are reasonable and just under the circumstances." *Farm Bureau Gen. Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 329 (Ind. Ct. App. 2007). The Defendants argue that filing suit in Indiana is a drastic and unlawful attempt to circumvent the public policy of California, where Genesys and Talkdesk are headquartered and where Hertel resides. The Defendants assert that Genesys itself made this argument in a different lawsuit in California involving Avaya Holdings Corporation, another competitor of Genesys.

The Defendants argue that Genesys is incorporated and headquartered in California, and it inherited the forum selection clause from Interactive Intelligence, a now-defunct Indiana company. Hertel is a resident of California, and Manno is a resident of Missouri, and both are current employees of Talkdesk, a company with its headquarters in California. The Defendants assert, "[b]ecause any former connection to Indiana through Interactive Intelligence is long dissolved, it is neither reasonable nor just to enforce the Indiana forum selection clauses and those clauses cannot establish Indiana's personal jurisdiction over Hertel and Manno." (Filing No. 98 at 12.)

Additionally, the Defendants argue the forum selection clauses are void under California law. This dispute is between a California corporation and a California citizen because of a years-

old forum selection clause in an agreement signed between the California citizen (Hertel) and his former employer. But Section 925 of the California Labor Code prohibits an employer from requiring an employee who works and lives in California to adjudicate claims outside of California when the claims arise in California. Any contract provisions that violate this law are voidable by the employee. The California law applies to contracts entered into or modified or extended after January 1, 2017. The Defendants argue that Hertel's contract was modified or extended after that date, so the statute applies and voids the forum selection clause as to Hertel.

Genesys responds that the forum selection clauses were freely negotiated in the employment contracts and are reasonable and just. It asserts that personal jurisdiction over Manno, Hertel, and Strahan exists in this Court through the forum selection clauses because the claims arose out of the Defendants' employment and employment agreements. Forum selection clauses are "given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013).

Genesys asserts that the Defendants' reliance on California public policy is misplaced because there is a strong federal public policy of enforcing forum selection clauses, and there is no public policy in Indiana prohibiting forum selection clauses. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene *a strong public policy of the forum in which suit is brought*." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) (emphasis added). This suit was brought in Indiana, not California. Thus, Section 925 of the California Labor Code does not apply here. Genesys argues California's statute and public policy do not apply here for the additional reasons that the controversy did not arise in California, and the employment contracts were not entered into or modified or extended after January 1, 2017, contrary to the Defendants' assertion.

Concerning the Defendants' argument about Genesys' position in the *Avaya* case, Genesys notes and the Court agrees, that the Seventh Circuit has made clear that parties are free to make different legal arguments in different cases involving different facts. *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999). The *Avaya* California case involved no judicial ruling and involved different facts and public policy concerns. That case concerned a non-compete provision where a competitor sought to prohibit an employee from working for Genesys, and there were no allegations of misappropriation of trade secrets. In this case, Genesys is not seeking to keep the Defendants from working for Talkdesk and is not seeking to prohibit any of the Defendants from earning a livelihood by working at Talkdesk. Rather, Genesys seeks to keep the Defendants from soliciting Genesys' employees and customers and from misappropriating trade secrets. The public policy considerations are entirely different for each case. Thus, Genesys' arguments in the *Avaya* case concerning the forum selection clause are not binding or applicable in this case.

When considering personal jurisdiction and the forum selection clause, the Court applies the law of Indiana, not California or Delaware. *See Bremen*, 407 U.S. at 15; *Philpot*, 2015 U.S. Dist. LEXIS 105016, at *2–3. Therefore, the Defendants' reliance on other states' laws is not helpful. The Defendants have not provided any strong public policies of Indiana that are contravened by the forum selection clauses in the individual Defendants' employment contracts. The Defendants' only reason for why the Court should deem the Indiana forum selection clauses unreasonable and unjust is "because any former connection to Indiana through Interactive Intelligence is long dissolved." The Court is not convinced that this provides justification to declare the contractually agreed upon forum selection clauses unreasonable, unjust, and unenforceable. Manno, Hertel, and Strahan each agreed to the Indiana forum selection clause in

their employment contracts. In the absence of a "statute or judicial decision" embodying a "strong public policy" that would be undermined by enforcing the forum selection clauses, the parties' valid forum selection clauses "should be given full effect." *Bremen*, 407 U.S. at 13, 15. Therefore, the Court concludes that the Indiana forum selection clauses are valid and enforceable as to Manno, Hertel, and Strahan, and the forum selection clauses support personal jurisdiction in this Court.

