UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TALKDESK, INC., et al, <br><br> Defendants. | Case No.: 1:19-CV-695-TWP-DML |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION FOR PRELIMINARY INJUNCTION

John R. Maley (14300-89)
Thomas C. Payne (34727-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:   (317) 236-1313
Facsimile:   (317) 231-7433
Email:       jmaley@btlaw.com
             tpayne@btlaw.com

# TABLE OF CONTENTS

                                                **Page**

I. FACTUAL BACKGROUND ................................................................................................ 1

    A. The Parties and Defendants' Contractual Agreements With Genesys. ................... 1

    B. Defendants Secretly Plot to Take A Sales Force With Them To Talkdesk. ............ 2

    C. Defendants Leave Genesys with Misappropriated Trade Secrets. .......................... 2

    D. Talkdesk Competes For The Business Of Bank Of Hawaii and PowerSchool, Utilizing Genesys Trade Secret Information To Gain An Unfair Advantage. .................................................................................................. 3

    E. Talkdesk Wins The Business Of PowerSchool. ...................................................... 4

    F. Talkdesk Continues To Compete With Other Genesys Prospects. ......................... 4

    G. Defendants' Persistent Efforts to Delay and Impede Discovery. ............................ 5

    H. Genesys' Efforts to Protect Its Confidential and Trade Secret Information and The Individual Defendants' Related Contractual Obligations. .......................................................................................................... 5

II. LEGAL STANDARD AND DISCUSSION ........................................................................ 6

    A. Genesys Has More Than "Some" Likelihood of Success; Its Claims Are Strong. ............................................................................................................. 6

        1. Genesys Is Likely To Succeed In Establishing That Defendants Misappropriated Genesys Trade Secrets. ..................................................... 6

            (a) Data Taken By Defendants Constitutes a "Trade Secret." ............ 7

            (b) Defendants Misappropriated Genesys Trade Secrets ..................... 8

        2. Genesys Is Likely To Succeed In Establishing That Manno, Hertel, Strahan, and Talkdesk Breached And Interfered With Contract. ................................................................................................... 9

    B. Defendants' Unlawful Misappropriation And Solicitation Have And Will Continue To Irreparably Harm The Competitive Value Of Genesys' Trade Secrets And Genesys' Customer Relationships. ............................ 9

        1. Defendants' Misappropriation of Genesys Trade Secrets Will Irreparably Sacrifice Their Competitive Value. .......................................... 9

        2.        Genesys Lacks an Adequate Remedy At Law. ............................................. 11

    C.        The Balance of Harms Greatly Favors Injunctive Relief in Genesys' Favor........ 12

Genesys seeks a preliminary injunction preventing its former sales executives and their new employer, Talkdesk, from further misappropriation of Genesys trade secrets, and from further breach of contract. Genesys meets the standards for this relief, and no harm would accrue to Defendants by complying with trade secret laws, nor would harm accrue to Manno, Hertel, and Strahan by complying with their contracts through the remainder of their covenants, March 31, 2020, to not recruit additional Genesys employees or solicit Genesys customers and prospects they had knowledge of at Genesys.

## I.     FACTUAL BACKGROUND

### A.     The Parties and Defendants' Contractual Agreements With Genesys.

Genesys is a longstanding and market-leading provider of cloud and on-premises customer experience and contact center solutions, and has made massive investments in its technology, trade secrets, and sales teams. [Dkt156,p2]. Talkdesk is an upstart, aggressive competitor of Genesys, who recently raised $100 Million dollars in funding, after which its CEO Tiago Paiva set out to build Talkdesk's own sales force.[*Id.*]. Rather than invest in its own talent and trade secrets, Talkdesk and its CEO began targeting employees from Genesys. [Dkt.89,¶5;Ex.1]. Taken in Talkdesk's raid of Genesys include Ralph Manno, former VP of Sales at Genesys (and now Talkdesk), two of his three direct report Directors while at Genesys—Mark Hertel and Michael Strahan (now Sales VPs at Talkdesk), and multiple account executives working for Strahan and Hertel.[Dkt.156,p.2-3]. It is no coincidence that they all started at Talkdesk on the same date, October 1, 2018.

