UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TALKDESK, INC., et al <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case No. 1:19-CV-695-TWP-DML <br> ) <br> ) <br> ) **REDACTED PUBLIC VERSION** <br> ) |

**DEFENDANTS' OPPOSITION TO GENESYS'S MOTION
FOR PRELIMINARY INJUNCTION**

I.     **INTRODUCTION**

The call center services industry is a competitive marketplace, with abundant trade publications and product literature available for public consumption, multiple organizations dedicated to helping customers seeking solutions, and multiple companies competing in the space. Despite this, faced with competition from a nimble and savvy "upstart competitor," California-incorporated and headquartered Genesys filed the present lawsuit against California-based Talkdesk asserting broad-stroke claims of "trade secret misappropriation," "raiding" (of 14 alleged employees from a 6000+ person company), and breach of contract based on decades-old employment agreements. Genesys's attempt to hinder legitimate competition should fail. The relief Genesys seeks is only available where the movant demonstrates clear need. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Genesys has not and cannot do that. Its motion should be denied.

II.    **ARGUMENT AND CITATION OF AUTHORITIES**

A.     **The Non-Solicitation Agreements are Void Under California Law or Unenforceable Under Indiana Law**

This Court has yet to resolve choice of law. Indeed, while an analysis under 28 U.S.C. § 1404 does not consider private factors or policy of other states (Dkt. 156, p. 22), a choice of law analysis under the Restatement (Second) of Conflict of Laws (which Indiana follows) ***focuses on such factors***. *Dearborn v. Everett J. Prescott, Inc.*, 486 F. Supp. 2d 802, 812–13 (S.D. Ind. 2007).

This analysis requires application of California law. The company seeking to enforce non-solicitation provisions—Genesys—is incorporated and headquartered in California. The employment agreements were assumed there.[1] The majority of Genesys's customers (what it

---

[1] Genesys does not cite evidence that the agreements were assigned, but an assignment would have been executed by executives in California.

1

seeks to prohibit from solicitation) are located there.  And the Defendant company at issue—Talkdesk—is located there.  The non-solicitation provisions are thus void.

### 1. California law would apply to govern Strahan's, Hertel's, and Manno's agreement with Genesys absent the choice of law provisions.

The first step in the choice of law inquiry examines five factors to assess which state's law would apply absent the choice of law provision.  *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 738 (7th Cir. 2008). These factors are "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2) (1971).

First, the place of contracting is often deemed the most "insignificant in the analysis." *See, e.g.*, *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 738 (7th Cir. 2008) (quoting Restatement (Second) of Conflict of Laws § 188 cmt. e).  This holds true here.  Because the original party to the employment agreements (Interactive) no longer exists, the place of contracting has no relevance to the proper selection of law.  *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 391 (7th Cir. 2003) (discounting state of contracting due to transfer of contract).[2]

Second, while the place of negotiation is normally a significant factor, it presumes that negotiations *actually occurred*.  Here, they did not (Manno Decl. ¶ 1; Strahan Decl. ¶ 1; Hertel Decl. ¶ 1).  This factor should therefore be given no weight at all—there is no "place of negotiation" to consider.[3]

Third, the place of performance is given little weight if "(1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less

---

[2] Genesys assumed the contract in California.  This factor should not favor Indiana law.
[3] Even if considered, the place of negotiation "is of less importance when there is no one single place of negotiation and agreement." *Nautilus*, 537 F.3d at 739 (citing Restatement (Second) of Conflict of Laws § 188 cmt. e).

2

equally among two or more states with different local law rules on the particular issue." Restatement (Second) of Conflict of Laws § 188 cmt. e. The employment agreements do not set a place of performance, and each Defendant's performance covered various territories within the United States (Manno Decl. ¶ 10; Hertel Decl. ¶ 12; Strahan Decl. ¶ 8). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Manno Decl. ¶ 10; Hertel Decl. ¶ 10). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Strahan Decl. ¶ 9). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. However, as shown in Exhibit 236, a deeper look confirms that this factor favors California law for all three Defendants. Accordingly, because each Defendant's sales activities, leadership, sales support, and product agreements were centralized around California, the third factor (place of performance) also supports application of California law.

