UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TALKDESK, INC., et al, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) Case No.: 1:19-CV-695-TWP-DML |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION**

Defendants' opposition brief is notable for what it does not address, and for legal and factual flaws in what is asserted. This short Reply briefly highlights several of these points.

**I.    Items Not Addressed**

Extensive sworn deposition testimony from the Defendants, along with multiple exhibits, demonstrate not just a reasonable probability of success – but an extraordinarily high probability of success – on trade secret misappropriation by all Defendants, breach of restrictive covenants by Manno, Hertel, and Strahan, and interference with contract by Talkdesk. Defendants acknowledge *none* of their own deposition admissions, and ignore most of the incriminating exhibits.

Instead, despite their massive conspiracy to raid employees, misappropriate trade secrets, and violate their legal and contractual obligations – which was planned and even executed while they were on the Genesys payroll – Defendants portray themselves as engaged in simple "legitimate competition." [Dkt. 183 at 2]. Federal and State law applied to the mountain of evidence against them already – even with only limited discovery – confirm otherwise.

Notably, rather than appear at the hearing in person, Defendants (according to defense counsel over the holiday weekend and consistent with their submission of declarations) will not even attend this important hearing. That is their choice, but it is telling; it also supports an adverse inference. *Cincinnati Ins. Co. v. Greene*, No. 1:10-CV-0370-JMS-DML, 2012 WL 3202962, at *3 (S.D.

Ind. Aug. 3, 2012) ("Court is allowed to draw an adverse inference against a party who refuses to testify in response to probative evidence offered against her"); *Am. Senior Communities, L.L.C. v. Burkhart,* No. 1:17-CV-03273-TWP-DML, 2019 WL 6170064, at *7 (S.D. Ind. Nov. 19, 2019) (an adverse inference may be drawn from refusal to testify in a civil case).

Separately, Defendants attempt to add two new witnesses via their November 27 new witness and exhibit list (filed on Wednesday immediately preceding the Thanksgiving holiday) along with multiple new exhibits. [Dkt. 186]. The Court previously ordered the parties to submit witness and exhibit lists by November 1 [Dkt. 139], which the parties both complied with. But in this new eleventh hour filing Defendants add witnesses Wendy Close and Trent Leavitt and then submit declarations from them, depriving Genesys of any opportunity to depose or otherwise seek discovery on their testimony. No good cause has been shown for this noncompliance with the Court's scheduling order.

## II. Flawed Arguments

### A. Indiana Law Applies; The Restrictive Covenants At Issue Are Enforceable

Defendants devote most of their opposition brief trying to override what Strahan (an Indiana resident), Manno (a Missouri resident), and Hertel (of California) contractually agreed to: Indiana law applies. Moreover, the restrictive covenants at issue – 18 months to not recruit employees, and 18 months not to solicit customers – are enforceable.

The Court addressed these issues head on after extensive briefing, denying Defendants' motion to dismiss and concluding:

> Genesys further asserts that restrictive covenants may be enforceable without geographic limitations where they are limited to a specific class of persons like customers or employees. *See e.g., Field v. Alexander & Alexander of Indiana, Inc.*, 503 N.E.2d 627, 635 (Ind. Ct. App. 1987). Genesys argues that, in this case, the restrictive covenants are limited in scope by prohibiting solicitation of Genesys' customers and employees, so a lack of geographic limitation does not make the restrictive covenants unenforceable under Indiana law.

> At this stage of the litigation, the Court concludes that the breach of contract claims are sufficiently supported by factual allegations and case law to allow the claims to proceed. The employment contracts of Strahan, Hertel, and Manno, which form the basis of the breach of contract claims, each contain an Indiana choice of law provision, and the claims allege the existence of a contract, a breach thereof, and damages. Based on the factual allegations being taken as true, the non-solicitation clauses are adequately limited in duration and scope to Genesys' employees and customers to relate to Genesys' protectable interest in its goodwill and customer base.

