# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GENESYS TELECOMMUNICATIONS LABORATORIES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:19-cv-00695-TWP-DML |
| DANIELLE MORALES, MICHAEL STRAHAN, MARK HERTEL, TALKDESK, INC., and RALPH MANNO, | ) ) ) ) ) | |
| Defendants. | ) | |

## ENTRY ON PLAINTIFF'S AMENDED MOTION
## FOR PRELIMINARY INJUNCTION

This matter is before the Court on an Amended Motion for Preliminary Injunction filed pursuant to Federal Rule of Civil Procedure 65 by Plaintiff Genesys Telecommunications Laboratories, Inc. ("Genesys") ([Filing No. 164](#)).  After individual Defendants Danielle Morales ("Morales"), Michael Strahan ("Strahan"), Mark Hertel ("Hertel"), and Ralph Manno ("Manno") left their employment with Genesys to join competitor Defendant Talkdesk Inc. ("Talkdesk"), Genesys initiated this lawsuit against the Defendants for misappropriation of trade secrets, breach of contract, and tortious interference with contract among other claims.  Genesys seeks injunctive relief and damages against the Defendants.  Genesys seeks a preliminary injunction to prohibit the Defendants from misappropriating its trade secrets, to prohibit the interference of contracts with employees, to prohibit the solicitation of employees, to prohibit the solicitation of customers, and to order the inventory and return of all Genesys property.  For the following reasons, the Court **denies** the Amended Motion for Preliminary Injunction.

# I. BACKGROUND

Plaintiff Genesys is a California corporation with a significant presence in Indiana. It is the successor to a former Indiana company, Interactive Intelligence. Genesys conducts substantial business in the state of Indiana and has corporate offices in Indianapolis; however, it also conducts substantial business in California, and its corporate headquarters is in California (Exhibit 234). Genesys has been a longstanding and market-leading provider of cloud and on-premises customer experience and contact center solutions. Defendant Talkdesk is a Delaware corporation with its headquarters in California. Talkdesk is an upstart company in the cloud-based call center software business. Talkdesk is a direct competitor of Genesys, and it does business across the United States, including in Indiana, and employs personnel in Indiana.

The call center software industry is highly competitive. Avaya, Genesys, Talkdesk, Five9, LiveAgent, NICE-inContact, Serenova, 8x8, RingCentral, and Zendesk are some of the competitors in the Call Center as a Service market (Filing No. 183-6 at 4; Filing No. 187-1).

Defendant Manno was initially hired by Interactive Intelligence, now part of Genesys, as a Director of Channel Sales in August 2004 (Exhibit 102). Manno was most recently a Vice President of Sales at Genesys. In that executive position, Manno oversaw all sales activities in Genesys' mid-market segment and managed a team of Area Directors and those Directors' Account Executives. At the end of September 2018, Manno ended his executive employment with Genesys. He is now employed as a Vice President of Sales with Talkdesk. He began his employment with Talkdesk on October 1, 2018 (Filing No. 188-2 at 5–7, 34).

Defendant Hertel was initially hired by Interactive Intelligence, now part of Genesys, as West Area Director in December 2013 (Exhibit 103). Hertel was most recently an Area Director of Sales at Genesys. In that position, Hertel oversaw all sales activities in Genesys' West Region

and managed a team of Account Executives. On September 28, 2018, Hertel's employment with Genesys ended. He is now employed as a Vice President of Sales with Talkdesk. He began his employment with Talkdesk on October 1, 2018 ([Filing No. 188-1 at 8](#), 10).

Defendant Strahan was initially hired by Interactive Intelligence, now part of Genesys, as a Test Engineer in September 2000 (Exhibit 101). Strahan was most recently an Area Director of Sales at Genesys. In that position, Strahan oversaw all sales activities in Genesys' Central Region and managed a team of Account Executives. Strahan's employment with Genesys ended on September 30, 2018. He is now employed as a Vice President of Sales with Talkdesk. He began his employment with Talkdesk on October 1, 2018 ([Filing No. 188-5 at 9](#), 12, 18–19, 38).

