**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| GENESYS CLOUD SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 1:19-CV-695-TWP-DML |
| | ) |
| TALKDESK, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION TO EXCLUDE AND STRIKE PLAINTIFF'S EXPERTS' OPINIONS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ..................................................................................................................... 1

    A.    Genesys's expert's opinions are limited to Genesys's "raiding" and "trade secret" claims, providing automatic exclusion if those claims are dismissed from this case. ..... 1

        1.    Dineen's opinions are only relevant to the "raiding" claim and must be excluded if that claim is dismissed. .............................................................................................. 1

        2.    Genesys's other expert opinions regarding damages are only relevant to the trade secret and raiding claims............................................................................................ 3

    B.    Green's opinions are unreliable, unqualified, and irrelevant, and therefore should be excluded. ....................................................................................................................... 4

    C.    York's opinions are unreliable and unqualified, and therefore should be excluded........ 6

    D.    Dineen's opinions are unreliable and should be excluded.............................................. 7

    E.    Distler's opinions are unreliable and should be excluded. ........................................... 11

    F.    Dineen and Distler's "rebuttal" reports are improper and should be excluded. ............ 14

    G.    Genesys's Non-Retained Expert Witnesses are unqualified and provide purported fact testimony, not expert testimony. ................................................................................... 18

        1.    Coburn's testimony is irrelevant and at best fact testimony. ..................................... 18

        2.    Ball is unqualified to testify as to the value of trade secrets...................................... 19

        3.    Sander's proposed expert testimony is unreliable and irrelevant. .............................. 19

III.           CONCLUSION.................................................................................................... 20

i

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                        <u>Page(s)</u>

*Ahad v. Bd. of Trustees of S. Illinois Univ.*,
    2018 WL 1173003 (C.D. Ill. Mar. 6, 2018) ...................................................................16

*Africano v. Atrium Med. Corp.*,
    2019 WL 5085338, (N.D. Ill. Oct. 10, 2019) .................................................................14

*Ajaxo,Inc. v. E-Trade Fin. Corp.*,
    48 Cal. App. 5th 129, 168 (Cal. Ct. App. 2020) ...........................................................11

*All-Tag Corp. v. Checkpoint Sys.*, Inc.,
    408 F. Supp. 3d 1347 (S.D. Fla. 2019) ..........................................................................15

*Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*,
    57 F.3d 1190 (3d Cir. 1995) ............................................................................................9

*Astro Tech., Inc. v. Alliant Techsystems, Inc.*,
    2005 WL 6061803  (S.D. Tex. Sept. 28, 2005).............................................................5, 6

*Blue Dane Simmental Corp. v. Am. Simmental Ass'n*,
    178 F.3d 1035 (8th Cir. 1999) .....................................................................................8, 13

*Boucher v. U.S. Suzuki Motor Corp*.,
    73 F.3d 18, 21 (2d Cir. 1996) .......................................................................................13

*Bowman v. Int'l Bus. Mach. Corp.*,
    No. 1:11-CV-0593-RLY-TAB, 2012 WL 6596933 (S.D. Ind. Dec. 18, 2012) ..........14, 15

*Brown Cty. Water Util., Inc. v. Town of Nashville, Indiana*,
    2019 WL 2123461, at *5 (S.D. Ind. May 15, 2019).......................................................16

*Cage v. City of Chicago*, No. 09–C–3078,
    2012 WL 5557410 (N.D. Ill. Nov. 14, 2012) .................................................................15

*Camp v. TNT Logistics Corp.*,
    2007 WL 9724750 (C.D. Ill. Sept. 24, 2007) ..................................................................5

*Carroll v. Otis Elevator Co.*,
    896 F.2d 210 (7th Cir. 1990) ........................................................................................5, 19

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)........................................................................................................11

*Fiona Chen v. Yellen*,
    No. 3:14-CV-50164, 2021 WL 4192078 (N.D. Ill. Sept. 15, 2021)....................................8

*Gayton v. McCoy*,
    593 F.3d 610, 617 (7th Cir. 2010) .....................................................................................5

*In re TMI Litig.*,
    193 F.3d 613, 705 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000) ......................10

*Kentucky v. Marathon Petroleum Co.* LP,
    464 F. Supp. 3d 880 (W.D. Ky. 2020)...............................................................................2

*Loeb v. Hammond*,
    407 F.2d 779 (7th Cir.1969) .............................................................................................5

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ................................................................................9

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) .................................................................................13, 14

*Nordetek Env't, Inc. v. RDP Techs., Inc.*,
    862 F. Supp. 2d 406 (E.D. Pa. 2012) ..............................................................................11

*Peals v. Terre Haute Police* Dep't,
    535 F.3d 621 (7th Cir. 2008) ..........................................................................................15

*People v. Kinder Morgan Energy Partners, L.P.*,
    159 F. Supp. 3d 1182 (S.D. Cal. 2016)...........................................................................14

*Medicines Co. v. Mylan Inc.*,
    2014 WL 1227214 (N.D. Ill. Mar. 25, 2014)...................................................................19

*Starlink Logistics, Inc. v. ACC*, LLC,
    No. 18 Civ. 0029, 2020 WL 619848 (M.D. Tenn. Feb. 10, 2020) ...................................16

*Taylor v. B. Heller & Co.*,
    364 F.2d 608 (6th Cir. 1966) ...........................................................................................9

