UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS CLOUD SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 1:19-CV-00695-TWP-DML |
| ) | |
| TALKDESK, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION/ALTERNATIVE RULE 72(a) PARTIAL OBJECTION TO RULING ON TIMING OF CHALLENGE TO DEFENSE CLAWBACK OF SINGLE NON-PRIVILEGED EMAIL WHEN NO DEADLINE EXISTS BY FEDERAL RULE, LOCAL RULE, CASE MANAGEMENT PLAN, OR ORDER**

Genesys respectfully submits this brief in support of its motion for partial reconsideration or alternative Rule 72(a) partial objection.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Single Email

In discovery in this case, Defendant Manno testified three times (in a declaration and in depositions in November 2019 and November 2020) that he was not aware of having an agreement with Genesys until the post-separation Genesys cease-and-desist letter in November 2018. Similarly, in November 2020 Talkdesk CEO Paiva testified that he and a third-party funding source, Viking Global, would not be aware that the recruited Genesys personnel had agreements with restrictive covenants.

Unbeknownst to Genesys until February of 2021, however, back on August 23, 2018 - in the height of the Defendants' planning the raid of Genesys personnel that was executed in full on October 1, 2018 – Talkdesk's CEO emailed that Talkdesk third-party funding source, Viking Global, disclosing

1

attorney guidance given to Talkdesk. Specifically, the advice was that Talkdesk should not engage Genesys Vice President Ralph Manno at that time because it could be seen as a breach of contract.

Genesys did not learn of this email until it was produced and then reviewed in response to a Genesys discovery request along with multiple other documents in late February of 2021. Within days of learning of the CEO-to-third-party-funder email of August 23, 2018, Genesys wrote defense counsel on March 8, 2021, demanding that Manno and Paiva correct their testimony. [Ex. A]  On March 12, 2021, defense counsel responded, asserting for the first time that – notwithstanding the CEO sharing attorney advice with a third party – that the email was somehow still privileged. [Ex. B] Defendants demanded clawback, which Genesys counsel of course promptly complied by deleting the email in question. Genesys counsel then conferred with defense counsel seeking to resolve the dispute; Talkdesk stood by the assertion of privilege.

**B.     No Deadline**

At that point in time, and still today, **there was not and still is not a deadline** by Federal Rules, Local Rules, Case Management Plan, or Court Order that notifies Genesys of when to bring the clawback challenge before the Court.  Indeed, the clawback itself occurred **after** the February 19, 2021, date that discovery was to be "completed," which per the express language of the Court's Uniform Case Management Plan has only this simple, limited meaning: "The term 'completed,' as used in Section IV.C, means that counsel must serve their discovery requests in sufficient time to receive responses before this deadline."  *Uniform Case Management Plan*, n.1; ECF206 n.1, ECF208 (CMP plan in this case as approved); ECF225 (amending plan).  The Case Management Plan has no deadline for motions to compel or to challenge clawbacks.

As for the Protective Order in this case, ECF52, pursuant to which Talkdesk clawed back the August 2018 email, it likewise had no deadline to challenge clawbacks.  To the contrary, the Protective Order allows clawback "at any time," and is silent as to any deadline for challenging clawback.

Similarly, Federal Rule 37 has **no** deadline, and to the contrary provides, "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Of course, other Federal Rules *do* have deadlines, starting with Rule 4 containing various deadlines. The Federal Rules Committee, Supreme Court, and Congress approved Rule 37(a)(1) effective in 1970.

Likewise, Local Rule 37-1 lacks any deadline to move to compel. Nor could Local Rule 37-1 or any standing order *have such a deadline* because Federal Rule 37 has no deadline, and per Federal Rule 83(a)(1) a "local rule must be consistent with . . . federal statutes and rules." *Accvord*, *Johnson v. Lafayette Fire Fighters Ass'n Loc. 472, Int'l Ass'n of Fire Fighters, AFL-CIO-CLC*, 51 F.3d 726, 729 (7th Cir. 1995) (local rules are in effect standing orders and standing orders cannot conflict with the Federal Rules of Civil Procedure); *In re Dorner,* 343 F.3d 910, 913 (7th Cir. 2003) (standing orders of the court must be consistent with the Federal Rules); *ABS Ent., Inc. v. CBS Corp.,* 908 F.3d 405, 427 (9th Cir. 2018) (local rule requiring a plaintiff to file a motion for class certification 90 days after filing the complaint was incompatible with FRCP 23 that does not set a time limit).