## 2.    Specific Jurisdiction

The Defendants argue that specific personal jurisdiction cannot be established over Talkdesk, Manno, Hertel, and Morales because there are insufficient relevant connections between Indiana and these Defendants. They explain, "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal citations and quotation marks omitted).

Regarding the trade secret claims, the Defendants argue the Complaint's allegations that the misappropriated documents were created in Indiana by Indiana employees is not enough to support specific jurisdiction. The Defendants assert there are no allegations that any of the misappropriated documents were taken from Indiana or that any of the out-of-state Defendants' alleged actions took place in Indiana. Genesys, the alleged owner of the documents, resides in California.

Concerning the contract and tortious interference claims, the Defendants argue that the forum selection clauses in Hertel's and Manno's employment contracts do not create personal jurisdiction for the breach of contract and tortious interference claims. They further argue the allegation that Talkdesk interfered with contracts that provided for Indiana remedies is not enough

to create specific jurisdiction because "[k]nowing about a potential for harm in a particular state is not the same as acting *in* that state—and it takes the latter to permit personal jurisdiction under state law." *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018). The Defendants assert that the allegation of specific jurisdiction over Talkdesk based on Strahan's breach of contract after becoming "an employee and agent of Talkdesk" is insufficient. The Indiana Court of Appeals held that agency relationships and agency contacts do not establish personal jurisdiction. *Prof'l Billing, Inc. v. Zotec Partners, LLC*, 99 N.E.3d 657, 662 (Ind. Ct. App. 2018).

The Defendants assert there is no specific jurisdiction to adjudicate the fiduciary duty of loyalty claims because Genesys is a California entity, and neither Hertel nor Manno lived or worked in Indiana. Thus, Indiana does not have jurisdiction over any alleged common-law duty these non-Indiana residents had to their non-Indiana employer.

Regarding the raiding claim against Talkdesk, the Defendants argue there is no substantial connection between Indiana and Talkdesk. The only allegation is that Talkdesk's CEO recruited one Indiana resident, Strahan, and two non-Indiana residents with Indiana contracts, Manno and Hertel. The Defendants assert that this is not enough to establish personal jurisdiction over Talkdesk; the contacts alleged against Talkdesk are, at most, a contact with one person who resides in Indiana, not a contact with Indiana itself.

Lastly, the Defendants argue there is no specific jurisdiction over Morales for the computer trespass claim because there are no allegations indicating that Morales, a California resident, committed any act in Indiana that might have violated the Indiana computer trespass law, and Genesys' conclusory allegations that Morales violated an Indiana law do not establish personal jurisdiction over her in Indiana.

Genesys responds that specific jurisdiction exists in this Court over Talkdesk because it aimed its conduct at Indiana. Talkdesk intentionally recruited and raided employees it knew were located in Indiana, misappropriated Indiana documents, and interfered with Indiana contracts. Talkdesk benefited from the breach of Indiana contracts involving the unlawful solicitation of Indiana employees. Talkdesk's CEO personally raided Genesys of its Indiana employee, Strahan. Talkdesk raided at least eight of Genesys' Indiana employees, and Talkdesk encouraged the employees to download and demonstrate Genesys' products and disclose confidential and proprietary information as part of the interview process while the employees were still employed by Genesys.

Genesys argues that Talkdesk has, through its employees, misappropriated Genesys' trade secrets and other confidential information, and many of these misappropriated documents were created in Indiana by Indiana-based employees for an Indiana company. As an employee and agent of Talkdesk, Strahan was located in Indiana and breached his Genesys agreement, wrongfully solicited other Genesys employees, and misappropriated trade secrets for Talkdesk's benefit. Genesys asserts that courts have found such conduct to bind the corporate entity responsible for that agent's conduct. *See e.g., Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) ("the commission of some single or occasional acts of the corporate agent in a state may sometimes be enough to subject the corporation to jurisdiction in that state's tribunals with respect to suits relating to that in-state activity"); *Campbell v. Campbell*, 262 F. Supp. 3d 701, 708 (N.D. Ill. 2017) ("court may exercise personal jurisdiction over a company based on the actions of its agents"). Genesys argues that the decision in *Professional Billing, Inc. v. Zotec Partners*, relied upon by the Defendants, is inapplicable here because Talkdesk's agents (including Strahan) specifically

targeted their suit-related conduct toward Indiana. Their suit-related conduct aimed at Indiana, not merely Strahan's residency in Indiana, gives rise to specific jurisdiction.

Genesys further asserts that Talkdesk's connection to Indiana is strong. It employs personnel in Indiana, including four former Genesys/Interactive Intelligence employees (including Strahan). Talkdesk pays Indiana payroll taxes and has shipped computer equipment to Indiana. Talkdesk has earned over $35,000.00 in revenue from twenty-three transactions with Indiana businesses, and it has targeted at least thirteen other Indiana prospects.