[Dkt.89,¶¶17,20-21,23;Ex2;Ex3;Ex4;Ex5]. Manno, Hertel, and Strahan signed their agreements with Genesys predecessor, Interactive Intelligence, which Genesys acquired in 2016. Genesys is the successor and assignee of those agreements.

[Ex2;Ex3;Ex4;Ex5].

**B.     Defendants Secretly Plot to Take A Sales Force With Them To Talkdesk.**

While serving as highly compensated executives of Genesys and in breach of their fiduciary duties, Manno, Hertel, and Strahan all plotted together and with Talkdesk CEO Paiva to recruit other Genesys employees to Talkdesk. Hertel admitted he solicited Morales, that he and Strahan influenced each other to join Talkdesk, and that Manno recruited them. [Ex.6]. Strahan admitted to soliciting at least 8 other Genesys employees. [Ex.7]. Manno admitted to soliciting Strahan and Hertel. [Ex.45,pp.75-77].

After an August 2018 conference call in which CEO Paiva pitched Manno, Hertel, and Strahan on "building a unique company," the trio began building Talkdesk's sales force out of Genesys' best sales employees. [Ex.6]. For example,

[Ex.8]. Strahan

[Exs.9,10]. Indeed,

[Ex.11] For his part,

[Ex.12]. Hertel had overseen the BOH deal at Genesys. BOH (a Genesys customer) had not publicly solicited quotes as it worked with Genesys to find a new solution. Hertel disclosed trade secrets, educating Paiva on Genesys' proposals, prices, product details, and how Talkdesk might steal the BOH deal.

**C.     Defendants Leave Genesys with Misappropriated Trade Secrets.**

Prior to departing Genesys Morales secretly downloaded to a flash drive hundreds of Genesys documents, many of which include trade secret information and ended up on a Talkdesk controlled Google Drive account. [Dkt89]. Hertel admitted to similarly taking over 24,000 documents with him – a backup of his Genesys email account. [Ex6]. Talkdesk employee Jeff DeVries accessed a BOH document on Hertel's drive on October 25, 2018 – in the middle of the BOH deal. [See Expert Report, Ex. 46].

Further, Defendants' illegally distributed trade secrets to Talkdesk's executives, including when Hertel shared Genesys'                                directly with CEO Paiva via a Genesys email he had forwarded to himself prior to his departure from Genesys. [Ex.13]. This trade secret information contains

The raw Genesys data was also shared with CEO Paiva, a compilation of Genesys

[*Id.*].[2]  Strahan misappropriated Genesys trade secret information on the Talkdesk-competitive PureCloud product,

[Ex.15].[3]

**D.     Talkdesk Competes For The Business Of Bank Of Hawaii and PowerSchool, Utilizing Genesys Trade Secret Information To Gain An Unfair Advantage.**

At the same time it was misappropriating and distributing Genesys trade secrets, Talkdesk suddenly pursued the non-public BOH deal. On November 28, 2018, aided by the misappropriated Genesys quotes and deal documents, CEO Paiva pitched BOH on signing with Talkdesk, offering it 5 free years of service. The individual Defendants' wrongdoing with respect to BOH is extensive:

- Hertel briefed
- Hertel shared
- Strahan advised                                                         " [Ex.17];
- Strahan advised                                           [Exs.18,19];
- Manno
  [Exs.20,

---

[1]

[2] Hertel forwarded a Genesys trade secret                                              [Ex.14].

[3]                                                                                                               [Ex.16].

3

- Hertel, Strahan, and Manno all [Exs.22,23];
- Hertel downloaded trade secrets related to BOH and took them to Talkdesk. [Exs.24-29].

Talkdesk's forecasting spreadsheet conveniently summarizes the unlawful involvement of the individual Defendants in the BOH deal on behalf of Talkdesk:

- 

- 

[*Id.* (emphasis added)].