Fourth, the subject matter of the agreements at issue here is the non-solicitation of customers and employees. This is the "thing or the risk" that is the "principal subject of the contract." Restatement (Second) of Conflict of Laws § 188 cmt. e. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Manno Decl. ¶ 10). Thus, the subject matter (or thing) that the contract is designed to protect are those companies located in California. Indeed, Genesys has identified a California company—▇▇▇▇▇▇▇▇—as one of two companies at the heart of its efforts in this matter (Dkt. 168, p. 4). Likewise, while Genesys's employees are located in California and Indiana, the highest-ranking executives of Genesys (including the CEO and CIO) are located in California (DEX 200; DEX 201). These are the critical employees Genesys would seek to protect from solicitation, again favoring application of California law.

Finally, Section 188 of the Restatement gives import to the incorporation and place of business of the party seeking to enforce the agreement. *See* Restatement (Second) of Conflict of

3

Laws § 188 cmt. e; *Nautilus*, 537 F.3d at 741. Here, Genesys's incorporation and place of business are in California (DEX 234). And this factor "assumes greater importance when combined with other contacts, such as that [the] state is the place … of performance or the place where the other party to the contract is domiciled or does business." Restatement (Second) of Conflict of Laws § 188 cmt. e. As noted above, the performance of the sales positions was centered around California—and Hertel is located there. Accordingly, this factor "assumes greater importance," heavily favoring California law.

In view of the above, California has the most significant contacts relating to Genesys's attempt to enforce the Hertel, Strahan, and Manno employment agreements, confirming California law would apply absent the choice of law provisions.

### 2. California law should apply under Section 187.

The next step is to determine whose law should apply—the state identified in the agreements or the state that would apply absent the provisions. This choice between Indiana and California law yields a clear result: California has materially greater interest under § 187(2) of the Restatement. California law voids anti-competitive provisions.[4] *See LKQ Corp. v. Fengler*, No. 12-CV-2741, 2012 WL 1405774, at *4 (N.D. Ill. Apr. 23, 2012) (citing *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 945, 189 P.3d 285, 290 (2008)). Indiana law, in contrast, allows for non-solicitation clauses if "reasonable." *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 92 (Ind. Ct. App. 2001). Thus, "there is a conflict between Indiana law and the strong public policy of California as reflected in § 16600." *In re Gault S. Bay Litig.*, No. C 07-04659 JW, 2008 WL

---

[4] Both non-solicitation of customer and employee clauses are void under California law. *See, e.g.*, *Barker v. Insight Global, LLC*, 2019 WL 176260, at *3 (N.D. Cal. Jan. 11, 2019) ("California law is properly interpreted post-*Edwards* to invalidate employee nonsolicitation provisions."); *see also AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal.App.5th 923, 239 Cal. Rptr. 3d 577, 590 (2018); *WeRide Corp. v. Huang*, 379 F.Supp.3d 834, 852 (N.D. Cal. 2019); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948, 189 P.3d 285, 292 (2008).

4065843, at *5 (N.D. Cal. Aug. 27, 2008); *see also S. Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F. Supp. 209, 214 n. 2 (N.D. Ind. 1983).  Accordingly, California law should apply.  *See*, *e.g.*, *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132-33 (7th Cir. 1990) (permitting public policy to override agreed choice of law); *LKQ Corp. v. Fengler*, No. 12-CV-2741, 2012 WL 1405774, at *4 (N.D. Ill. Apr. 23, 2012) ("California's public policy … justify overriding the chosen law of the parties.").[5]