[Dkt. 156 at 26-27]

The Court is correct. The Indiana contacts for all three of these Defendants are extensive. Manno was the nationwide Vice President of Sales, and Strahan and Hertel as two of the three Genesys Area Directors had massive, multi-state territories for Genesys. Each depended significantly on the Indiana campus for legal, marketing, information technology, software, accounting, and sales support. There is no basis to override the Indiana choice of law (just as the Court ruled the Indiana forum-selection clauses are enforceable).[1]

Indeed, under Indiana law, "a choice of law clause in a contract controls, relieving the court of the obligation to explore the quality or quantity of contacts between the parties." *Biomet 3i, LLC v.*

---

[1] The Manno, Hertel, and Strahan contracts with these restrictive covenants by their express language inured to the benefit of successors. Here, Interactive Intelligence was merged into Genesys in July 2017, as confirmed from the Indiana Secretary of State's Certificate of Merger dated July 1, 2017, and available online at https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings and accessing Filing Number 0007868732 "Articles of Merger" [Ex. A to this Reply]. As expressly set forth in the Agreement and Plan of Merger, Section 3, the "Surviving Corporation shall succeed, without further transfer, to all rights, privileges, powers, franchise, and property of the constituent corporations to the Merger . . . . with the effect set forth in the IBCL and CGCL." The IBCL is the Indiana Business Corporations Law, which at Ind. Code 23-1-40-6(a) expressly provides, "the title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment." *See Peters v. Davidson, Inc.,* 359 N.E.2d 556, 562 (Ind. Ct. App. 1977) (employment agreement specifically provided rights and obligations under agreement were to be assignable and transferable to employer's successors, surviving corporation in merger with employer succeeded to all rights of merging corporation and one of the rights inuring to employer was power to enforce covenant not to compete against employee); *USI Ins. Servs. LLC v. Ryan,* No. 1:14-CV-151 JVB, 2015 WL 13022033, at *4 (N.D. Ind. May 21, 2015) ("in determining whether USI is likely to succeed on the merits regarding Ryan's non-solicitation covenant, a threshold legal question is whether Ryan's employment agreement was assignable. The Court agrees with USI that there is no need to assign a contract when the stock of a business is sold, *Winkler v. V.G. Reed & Sons*, 638 N.E.2d 1228, 1233 (Ind. 1994) ("Where a corporation's stock is sold, all liabilities of that corporation remain with that corporation."), or when a business is merged into another business, Ind. Code § 23-1-40-6(a)(2).

*Land*, 2017 WL 1483461 at *7 (citing *Fultz v. Ahmed*, 2010 WL 2425905, at *3 (N.D. Ind. June 9, 2010). Similarly, in *Interactive Intelligence, Inc. v. KeyCorp, KeyBank Nat'l Ass'n*, 2006 WL 8446357 (S.D. Ind. May 3, 2006), the court enforced a similar choice-of-law provision for New York in an Interactive Intelligence contract. *Id.* at *3. Because Manno, Strahan, and Hertel clearly and unambiguously agreed to apply Indiana law, the Court must do so in this case.

Further, under Indiana's choice-of-law principles Indiana law should apply. Manno, Strahan, and Hertel cannot invalidate the Indiana choice-of-law provision without clearly establishing: (1) that another state has a greater material interest in this litigation than Indiana; **and** (2) that application of Indiana law to this dispute would violate a fundamental public policy of that other state. Defendants must satisfy **both** elements, and they have satisfied neither. First, Indiana has a significant interest in this litigation, which stems from the Defendants' extensive Indiana contacts noted above. Second, the Defendants want California law to apply only because they think it is more likely to permit their breach of restrictive covenants to Genesys. However, Indiana courts have made clear that this exception does not apply "*merely because Indiana law would change the outcome of the case.*" *Zimmer, Inc. v. Sharpe*, 651 F.Supp.2d 840, 850-51 (N.D. Ind. 2009) (citing *Schaffert by Schaffert v. Jackson Nat. Life Ins. Co.*, 687 N.E.2d 230, 234 (Ind. Ct. App. 1997) (emphasis added)). The court in *Zimmer* further noted that at that time, "Indiana hasn't applied the public policy exception to invalidate an Indiana choice-of-law provision based on another state's public policy." *Zimmer*, 651 F.Supp.2d at 850.