Defendant Morales was employed by Genesys as an Account Executive beginning in April 2017. In that position, Morales was responsible for making sales to Genesys' customers and potential customers and managing customer accounts and relationships. Morales resigned her employment with Genesys effective September 28, 2018, and joined Talkdesk as an Enterprise Account Executive on October 1, 2018. Morales is no longer employed by Talkdesk ([Filing No. 188-3 at 7](#), 9; [Filing No. 188-2 at 56](#); [Filing No. 183-7 at 4](#), 10).

In September 2018, before leaving Genesys to join Talkdesk, Morales downloaded Genesys documents and files onto a flash drive. The flash drive was then connected to one or more computers on at least eight occasions up through February 2019. Files that were found on the flash drive were also found on Morales' Talkdesk computer. Morales moved the Genesys files to her private Google drive. She also forwarded to her personal email account email messages that contained information about a Genesys customer and the challenges it was facing with a Genesys product. Morales took these documents, files, and information to retain what she thought would be helpful to her Genesys colleagues for closing any final deals that were in her pipeline after she

left employment with Genesys (Filing No. 188-3 at 19; Filing No. 183-7 at 8–10; Exhibits 125, 126, 161, 164).

Manno, Hertel, and Strahan were highly-compensated, trusted executives of Genesys and were entrusted by Genesys with substantial trade secrets to perform their duties. Manno, Hertel, Strahan, and Morales each entered into employment contracts that prohibited them from soliciting Genesys' employees for a period of time after leaving employment with Genesys and soliciting Genesys' customers for a period of time after leaving employment with Genesys (Exhibits 101, 102, 103, 105).

In or around August 2018, Talkdesk CEO Tiago Paiva ("Paiva") personally recruited Strahan, Hertel, and Manno during a conference call. Paiva encouraged these Genesys executives to come to Talkdesk and build up Talkdesk's sales organization contrary to their contractual obligations to Genesys. Hertel and Strahan had between six and ten conversations around this time, and the two influenced each other to leave Genesys for Talkdesk. Manno and Hertel had between ten and fifteen discussions, during which Manno influenced Hertel to leave Genesys and build Talkdesk's sales organization. Manno also informed Hertel that he was recruiting others, including Strahan (Filing No. 188-2 at 75–80; Filing No. 188-1 at 24, 30–34).

While still employed by Genesys but having committed to joining Talkdesk, Manno, Hertel, and Strahan recruited other Genesys personnel, including Morales, on behalf of and for the benefit of Talkdesk. Talkdesk's employment offer process involving Genesys' employees required approval from Manno at the time that Manno was still employed by Genesys. Manno, Hertel, and Strahan continued their efforts after joining Talkdesk, seeking to recruit Genesys' best employees. They successfully recruited approximately fourteen Genesys' employees to join Talkdesk, knowing those employees' compensation and level of job satisfaction among other

things ([Filing No. 188-1 at 11](#), 17–18; [Filing No. 188-5 at 53](#)–55; Exhibits 114, 115, 117, 120, 129).

Between September 17 and September 30, 2018, while still employed by Genesys, Strahan continued to email customers on behalf of Genesys from his Genesys email account. However, unbeknownst to Genesys, during this same period of time, Strahan also completed training for Talkdesk, attended a sales conference on behalf of and paid for by Talkdesk, listened in on at least four live Talkdesk sales calls, listened to two other recorded sales calls, and took a trip to New Jersey on behalf of Talkdesk. Strahan was paid by Genesys up through his last day of work with Genesys, which was September 30, 2018 ([Filing No. 188-5 at 9](#)–11, 14–20). As he was moving over to Talkdesk, Strahan advised Paiva about the areas of weakness of Genesys' products in an effort to take a Bank of Hawaii ("BOH") deal from Genesys. Strahan also advised about products, pricing and offerings, and dissatisfied Genesys customers (Exhibits 127, 128, 131, 133).