*State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*,
    980 F. Supp. 2d 1031 (N.D. Ind. 2013) ...........................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .................................................................................11, 12

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,
    504 F.2d 518 (5th Cir. 1974) ...............................................................................11, 12

*United States v. Christian*,
    673 F.3d 702 (*7th* Cir. 2012) ...................................................................................18

*Vill. of Sauk Vill. v. RoadwayExpress, Inc.*,
    2017 WL 378424 (N.D. *Ill*. Jan. 25, 2017)..............................................................16

*Whitserve, LLC v. Computer Packages, Inc.*,
    *694* F.3d 10 (Fed. Cir. 2012) ..................................................................................13

*Wood v. Textron, Inc.*,
    807 F.3d 827 (7th Cir. 2015) ....................................................................................10

*Walton v. Chase Home Fin. LLC*,
    2012 WL 6596879 (S.D. Ind. Dec. 18, 2012)...........................................................18

<u>RULES</u>                                                                           <u>Page(s)</u>

Fed. R. Evid 401 ...................................................................................................1, 3

Fed. R. Evid 403 ......................................................................................................3

Fed. R. Evid 701 ...................................................................................................1, 9

Fed. R. Evid 702 ............................................................................................. passim

Fed. R. Evid 703 .................................................................................................1, 20

## I.    INTRODUCTION

Defendants' motion to exclude and strike (D.I. 321) demonstrates serious flaws in Genesys's expert opinions that render those opinions inadmissible. Genesys's response ignores many of Defendants' points and insists in the other instances that the myriad of errors identified by Defendants are subjects for cross examination. But Genesys's expert opinions cannot be cured through cross examination as they are fundamentally unreliable. Therefore Rules 701, 702, 703 and *Daubert* command that they be excluded.

## II.    ARGUMENT

**A.    Genesys's expert's opinions are limited to Genesys's "raiding" and "trade secret" claims, providing automatic exclusion if those claims are dismissed from this case.**

Genesys alleges that its expert reports are relevant to multiple claims, not just the "raiding" and "trade secret misappropriation" claims. However, the reports and testimony of Genesys's purported experts declare the opposite. Accordingly, as set out in Defendants' opening brief, if this Court grants summary judgment on either claim, issues raised herein become moot based on automatic exclusion of proposed testimony that is not directed to issues in this case. Fed. R. Evid. 401.

**1.    Dineen's opinions are only relevant to the "raiding" claim and must be excluded if that claim is dismissed.**

Dineen only calculated the costs of the alleged "raid," and his opinions are not relevant if summary judgment is entered for Talkdesk on that claim. *See* D.I. 322-1 at 23; D.I. 321 at 2 fn.1. Perhaps recognizing that its raiding claim fails as a matter of law, Genesys's opposition attempts to recharacterize Dineen's opinions as being broadly relevant to Genesys's other claims, including breach of fiduciary duties, breach of contract, aiding and abetting, conspiracy, and constructive fraud. *See* D.I. 326 at 2.

1

Genesys's opposition is wrong because Dineen did not disclose any damages opinions related to breach of fiduciary duties, breach of contract, aiding and abetting, conspiracy, and constructive fraud. *See generally* D.I. 322-1. An examination of Dineen's expert report shows that he did not even attempt to calculate damages allegedly stemming from such claims, and only briefly referenced them in quotes from Genesys's brief.[1] *See* D.I. 322-1 at 5. The report expressly states that Dineen was "asked by counsel to provide an assessment of HR-related damages … *as a result of the raid that occurred*," and "an assessment of unjust enrichment … *as a result of this raid*." *See* D.I. 322-1 at 6 (emphasis added). Confirming this, Dineen testified that his opinions were related to "HR-related damages and unjust enrichment… *as a result of the raid*" and that he did not calculate damages against individual defendants or damages for other claims. D.I. 232 at 24:3–11; Ex. C at 26:12–14, 26:23–27:12 (emphasis added). Thus, Dineen's testimony and report confirm that Dineen's opinions are only relevant to the "raiding" claim.

Genesys' opposition argues that Dineen testified that the raid would comprise the other claims, and therefore that the "raiding" damages are relevant to determining the damages from the other claims. This is wrong for several reasons. First, Dineen agreed in his later testimony that there were no specific sections of his report actually addressing those claims. *See generally* Ex. C at 25–28. So, Dineen has no opinions about damages from other claims. *See Kentucky v. Marathon Petroleum Co.* LP, 464 F. Supp. 3d 880, 894–95 (W.D. Ky. 2020). Second, Dineen did not disclose any methodology for how damages from these other claims would be calculated, so any opinion on this point would be speculative and unreliable. *See generally* D.I. 322-1; Fed.

---

[1] There is simply no discussion in Dineen's report of purported damages stemming from anything other than alleged "raiding" by Talkdesk.

R. Evid. 702. Third, any opinions by Dineen about how his alleged raiding damages are related to those other claims would be a new and late opinions, and exclusion would be mandatory (like the new opinions in his improper rebuttal report). *See* D.I. 321 at 27–32. Finally, Dineen's testimony about "raiding" damages would be confusing, prejudicial, and time wasting if the "raiding" claim were dismissed. Fed. R. Evid. 403.

In sum, Genesys cannot use Dineen's "raiding" damages to support its other claims if the "raiding" claim is dismissed. Summary judgment on the "raiding" renders all of Dineen's testimony irrelevant and inadmissible. Fed. R. Evid. 401.