### C. Genesys Raises The Issue With The Court

The undersigned determined – with no deadline established by rule or order – to await disposition of the summary judgment motions to address the clawback and three other remaining discovery-related issues. On February 24, 2022, the Court granted in part and denied in part the pending summary judgment motions. [ECF351] The next day, February 25, the undersigned followed Local Rule 37-1's requirements and emailed the Magistrate Judge's Chambers copying defense counsel, stating:

> Good afternoon.
>
> On behalf of Plaintiff and pursuant to Local Rule 37-1, I am reaching out to hopefully schedule a brief discovery conference with Judge Lynch sometime in March. We have four discovery issues that we have met and conferred with defense counsel on previously, but the parties have not been able to resolve these four:
>   1. Clawback of an asserted privileged email from Talkdesk to Viking Global;

3

      2. Third-party discovery to Viking Global;
      3. Specified damages-related discovery; and
      4. Specific supplementation issues.

> This is not urgent as Judge Pratt just issued her ruling on summary judgment this week and trial has not been rescheduled yet.   I have copied defense counsel on this email.

Defense counsel responded asserting that it was too late to raise these issues.

The Magistrate Judge held a robust status conference to address timing, and issued her Entry and Order from Status Conference [ECF362] on March 18.  The Magistrate Judge ruled that two of the discovery items – numbers (3) and (4) above – were timely raised, and that the first two were not.  The Entry stated, "Litigating those issues now would be disruptive to the orderly management of this case. Moreover, the court's review of the summary judgment briefing and order indicates that the plaintiff would have and should have raised discovery matters pertinent to liability if it found them to be important. That calculus weighs against permitting the issues to be raised at this late date."

    D.    **The Narrow Partial Reconsideration/Partial Rule 72(a) Objection**

Genesys seeks only to have the Court reconsider the single, responsive email produced in discovery by Talkdesk that it subsequently clawed back – after the completion of discovery by the way - on an assertion of privilege.   Genesys does not seek review or challenge the Magistrate Judge's ruling with respect to the third party discovery issue.

## II.    DISCUSSION

    A.    **As A Matter Of Law The Clawback Challenge Must Be Heard**

Deadlines matter in federal litigation, and the undersigned has strived to meet every deadline through 32 years of federal court litigation.  In this setting, however, there simply was not and still is not a deadline established by Federal Rules, Local Rules, Case Management Plan, or Court Order that notifies Genesys of when to bring the clawback challenge before the Court.

Talkdesk argued at the conference that the clawback request was after the "close of discovery" and thus too late. But in this Court the Case Management Plan establishes instead a date for discovery to be "completed," and per the express language of the Court's Uniform Case Management Plan: "The term 'completed,' as used in Section IV.C, means that counsel must serve their discovery requests in sufficient time to receive responses before this deadline." *Uniform Case Management Plan*, n.1; ECF206 n.1, ECF208 (CMP plan in this case as approved); ECF225 (amending plan). The Case Management Plan has no deadline for motions to compel or to challenge clawbacks.

By Talkdesk's position, timely served discovery requests answered 30 days later on the "completed" date could never be challenged as deficient. That certainly not the case, beyond Rule 37 and Rule 83 issues.

Furthermore, the clawback itself occurred *after* the February 19, 2021, date that discovery was to be "completed." Was Talkdesk's clawback untimely? No, because the Protective Order in this case, ECF52, pursuant to which Talkdesk clawed back the August 2018 email, it likewise has no deadline to challenge clawbacks. To the contrary, the Protective Order allows clawback "at any time," and is silent as to any deadline for challenging clawback. It cannot be that Talkdesk can clawback at any time but Genesys cannot do the same.

As for Federal Rule 37, again it has **no** deadline, providing simply, "*On notice* to other parties and all affected persons, *a party may move* for an order compelling disclosure or discovery." No time limitation was provided, and this Rule has been in place for 52 years.

Local Rule 37-1 lacks any deadline to move to compel. Nor could it or any standing order *have such a deadline* because Federal Rule 37 has no deadline, and per Federal Rule 83(a)(1) a "local rule must be consistent with . . . federal statutes and rules."