Concerning personal specific jurisdiction over Manno and Hertel, Genesys argues that they freely entered into employment contracts containing Indiana forum selection clauses, and those forum selection clauses provide jurisdiction over Manno and Hertel. The claims in this case arise from the Defendants' conduct in violation of their employment contracts, so specific jurisdiction exists pursuant to the forum selection clauses. Genesys further explains that Hertel repeatedly traveled to Indiana for business purposes and misappropriated documents that originated as Interactive Intelligence documents in Indiana or were created by Genesys' employees residing and working in Indiana. Genesys also explains that the documents likely were taken from a cloud-based storage server, but those servers are supported by Genesys' data centers located in Indiana and Colorado.

Regarding personal specific jurisdiction over Morales, Genesys argues that many of the documents misappropriated by Morales were created by Interactive Intelligence employees for Interactive Intelligence's business or were otherwise created by and for Indiana employees. Over two hundred pages of documents Morales misappropriated were created by Indiana-based employees, and misappropriation of documents created in the forum state can bind a defendant to that forum state's jurisdiction. *See e.g., Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, 2017

U.S. Dist. LEXIS 25255, at *12–20 (E.D. Pa. Feb. 23, 2017) ("the trade secrets allegedly misappropriated were created in Pennsylvania, and therefore this state has the greatest interest in adjudicating the dispute"); *Ivanti, Inc. v. Shea*, 2018 U.S. Dist. LEXIS 28719, at *12 (D. Utah Feb. 21, 2018) ("alleged misappropriation concerned information created in Utah, by a Utah-based company, and was obtained as a result of Defendant's relationship with Utah-based employees").

Additionally, Morales spent ten days in Indianapolis for business travel related to her employment, and while she lived and worked for Genesys out of California, she interacted and emailed with Genesys' Indianapolis office on a daily basis. She received materials from Indiana-based employees that helped her do her job, including quotes for customers with Genesys' address listed as being in Indianapolis. Morales had an office telephone with an Indiana area code and paystubs from her early employment identifying Interactive Intelligence as payor. Morales had extensive employment communications directed at the forum state, which supports personal jurisdiction.

The Court agrees that the Defendants' isolated contacts with the forum state that do not relate to the claims raised in the litigation, do not support specific personal jurisdiction. Nor does Genesys' contacts with the forum state support specific personal jurisdiction over the Defendants. However, the forum selection clauses (discussed in the previous section) do support personal jurisdiction over Manno and Hertel. The alleged misappropriation of trade secrets from Indiana by Hertel, Manno, and Morales supports specific jurisdiction in this case over these Defendants. Manno's and Hertel's allegedly wrongful solicitation of Strahan, an Indiana employee of Genesys, further supports specific jurisdiction. The allegations against Talkdesk concerning its persuading Genesys' employees to misappropriate trade secrets from Indiana and wrongfully solicit Indiana employees and customers support specific jurisdiction in this case over Talkdesk. The Court

agrees with the decisions in *Daimler*, 571 U.S. at 127, and *Campbell*, 262 F. Supp. 3d at 708, that a court may exercise personal jurisdiction over a company based on the actions of its agents when that suit-related conduct is specifically aimed at the forum state. Much of the Defendants' suit-related conduct was aimed at Indiana. The Court concludes that the relationship among the Defendants, their suit-related conduct, and Indiana supports the exercise of specific personal jurisdiction in this case over these Defendants by this Court.

**B.**    **Request to Transfer the Case to the Northern District of California**

The Defendants assert, "even assuming that venue is proper in this district, this action should be transferred to the Northern District of California." (Filing No. 98 at 20.) They explain that a district court may transfer an action to another district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

The Defendants argue,

> [T]ransfer to California would be both proper and convenient because four parties out of six are residents of California. Only one party is a resident of Indiana. California has jurisdiction over the two non-California residents, Strahan and Manno, because this action arises out of their former employment with a California company (Plaintiff) and their current employment with a different California company (Talkdesk). Venue would be proper in the Northern District of California because both Plaintiff and Talkdesk reside in that district, indicating that a substantial portion of the events underlying Plaintiff's claims occurred there. Additionally, given the nature of Plaintiff's claims, the largest concentration of witnesses is likely to be in California. In fact, ten of the sixteen potential deponents already identified by the parties are residents of California. Only five are residents of Indiana. For these reasons, even if the Court finds that it has jurisdiction over Talkdesk and that venue is proper in Indiana, Talkdesk respectfully requests that it transfer venue to the Northern District of California.