### E. Talkdesk Wins The Business Of PowerSchool.

Talkdesk used Genesys trade secret information to win the business of PowerSchool. Flannery and Hertel had been working this prospect throughout 2018, yet Talkdesk won the business with knowledge of Genesys' "roadmap" items—trade secret information detailing when Genesys will be rolling out particular products and services. Talkdesk utilized this and other Genesys trade secrets, including information from customer complaints, compiled by Genesys. [Ex.31].[4]

### F. Talkdesk Continues To Compete With Other Genesys Prospects.

Even without merits discovery, Genesys is aware that as recently as this spring – after multiple cease and desist letters and initiation of this lawsuit - Talkdesk was competing with Genesys for the business of          Manno advised Talkdesk using trade secret information he learned while aware of the deal at Genesys. [Ex.36]. In addition, Talkdesk targeted Genesys prospects that were in Genesys' pipeline documents misappropriated by Hertel, including          listed on the                         [Exs.37,38,30].

Since raiding Genesys sales executives, Talkdesk has repeatedly emphasized the importance of competing with Genesys:

- CEO Paiva remarked on BOH:                                                      [Ex.39];

---

[4] Hertel downloaded and stole Genesys' PowerSchool proposals, quoted prices, and presentation slides. [Exs.32-35].

4

- Manno implemented                                                                                         [Ex.40];
- Manno instructed that he, the former Genesys VP of Sales,
  [Ex.41];
- Manno advised on how to use                                                                      [Ex.42];
- Manno used his knowledge of Genesys trade secrets to
  [Ex.43].

### G.  Defendants' Persistent Efforts to Delay and Impede Discovery.

Although the parties informally worked together with an independent technologist to narrow one branch of data theft (the Morales and Hertel secret downloads of Genesys confidential data), much work remains to be done on forensics. For example, forensic results showed that Morales' flash drive documents ended up on her Talkdesk computer, but the contents of that computer have not been produced. Further, the technologist only analyzed *two* Talkdesk computers, no other devices – and Morales confirmed that documents had ended up on a Talkdesk Google Drive account.

Defendants have resisted reasonable discovery at every turn, producing less than 600 documents (for five Defendants), refusing depositions, refusing to produce electronic devices, and moving for and obtaining a stay of discovery. Only since the Court's recent denial of most of the defense motion to dismiss was discovery able to start, and only one brief merits deposition (under three hours) of one Defendant (Manno) was just recently taken on November 15, and without the benefit of any discovery response or production (now overdue) from Manno. Indeed, Manno admitted he has done *nothing* to search for responsive materials to those discovery requests. Yet limited discovery confirms that the misappropriated Genesys trade secrets did **not** come solely from the Morales and Hertel flash drives. Indeed, one of the most sensitive trade secrets –

– came through Hertel's forwarded emails

### H.  Genesys' Efforts to Protect Its Confidential and Trade Secret Information and The Individual Defendants' Related Contractual Obligations.

Genesys takes reasonable measures to protect the secrecy of its trade secrets, including maintaining information security policies, requiring employees to sign employment agreements with confidentiality provisions and restrictive covenants, where applicable, requiring customers to sign non-

5

disclosure agreements, and requiring employees to use complex passwords and two-factor identification to access Genesys technology systems. [Exs.2-5,44]. Genesys further marks certain trade secrets with confidentiality disclaimers, and limits the distribution of certain information to only some employees,　　　　　　　　　　which is only distributed to employees at the Director level or above.

## II.　　LEGAL STANDARD AND DISCUSSION

Genesys need only establish "that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (affirming injunction issued by Judge Pratt). "[I]f the plaintiff passes that threshold, "the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest." *Id*. The Seventh Circuit 'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *Id*.