## B. Even if this Court Were to Apply Indiana law, the Non-Solicitation Provisions are Overbroad and Should Fail.

Should the Court find that Indiana law would apply to any of the agreements, Genesys's claim for preliminary injunction should still fail.  The provisions are overbroad—and Indiana courts "strike down any such restrictive covenants which are the least bit overly broad…." *Buffkin v. Glacier Grp.*, 997 N.E.2d 1, 11 (Ind. Ct. App. 2013) (internal quotation marks omitted).  The prohibitions on soliciting are not narrowed to employees or customers located in any particular geographic territory.  Indeed, Genesys asserts that the restrictive covenants extend to preclude solicitation of Genesys's customers located in Hawaii—***over 4,300 miles away from Indiana***.  *See*, *e.g.*, *Vukovich v. Coleman*, 789 N.E.2d 520, 525 (Ind. Ct. App. 2003) ("A covenant not to compete that contains no geographic limitation is presumptively void.").  Genesys also seeks to enforce the agreements without regard to whether the competition involves a current customer of Genesys—pointing to ▮▮▮▮▮▮▮ in its brief (Dkt. 168, p. 4).  ▮▮▮▮▮▮▮ was not a current customer of Genesys (Manno Decl. ¶ 21).  Thus, Genesys seemingly asserts that the agreements prohibit the solicitation of any potential Genesys customers—known or unknown—by the Defendants.  This confirms overbreadth since "a former employee could

---

[5] As this Court is aware, Genesys has taken a similar position to Defendants in other cases (Dkt. 98-1).  The Delaware Chancery Court (in Genesys's favor) denied a request for preliminary injunction despite a choice of law provision, and the same outcome should apply here.

easily violate the terms … without knowing he was doing so." *Seach v. Richards, Dieterle & Co.*, 439 N.E.2d 208, 214 (Ind. Ct. App. 1982).  Further, the provisions are unenforceable because they are indefinite as to time.  Each of Hertel's, Manno's, and Strahan's non-solicitation provisions include indeterminable "tolling" clauses, rendering them overly broad.  4 *ALW Mktg. Corp. v. Hill*, 205 Ga. App. 194, 197, 422 S.E.2d 9, 13 (1992) (holding that a tolling clause "potentially extends the time of such a covenant perpetually" and is therefore "overbroad and in restraint of trade.").[6]  Finally, Genesys's reading of what constitutes "solicitation" under the agreements is unreasonable.  A "recommendation" is not a "solicitation."  Yet, that is exactly what Genesys points to as a violation of the agreement.

### C. Even if the Agreements Were Enforceable and Breached, There Would Still be No Risk of Irreparable Harm

Genesys points to no current threat of breach of the non-solicitation provisions.  Genesys cites to documents from September and October 2018—when Defendants were not even aware of the agreements (Manno Decl. ¶¶ 1–4; Strahan Decl. ¶¶ 2–3). Further, any breach of non-solicitation provisions would not constitute irreparable harm but could be satisfied by damages.  Genesys's pricing is straight-forward (*see* DEX 202).  Should Genesys show a loss caused by a breach of the non-solicitation provisions, it can quantify the lost revenue.  Likewise, Genesys can determine the costs associated with interviewing, hiring, and training additional personnel.  As such, even if there were a likelihood of success on the merits, an injunction would still not be warranted.  *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1117 (Ind. Ct. App. 2003).

---

[6] At a minimum, a tolling clause cannot extend the term of a preliminary injunction. *Kuntz v. EVI, LLC*, 999 N.E.2d 425, 432 (Ind. Ct. App. 2013); *Hannum Wagle & Cline Eng'g, Inc. v. Am. Consulting, Inc.*, 64 N.E.3d 863, 883–84 (Ind. Ct. App. 2016).

### D. Genesys's "Trade Secret" Misappropriation Claims Fail

Genesys would have this Court believe that anything that has been marked "confidential" or "proprietary" at Genesys is a "trade secret." Not so. Genesys's documents bearing such markings and providing product details, architecture, and pricing information are publicly available from any number of sources on the Internet, ranging from government pages to industry blogs (DEX 225; DEX 218; DEX 214). Accordingly, such information cannot constitute a "trade secret." *See, e.g.*, *Metals & Additives Corp. v. Hornedo*, No. 49A02–1011–PL–1213, 2011 WL 3211119, at *5 (Ind. Ct. App. July 28, 2011).