The Court also correctly ruled that the non-recruitment and non-solicitation covenants at issue – which now have only four months remaining – are enforceable under Indiana law. *See e.g., Hannum Wagle & Cline Eng'g, Inc. v. American Consulting, Inc.*, 64 N.E.3d 863, 882 (Ind. Ct. App. 2016) (2-year prohibition on soliciting employees); *Zimmer US, Inc. v. Keefer*, 2012 WL 5268550, *8 (N.D. Ind. 2012) ("Indiana courts have upheld time restrictions longer than the one-year restriction contained in the Agreement.")  Indeed, the positions these three held gave them complete access to *all* sales

4

information, including forecasts for customers. These were not mere sales representatives, but instead the top Sales officer and two of the three next highest Sales executives for Genesys.

### B. Rampant Trade Secret Misappropriation

Defendants downplay and even ignore the overwhelming evidence – both from deposition testimony and incriminating exhibits – showing massive misappropriation of trade secrets. The scheme started with the Vice President of Sales, Manno, breaching his fiduciary duties, contract duties, and trade secret obligations, by choosing two of the three Area Directors (Strahan and Hertel) to recruit, and for the three of them to then conspire with Talkdesk to identify and target the best Genesys sales executives to poach. They knew trade secret information about those sales personnel, including performance, satisfaction, compensation, and accounts. They acted as Talkdesk's secret recruiting agency *while still employed by Genesys*, and then continued thereafter.

The misappropriation continued with the massive pre-departure download of Genesys secret data by Morales and Hertel. That data was then taken by Morales and Hertel with them as they joined Talkdesk, and initial forensic analysis shows that the Morales flash drive was connected to one or more computers on at least eight occasions during her employment at Talkdesk, and Hertel's was connected to one or more computers on at least three dates after he formally joined Talkdesk. Forensic analysis also shows that both flash drives were accessed and modified since September 2018. There is also evidence that files from the Morales flash drive have been found on her Talkdesk computer.

Beyond the flash drives, even with only limited discovery undertaken to date, the email history of misappropriation is extensive. Confidential, valuable trade secret information was shared about employees, customers, and pricing with Talkdesk, including even with its CEO. Genesys has more than a reasonable probability of success on the merits of its trade secret claims.

5

C.   **Lack of Adequate Remedy and Balance of Harms**

Finally, Defendants give only passing mention to harm. The losses in this case are not just monetary; they include valuable personnel who were raided, massive numbers of trade secrets misappropriated, and reputational harm. Calculating such losses is not only difficult, there is no showing that any of the Defendants could satisfy a seven or eight figure award that is likely to be sought. Indeed, Defendant Morales was recently terminated from Talkdesk, and even the highest ranking of the individual Defendants (Manno) admits he could not pay a seven-figure judgment.

Moreover, there can be *no harm* to Defendants from complying with federal and state trade secret laws, and for Manno, Hertel, and Strahan, complying through March of 2020 – just four months – with their non-recruitment and non-solicitation covenants. Indeed, in his recent deposition Manno admitted there would be no such harm.

Preliminary injunctive relief is warranted accordingly.

Respectfully submitted,

GENESYS TELECOMMUNICATIONS LABORATORIES, INC.

By its Attorneys,

*s/John R. Maley*
John R. Maley (14300-89)
Thomas C. Payne (34727-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:   (317) 236-1313
Facsimile:    (317) 231-7433
Email:          jmaley@btlaw.com
                    tpayne@btlaw.com