Approximately three weeks before departing Genesys to join Talkdesk, Hertel briefed Talkdesk CEO Paiva on the deal between Genesys and BOH. Hertel had knowledge of the details of the BOH deal because he had overseen it while employed by Genesys. Hertel disclosed Genesys' proposals, prices, and product details to Paiva in an effort to take the BOH business from Genesys (Exhibits 112, 121, 123, 124). Although various offers were extended, BOH decided not to accept Talkdesk's offer ([Filing No. 183-5 at 6](#)). Hertel copied onto a flash drive thousands of Genesys' documents, including sales reports and customer price quotes, as well as a backup of his Outlook email account with thousands of emails and their attachments ([Filing No. 188-1 at 43](#), 51, 52, 55; Exhibit 161).

After joining Talkdesk, Hertel shared Genesys' 2018 Net Promoter Score ("NPS") data— information containing an executive summary of Genesys' customer satisfaction and experiences

5

with Genesys—with CEO Paiva via a Genesys email that Hertel had forwarded to himself prior to departing Genesys. He also shared the raw NPS data, which included customer names, products purchased, contact information, likelihood of recommending Genesys, likelihood of adding onto its Genesys product, and likelihood it will renew its contract with Genesys. The data also included customer feedback on how satisfied the customers were with critical deliverables in the call center software space such as availability, capabilities, functionality, usability, delivery time, time to resolve cases, and quality of training (Exhibit 137). Hertel also shared information about Genesys' product offerings with Talkdesk's vice president (Exhibit 130).

Throughout 2018, Hertel and another Genesys employee had been working on a potential customer, PowerSchool, to secure its business for Genesys. However, after Hertel joined Talkdesk, he used Genesys' information about products, services, and pricing as well as Genesys' customer dissatisfaction to win the PowerSchool business for Talkdesk (Exhibits 116 and 135). In March 2019, Manno advised Talkdesk personnel about securing business from Summit Racing, a prospective Genesys customer, using information that Manno acquired while working at Genesys (Exhibit 145). Manno informed his sales team at Talkdesk that he should be included in every competitive deal against Genesys, and he implemented a sales incentive program to take business from Genesys (Exhibits 147 and 160).

On February 15, 2019, Genesys filed a Complaint, initiating this lawsuit. On July 2, 2019, Genesys filed the operative Second Amended Complaint against the Defendants. In the Second Amended Complaint, Genesys requests injunctive relief and damages for the Defendants' misappropriation of trade secrets, breach of contract, tortious interference with contract, breach of fiduciary duty, computer trespass, and raiding ([Filing No. 89](Filing No. 89)). The Defendants filed a motion to dismiss, arguing a lack of personal jurisdiction and a failure to state a claim for relief, and they

alternatively asked the Court to transfer the case to the Northern District of California. The Court denied the Defendants' request to transfer the case to California and denied the motion to dismiss with the exception of dismissing the computer trespass claim against Morales ([Filing No. 156](#)). After the Court issued its Order on the motion to dismiss, Genesys filed its Amended Motion for Preliminary Injunction ([Filing No. 164](#)).

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation and quotation marks omitted). Granting a preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (citation and quotation marks omitted).

> To obtain a preliminary injunction, a plaintiff must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; that without relief it will suffer irreparable harm. If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction. However, if the plaintiff passes that threshold, the court must weigh the harm that the plaintiff will suffer absent an injunction against the harm to the defendant from an injunction, and consider whether an injunction is in the public interest.

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (citations and quotation marks omitted). Courts in the Seventh Circuit employ a sliding scale approach where the greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

### III. DISCUSSION

The Court first addresses the preliminary issue of which state's law applies to this action. The Defendants argue that the Court must undertake a choice-of-law analysis, and the analysis results in the application of California law. Relying on *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 738 (7th Cir. 2008) and the Restatement (Second) of Conflict of Laws § 188(2), the Defendants assert, "The first step in the choice of law inquiry examines five factors to assess which state's law would apply *absent the choice of law provision*." (Filing No. 183 at 3 (emphasis added).)