### 2. Genesys's other expert opinions regarding damages are only relevant to the trade secret and raiding claims.

Despite broadly arguing that its other expert opinions are "relevant and important" to all claims, Genesys does not provide any specific examples to support this proposition. D.I. 326 at 2–3. To the contrary, the opinions of Genesys's experts are only relevant to the "raiding" or trade secret claims.

First, the opinions of Genesys's other retained experts—Distler, Green, and York are only directed to the trade secret claim. Distler's report is only directed to alleged trade secret damages, attempting to provide a basis for a reasonable royalty for the disputed PureCloud customer list. *See* Ex. B at 19:10–16, 20:24–21:8. No other basis for trade secret misappropriation is provided. And Distler's report does not include any calculations of damages for tortious interference, breach of contract, breach of fiduciary duty of loyalty, constructive fraud, aiding and abetting, conspiracy or raiding. *See generally* D.I. 323-5. Distler admitted that she did not calculate damages for any other claims in her deposition. *See generally* Ex. B at 19–21. Therefore, if summary judgment is granted for Defendants on the trade secret claim, Distler's

damages opinions are irrelevant. Similarly, Green was retained to "opine on the systems, technology, processes, policies, and protocols of Genesys as they pertain to protecting the confidential and trade secret information of Genesys" so her testimony is not relevant absent the trade secret claim. D.I. 322-5 at 4. And York was purportedly retained to determine if Genesys treats its data as "as confidential trade secret information," and opinion for which York is unqualified (as outlined below). D.I. 322-7 at 3. So Distler, Green, and York's opinions are likewise only relevant to the alleged trade secret claim in this case.

Second, the opinions of Genesys's non-retained experts Coburn, Ball and Sanders opinions are all partially or completely related to supporting the trade secret claims.[2] These witnesses were only disclosed as experts for elements of the trade secret claim. *See generally* Ex. A. So, Coburn, Ball, and Sanders cannot offer opinion testimony about other claims, and their opinion testimony is irrelevant if summary judgment is granted on the trade secret claim.

**B.    Green's opinions are unreliable, unqualified, and irrelevant, and therefore should be excluded.**

**1.    Green has no legal expertise or CCaaS experience.**

Green's purported expert opinions reach far beyond Genesys's IT systems and protocols and include unqualified legal conclusions. Indeed, as outlined in Talkdesk's opening brief, Green offers opinions that attempt to interpret contract language,[3] that conclude whether certain

---

[2] Green, York, Coburn, Ball, and Sanders do not disclose expert opinions related to damages. Therefore if Defendants' motion for summary judgment is granted, Genesys's only damages testimony will be irrelevant to any of the remaining claims in the case, and Genesys will lack any reliable damages testimony on its remaining claims.

[3] For example: "[H]ad Genesys known that Mr. Manno was ***actively working for Talkdesk***, Genesys would have considered that a *Change of Business Role* and the revocation of access privileges would have occurred." D.I. 322-5, p. 19 (emphasis in original).

4

conduct was in violation of contracts,[4] and that opine as to what information is considered trade secret or "private."[5] Green's experience with IT systems in no way is relevant to the above opinions, and her lack of experience in the CCaaS industry further compounds her lack of relevant experience. An expert is limited to testifying on subjects within their qualifications and therefore Green is unqualified to testify as to the above. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citing *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir.1990)).

### 2. Green's opinions are improper and unreliable

Green's opinions rely entirely on Genesys's allegations, her own lay definitions of legal terms, and her own lay interpretations of Defendants' employment contracts. This is improper. *Astro Tech., Inc. v. Alliant Techsystems, Inc.*, 2005 WL 6061803, at *8 (S.D. Tex. Sept. 28, 2005) (finding that a plaintiff's expert's opinions about the existence of trade secrets were neither reliable nor relevant where the expert "relied heavily, if not exclusively, on the representations of [the plaintiff's president and its] counsel"); *Loeb v. Hammond,* 407 F.2d 779, 781 (7th Cir.1969) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony.") (citation omitted); *Camp v. TNT Logistics Corp.*, 2007 WL 9724750, at *6 (C.D. Ill. Sept. 24, 2007) ("And, experts… are not allowed to testify to legal conclusions or the legal meaning of words.") (citing *Harbor Insurance Company v. Continental Bank Corporation*, 922 F.2d 357, 365-368 (7th Cir. 1990).

---

[4] For example: "Mr. Manno and others violated Genesys' employment agreements by *<u>actively working for Talkdesk</u>* while employed by Genesys." D.I. 322-5, p. 19 (emphasis in original).
[5] For example: "It was this Genesys' *private information*, also known as Genesys' *information assets*, that Manno, Strahan and Hertel were actively sharing with Talkdesk." D.I. 322-5, p. 23 (emphasis in original).

Genesys argues first that Green reviewed other documents, therefore her opinions are not *just* based on Genesys's own allegations. Yet Green's report is overwhelmingly dominated by citations to Genesys's Third Amended Complaint, and her conclusions parrot these allegations. It is clear that Genesys's complaint allegations are the primary basis for Green's opinions. And to the extent that the Third Amended Complaint makes citations to other documents, there is no indication (nor has Genesys argued) that Green reviewed these underlying documents. Genesys also argues that because the Third Amended Complaint has citations, it is proper for Green to rely on it. Genesys provides no support for this argument and doesn't address the case law cited by Defendants. *See Astro Tech., Inc.*, 2005 WL 6061803, at *8. These arguments fail to excuse the unreliability of Green's opinions and Green's opinions should be excluded in full.