Thus, in *ABS Ent., Inc.* 908 F.3d 405, the Ninth Circuit held that local rule requiring a plaintiff to file a motion for class certification 90 days after filing the complaint was incompatible with Rule 23

5

that does not set a time limit, and reversed the district court's striking of a class certification motion filed after that Local Rule deadline. The court explained:

> Central District of California Local Rule 23-3 sets a strict 90-day time frame from the filing of a complaint to the motion for class action certification. This bright line rule is in direct contrast to the flexibility of the Federal Rule, which calls for a determination on class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). That flexible approach makes sense. The class action determination can only be decided after the district court undertakes a "rigorous analysis" of the prerequisites for certification. * * * Although the district court's application and interpretation of its Local Rules is entitled to "a large measure of discretion," *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 784 (9th Cir. 1970), Local Rules cannot be incompatible with Federal Rules. Fed. R. Civ. P. 83(a)(1). We conclude that the bright-line of Local Rule 23-3 is incompatible with Federal Rule of Civil Procedure 23.

908 F.3d at 427.

Multiple other federal courts have similarly invalidated Local Rules that contravene federal rules. *See, e.g., Wilson v. City of Zanesville,* 954 F.2d 349, 353 (6th Cir. 1992) (overruled district court's denial of motion to compel for failure to comply with local rule that required moving party to include an affidavit on extra-judicial measures were utilized to resolve the matter prior to motion; "the dictate of the Federal Rules of Civil Procedure clearly superseded the requirements of the local court rules. The court erred in denying Wilson's motion to compel discovery based on his failure to adhere to local court rules in a situation clearly governed by the Federal Rules"); *In re Dorner*, 343 F.3d 910, 913 (7th Cir. 2003) (standing order invalidated as contrary to Federal Rules of Bankruptcy Procedure); (*In re S. Portland Shipyard,* 31 B.R. 770, 777 *(Bankr. D. Me.), aff'd sub nom. In re S. Portland Shipyard & Marine Railways Corp.,* 32 B.R. 1012 *(D. Me. 1983), vacated sub nom. Romeo J. Roy, Inc. v. N. Nat. Bank,* 740 F.2d 111 (1st Cir. 1984) (local rule contravened Fed. R. Civ. P. 53); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 459 (3d Cir. 2000), as amended (Sept. 15, 2000) (local rule that determined timeliness differently than Federal Rule 54 invalid); *Brown v. Crawford Cty., Ga.*, 960 F.2d 1002, 1009 (11th Cir. 1992) (invalidating local rule requiring approval to move for summary judgment; "Federal Rule of Civil Procedure 56 makes no allowance for a preliminary "procedure" by the district court for reviewing,

with the potential of denying, a party's prospective summary judgment motion. Essentially, the local summary judgment "procedure" that has been used in the Middle District of Georgia constitutes advance screening. Under Rule 56, a party is entitled to make a summary judgment motion, which the district court then may decide"); *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 21 (1st Cir. 2000) (invaliding local criminal rule; "Even if a local rule does not contravene the text of a national rule, the former cannot survive if it subverts the latter's purpose"); *McCoy by Webb v. Gen. Motors Corp.*, 226 F. Supp. 2d 939, 942 (N.D. Ill. 2002) (local rule contravened removal statute; "to the extent that Local Rule 81.2 provides the *exclusive* procedure by which defendants may remove Illinois state complaints that lack an express *ad damnum* clause, we believe that it impermissibly contravenes the federal removal statute").

Beyond the inability per Rule 83(a) for courts to establish local rules or orders inconsistent with Federal Rules such as Rule 37, Rule 83(b) directly applies to this setting. It mandates: "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."

Rule 83(b) is a powerful, important part of federal practice. It ensures fundamental fairness so that parties are not disadvantaged for alleged noncompliance with something not in the law, federal rules, or local rules unless *actual notice* of such requirement has been given in the *particular case*. That did not happen in this case. Genesys is being disadvantaged as a result, deprived by Talkdesk of a produced, relevant document that impacts liability and punitive damages.