(Filing No. 98 at 20–21.)

The Defendants further argue that Morales' arbitration agreement specifies California as the venue for arbitration, and thus, Genesys has acknowledged that California is the most appropriate venue to adjudicate employment claims with Morales. Additionally, the bulk of the

evidence relevant to the claims is located in California, and most of Talkdesk's employees and clients who would be called as witnesses are in California.

In response, Genesys points out that three of the five Defendants have Indiana forum selection clauses that identify this District as the chosen venue for litigation, and one of those Defendants (Strahan) resides in Indiana. Each of the non-resident individual Defendants have travelled to Indiana for business purposes related to the litigation. Many of the misappropriated documents are Indiana documents, and while the documents likely were taken from a cloud-based storage server, those servers are supported by Genesys' data centers located in Indiana and Colorado.

Genesys explains that its largest site is in Indianapolis where it has hundreds of employees and has a majority of its administrative, operational, and legal functions. Additionally, the events giving rise to this lawsuit relate to Indiana. None of the conduct at issue in the case occurred in the Northern District of California, and while Morales and Hertel live and work in California, they are not in the Northern District. Furthermore, many of Talkdesk's executives, corporate witnesses, attorneys, employees, and potential witnesses are in Utah, not in the Northern District of California. Genesys asserts that most witnesses will be representatives of the parties, and Genesys expects to call several witnesses in Indiana.

Moreover, Indiana resident Strahan solicited at least five Indiana-based employees while employed by and working for the benefit of Talkdesk. Talkdesk recruiters made more than thirty calls to recruits within Indiana. Those recruited by Talkdesk include at least eight Indiana employees of Genesys, who work in this District, including Strahan and another individual who is now employed by Talkdesk. Genesys argues that "sufficient events giving rise to this litigation have occurred in Indiana." (Filing No. 111 at 19.)

Genesys relies on *Atlantic Marine*, in which the Supreme Court directed that, in analyzing a request to transfer venue where a forum selection clause is involved, the district court "should not consider arguments about the parties' private interests" because, by agreeing to the forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine Constr.*, 571 U.S. at 64. "[A] district court may consider arguments about public-interest factors only. . . . [Thus,] forum-selection clauses should control except in unusual cases." *Id.* Genesys also asserts there is "a strong presumption in favor of the plaintiff's choice of forum." *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 986 (S.D. Ind. 2016).

Regarding public-interest factors, Genesys argues this Court has a more efficient docket than the Northern District of California, more familiarity with the Indiana claims, and already has scheduled a preliminary injunction hearing, so this Court should retain the case and deny the request to transfer. Genesys asserts the overall average of months to disposition in civil cases is only approximately one-half month faster in the Northern District of California, but the other measures of disposition are faster in the Southern District of Indiana, so this Court should retain the case.

Because this case involves forum selection clauses, the traditional analysis for considering transfer is modified.

> When the case involves a forum-selection clause, however, private interests drop out of the equation. . . . [T]he analysis is limited to public-interest factors. And because those factors are rarely strong enough to override the parties' preselected forum, the practical result is that forum-selection clauses should control except in unusual cases.

*Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (internal citations and quotation marks omitted). The Defendants have not presented any argument concerning the public-interest

factors that could support their request to transfer this case to the Northern District of California. On the other hand, Genesys has provided 2018 federal court caseload statistics from the U.S. Courts' Administrative Office, and those statistics suggest that this District is equally efficient or more efficient in disposing of cases than the Northern District of California. Because the only "public-interest factors" argument before the Court suggests that transfer is not warranted, and because the forum selection clauses involved in this case direct that litigation occur in Indiana, the Court concludes that transfer to the Northern District of California is not warranted. Therefore, the Court **denies** the Defendants' request to transfer this case.

## C.    Request to Dismiss for Failure to State a Claim

The Defendants argue that each of the claims brought by Genesys should be dismissed under Rule 12(b)(6) because the allegations fail to state claims upon which relief can be granted.

### 1.    Trade Secret Claims

Under the federal Defend Trade Secrets Act and the Indiana Uniform Trade Secret Act, "information only qualifies as a 'trade secret' if the owner makes a reasonable effort to maintain its secrecy, and it derives economic value or potential value from not being generally known to or readily ascertainable by others." (Filing No. 98 at 22 (citing 18 U.S.C. § 1839(3)(A); Ind. Code § 24-2-3-2).) If information does not meet these standards, then it does not qualify for protection under either statute. Trade secrets are a narrow category of confidential information, and the statutes apply only to trade secrets, not all confidential information. The Defendants argue that Genesys' trade secret claims fail because Genesys has not sufficiently and plausibly alleged the misappropriation of any trade secret. They argue that Genesys has not adequately identified its trade secrets, has not asserted that any of the alleged trade secret information derives independent economic value from not being generally known, and has not alleged what reasonable measures it

has taken to keep the information secret or even whether such measures were taken. The Defendants assert Genesys' conclusory allegations fail to state a claim.