### A.　　Genesys Has More Than "Some" Likelihood of Success; Its Claims Are Strong.

#### 1.　　Genesys Is Likely To Succeed In Establishing That Defendants Misappropriated Genesys Trade Secrets.

The Defend Trade Secrets Act ("DTSA") defines "misappropriation" as "an unconsented disclosure… by one who (i) used improper means to acquire the secret, or, (ii) … knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) (citations omitted). A trade secret is defined as both tangible and intangible information that "derives independent economic value…from not being generally known" and that the owner "has taken reasonable measures to keep… secret." 18 U.S.C. § 1839(3). Indiana's trade secrets statute, IUTSA, contains similar definitions. IC § 24-2-3-2.

6

### (a) Data Taken By Defendants Constitutes a "Trade Secret."

Among the 24,000 documents misappropriated, thousands are trade secrets. Among those are the

This trade secret information is not just tangible documents, but also non-tangible information used by Defendants to advise Talkdesk on sales deals and recruit Genesys employees. These have independent economic value and Genesys has taken reasonable steps to protect them.

The

identifies "pain points" for those customers. Further, Genesys'

This information, as well as the quotes, slide decks, marketing material that contains Genesys' sales strategy, have independent economic value that makes them trade secrets. *See e.g., Vendavo, Inc. v. Long,* 397 F. Supp. 3d 1115, 1131 (N.D. Ill. 2019)(granting preliminary injunction; "customer-specific information…in particular a customer's 'pain points' and the specific solutions developed to address those 'paint points'" was a trade secret, as was "sales pipelines cultivated for future growth and sales revenue reports"); *see also Am. Family Mut. Ins. Co. v. Roth*, 485 F.3d 930 (7th Cir. 2007) (customer information in an insurer's database was a "trade secret" because it was filtered by suitability to buy insurance).

Genesys has sufficiently protected this information by restricting its access to only certain Genesys employees, requiring its technological systems to be encrypted using complex passwords and multi-factor identification, limiting access to its Salesforce database, requiring employees to sign confidentiality agreements, requiring customers to sign non-disclosure and confidentiality agreements, limiting the amount of publicly available information on its prices and products, and marking the information "confidential" or "internal distribution only." In *Vendavo, Inc.*, the court found similar measures to be sufficient to keep the trade secrets "secret." *Vendavo, Inc.*, 397 F. Supp. 3d at 1136-37.

### (b) Defendants Misappropriated Genesys Trade Secrets.

Genesys need only show a "threatened" misappropriation to be entitled to injunctive relief. *See* 18 U.S.C. § 1836(b)(3)(A)(i) (injunction available "to prevent any actual *or threatened* misappropriation"); I.C. § 24-2-3-3(a) ("Actual *or threatened* misappropriation may be enjoined"). This statutory remedy requires no evidence of actual harm to support an injunction.[5] Moreover, Defendants' misconduct is actual misappropriation, with threatened misappropriation still looming.

Defendants Hertel, Strahan, and Manno misappropriated countless Genesys trade secrets, distributing them to Talkdesk executives, using them to recruit Genesys employees, and using them to compete against Genesys against                                                  among others. Morales likewise downloaded hundreds of Genesys trade secrets. In addition to the proven misappropriation that has already occurred, a preliminary injunction is warranted because of the risk that Defendants will inevitably disclose further trade secret information in the future. *See Pepsico, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) (preliminary injunction can be granted against former executives to prevent them from using a former employer's trade secrets in a new position for a direct competitor.)

"In light of *PepsiCo*, courts in this district have employed a three-factor analysis to evaluate whether a defendant will inevitably disclose trade secrets in [their] new position." *Vendavo, Inc.*, 397 F. Supp. 3d at 15. All three factors are met in this case. First, it is undisputed that Genesys and Talkdesk are direct competitors that sell a similar cloud-based customer service software platform to the same type of customers. Indeed, Ralph Manno has made it clear

---

[5] This serves an important policy function in preserving the value of trade secrets because, as discussed above, "a trade secret once lost is, of course, lost forever." *Flotec, Inc. v. Southern Research*, 16 F.Supp.2d 992, 999 (S.D. Ind. 1998) If the law required a party seeking to protect a trade secret through injunctive relief to first establish that the trade secret had *actually* and *already* been misappropriated in every case, the very purpose of trade secret protection would be diminished as there would be no legal or equitable means of protecting a trade secret until it was no longer secret. Instead, the law permits the Court to enjoin a "threatened" misappropriation to ensure that parties such as Genesys do not have to wait for definitive proof that their trade secrets have been used in the marketplace before seeking injunctive relief.