Moreover, Genesys's claims relating to Genesys ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ are red herrings (*see* Dkt. 168, p 7).[7] There is no evidence that these documents—alleged to have been part of a bulk download of Hertel's e-mails (Dkt. 168, p. 2)—were ever used or provided to anyone at Talkdesk.[8] While Genesys's expert opines that "there is evidence that the Hertel USB device was connected to Mac computer(s) as recently as October 5, 2018" (Schiff Report, p. 5), he concludes that "there is no conclusive evidence provided that demonstrates the devices were connected to the Talkdesk computers…." *Id.* And the declaration of Trent Leavitt of Eide Bailly, and e-mails of Richard Hickman, confirm that the parties jointly worked together to ensure that any information downloaded by Mr. Hertel or Ms. Morales to USB drives was located and isolated.[9] Similarly, Mr. Hertel's and Ms. Morales's Talkdesk-issued laptops were collected for further review and have not been returned (Hertel

---

[7] Genesys points to this information, which it alleges was contained within Hertel's .pst e-mail. *Id.* It does not assert that this information was contained in Morales's USB. *See id.*
[8] Defendants do not concede anything downloaded by Morales or Hertel constitutes a trade secret. Past and potential future deals and other information known in the industry are not considered protectable. *See, e.g.*, *Standard Register*, 30 F. Supp. 2d at 1094.
[9] (DEX 223; DEX 224; Leavitt Decl. ¶¶ 10–13). As explained by Ms. Morales and Mr. Hertel, the circumstances around this data being downloaded were for reasons not associated with competition with Genesys (Morales Decl. ¶¶ 10–16; Hertel Decl. ¶ 16).

Decl. ¶¶ 18–19; Morales Decl. ¶ 27). Accordingly, because steps were taken many months ago by the parties to recover and isolate any data alleged to have been downloaded by Mr. Hertel and Ms. Morales, Genesys's claim that there is a threat of misappropriation as to those ***non-accessible*** documents and devices is baseless.

Similarly, Genesys's assertions that various e-mails from Hertel and Strahan provided trade secret information to Talkdesk personnel is without merit. "Information that could be obtained from other persons, directly from customers, from competitors, and from public records … does not constitute a trade secret." *Metals & Additives*, No. 49A02–1011–PL–1213, 2011 WL 3211119, at *5 (Ind. Ct. App. July 28, 2011) (citations omitted). Here, Genesys itself publicizes its price lists (DEX 202), product architecture (DEX 203), and product outages (DEX 204). And trade sources readily identify and categorize customers, complaints, and architecture concerning specific companies and products (*see* DEX 205–210). As such, each specific claim fails as shown below.

First, Genesys points to information provided by Hertel relating to bid information provided by Genesys to ▮▮▮▮▮. Dkt. 166, p. 7. Yet, "Indiana courts have established that in the sales context, once information is known to the customers, that information is readily ascertainable and is not a trade secret." *Economation, Inc. v. Automated Conveyor Sys.*, Inc., 694 F. Supp. 553, 556 (S.D. Ind. 1988). Accordingly, Genesys's assertion that price quotes and other information provided to ▮ could constitute trade secrets is incorrect.[10] Indeed, the documents themselves establish that ▮ freely shared Genesys's bid information with Talkdesk in its effort to obtain the best and lowest bid. (Dkt. 168-3, pp. 137–38,

---

[10] To the extent Genesys alleges that ▮ was under an NDA, the facts say otherwise. The NDA produced by Genesys was executed in 2016 (Dkt. 168-02, pp. 134–35, PEX 44), and ▮ freely provided information relating to Genesys's bid during the pitch process (Dkt. 168-3, pp. 137–38, PEX 21).