The Defendants' argument glosses over the fact that the employment contracts at issue in this case do contain a choice of law provision. Each of the contracts explicitly and plainly states that the agreement is governed by Indiana law (Exhibits 101 at 7, 102 at 7, 103 at 8). One of the contracts even states that the agreement "shall be interpreted and enforced in accordance with the laws of the State of Indiana, without giving effect to any choice or conflict of law rule or principle . . . that would cause the application of the law of any jurisdiction other than the State of Indiana." (Exhibit 103 at 8.) Because the parties contracted to apply the laws of the State of Indiana when considering claims arising out of their employment agreements, the Court will apply Indiana law in this case. The Court will first address the claims related to the employment contracts and then turn to the claims for misappropriation of trade secrets.

**A.  Claims Related to the Employment Contracts**

Manno, Hertel, Strahan, and Morales each entered into employment contracts that prohibited them from soliciting Genesys' employees and customers for a period of time after leaving employment with Genesys (Exhibits 101, 102, 103, 105). Morales' contract was entered into with Genesys.[1] The contracts signed by Manno, Hertel, and Strahan were entered into with

---

[1] The only remaining claims against Morales are trade secret claims, so the Court does not consider her employment contract when deciding the preliminary injunctive relief pursuant to the claims related to the employment contracts.

Interactive Intelligence, Genesys' predecessor; however, the contracts inured to the benefit of Genesys as the successor company. *See USI Ins. Servs. LLC v. Ryan*, 2015 U.S. Dist. LEXIS 181614, at *11–12 (N.D. Ind. May 21, 2015) (contract enforceable by successor company); *Standard Register Co. v. Cleaver*, 30 F. Supp. 2d 1084, 1093 (N.D. Ind. 1998) (same); *see also* Exhibits 101 at 6, 102 at 6, 103 at 8.

There is no dispute that the employment agreements exist and that they contain non-solicitation provisions concerning employees and customers. Genesys argues that Manno, Hertel, and Strahan have admitted in their depositions and in other evidence that they have breached the non-solicitation provisions by improperly recruiting and soliciting each other as well as other Genesys employees to join Talkdesk, both before and after leaving Genesys. Indeed, Genesys has presented evidence that shows a breach of the provision prohibiting solicitation of customers; it shows solicitation of BOH, PowerSchool, and Summit Racing.

Genesys further argues that the evidence shows Talkdesk interfered with the individual Defendants' contracts and assisted in the breach of the contracts when it recruited and solicited Genesys employees, especially Manno, Hertel, and Strahan. Under Indiana law, one not a party to a restrictive covenant may be enjoined from assisting a party to such an agreement from breaching the same. "[P]ersons not party to a covenant may be enjoined from the same activities as a person who is a party to a covenant." *See Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 815 (Ind. Ct. App. 2000) ("When there is evidence that a nonparty to a covenant aided or operated in concert with the covenantor to breach the covenant, the nonparty may be subject to an injunction enforcing the covenant.").

The Defendants respond that the non-solicitation provisions are overbroad and thus unenforceable under Indiana law. They argue the prohibitions on solicitation are not narrowly

tailored to employees or customers located in any particular geographic territory, *see Vukovich v. Coleman*, 789 N.E.2d 520, 525 (Ind. Ct. App. 2003) ("covenant not to compete that contains no geographic limitation is presumptively void"), and the provisions are indefinite as to time because they contain a tolling provision that restarts the non-solicitation period if a former employee solicits. The provisions also broadly include any potential customer of Genesys, not just actual customers of Genesys. Further, the provisions prohibit solicitation of any employee of Genesys. The Defendants argue these provisions are overbroad, and "Indiana courts will not hesitate to strike down any such restrictive covenants which are the least bit overly broad." *Buffkin v. Glacier Grp.*, 997 N.E.2d 1, 11 (Ind. Ct. App. 2013).

On December 3, 2019, Genesys notified the Court of an Indiana Supreme Court decision issued that day, which "negatively impacts Genesys's request for preliminary injunctive relief against Manno, Hertel, and Strahan for breach of contract for recruiting Genesys employees." ([Filing No. 194](#).) The Indiana Supreme Court concluded that a non-solicitation provision that prohibits recruiting "any individual employed" by a company is unreasonably broad and thus unenforceable ([Filing No. 194-1](#)). In light of this recent case law, the Court concludes that Genesys does not have a likelihood of success on its claim for breach of the non-solicitation of employees clause. The contracts in this case similarly contain language prohibiting solicitation of "any employee" of Genesys, which has been held to be overbroad and unenforceable under Indiana law. Thus, preliminary injunctive relief on the solicitation of employees claim is not appropriate.