**C.   York's opinions are unreliable and unqualified, and therefore should be excluded.**

   **1.   York has no legal or economic expertise, nor does he have CCaaS experience.**

While York broadly has experience in HR matters, this does not qualify him to opine on whether Genesys treats its employee personnel information as "confidential trade secret information" or what the value of the purported trade secrets are. Trade secrets are not an HR matter. Further, York has no experience in the CCaaS industry, so he has no knowledge of what information is public within the industry (*see* D.I. 323-1 at 27:16-21), or what the value of CCaaS trade secret information is (*see id.* at 17:13-18:14). York also admittedly has no legal expertise and is therefore unable to interpret the terms "confidential" and "trade secret" in a legal sense. *Id.* at 19:18-21:23. Therefore, York is unqualified. *See Gayton*, 593 F.3d at 617.

   **2.   York's opinions are improper and unreliable.**

Similar to Green, York also bases his opinions on Genesys's allegations, his own lay definitions of legal terms, and improper speculation. Specifically, York heavily relies on

Genesys's allegation made in its Third Amended Complaint, uses an improper lay definition of "trade secret" (D.I. 323-1, 104:3–6, 105:16–23) and opines that certain Genesys information is non-public without having analyzed whether the information was in fact public or not (D.I. 323-1 at 94:7–25). For the same reasons as Green, this renders York's testimony unreliable.

Genesys again argues, without supporting authority, that reliance on Genesys's allegations is reasonable. As previously explained, it is not. Genesys also argues that York need not understand what a trade secret is, because the Court will explain what a trade secret is to the jury. But it is not the Court's job to fix the reliability issues of York's report and testimony, nor should the jury be forced to deal with the inevitable confusion or Defendants be faced with the prejudice of a purported expert's legally improper usage of the term "trade secret." The burden is not on the Court, the jury, and Defendants to render York's testimony reliable. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) ("The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard."). Such burden is on Genesys, which they fail.

**D.      Dineen's opinions are unreliable and should be excluded.**

Defendants have previously detailed the flaws in Dineen's testimony that render his testimony unreliable. D.I. 321 at 5–13. These flaws include baseless assumptions, ignoring significant factors, and otherwise failing to link his evidence to his conclusions. Genesys tries to excuse these flaws but fails.

First, Genesys argues that Dineen did account for Genesys's normal turnover. In support, Genesys provides the example of Dineen only basing his opinion on 9 of the 13 mid-market departures. But those 9 are the employees that left Genesys for Talkdesk – the employees that Genesys is suing over – while the other four did not leave for Talkdesk. D.I. 314-5 at 6. To the

extent that Genesys argues that the four employees that left for other companies fully encompasses the "normal turnover," while none of the 9 that left for Talkdesk would constitute normal turnover, the argument is completely unsupported. It is clear that Dineen did not account for normal turnover in his damages opinion. This alone renders Dineen's opinions unreliable. *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1041 (8th Cir. 1999) (holding economist's methodology unreliable for failure to account for all independent variables).

Second, even if it were reasonable for Dineen to assume Genesys employees worked 1,920 hours each year, his hourly cost approach is completely detached from the facts of the case. As Genesys admits, Genesys employees are salaried. This is not a fact in dispute – it is a glaring flaw in Dineen's methodology, rendering it unreliable. Genesys tries to avoid the simple fact that Genesys suffered no actual damages in increased wages due to "informal training" by arguing that there was a lost "opportunity cost." D.I. 326 at 12. But Dineen fails to demonstrate that there was an opportunity cost regarding HR, and instead merely speculates that there could have been. D.I. 314-5 at 10-11. Such speculation renders Dineen's methodology unreliable. *Fiona Chen v. Yellen*, No. 3:14-CV-50164, 2021 WL 4192078, at *3 (N.D. Ill. Sept. 15, 2021) ("The district court's role as 'gate-keeper' under Daubert requires it to exclude expert testimony when it is 'based upon speculation, unsupported assumptions, or conclusory allegations.'") (quoting *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994)).

Genesys argues that Dineen's opinions on "ramp time" can be based solely on a conversation with a Genesys VP, wherein the VP gave his opinion on how long the ramp time should be and the productivity levels during that ramp time. D.I. 326 at 12. Genesys mischaracterizes the VP's opinion as fact testimony, admissible under Fed. R. Evid. 602, when

in fact it is improper expert opinion testimony. The proffered ramp times and productivity levels are not "facts" observed by Genesys's VP. At best, these ramp times and productivity levels are expert opinions that would require specialized knowledge—not lay opinion testimony. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1201 (3d Cir. 1995) (noting that "Rule 701 demands more than that the witness have perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion."). Inadmissible, unverified opinion testimony is not a reliable basis for Dineen to base his methodology. *See Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 807–809 (N.D. Ill. 2005); *Taylor v. B. Heller & Co.*, 364 F.2d 608, 613 (6th Cir. 1966) ("[E]xpert opinion may not be based upon the opinion of others, either in evidence or not in evidence."). As Dineen's testimony on ramp times and productivity merely repackages the inadmissible opinions of a Genesys witness, it is unreliable and inadmissible.