When litigants have not been given notice and they are disadvantaged by a ruling, error has been found as a matter of law. For instance, in *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 471 (2d Cir. 2002), the Second Circuit vacated summary judgment based on Rule 83(b), writing, "While district courts have considerable latitude in fashioning rules that will assist them in determining

7

whether summary judgment is appropriate, they may not impose sanctions on litigants 'for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator has been furnished in the particular case with *actual notice* of the requirement." Fed.R.Civ.P. 83(b) (emphasis added). We therefore hold that, in the absence of a local rule, a district court may not grant summary judgment on the ground that the nonmovant's papers failed to cite to the record unless the parties are given actual notice of the requirement."

The Seventh Circuit has addressed the importance of Rule 83(b) as well. For instance, in *Farzana K. v. Indiana Dep't of Educ.,* 473 F.3d 703 (7th Cir. 2007), the court vacated and remanded dismissed case. Citing Rule 83(b), the court wrote,

> By refusing to accept complaints (or notices of appeal) for filing, clerks may prevent litigants from satisfying time limits. To prevent this—to ensure that judges rather than administrative staff decide whether a document is adequate—Fed. R. Civ. P. 5(e) was amended in 1993 to require clerks to accept documents tendered for filing. The last sentence of this rule provides: 'The clerk shall not refuse to accept for filing any paper presented for that purpose solely because it is not presented in proper form as required by these rules or any local rules or practices.' See also Fed.R.Civ.P. 83(b). The software that operates an e-filing system acts for the 'clerk' as far as Rule 5 is concerned; a step forbidden to a person standing at a counter is equally forbidden to an automated agent that acts on the court's behalf.'

473 F.3d at 707.

Here, it is undisputed no federal law, federal rule, or local rule provided a deadline to challenge a clawback, and no actual notice was given in this particular case of a deadline. Accordingly, Genesys cannot be disadvantaged per Rule 83(b), and the challenge must be considered.

### B.  As A Matter Of Discretion The Clawback Challenge Should Be Heard

Beyond the legal, matter of law requirements discussed above, as a matter of discretion Genesys should be entitled to be heard on this simple issue. No interruption of orderly case management will occur. No additional discovery will result. No prejudice inures to Talkdesk. Instead, the pursuit of justice and truth will be served by addressing the issue.

### C. The Clawed Back Email Is Not Privileged

The sole basis for Talkdesk's clawback of a document shared with a third-party funding source is attorney-client privilege. To start with, "As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed." *Thomas v. Bowman Heintz Boscia & Vician, P.C.*, No. 108CV0042-WTL-TAB, 2008 WL 5070471, at *2 (S.D. Ind. Nov. 26, 2008) (quoting *In re Walsh*, 623 F.2d 489, 493 (7th Cir.1980)). "The scope of the privilege should be strictly confined within the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983). "Further, because the privilege is in derogation of the search for the truth, it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). And, "Generally, privileges are disfavored because they are in derogation of the search for truth; thus, courts have been historically cautious about their application." *Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 204 (S.D. Ind.), on reconsideration in part, 286 F.R.D. 411 (S.D. Ind. 2012).

With that backdrop, Talkdesk has asserted that there is somehow a common interest privilege that extends to its third-party funding source. [Ex. B] Not so, as explained below should the Court reconsider the timeliness issue or grant Rule 72(a) partial objection.

#### 1. Federal Common Law Applies to Privilege Determinations in this Action.

Whenever there is a claim in federal court that arises under federal law, coupled with pendent jurisdiction over a state claim, federal common law of privileges applies. *Jones v. City of Indianapolis*, 216 F.R.D. 440, 443 (S.D. Ind. 2003); *Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1062 (7th Cir. 1981) ("The principal claim ... arises under ... a federal law. Because the state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought ... is privileged. Instead, the question of whether the privilege asserted ... should be recognized is governed by federal common law.").

9

### 2. The Common Interest Doctrine is a Narrow Exception to be Applied Only in Limited Circumstances.

The common interest doctrine is an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person, and extends the attorney-client privilege to otherwise non-confidential information in *limited* circumstances. *U.S. v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007) (emphasis added). The Seventh Circuit has held that the scope of the attorney-client privilege should be "strictly confined to the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

The common interest doctrine will only apply "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *BDO Seidman, LLP*, 492 F.3d 806, 815–16. The common interest doctrine is designed to encourage "parties with a shared legal interest to seek legal 'assistance in order to meet legal requirements and to plan their conduct' accordingly." *Id.* at 815 (quoting *In re Regents of the Univ. of California,* 101 F.3d 1386, 1390–91 (Fed. Cir. 1996).