Genesys responds that the Defendants seek to impose a heightened pleading standard that is not required at this stage of the litigation. Genesys points out that the cases relied upon by the Defendants for the alleged heightened pleading standard are inapposite because those cases involved summary judgment or preliminary injunction motions, not a motion to dismiss. *See IDX Sys. Corp v. Epic Sys. Corp.*, 285 F.3d 581 (7th Cir. 2002); *M.K. Plastics Corp. v. Rossi*, 838 N.E.2d 1068 (Ind. Ct. App. 2005). Relying on a decision from the Northern District of Indiana, Genesys asserts that, "at the pleading stage, the Complaint need only provide enough facts to show that the claim is plausible on its face . . . [and] [c]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation." *Romary Assocs., Inc. v. Kibbi LLC*, 2011 U.S. Dist. LEXIS 75194, at *13 (N.D. Ind. June 17, 2011).

Genesys has sufficiently alleged the misappropriation of trade secrets, including that Defendants misappropriated information related to employee performance, compensation, level of job satisfaction, and account relationships; pricing, quote information, and product roadmap information; territory information; accounts; product information; intellectual property; account and sales plans; marketing information; customer account information and documentation; presentations; and sales strategy. Genesys also has alleged that Talkdesk utilized this misappropriated information to damage Genesys. Furthermore, Genesys listed thirty specific examples of potential trade secrets that were misappropriated by Morales in the Second Amended Complaint (Filing No. 89 at 10–13). These factual allegations are sufficient to give the Court and the Defendants notice of what the trade secret claims are and the grounds upon which the claims rest. Assuming all the facts to be true, there are enough factual allegations to allow the Court to

draw the reasonable inference that the Defendants are liable for the misappropriation of trade secrets. At this stage of the litigation, dismissal of the trade secret claims is not appropriate.

2.     **Breach of Contract Claims**

Next, the Defendants argue that the breach of contract claims against Strahan, Hertel, and Manno should be dismissed because Genesys itself argued in the *Avaya* case in California that the restrictive covenants violate California public policy and cannot be asserted by a California entity against employees of another California entity protected by California law. The Defendants point out that Genesys argued in the *Avaya* case that California has a public policy against non-compete agreements, which hinders free and healthy competition, to help California companies secure the best talent. Genesys argued in the *Avaya* case that non-resident employees of California companies should be free from restraints of non-compete agreements. The Defendants assert that Genesys cannot argue in the *Avaya* case that the restrictive covenants are unlawful and, in this case, try to enforce the restrictive covenants. Thus, they argue, the contract claims should be dismissed under California law.

The Defendants argue that the breach of contract claims also should be dismissed under Indiana law because the non-solicitation covenants are unenforceable. The Second Amended Complaint alleges that Hertel is contractually obligated "not to solicit Genesys employees or customers for 12 months after leaving employment with Genesys." (Filing No. 89 at 15.) The Second Amended Complaint alleges that Strahan and Manno are contractually obligated "not to solicit Genesys employees or customers for 18 months after leaving employment with Genesys." *Id.* at 18, 21. However, the Second Amended Complaint does not allege that any of these restrictive covenants contain any geographical limitation. The Defendants also argue that the

restrictive covenants are not limited to only customers that interacted with Strahan, Hertel, or Manno, thereby making the restrictive covenants overly broad and unenforceable.

In Indiana, an employer may restrict competition after the period of employment if "the employer has a protectable interest" and if the restricted area "is not unreasonably broad" and the duration "is also not unreasonable." *Norlund v. Faust*, 675 N.E.2d 1142, 1155 (Ind. Ct. App. 1997). The Defendants assert that restrictive covenants "are not generally favored in Indiana because they restrain trade, and such agreements will be construed against the one seeking the restraint." *Oxford Fin. Group, Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003). Furthermore, "Indiana courts will not hesitate to strike down any such restrictive covenants which are the least bit overly broad with respect to the 'protectable interest' at stake." *Buffkin v. Glacier Group*, 997 N.E.2d 1, 11 (Ind. Ct. App. 2013). The Defendants argue Genesys has failed to allege a protectable interest, but even if one existed, the restrictive covenants are unreasonable in scope (with no geographic limitation) and duration (with a 12- or 18-month restriction). Therefore, the contract claims should be dismissed under Indiana law.