Second, the individual Defendants' sales positions with Talkdesk are comparable (indeed nearly identical) to the positions they held with Genesys. Third, Talkdesk has not prevented but instead welcomed the disclosure of Genesys trade secrets, and in fact have encouraged it through Manno's

*See Vendavo, Inc.*, 397 F. Supp. 3d at 1141-42.

### 2. Genesys Is Likely To Succeed In Establishing That Manno, Hertel, Strahan, and Talkdesk Breached And Interfered With Contract. [6]

Defendants Hertel, Strahan, and Manno all breached their contractual agreements with Genesys by soliciting Genesys employees to work for Talkdesk and disclosing confidential information. Indeed, all three have admitted this in deposition, and their emails are confirming. Injunctive relief against Talkdesk on these same grounds is warranted given Talkdesk, through its CEO and other executives, has orchestrated further violations of contract between Genesys and its former employees. *See e.g., CDW LLC v. NETech Corp.*, 722 F. Supp. 2d 1052, 1062-63 (S.D. Ind. 2010) (granting preliminary injunction where plaintiff could show reasonable likelihood of success on tortious interference claim based on competitor who "fostered such interference" with former employees' non-competition agreements).

### B. Defendants' Unlawful Misappropriation And Solicitation Have And Will Continue To Irreparably Harm The Competitive Value Of Genesys' Trade Secrets And Genesys' Customer Relationships.

#### 1. Defendants' Misappropriation of Genesys Trade Secrets Will Irreparably Sacrifice Their Competitive Value.

Because a trade secret's value arises from its secrecy, "courts generally presume that the harm from a wrong will be irreparable" and that it "cannot be measured in monetary damages," as the law's

---

[6] Under Indiana law, "one not a party to a noncompetition agreement may be enjoined from assisting a party to such an agreement from breaching the same." *See Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 815 (Ind. Ct. App. 2000) ("When there is evidence that a nonparty to a covenant aided or operated in concert with the covenant or to breach the covenant, the nonparty may be subject to an injunction enforcing the covenant."). Moreover, Genesys has pled a claim against Talkdesk for tortious interference with contract, related to Talkdesk's knowing interference with Genesys' contracts with the individual Defendants. Injunctive relief against Talkdesk in support of Genesys' breach of contract claim is equally appropriate to restrain its further misconduct in concert with the individual Defendants' breaches.

focus on the trade secret's value arising from its secrecy underscores the corollary that "a trade secret once lost is, of course, lost forever." *Flotec, Inc.,* 16 F.Supp.2d at 999; *Vendavo, Inc.*, 397 F. Supp. 3d at 1144 (noting "there is a presumption of irreparable harm to the plaintiff in cases of trade secret misappropriation"); 18 U.S.C. § 1839(3)(B).

Defendants actively misappropriated Genesys trade secrets, having stolen tens of thousands of Genesys documents and having distributed Genesys trade secrets                                    The secrecy of this information in the hands of a competitor provides a competitive advantage over Genesys. Defendants have much to gain from continuing their wrongful conduct absent an injunction. For example, among the documents taken by Defendants are forecasting/pipeline spreadsheets that                               Combined with the              misappropriated by Defendants, Talkdesk can target deals coming up for renewal and pitch those accounts using the NPS data specific to that customer. Genesys is entitled to injunctive relief to forbid Talkdesk from utilizing such trade secret information to poach Genesys customers. *See e.g., JAK Prods., Inc. v. Wiza*, 986 F.2d 1080 (7th Cir. 1993) (preliminary injunction against former employee; "[w]henever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate.").