8

PEX 21; DEX 226; DEX 227). As such, "the evidence reveals that customers are quite willing to 'shop around,' and that they will reveal their needs and competing quotes to competitive salesmen. Thus, in general, this information appears to be readily ascertainable without much investment of time, expense or effort." *Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1094 (N.D. Ind. 1998).[11]

Second, Genesys waves hands at a ████████████████████ provided by Hertel (Dkt. 168, p. 3). But this too is no trade secret. The NPS is a well-known process, involving easily attainable and replicable feedback from customers (*see* DEX 211; DEX 212). Thus, such knowledge is not "secret," since "'knowledge of customers' computer systems and current or future needs was readily ascertainable [and] belonged to the customers in question." *Think Tank Software Dev. Corp. v. Chester, Inc.*, 30 N.E.3d 738, 747 (Ind. Ct. App. 2015); *see also Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1455 (2002) ("[A]ny information (such as price concessions, trade discounts and rebate incentives) disclosed to … customers cannot be considered trade secret or confidential.").[12]

Third, Strahan's e-mails regarding a potential strategy relating to ████[13] and providing an outdated, ████████████████ likewise do not involve trade secret information. Dkt. 168, pp. 6–7. As to the SOC II report (a document showing compliance with cloud security),

---

[11] Genesys cites *Vendavo, Inc. v. Long*, 397 F.Supp. 3d 1115, 1132 (N.D. Ill. 2019) as saying that customer information is protectable. That case is inapposite. It dealt with data that was difficult to compile. The information at issue in this case, as shown by the evidence of record, is freely accessible from customers or trade resources.

[12] There is no evidence that the NPS report was ever reviewed or distributed to anyone else at Talkdesk. Indeed, the ████ pitch relied on public Google customer reviews (Dkt. 168-3, pp. 137–38, PEX 21).

[13] The fact that Genesys deems any knowledge of the Defendants trade secrets is incorrect. "That a former employee "possesses certain knowledge acquired within the course of [their] employment does not mandate that, upon [their] departure, [they] must wipe clean the slate of [their] memory." *Steenhoven v. Coll. Life Ins. Co. of Am.*, 460 N.E.2d 973, 975 n. 7 (Ind. Ct. App. 1984); *see also Donahue v. Permacel Tape Corp.*, 234 Ind. 398, 411, 127 N.E.2d 235, 240–41 (1955).

9

Interactive provided this document publicly on Interactive's website (Strahan Decl. ¶ 22). And generally, SOC II reports are touted by companies—including Genesys (*see* DEX 213)—to illustrate their compliance (Strahan Decl. ¶ 22). Further, the public nature of the SOC II report is shown in other publicly available documents. An Interactive "Architectural Spotlight" provides almost verbatim information from the SOC II report (DEX 214, pp. 3–10; Dkt. 168-3, pp. 85–86, PEX 16). And the hybrid models of PureCloud are presented and explained in these same public documents (DEX 233). Thus, because the SOC II report information was readily attainable from public sources, it was neither confidential nor a trade secret.

Strahan's e-mails of October 19, 2018 and September 28, 2018 likewise relay only known information. Public reviews show sentiments relating to Genesys's architecture and support: (i) the PureCloud services is "an on-premise solution converted to a cloud solution with a wrong approach" (DEX 215); (ii) "[a]ll we hear is silence from support…" (DEX 205); and (iii) "bugfixes, UI updates, and other updates that are done on PureCloud continuously … have caused issues that have blindsided us" (DEX 216). And publicly available technical information discloses that Genesys's EDGE is a SIP gateway (DEX 217), that Genesys's AWS Edge was a "monolithic entity" without microservices (DEX 218, p. 34), that Genesys encounters frequent outages of its Purecloud system (DEX 204), and that the AWS Edge moved hardware to "begin benefiting from Edge capabilities in the cloud" (DEX 218, p. 34).

There is also no evidence that any information provided by Strahan or anyone else was ever used. While Genesys may point to e-mails referencing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. 168, p. 6), the information is simply not there (DEX 220; DEX 221; Close Decl. ¶ 3). Likewise, the offer to ▮▮▮ did not rely on or require confidential information (168-3, pp. 134–35, PEX 20). Finally, while Genesys makes other scattered assertions of misappropriation, each falls into the same buckets as the above. Because the information was or can be gleaned from

public sources, including customers of Genesys, it cannot constitute trade secret information. *Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1094 (N.D. Ind. 1998).