The Court finds that the restrictive clause prohibiting solicitation of customers is likewise overbroad and unenforceable. The contracts include within the reach of "customers" any potential customers of Genesys, even if those entities are not actually a customer; indeed, the contracts state, "a 'customer' shall be deemed to be any person, business, partnership, proprietorship, firm,

organization or corporation which has done business with the Company or which has been solicited or serviced in any manner, directly or indirectly." (Exhibits 101 at 3 and 102 at 3.) This language is overbroad.

The Court recognizes that it may use the "blue pencil doctrine" to strike any overbroad language to make the provision reasonable and enforceable. In doing so, the Court could limit the restrictive covenant to customers being those "which ha[ve] done business with the Company."[2] However, even in doing so, the Court is not convinced that preliminary injunctive relief is appropriate on this record. The evidence before the Court on the preliminary injunction record shows that the only customer of Genesys to have been solicited is BOH, and BOH did not accept Talkdesk's offers, so there is no harm or injury to support the claim concerning BOH. At this stage of the litigation, with the record before the Court, the Court is unable to conclude that Genesys has a likelihood of success on the claim related to soliciting customers of Genesys. Presently, this is not a case that "clearly demands" the issuance of a preliminary injunction. *Roland Mach.*, 749 F.2d at 389. Therefore, a preliminary injunction regarding the solicitation of customers is not warranted. In light of the Court's conclusions on the contract claims, the Court similarly determines that preliminary injunctive relief is not warranted on the claims for tortious interference with contract.

**B.** **<u>Misappropriation of Trade Secrets</u>**

> [A] trade secret includes all forms . . . [of] information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

---

[2] The Court points out that, at some point before December 2013 when Hertel executed his contract with Genesys, Genesys had revised the scope of its definition of "customer" in a manner that is consistent with the Court's "blue pencil" revision (*see* Exhibit 103 at 5).

*Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 920 (N.D. Ill. 2016) (citation omitted).

> "[M]isappropriation" is defined as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."

*Id.* (citations omitted). "To prevail on a claim for misappropriation of a trade secret under the Act, the plaintiff must demonstrate that the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Id.* (citation and quotation marks omitted).

Genesys argues that it is likely to succeed on its misappropriation of trade secrets claims against the Defendants because the evidence shows a massive download of Genesys documents and information (many of which were marked "confidential" or "proprietary") before Manno, Hertel, Strahan, and Morales left Genesys to join Talkdesk. Genesys information was copied onto flash drives or sent via work email accounts to personal email accounts. Genesys asserts that the exhibits show that the information was then shared among Talkdesk personnel. This information includes Genesys' products and services, pricing and offerings, customer lists and information, and customer satisfaction data. Genesys argues that this information was used by Talkdesk to compete against Genesys for business, including BOH's business.

The Defendants respond that Genesys' position that anything bearing a "confidential" or "proprietary" marking is a "trade secret" is not correct. The Defendants assert that Genesys' documents bearing such markings and providing product details, architecture, and pricing information are publicly available from a number of sources on the Internet, ranging from

government pages to industry blogs. Thus, such information cannot constitute a "trade secret". The Defendants further assert the parties have worked together to ensure that the information taken by Hertel and Morales has been located and isolated; thus, there is no threat of ongoing misappropriation.

Concerning the public (not secret) nature of the Genesys information at issue in this case, the Defendants point the Court to numerous exhibits and evidence. Morales obtained lists of potential customers and their information via a third-party database, Discover.org, and she used her old contacts that she had established prior to joining Genesys (Filing No. 183-7 at 5–6). Information in the contact center industry is public with abundant trade publications and product literature available to the public. Genesys' cloud architecture and infrastructure are known in the contact center industry and are available to the public on Genesys' website. Genesys' pricing also is available on its website. Outage information is provided by Genesys on its website. Many Genesys customers have published reviews online discussing Genesys' products, architecture, pricing, and outages (Filing No. 183-7 at 5–8; Filing No. 183-8 at 6–8; Exhibits 202, 204–10, 214, 217).