Genesys claims that a Genesys employee is the source of Dineen's "lost time" assumptions, and therefore Dineen's reliance on that information is proper. D.I. 326 at 12. But Dineen failed to identify this source in his report, and he testified that he did <u>not</u> know who the source was. D.I. 323, 17:7-20. Further, Dineen failed to provide any basis for what the unknown Genesys employee based their information on, or whether Genesys even keeps track of the time worked by salaried employees. *Id*. at 18:2-19. In other words, Genesys's counsel (*id*. at 17:12-14) sent Dineen these numbers, and Dineen plugged them in without any further investigation. This renders Dineen's "lost time" opinions unreliable. *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, 980 F. Supp. 2d 1031, 1050 (N.D. Ind. 2013) (excluding expert testimony because it was "based on unverified data from a party and a flawed comparative analysis, rendering it unreliable.").

Genesys argues that Dineen's "productivity" analysis is reliable, despite being based solely on allegations made in Genesys's motion for summary judgment and having no reasoning as to the conclusions. D.I. 326 at 13. This is not true. First, Genesys's allegations cannot be the basis of an expert opinion. *See, e.g., In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir. 1999), *amended,* 199 F.3d 158 (3d Cir. 2000). Second, even if it were a proper basis, Dineen merely recited the allegations and concluded that there were productivity losses. Since Dineen did not apply any expert methodology to these allegations, his conclusory opinions based on those allegations are inadmissible *ipse dixit*. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 837 (7th Cir. 2015).

Genesys argues that Dineen's use of the article *The Cost of Turnover* was correct, and that Defendant's critique misinterpreted the article. Genesys argues that the article applies to "internally transferred" employees, and not new employees. See D.I. 326 at 13. Genesys is wrong and cites no support for this in the article. But this argument is irrelevant since Dineen uses the article to support reduced productivity of *existing employees* before they leave the job, not "transferred" or "new" employees. *See* D.I. 321 at 10–11. Genesys's response fails to rebut Talkdesk's clear showing that Dineen misread his source and misapplied its methodology, and thus has waived any such argument. *Walton*, 2012 WL 6596879, at *7.

Perhaps recognizing that this source does not support Dineen's methodology, Genesys argues that Dineen "cites additional sources." But Dineen's methodology for measuring productivity costs as 55% of turnover costs came from *The Cost of Turnover* and Genesys does not argue that the other articles provide the same estimate of costs. *See* D.I. 326 at 14. So, Dineen's misreading of his source renders his entire estimate of productivity costs unreliable.

Similarly, Genesys did not address Dineen's failure to apply the methodology from *The Cost of Turnover*, resulting in double counting productivity losses. Neither Dineen nor Genesys

have offered any basis for calculating productivity costs as an additional cost on top of turnover costs – contradicting their own source. Dineen's misapplied methodology is unreliable. *Nordetek Env't, Inc. v. RDP Techs., Inc.*, 862 F. Supp. 2d 406, 419 (E.D. Pa. 2012).

Genesys also offers no explanation as to why sources and information from the hospitality industry, government contracting, or high-tech software development apply to the CCaaS industry. Instead, Genesys seems to argue that there is nothing unique about the CCaaS industry and that the information is therefore applicable. Genesys offers no support for this. Similarly, Genesys does not explain why information from 20 years ago is relevant and applicable today. The burden is on Genesys to prove that Dineen's opinions are reliable, and Genesys's attorney arguments fail to satisfy that burden. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579,592 n.10 (1993). Accordingly, Dineen's expert opinions should be excluded as outlined above and in Defendants' opening brief.

**E.      Distler's opinions are unreliable and should be excluded.**

    **1.   Distler failed to apportion damages.**

Genesys argues that apportionment of damages between purported trade secrets and non-secret information is unrelated to Distler's methodology, and therefore is a question of weight, not reliability. But Defendant's criticism is not a mere disagreement on how Distler apportioned damages, but instead that she <u>completely failed to apportion at all</u>. Apportionment is a necessary component to any methodology used to determine a reasonable royalty of trade secrets. *Ajaxo,Inc. v. E-Trade Fin. Corp.*, 48 Cal. App. 5th 129, 168 (Cal. Ct. App. 2020); *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974). By omitting this analysis, Distler's methodology and testimony are rendered unreliable. *Id.*

Next, Genesys argues that Distler did apportion damages by accounting for normal customer attrition. This is not apportionment. Distler's adjustments made based on normal customer attrition do *not* account for hundreds of names on the PureCloud customer list that were in fact not customers of Genesys or that were publicly known to Talkdesk at that time. D.I. 323 at 68:5-11. There could be no risk of losing revenue from non-customers – this is an undisputable fact ignored by Distler. *See* D.I. 321 at 26. Distler's alleged adjustment simply ignores customers on the list that were already publicly known to be Genesys customers and were therefore not "risks" for disclosure or otherwise could render value from being "secret."