The common interest doctrine is applicable when "(1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further said ongoing legal enterprise." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020). "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Id.* at 515. The party asserting the common interest doctrine bears the burden of showing it applies. *Id.* at 514. Furthermore, it may not be used as a "post hoc justification for a client's impermissible disclosures*." McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239–40 (N.D. Ill. 2014).

### 3. The Common Interest Doctrine Should not Apply to the Email at Issue Because Talkdesk and Viking Global Do Not Share a Common Legal Interest.

Courts in the Seventh Circuit "have held that communications with lenders, financiers, or other parties whose sole interest in a case is financial are not entitled to common interest privilege protections." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 516 (N.D. Ill. 2020); *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732-33 (N.D. Ill. 2014) ("The funders, for their part, were interested in profit.... [They] did not share a common legal interest, and materials shared with any actual or prospective funders lost whatever attorney-client privilege they might otherwise have enjoyed."); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 328 (N.D. Ill. 2008) (holding that because the third party only had a financial interest in this case the common interest doctrine did not apply to the plaintiff's attorney's communications with the third party and its attorneys).

The decision in *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732-33 (N.D. Ill. 2014) is instructive. In this case, Miller sued Caterpillar for misappropriation of its trade secrets. During the litigation, Miller entered into a contract with a third-party litigation funder. Throughout discovery, Miller refused to produce documents it provided about the case to the funding source, asserting that those documents were protected by the attorney-client privilege and work product doctrine, and that those privileges were not waived by disclosure to the potential funders. The court rejected Miller's argument, stating that the "common interest" doctrine is strictly limited to communications made in furtherance of a joint effort with respect to common legal interest. *Id.* at 733. The court held that "a shared rooting interest in the successful outcome of the case"—exactly what Miller alleges, is not a common *legal* interest. *Id.* (emphasis in original). Furthermore, the court held that Miller was not looking for legal advice or litigation strategies in these communications, and the funders were only interested in profit. *Id.* Therefore, the court found no common legal interest between Miller and its funding source, and sharing materials with the funders waived whatever privilege it may have otherwise enjoyed. *Id.*

Likewise the court in *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) ruled that in an antitrust litigation against competitors in a data-integration market, the common interest doctrine did not apply to the communications plaintiffs shared with its lender. Specifically, the plaintiff, Authenticom, disclosed privileged information to BMO Harris, Authenticom's lender on a loan that Authenticom used to re-purchase the shares of investors in April 2014. Notably, the court held that any interest plaintiffs shared with BMO Harris was purely financial, and not a common legal interest. *Id.* at 516.

Moreover, when two parties embark on a common business enterprise and develop a business strategy that happens to include a concern for litigation, this is not grounds for invoking the common interest rule. *See Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 473 (S.D.N.Y. 2003). Such a desire "does not transform their common interest and enterprise into a legal, as opposed to commercial, matter." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002).

Here, Viking Global's investment in Talkdesk does not create a common legal interest between the two entities. *See Finjan, Inc. v. SonicWall*, Inc., No. 17CV04467BLFVKD, 2020 WL 4192285, at *4 (N.D. Cal. July 21, 2020) (finding that a party investing in another company and its sole interest as a shareholder did not create a common legal interest between the two parties). As an investor in Talkdesk, Viking Global has no shared *legal* interest with Talkdesk in the current litigation. It is not a party to the litigation, nor are any of its legal rights implicated in this litigation. *See id.* (finding no common legal interest between a company and its investor where none of the investor's legal rights were implicated in the litigation and the parties did not anticipate joint litigation when the communications were made).

Viking Global's only interest, if any, in the current litigation would be a financial or "shared rooting interest in the successful outcome of the case," *Miller UK Ltd..*, 17 F. Supp. 3d 711 at 733,

12

because a judgement against Talkdesk would lead to some financial loss, and Viking Global has an interest in Talkdesk's financial success as an investor. This type of interest, though, has been explicitly rejected by courts in the Seventh Circuit as insufficient to give rise to a common legal interest. *See id.* Accordingly, because Viking Global and Talkdesk share no identical legal interest, the common interest doctrine does not apply.