In response, Genesys argues that the Second Amended Complaint clearly sets out a protectable interest in its goodwill and customer base and the development of its customer base. Concerning the reasonableness of the restrictive covenants, Genesys asserts the Court must look at the contract as a whole and the particular circumstances of the case. The twelve- or eighteen-month duration for the restrictions in this case are reasonable as other courts have found a two-year restriction to be reasonable. *See e.g., Hannum Wagle & Cline Eng'g, Inc. v. American Consulting, Inc.*, 64 N.E.3d 863, 882 (Ind. Ct. App. 2016). Genesys further asserts that restrictive covenants may be enforceable without geographic limitations where they are limited to a specific class of persons like customers or employees. *See e.g., Field v. Alexander & Alexander of Indiana,*

*Inc.*, 503 N.E.2d 627, 635 (Ind. Ct. App. 1987).  Genesys argues that, in this case, the restrictive covenants are limited in scope by prohibiting solicitation of Genesys' customers and employees, so a lack of geographic limitation does not make the restrictive covenants unenforceable under Indiana law.

At this stage of the litigation, the Court concludes that the breach of contract claims are sufficiently supported by factual allegations and case law to allow the claims to proceed.  The employment contracts of Strahan, Hertel, and Manno, which form the basis of the breach of contract claims, each contain an Indiana choice of law provision, and the claims allege the existence of a contract, a breach thereof, and damages.  Based on the factual allegations being taken as true, the non-solicitation clauses are adequately limited in duration and scope to Genesys' employees and customers to relate to Genesys' protectable interest in its goodwill and customer base.  Therefore, the Court denies the request to dismiss the breach of contract claims.

### 3. **Tortious Interference Claims**

The Defendants assert that, to the extent the tortious interference claims rely on allegations of misappropriation of confidential information, the claims should be dismissed because the Indiana Uniform Trade Secret Act "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law."  Ind. Code § 24-2-3-1(c).  The statute "abolishes all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status." *HDNet LLC v. N. Am. Boxing Council*, 972 N.E.2d 920, 924–25 (Ind. Ct. App. 2012).  The tortious interference claims rely on allegations that the Defendants misappropriated or participated in the misappropriation of trade secrets.  Therefore, the Defendants argue, the claims are alternative

causes of action for theft or misuse of confidential, proprietary, or otherwise secret information that are preempted under the Indiana Uniform Trade Secret Act.

The Defendants also argue that the tortious interference claims should be dismissed because the non-solicitation provisions are invalid and also because Genesys did not adequately plead the element of an absence of justification. A tortious interference claim requires, "(1) the existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach." *Konecranes, Inc. v. Davis*, 2013 U.S. Dist. LEXIS 52815, at *5–6 (S.D. Ind. Apr. 12, 2013) (citations omitted). The Defendants argue the Second Amended Complaint fails to allege a lack of justification and actually contradicts such an allegation. "Indiana courts have held that competition is a legitimate interest that establishes justification for purposes of a tortious interference claim." *Id.* at *9. The Defendants assert that the "allegations acknowledge that Talkdesk was motivated by a legitimate and competitive business interest." (Filing No. 98 at 29.) Talkdesk is an upstart competitor of Genesys, and its recruitment of employees was justified; therefore, the tortious interference claims are legally deficient.

Genesys responds that "claims addressing or arising out of wrongs distinct from pure information piracy survive passage of the trade secret statute." *HDNet*, 972 N.E.2d at 925. Genesys asserts that its tortious interference claims are not preempted because they seek redress for wrongs distinct from the misappropriation of trade secrets. Genesys points out that its Second Amended Complaint alleges Talkdesk encouraged and benefitted from Hertel and Strahan breaching their agreements not to recruit Genesys personnel. Genesys argues the tortious interference with its contracts is not justified as "competition" because Talkdesk misappropriated

trade secrets and raided Genesys' employees with the intent to cripple Genesys' mid-market sales organization.

To the extent that the tortious interference claims are based upon the misappropriation of trade secrets or confidential information, the Court concludes that this basis for the claim is preempted by the Indiana Uniform Trade Secret Act. However, the Second Amended Complaint bases the tortious interference claims on the additional allegations of the wrongful recruitment and raiding of Genesys' employees for the purpose of crippling Genesys' mid-market sales organization. The Court determines that these allegations are enough to support the absence of justification and a tortious interference claim at the motion to dismiss stage.