Trade secrets misappropriated also include the information each learned while employed by Genesys, including knowledge about Genesys' account and sales plans, pricing, sales strategy, territory information, customer documents, product information, and employee performance, employee compensation, level of job satisfaction, and accounts assigned to employees. This Court has previously found the inevitable use of such trade secret knowledge to constitute irreparable harm. *See e.g., Vendavo, Inc.*, 397 F. Supp. 3d at 1144 ("inevitable disclosure of trade secrets supports finding an irreparable harm that cannot be adequately addressed by a legal remedy….")

Indeed, the Defendants have already engaged in this inevitable disclosure, using Genesys trade secrets to help Talkdesk recruit employees and helping Talkdesk compete for the business of Strahan admitted to speaking with Genesys employees about joining Talkdesk, and Hertel admitted to soliciting Morales and Strahan. Manno recruited Strahan and Hertel, and now oversees multiple former Genesys employees. It is no accident that Manno, Strahan, Hertel, plus 3 other former Genesys mid-market sales executives, all joined Genesys **on the same day**!

This unlawful conduct further deprives Genesys of the value of its investment in employees, a pending threat given that Talkdesk has hired at least 14 Genesys employees and recruited several others. S*ee e.g., HWC Engineering, Inc. v. Am. Structurepoint, Inc.*, 64 N.E.3d 863 (Ind. Ct. App. 2016) (affirming preliminary injunction against former employees and new employer where "pending threat" of recruiting activity existed by virtue of Defendants targeting 18 of Plaintiff's employees).

Furthermore, Genesys need not demonstrate "irreparable harm" here because in Indiana irreparable harm and the balance of harms are presumed where the acts sought to be enjoined are "unlawful"— such as trade secret violations. *See e.g.*, *Curley v. Lake County Bd. of Elections & Registration*, 896 N.E.2d 24 (Ind. Ct. App. 2008) ("When the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm…."). Moreover, the Manno, Hertel, and Strahan contracts all stipulate that [Exs.2-5]

      **2.    Genesys Lacks an Adequate Remedy At Law.**

There is a lack of an adequate remedy at law because Genesys' losses, beyond being difficult to calculate, would not be payable by the individual Defendants. Former VP of Sales Manno, for instance, admits he could not pay a seven-figure judgment. [Ex.45,pp.87-88] Nor could any other individual Defendant satisfy a significant judgment. *See Roland Machinery Co. v. Dresser Indust.,* 749 F.2d 380, 386 (7th Cir. 1984) (insolvency of Defendant, and difficulty in calculating damages both support finding an inadequate remedy at law.) Moreover, Genesys losses in this case are not just monetary, its reputation with employees, customers, and prospects has been damaged by the Defendants' use of its

11

trade secret information. Further, Genesys' monetary losses are difficult to calculate because the misappropriated information could be used again each time a Genesys customer comes up for renewal.

### C.     The Balance of Harms Greatly Favors Injunctive Relief in Genesys' Favor.

In *CDW LLC,* 722 F. Supp. 2d at 1064-65, this Court found the balance of harms weighed in favor of a plaintiff in a trade secret action because the harm included the loss of "significant trade secrets and confidential information, reputation damage, and the wrongful loss of numerous customers." Similar harm is at play here. Tens of thousands of confidential documents were taken from Genesys, and among those include valuable information about Genesys'

On the other hand, Talkdesk and its employees suffer little harm from prohibiting them from misappropriating trade secrets or soliciting Genesys' customers and employees. Talkdesk is free to compete with Genesys using its own resources. Manno admitted he would face no harm in agreeing not to use Genesys trade secrets or solicit Genesys employees and customers. [Ex.45,pp.99-100].

Lastly, an injunction would serve - not disserve - the public interest, as the DTSA and IUTSA both aim to prevent harm like that alleged by Genesys in this case. Requiring the Defendants to abide by the law and their contracts will not disserve the public interest. *See CDW LLC*, 722 F.Supp.2d at 1065. Accordingly, Genesys requests that the Court grant this preliminary injunctive relief.

Respectfully submitted,

*s/John R. Maley*
John R. Maley (14300-89)

12