### E. Even if a Cognizable Trade Secret Could be Identified, Preliminary Relief Is Still Not Warranted Because there is no Potential for Irreparable Harm

Genesys does not point to a threat of imminent disclosure or irreparable harm, nor can it. Dkt. 168, pp. 10–11. The documents downloaded from Genesys computers have been isolated and held pending further forensic review (Leavitt Decl. ¶¶ 10–13). All defendants have further testified that they do not have any additional Genesys-related information.[14] Moreover, possession of information is insufficient to support a threat of irreparable harm. As found by other courts, even where there is a motivation to succeed, "the suggestion [the Defendant] would have to resort to the misappropriation of trade secret is unsupported by the record."[15] *AL-KO Axis, Inc. v. Revelino,* No. 3:13-CV-1002 JD, 2013 WL 12309288, at *17 (N.D. Ind. Oct. 25, 2013); *see also Dearborn*, 486 F. Supp. 2d at 821. There is further no threat of inevitable disclosure—a doctrine not adopted by Indiana courts.[16] Accordingly, Genesys fails to show a risk of trade secret misappropriation.

Genesys also has an adequate remedy. Genesys asserts that misappropriation is entitled to a presumption of irreparable harm; however, Indiana cases have required a showing of irreparable harm for trade secret misappropriation. *Lawler Mfg. Co. v. Bradley Corp.*, No. IP98-1660-CM/S, 2000 WL 1456336, at *12 (S.D. Ind. Apr. 26, 2000). And Genesys has not shown such harm. Genesys fails to identify the "numerous customers" it fears losing or how it would suffer reputational harm. And losing a customer does not cause irreparable harm, as such losses

---

[14] (Hertel Decl. ¶ 19; Manno Decl. ¶ 17; Morales Decl. ¶ 27; Strahan Decl. ¶ 17). Genesys does not explain how information concerning ▓▓▓ would present a risk of irreparable harm as to other potential customers.
[15] Morales is no longer employed by Talkdesk (Morales Decl. ¶ 28). She poses no threat.
[16] *See AL-KO Axis, Inc.,* 2013 WL 12309288 at *16. There is also no evidence of bad faith. *See id*. The facts show the opposite—negating intent. *See Dearborn*, 486 F. Supp. 2d at 821.

are readily quantifiable. *Pathfinder*, 795 N.E.2d at 1117. Genesys's argument as to harm from disclosure is belied by the evidence of record. ███ remained a customer of Genesys despite Genesys's claims of wrongdoing (*see* Hertel Decl. ¶ 21). Genesys has thus failed to demonstrate a risk of irreparable harm.

### F. The Balance of Harms Greatly Favors Denying Injunctive Relief

Finally, Defendants would suffer harm if an injunction is granted. There is no threat of misappropriation, and the parties have already taken significant efforts to collect and isolate alleged trade secret information. Thus, entry of an injunction under such circumstances would chill competition and ignore legitimate, good faith steps taken by Defendants in this case. In contrast, Genesys asserts an injunction is proper ***because*** Defendants will not solicit employees and customers or misappropriate trade secrets. That underscores why an injunction should not be issued rather than supporting an injunction.

The public interests also favor denying an injunction. The customer benefits from open competition between companies. *Nat'l Soc. of Prof'l Engineers v. United States*, 435 U.S. 679, 695, 98 S. Ct. 1355, 1367, 55 L. Ed. 2d 637 (1978). Accordingly, absent clear threats of misappropriation and certain irreparable harm (neither which have been shown here), the public and private interests cannot favor entry of the exceptional relief of a preliminary injunction. Plaintiff's motion should be denied.

Respectfully submitted,

/s/ David S. Moreland

James P. Strenski, #18186-53
PAGANELLI LAW GROUP
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Telephone: 317-550-1855
Email: jstrenski@paganelligroup.com

        David S. Moreland (*pro hac vice*)
        MEUNIER CARLIN & CURFMAN LLC
        999 Peachtree St. NE, Suite 1300
        Atlanta, GA 30309
        Telephone: 404-645-7700
        Email: dmoreland@mcciplaw.com

        *Attorneys for Defendants*