The Defendants further point out that a Genesys document detailing information on its product architecture, buyer personas, roadmaps, and positioning and messaging is available for public download online (Exhibit 218). Interactive Intelligence, Genesys' predecessor, also distributed information regarding the PureCloud architecture in a white paper published in 2015, and there are no confidentiality markings on the document. This document explained that PureCloud utilizes AWS, which collaborates with Edge appliances. It further included sections on overall architecture, reliability, scalability, onboarding, and technical features of PureCloud (Exhibit 214). The Defendants also assert that "SOC II" is an industry standard relating to privacy

in the cloud architecture. Companies publicly provide certification compliance with SOC II, and Interactive Intelligence published its SOC II report on its website. Information contained within the SOC II report is readily available through public sources such as the PureCloud white paper at Exhibit 214, which was published by Interactive Intelligence in 2015 ([Filing No. 183-8 at 6](#)–7).

Based on the substantial and compelling evidence provided by the Defendants concerning the public nature of Genesys' information, the Court is unable to conclude at this stage of the litigation that Genesys is likely to succeed on the merits of its trade secret claims. The evidence currently before the Court raises doubt that the information Genesys seeks to protect as trade secrets is indeed secret and not public. Therefore, the Court concludes that it is not appropriate to issue preliminary injunctive relief on the trade secret claims.

C. **Genesys' Motion for Leave to Submit Additional Specificity**

After the preliminary injunction hearing and the after the parties submitted proposed findings of fact and conclusions of law, Genesys filed a "Motion for Leave to Submit Additional Specificity to Requested Trade Secret Preliminary Injunction." ([Filing No. 196](#).) Genesys makes this appeal to adjust its requested preliminary injunction by adding language that provides greater specificity. Genesys asserts that this belated adjustment is warranted because of an alleged new issue regarding "specificity" raised by the Defendants in their proposed findings of fact and conclusions of law. The Defendants filed a short response, and Genesys filed a short reply, which the Court reviewed. In its reply, Genesys appears to suggest that the Court determined in the Order on the Motion to Dismiss that Genesys has successful trade secret claims. The Court briefly notes that the standard when reviewing a motion to dismiss is different from the standard when reviewing a motion for a preliminary injunction. At the motion to dismiss stage, the Court must accept the allegations in the complaint as true and draw all inferences in favor of the plaintiff. Because the

Court did not rely on or incorporate in any way the Defendants' proposals regarding "specificity," the Court **denies** Genesys' Motion for Leave to Submit Additional Specificity.

IV. **CONCLUSION**

When a plaintiff has failed to establish a "likelihood of success on the merits of [its] claim, there [is] no need for the district court to conduct further analysis of the 'threshold phase' for preliminary injunctive relief, or to move to the 'balancing phase.'" *GEFT Outdoors*, 922 F.3d at 367–68 (citing *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018)). For the reasons set forth above, Genesys' Amended Motion for Preliminary Injunction ([Filing No. 164](Filing No. 164)) is **DENIED**, and its Motion for Leave to Submit Additional Specificity to Requested Trade Secret Preliminary Injunction ([Filing No. 196](Filing No. 196)) also is **DENIED**.

**SO ORDERED.**

Date: 12/6/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kathleen M. Anderson
BARNES & THORNBURG, LLP
kathleen.anderson@btlaw.com

Thomas C Payne
BARNES & THORNBURG LLP
Thomas.Payne@btlaw.com

John R. Maley
BARNES & THORNBURG, LLP
jmaley@btlaw.com

David S. Moreland
MEUNIER CARLIN & CURFMAN LLC
dmoreland@mcciplaw.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

John W. Harbin
MEUNIER CARLIN & CURFMAN LLC
jharbin@mcciplaw.com

James P. Strenski
PAGANELLI LAW GROUP
jstrenski@paganelligroup.com