## 2. Apportionment is required for a reasonable royalty analysis

Apportionment is required to determine the appropriate damages for trade secret misappropriation in order to separate the economic value of the trade secret from other public information. Genesys fails to distinguish the case law on this point. Trade secret damages are calculated analogously to patent damages, and case law is clear that apportionment is required in all intellectual property damages assessment. *Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292 (Fed. Cir. 2011); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974).[6]

Genesys also argues that apportionment is unnecessary because the PureCloud customer list contains more alleged trade secret information than just customer names. *See* D.I. 326 at 23. This argument fails because Distler failed to apportion the "risk" of losing customers to account

---

[6] "[I]t is generally accepted that the proper measure of damages in cases of trade secret misappropriation is determined by reference to the analogous line of cases involving patent infringement." *Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 937 (E.D. Tex. 2014) (citing *Univ. Computing Co. v. Lykes–Youngstown Corp.,* 504 F.2d 518, 535 (5th Cir.1974)).

for information that was indisputably public. See D.I. 326 at 25–26. And Distler further failed to apportion the amount of revenue "at risk" by the actual revenue of each Genesys customer. *Id*. at 26. Genesys's rebuttal fails to rebut either of these arguments.

For example, Talkdesk's opening brief explains that Distler failed to account for the fact that Uber was publicly known to be a Genesys customer. So, there was no "risk" of disclosing Uber's identity to Talkdesk, and there can be no damages from this disclosure. But Genesys's response fails to even address this point. Distler's failure to apportion damages based on the facts of this case render her testimony unreliable under Rule 702, and exclusion is required. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021) (affirming exclusion under Fed. R. Evid. 702 of an expert who failed to apportion damages); *see also Boucher v. U.S. Suzuki Motor Corp*., 73 F.3d 18, 21 (2d Cir. 1996); *Blue Dane Simmental Corp. v. Am. Simmental Ass'n,*, 178 F.3d 1035, 1040 (8th Cir. 1999).

Genesys also argues, remarkably, that apportionment was not necessary because Talkdesk would have paid for the entire PureCloud customer list without any regard for the fact that the customers were already known to be Genesys customers. D.I. 326 at 24. This is a wholly speculative, *post-hoc* excuse for Distler's failure to apportion damages in her analysis. Simply assuming that the parties would have disregarded public information cannot save the lack of apportionment. *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012) (excluding expert opinion on reasonable royalty for, *inter alia*, being speculative).

Genesys does not dispute that Distler's opinion is based on Genesys's "risk" of disclosure of a customer by Genesys to Talkdesk, and Genesys similar cannot dispute that Distler does not apportion that risk based on undisputed facts in this case. Thus, Distler's opinions are unreliable

and should be excluded. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1369 (Fed. Cir. 2021).

**F.   Dineen and Distler's "rebuttal" reports are improper and should be excluded.**

Genesys's response argues at length that its rebuttal reports were allowed by Rule 26(a)(2)(D)(ii). But the main issue here is not the fact that rebuttal reports were served (although Defendants contends that the Case Management Order supersedes Rule 26, as noted below). Instead, the issue is that these rebuttal reports were not proper rebuttal reports. Genesys's response fails to show that these reports were proper, and therefore exclusion is required.

**1.   Dineen and Distler's "rebuttal" reports contain new arguments and new evidence.**

Talkdesk has outlined numerous new opinions and materials offered in Dineen and Distler's late reports. D.I. 321 at 27-29. In response, Genesys argues that it is entitled to offer "new opinions and material" on rebuttal so long as it is in any way responsive to Talkdesk's reports. Genesys cites *no* support for this argument. D.I. 326 at. 3. To the contrary, the case law and federal rules are clear that rebuttal reports are limited to rebutting "evidence on the same subject matter" disclosed under 26(a)(2)(B) or (C), *not* to disclosing new evidence or bolstering the opinions in the expert's opening report. Fed. R. Civ. P. 26(a)(2)(D)(ii); *Bowman v. Int'l Bus. Mach. Corp.*, No. 1:11-CV-0593-RLY-TAB, 2012 WL 6596933, at *5 (S.D. Ind. Dec. 18, 2012);.*Africano v. Atrium Med. Corp.*, 2019 WL 5085338, at *2 (N.D. Ill. Oct. 10, 2019). Courts have held that Rule 26(a)(2)(D)(ii) should not be read as Genesys suggests, because doing so undermines the distinction between affirmative and rebuttal reports. *See People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1193 (S.D. Cal. 2016). In sum, Genesys is wrong to argue that it is allowed to introduce new evidence and arguments on rebuttal. Instead,

14

Genesys's argument that it is allowed to do so is effectively an admission that Genesys's rebuttal reports contain new evidence and arguments and are therefore improper.

Furthermore, Genesys fails to even argue against the exclusion of many sections of testimony identified by Talkdesk. For example, Genesys's brief does not address that Dineen's opinions on "headhunter type selection information," "LinkedIn oversampling," and "working time allowance." *See generally* D.I. 326 at 3–6. And Genesys's brief also does not dispute that Dineen's rebuttal relies on new hearsay statements from an interview that Dineen performed after Talkdesk's reports were served. *Id*. These are all new evidence and argument that must be excluded. *See All-Tag Corp. v. Checkpoint Sys.*, Inc., 408 F. Supp. 3d 1347, 1352 (S.D. Fla. 2019) (excluding a new damages theory raised on rebuttal); *see* D.I. 326 at 3–5. So, Genesys's response concedes that several points of testimony introduce new evidence and argument that are outside the scope of rebuttal and therefore must be excluded.