Moreover, the email communication at issue involves Viking Global asking Talkdesk for various business and financial information as part of their joint business enterprise. That the email mentions a concern for a possible breach of contract action does not convert the parties' purely commercial or financial interest into a legal one. *See Bank of Am., N.A. v.* 211 F. Supp. 2d at 497 (a concern for avoiding litigation does not transform a commercial interest into a legal one). To be protected, the disclosure must have been made in the course of "formulating a common legal strategy or otherwise furthering the parties joint interest in this litigation" *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007); *see also McCullough v. Fraternal Ord. of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) ("[F]or the doctrine to apply, and the person with whom the privileged information is shared with must have an *identical*—not merely similar—*legal* interest in the subject matter of the communication, which must be made in the court of furthering the ongoing, common enterprise.") (Emphasis in original).

Here, there is nothing to indicate that Talkdesk made this disclosure as part of a joint legal strategy for the current litigation. Notably, at the time the email was sent in August of 2018, the current litigation had not yet commenced, nor was there even an impending threat of litigation at this time, demonstrating that that the communications were not part of any joint legal strategy, since none could have then existed. *See Bank of Am., N.A. v.* 211 F. Supp. 2d at 497 (finding no common legal interest between a bank and insurance company, highlighting the fact that there was no concern regarding the current litigation when the communications were made, stating "[t]ellingly, there is no

evidence of any concern in 1999 regarding litigation; the dispute regarding the reinsurance policies came to light only in 2000."); *Finjan, Inc.*, No. 17CV04467BLFVKD, 2020 WL 4192285, at *4 (finding no common legal interest between a company and its investor, noting that the parties did not anticipate joint litigation when the communications were made).

Furthermore, no attorney was involved in the email disclosure at issue—rather Talkdesk was relaying information it had received from its attorney to a third party. Courts in the Seventh Circuit have held that to retain protection from disclosure under the common interest doctrine, the communications must have been made in the presence of an attorney or directed by an attorney. *See McCullough*, 304 F.R.D. at 239 ("[C]ommunications between those claiming a common interest in the matter will not escape the waiver doctrine if they occurred in the absence of an attorney or were not directed by an attorney.").

Thus, while the common interest doctrine may apply in certain circumstances to communications between two non-attorneys with identical legal interest, the party claiming the privilege must show: "(1) one party is seeking confidential information from the other party on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work product that is related to the litigation." *Zitzka v. Vill. of Westmont*, No. 07 C 0949, 2009 WL 1346256, at *2 (N.D. Ill. May 13, 2009). Here, nothing in the email communication at issue indicates that Viking Global was seeking confidential information from Talkdesk on behalf of its attorney in order to satisfy the first prong. Rather, Talkdesk voluntarily disclosed the information—Viking Global did not request it. Additionally, since there was no ongoing or impending litigation at the time of the communication, the communications are not work product related to the current litigation in order to satisfy the third prong. As such, by disclosing the information contained in the email to Viking Global, Talkdesk waived any privilege that may have otherwise applied.

## III. CONCLUSION

The undersigned has tremendous respect for the Magistrate Judge, and recognizes that he could have brought this clawback challenge earlier in the case and avoided this timeliness dispute. But litigators live by deadlines, and there simply was not and is not a deadline for this clawback challenge. Counsel was not required to bring the issue to the Court earlier, as Rule 83(b) confirms.

The undersigned – the day after summary judgment ruling and with no trial date set – promptly brought the issue to the Court's attention. The issue is a simple and narrow one involving a single email, nothing more. Addressing the narrow issue will not disrupt orderly management of the case and will not prejudice Talkdesk (having to return the clawed back, responsive, non-privileged document in the pursuit of truth and justice is not prejudice).

Accordingly, Genesys respectfully requests that the clawed back email be returned for use in this trial.

Respectfully submitted,

GENESYS CLOUD SERVICES, INC.

By its Attorneys,

*s/John R. Maley*
John R. Maley (14300-89)
Thomas C. Payne (34727-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:   (317) 236-1313
Email:          jmaley@btlaw.com
                    tpayne@btlaw.com