### 4. Breach of Fiduciary Duty of Loyalty Claims

The Defendants next argue the claims for breach of fiduciary duty of loyalty against Strahan, Hertel, and Manno should be dismissed where the allegations supporting the claims only show recruitment of Genesys' personnel, participating in a call with Talkdesk's CEO, and participating in training activities. The Defendants argue that these actions only suggest preparation to compete, not actual competition. Pointing to an Indiana Court of Appeals decision, the Defendants argue, "although an employee may not actively and directly compete with his current employer, he may prepare to do so without breaching his fiduciary duty of loyalty." *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758, 768 (Ind. Ct. App. 2011). The Defendants assert, because Genesys' allegations suggest only preparation to compete, these claims should be dismissed.

In response, Genesys asserts that the Defendants' position presents a factual dispute or question that is not suited for resolution through a motion to dismiss. Suggesting that the Defendants' actions only rose to the level of "preparation to compete" is a factual challenge and

one that cannot support dismissal at this stage. Genesys contends that the Defendants' argument ignores many of the allegations in the Second Amended Complaint: Strahan began working for Talkdesk on September 17, 2018, even though he was still employed by Genesys; and Manno, Hertel, and Strahan solicited Genesys' employees to leave Genesys and work for Talkdesk while these three still worked for Genesys.

Taking the allegations as true and drawing all inferences in favor of the non-moving party as the Court must do when deciding a motion to dismiss, the Court determines that Genesys' pleadings are sufficient to support a viable claim for breach of fiduciary duty of loyalty against Strahan, Hertel, and Manno. The allegations suggest that these three Defendants, while still employed by Genesys, actively solicited employees of Genesys to leave the company and work for its competitor, Talkdesk. The allegations further suggest that Strahan actively began working for Talkdesk while still employed by Genesys. These allegations are enough to support the claims at this stage of the litigation. Thus, the request to dismiss these claims is **denied**.

### 5.     <u>Computer Trespass Claim</u>

The Defendants argue that, to the extent the computer trespass claim relies on allegations of misappropriation of confidential information, the claim should be dismissed because of preemption by the Indiana Uniform Trade Secret Act. The Defendants assert that Genesys' claim against Morales for computer trespass includes the allegation that she knowingly and intentionally accessed Genesys' internal network and company-owned computer without the consent of Genesys when she misappropriated its confidential, proprietary, and trade secret information. Because this is simply an alternative cause of action for theft or misuse of confidential, proprietary, or otherwise secret information, it is preempted. Additionally, there are no allegations that Morales committed any acts in Indiana that could give rise to her violating the Indiana computer trespass

statute. The Defendants also argue that Genesys' claim for treble damages for computer trespass under the Indiana Crime Victim Recovery Act is deficient because there are no allegations plausibly suggesting that Indiana could exercise criminal jurisdiction over Morales' actions.

Genesys responds that proof for the computer trespass claim requires that Morales knowingly or intentionally accessed a computer system or network without consent of the owner. Ind. Code § 35-43-2-3. Therefore, computer trespass does not require any downloading or misappropriation, and it stands as a distinct claim from misappropriation of trade secrets or confidential information. The claim does not require the same proof as a misappropriation claim, and thus, the claim is not preempted by the Indiana Uniform Trade Secret Act. Genesys further asserts that, because Morales' connections with Indiana related to her employment are substantial, Genesys adequately stated its relief against Morales related to the Indiana Crime Victim Recovery Act.

While Genesys is correct that the computer trespass statute does not require the "same proof" as a misappropriation claim, in this case, the allegations in the Second Amended Complaint base the computer trespass claim entirely on misappropriation of confidential information and trade secrets. The allegations are that "Morales knowingly and intentionally accessed Genesys internal network and company-owned computer without the consent of Genesys when she misappropriated its confidential, proprietary, and trade secret information from Genesys internal network and/or Genesys company-owned computer." (Filing No. 89 at 25, ¶163.) "Genesys has been damaged by Morales' violation of the Indiana Computer Trespass law and subsequent misappropriation of its trade secret information thereby." *Id.* at 25, ¶164. "Morales' violation of the Indiana Computer Trespass law falls within Indiana's Victim's Recovery Act, Ind. Code Ann. § 34-24-3-1, entitling Genesys to treble damages and attorney's fees." *Id.* at 25, ¶165.

Even accepting as true all the factual allegations and drawing all inferences in favor of Genesys, it is clear that the computer trespass claim is founded solely on the misappropriation of information. The only reasonable inference is that Morales had the consent of Genesys to access its computer system or network while Morales was employed by Genesys. Only when Morales began to misappropriate information from the computer system or network does it appear that consent would no longer have existed. Because the computer trespass claim is based entirely on the misappropriation of information, it is preempted by the Indiana Uniform Trade Secret Act. Therefore, the Defendants' request to dismiss the computer trespass claim and the ancillary demand for damages under the Indiana Crime Victim Recovery Act is **granted**.