Finally, Genesys is wrong to argue that the cases cited by Talkdesks are inapplicable here. FRCP 26(a)(2)(D) applies to disclosures of expert rebuttal testimony. Fed. R. Civ. P. 26. *Bowman* and *Cage* are both expressly interpreting Rule 26(a)(2)(D)—the rule at issue here—so their relevance is clear. *Bowman*, 2012 WL 6596933, at *5; *Cage v. City of Chicago*, No. 09–C– 3078, 2012 WL 5557410, at *2 (N.D. Ill. Nov. 14, 2012). And *Peals v. Terre Haute Police Dep't* interprets the scope of rebuttal testimony, which is what Genesys seeks to disclose by way of its rebuttal reports. 535 F.3d 621, 630 (7th Cir. 2008). As noted above, Genesys has not produced authority to the contrary, and so Genesys has failed to show that the Court should take a different approach here.

In sum, Dineen and Distler's rebuttal reports went far beyond merely rebutting the evidence and opinions of Dr. Maness. Instead, Dineen and Distler's reports attempt to add new

evidence and opinions to bolster their flawed opening reports. So, Dineen and Distler's rebuttal

reports are not proper rebuttal reports and must be excluded.

### 2. Dineen and Distler's "rebuttal" were not allowed by the Court's own case management order.

Genesys cannot deny that the Court ordered Genesys to serve its expert reports on

damages "on or before June 28, 2021," and made no allowance for Genesys to serve additional

damages reports in response to Defendants' damages expert's report. D.I. 225. Despite the clear

schedule ordered by the Court, Genesys served Dineen and Distler's additional "rebuttal" reports

on September 9th (the evening _after_ depositions of Dineen and Distler had concluded, and with

no advance notice provided to Defendants). Genesys argues that this was ok, that they can ignore

the Court ordered schedule thanks to FRCP 26(a)(2)(D)(ii). D.I. 326 at 6. But Rule 26(a)(2)(D)

applies "[a]bsent a stipulation or a court order." Fed. R. Civ. P. 26(a)(2)(D). Here, the Court

ordered the time and sequence of the expert disclosures, which Genesys gratuitously ignored.

D.I. 225. FRCP 26(a)(2)(D)(ii) does not apply in instances of no notice, and Genesys was

required to follow the Court's schedule – not their own.[7]

---

[7] Courts in other jurisdictions have refused to allow a rebuttal not contemplated by the scheduling order. _See, e.g., Starlink Logistics, Inc. v. ACC_, LLC, No. 18 Civ. No. 0029, 2020 WL 619848 at * 3 (M.D. Tenn. Feb. 10, 2020) (rejecting rebuttal report in part because "[a]lthough rebuttal experts or reports are sometimes discussed at the initial case management conference and provided for in the initial case management order, they were never raised by either party in this case."). Here, Genesys served the two rebuttal reports on September 9th, and expert discovery concluded on September 17, 2021. D.I. 225, p. 2. None of the cases cited by Genesys support their argument that Genesys is permitted to serve the rebuttal reports at issue here, when the scheduling order is silent and Genesys's rebuttal reports include new evidence and opinions outside the scope permitted by Rule 26. _See generally Vill. of Sauk Vill. v. Roadway Express, Inc._, 2017 WL 378424, at *1 (N.D. Ill. Jan. 25, 2017); _Ahad v. Bd. of Trustees of S. Illinois Univ._, 2018 WL 1173003, at *2 (C.D. Ill. Mar. 6, 2018); _Brown Cty. Water Util., Inc. v. Town of Nashville, Indiana_ 2019 WL 2123461, at *5 (S.D. Ind. May 15, 2019).

### 3.  Genesys does not argue that the late reports are substantially justified or harmless.

Violations of Rule 26(a) automatically result in exclusion unless the violation was either justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The burden is on Genesys to demonstrate that the late disclosure of Dineen and Distler's rebuttal reports was justified or harmless. *Id*. Genesys has failed to meet this burden. In fact, Genesys has not even tried to meet this burden. Defendants described in detail why Genesys's late disclosure of the overbroad rebuttal reports was not justified and harmful, addressing all four factors set forth in *David v. Caterpillar, Inc.* D.I. 321 at 29-31. Specifically, Defendants detailed how the late disclosure was both prejudicial and surprising, the prejudice to Defendants is difficult to cure, the necessary steps to cure the prejudice would likely delay the trial, and Genesys's decision to surprise Defendants with the rebuttal reports (after Defendants had already deposed Dineen and Distler) was at a minimum willful, if not in bad faith. *Id*.

Genesys largely ignored the above, only briefly addressing "surprise" and "bad faith." Genesys argues that there was no surprise or bad faith because Defendants should have been aware that Rule 26(a)(2)(D)(ii) allowed them to ignore the Court's case schedule and serve additional expert reports two weeks before the close of expert discovery. This argument fails. First, the Genesys's late rebuttal reports were surprising because they were improper rebuttal reports that disclosed new opinions and evidence. So, Genesys cannot argue that Rule 26 gave Defendants notice that this new information would be disclosed when the scheduling order and Genesys's complete lack of notice commanded otherwise. Second, Rule 26(a)(2)(D) requires Genesys to comply with the Court ordered schedule, which did not include rebuttal reports. Third, Genesys and its witnesses did not disclose the rebuttal reports, even during their

depositions immediately before service of those reports. Thus, Genesys cannot argue that it was proper or expected for Genesys's experts to produce new opinions and evidence after the deadline for new opinions had passed.