### 6. <u>Raiding Claim</u>

Lastly, the Defendants again argue that, to the extent the raiding claim relies on allegations of misappropriation of confidential information, the claim should be dismissed because of preemption by the Indiana Uniform Trade Secret Act. The raiding claim against Talkdesk includes the allegation that Talkdesk utilized trade secrets to facilitate its raiding effort, so the claim is preempted.

The Defendants further argue that Genesys alleged that Talkdesk illegally raided Genesys by widely recruiting its mid-market sales management team, but "Indiana does not recognize 'corporate raiding' as an independent cause of action separate and apart from a claim of unfair competition." *Howmedica Osteonics Corp. v. DJO Glob., Inc.*, 2018 U.S. Dist. LEXIS 227687, at *19 (S.D. Ind. Mar. 15, 2018). And under Indiana law, "unfair competition extends to acts that although generally considered a fair and welcomed part of vibrant competition, are engaged in for the primary purpose of destroying a competing business." *Finish Line, Inc. v. Foot Locker, Inc.*, 2006 U.S. Dist. LEXIS 3294, at *23 (S.D. Ind. Jan. 18, 2006) (alteration and internal quotation

marks omitted).  The Defendants argue that Genesys has not and cannot plausibly allege that Talkdesk's primary purpose was to destroy Genesys; Genesys has not alleged any act in support of its raiding claim that goes beyond the normal range of fair and healthy competition.  The Defendants conclude, "The nationwide recruitment of '14 Genesys employees,' especially from a corporation that is a self-proclaimed 'longstanding and market-leading provider' in the industry, does not qualify as unfair competition under this standard."  (Filing No. 98 at 31.)

Genesys responds that its raiding claim is not preempted by the Indiana Uniform Trade Secret Act because the claim is based on Talkdesk's targeted poaching of its sales employees while encouraging those employees to breach their contractual obligations to Genesys, including their duty not to solicit Genesys' employees or customers and also their breach of fiduciary duties owed to Genesys.  Genesys asserts that it has adequately stated its raiding claim against Talkdesk by alleging facts that plausibly suggest that Talkdesk raided its employees involving independent unlawful conduct with the motivation of crippling its business.  Genesys points out that the case relied upon by the Defendants recognizes "corporate raiding as a form of unfair competition," *Howmedica Osteonics*, 2018 U.S. Dist. LEXIS 227687, at *19, and Indiana courts have recognized that raiding a competitor's workforce with the intent to cripple its business, or part of its business, is actionable.  *See CDW LLC v. NETech Corp.*, 722 F. Supp. 2d 1052, 1063–64 (S.D. Ind. 2010).

The Court concludes that the raiding claim is not preempted by the Indiana Uniform Trade Secret Act because the claim is based on Talkdesk's alleged efforts to poach Genesys' mid-market sales organization by encouraging Genesys' employees to breach their contractual obligations to Genesys.  Taking the allegations as true, "Talkdesk's targeted raid of Genesys mid-market segment, including all of its top leadership, was carried out with ***the purpose of crippling*** Genesys mid-market sales organization."  (Filing No. 89 at 49, ¶371 (emphasis added).)  This is sufficient

to support a raiding claim at this stage of the litigation, so the Court **denies** the request to dismiss the raiding claim.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue ([Filing No. 97](#)). The Court concludes that it has personal jurisdiction over the Defendants and that transferring the case to the Northern District of California is not warranted and is therefore **denied**. Genesys' claim for computer trespass against Morales is **dismissed**, but each of the other claims asserted in the Second Amended Complaint **remain pending**. If necessary, the Court is able to reschedule the preliminary injunction hearing in short order.

**SO ORDERED.**

Date: 11/5/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John R. Maley
BARNES & THORNBURG, LLP
jmaley@btlaw.com

Kathleen M. Anderson
BARNES & THORNBURG, LLP
kathleen.anderson@btlaw.com

Thomas C Payne
BARNES & THORNBURG LLP
thomas.payne@btlaw.com

John W. Harbin
MEUNIER CARLIN & CURFMAN LLC
jharbin@mcciplaw.com

David S. Moreland
MEUNIER CARLIN & CURFMAN LLC
dmoreland@mcciplaw.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

James P. Strenski
PAGANELLI LAW GROUP
jstrenski@paganelligroup.com