As to the remaining factors, Genesys have waived any argument that those factors weigh in favor of the late disclosure being harmless or justified. *Walton v. Chase Home Fin. LLC*, 2012 WL 6596879, at *7 (S.D. Ind. Dec. 18, 2012) (citing *Marcavage v. City of Chicago*, 659 F.3d 626, 638 (7th Cir.2011). As Genesys has failed to meet its burden, the Dineen and Distler's rebuttal reports should be excluded (if not excluded for other reasons addressed herein).

## G.   Genesys's Non-Retained Expert Witnesses are unqualified and provide purported fact testimony, not expert testimony.

### 1.   Coburn's testimony is irrelevant and at best fact testimony.

Talkdesks's motion shows that Coburn is not a qualified expert because Coburn admitted she is not an expert on confidential information or trade secrets and does not know what Genesys information is public. *See* D.I. 321 at 33. Genesys's response fails to dispute these facts or show that Coburn has any qualifications other than being a Genesys employee. *See* D.I. 326 at 33. Genesys's response merely argues that Coburn is qualified because she has knowledge from her time working at Genesys. See D.I. 326 at 33. But Genesys does not show that Coburn's knowledge qualifies her to offer expert opinions about the alleged confidential information she has been designated to testify on.[8] *See* Ex. A at 5. *See Gayton*, 593 F.3d at 617. So, Coburn's

---

[8] To the extent that Coburn has formed opinions about the legal standard of "reasonable efforts" ,these would be impermissible legal conclusions. *United States v. Christian*, 673 F.3d 702, 710 (7th Cir. 2012) ("Expert testimony must be helpful to the jury to be admissible."); *Davis v. Duran*, 277 F.R.D. 362, 366–67 (N.D. Ill. 2011) ("To be helpful, the [expert] testimony must concern a matter beyond the understanding of the average person.");

18

admissions that she is not an expert on confidential information and trade secrets are fatal to her opinions under Rule 702 and *Daubert*, and Coburn cannot testify as an expert witness.

### 2. Ball is unqualified to testify as to the value of purported trade secrets.

Defendants' motion shows that Ball is unqualified to offer expert opinion testimony about the value of Genesys's alleged trade secrets because he has no experience valuing trade secret information and has never done so before this case. *See* D.I. 321 at 34. In response, Genesys does not dispute that Ball lacks any expertise in trade secret valuation, has never valued a trade secret before, and has no methodology for doing so. *See* D.I. 326 at 31. Genesys's concession is fatal to the admissibility of Balls' opinions. Rule 702 applies to non-retained experts, so the fact that Ball lacks any expertise qualifying him to value trade secrets means that he cannot be a qualified valuation expert in this case. *See e.g. Medicines Co. v. Mylan Inc.*, 2014 WL 1227214, at *6 (N.D. Ill. Mar. 25, 2014). Genesys asserts that Ball's lack of expertise is irrelevant because he has experience "with the specific trade secrets at issue." *See* D.I. 326 at 31. This argument misses the point. Ball must have "specialized knowledge" in trade secret valuation to offer opinion testimony about trade secret valuation in this case. Fed. R. Evid. 702; *see Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). Since Ball lacks any such specialized knowledge, exclusion is required.

### 3. Sander's proposed expert testimony is unreliable and irrelevant.

Sanders is a Genesys employee who Genesys identified as an expert about what the steps Genesys allegedly takes to "protect its confidential data." *See* Ex. A. But Sanders testified <u>that he does not know what Genesys information is confidential</u>, and Genesys's response does not dispute this fact. *See* D.I. 326 at 32. Since Sanders does not know what Genesys information is confidential, it is impossible for him to offer relevant lay or expert testimony about what steps

were taken to protect such information. Therefore, exclusion is required at the outset because Sanders does not have the basic knowledge required to offer a reliable opinion. And any testimony concerning specific systems or software used by Genesys would be fact testimony—not expert testimony (if relevant at all).

Genesys is further incorrect to argue that Sander's lack of knowledge about Genesys's confidential information is a subject for cross examination. Rules 702, 703, and *Daubert* command that expert testimony be reliable and based on reliable facts. Sanders plainly cannot offer reliable expert testimony about something that he admits knowing nothing about. Sanders is not a qualified expert, and Genesys points to no expert qualifications other than his employment by Genesys. Exclusion of Sanders' proposed opinions is required by Rules 702, 703, and *Daubert*.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to strike and exclude the opinions and testimony of Green, York, Dineen, Distler, Ball, Coburn, and Sanders.


Dated:  November 12, 2021                                       Respectfully submitted,

                                                                                   */s/ David S. Moreland*
                                                                                   David S. Moreland (*Pro Hac Vice*)
                                                                                   John Harbin (*Pro Hac Vice*)
                                                                                   MEUNIER CARLIN & CURFMAN LLC
                                                                                   999 Peachtree Street NE, Suite 1300
                                                                                   Atlanta, GA 30309
                                                                                   Telephone: (678) 869-7749
                                                                                   Facsimile: (404) 645-7707
                                                                                   Email: dmoreland@mcciplaw.com
                                                                                   jharbin@mcciplaw.com

Jim Strenski
PAGANELLI LAW GROUP
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Telephone: (317) 550-1855
Email: jstrenski@paganelligroup.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2021, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and/or first-class U.S. Mail:

John R. Maley
Thomas C. Payne
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, Indiana 46204-3535
***Counsel for Plaintiff***

*/s/ David S. Moreland*
David S. Moreland

22