UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| GENESYS CLOUD SERVICES, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| TALKDESK, INC., et al | ) | CASE NO. 1:19-cv-00695-TWP-DML |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DAMAGES DISCOVERY PRODUCTION AND SUPPLEMENTATION OF PRIOR RESPONSES UNDER RULE 26(e)

Genesys Cloud Services, Inc., ("Genesys"), by counsel, submits this brief in support of its Motion to Compel pursuant to Federal Rule of Civil Procedure 37(a), Local Rule 37-1, and in accordance with the Court's March 18, 2022 Entry and Order from Status Conference. [Dkt. 362]. Specifically, Genesys seeks an order compelling Defendant Talkdesk to produce responsive data to two damages discovery requests timely requested by Genesys and to supplement prior discovery responses related to damages issues in compliance with Rule 26(e).

## I.     FACTUAL BACKGROUND

Throughout discovery, Talkdesk has stymied Genesys' reasonable attempts to discover evidence related to Genesys' full damages in this case. Talkdesk has done this by both objecting to plainly relevant damages discovery and also by failing to supplement *any* discovery responses from earlier in the litigation. Genesys is entitled to this discovery and is prejudiced by not receiving plainly relevant damages discovery.

Indeed, faced with undeniable facts of wrongdoing, Defendants, and Talkdesk in particular, have argued Genesys' case fails due to a lack of damages. For example, Defendants made this argument several times at summary judgment:

- "Besides PowerSchool, Genesys does not point to a single customer it alleges it has lost due to the alleged wrongdoing in this case." [Dkt. 271 at 19]

- "Genesys also lacks a causal basis for any claim of harm." [Dkt. 271 at 33].

- "[N]o lost sales can be attributed to Defendants." [Dkt. 271 at 34].

- "Genesys does not even attempt to show a single instance where a prospective customer from the PureCloud list was approached or converted to Talkdesk." Dkt. 271 at 52.

- "There is no evidence to support any harm resulting from any of Genesys's claims." [Dkt. 290 at 18].

- "[Genesys] does not assert that it has lost a single customer to Talkdesk based on any alleged improper actions." [Dkt. 290 at 18].

In its objections to the damages discovery at issue in this motion, Talkdesk again argued that Genesys had not "provide[d] the identity of any specific customers found on the 'PureCloud List' or in the 'NPS Data' that it believed were lost to Talkdesk." [Ex. A].

The parties know this is not true, indeed the Court found that Genesys suffered harm as a matter of law when it granted summary judgment in favor of Genesys on claims of breach of contract and breach of fiduciary duty of loyalty, which require damages and harm, respectively. [Dkt. 348 at 18-25, 28-30]. Genesys suffered extensive harm in its loss of personnel raided by Talkdesk, in replacing that raided personnel, and in financial harm in the fourth quarter of 2018 when the mid-market group performed only 45% to quota, during a period of time immediately after the raid when Talkdesk was using the PureCloud List. [Dkt. 266 at 15; *see also* Dkt. 348 at 29]. The extent and calculation of Genesys' full damages remains a key point of contention in this case as Talkdesk moved for reconsideration of the Court's Order on summary judgment and again argued Genesys has not proven any damages or harm:

- "Defendants put forth evidence that, when viewed in the light most favorable to Defendants, creates a genuine issue of fact as to whether Genesys was harmed at all by any allegedly breaching acts." [Dkt. 366 at 10].

- [A] reasonable jury could find that the evidence shows that Genesys did not suffer any harm due to the actions of the Defendants." [Dkt. 366 at 11].

Talkdesk cannot be permitted to refuse to produce and supplement plainly relevant damages discovery while attacking the Genesys damages that resulted from its misconduct at issue in this case. A key example, the stolen PureCloud List was used by Talkdesk to call on Genesys customers in the fall of 2018. [Dkt. 266 at 11]. Talkdesk used the list to target Genesys customers and encouraged Talkdesk sales employees to use the list to call on Genesys customers. *Id.* Yet, Talkdesk refuses to produce evidence of any sales to the Genesys customers on the PureCloud List, refuses to provide its Customer Relationship Management (CRM) Data form the relevant period of time related to the Genesys customers on the PureCloud List, and even refuses to supplement discovery it already provided regarding the sales histories of the Defendants and Talkdesk's sales to Genesys customers. This motion to compel seeks to rectify that disadvantage and permit Genesys to receive this plainly relevant damages discovery.

  **A.**   **Genesys Seeks Relevant Sales Or Bookings Data And CRM Data Related To Customers On The Stolen PureCloud List.**

Genesys timely served two narrow damages discovery requests for production on March 24, 2021 that sought:

  29.   For the time period January 1, 2018 to present, please produce customer-specific Sales Data or Bookings Data for any Talkdesk product or solution that was sold to any company or related entity listed in the Genesys PureCloud List (see e.g., TD 0236040-71) or the "Account" column of the Genesys NPS Data (see e.g., TD 001979).

  30.   For the time period January 1, 2018 to present, please produce Talkdesk's customer specific CRM Data (e.g., Salesforce or other CRM software data), including any notes taken or attachments included within the CRM software, for each company or related entity listed in the Genesys PureCloud List (see e.g., TD 0236040-71) or the "Account" column of the Genesys NPS Data (see e.g., TD 001979).

[Ex. B].

3

30 days later, Talkdesk responded to the discovery requests with objections and a refusal to produce any of the requested information. [Ex. A]. Talkdesk objected that the requests were not commensurate with the needs of the case and sought discovery over liability issues after the close of the liability discovery period. *Id.* Talkdesk also argued that even if it had instances of specific customers in its sales data or bookings data that happened to be on the PureCloud List or in the NPS document, such facts would be "irrelevant" because Genesys cannot have a monopoly over its customers. *Id.*

Talkdesk also argued Genesys was not entitled to the information because Genesys had failed to provide the identity of any specific customer found on the PureCloud List or NPS Data that it had lost to Talkdesk. This discovery is sought by Genesys **because** it would provide the information needed to further identify and calculate Genesys' extensive damages associated with lost customers.

In an attempt to resolve the discovery dispute in accordance with Local Rule 37-1, the parties' met and conferred on April 28, 2021 and Genesys followed with a narrowed proposal that sought damages discovery on just 44 of the PureCloud List companies (out of more than 1,200 total on the PureCloud List) and 0 from the NPS Data. [Ex. C, p. 3-4]. Genesys still sought the full CRM data and sales or bookings data from Talkdesk on this narrow subset of companies. *Id.* Talkdesk in response proposed that for those 44 companies it would only 1) search its CRM database for each of the 44 companies; 2) provide the date the company was added to its database; and 3) identify if it has ever sold to the customer. *Id.* at 1. Genesys declined, explaining that it was seeking the full sales or booking data and CRM data for the 44 customers because that is what was needed to fully calculate its damages. *Id.* Indeed, Talkdesk's proposal would not give any of the needed sales information needed to calculate damages. Genesys requested a response by Friday, May 21, 2021, but never received a response. *Id.* Through this motion, Genesys seeks the same narrowed scope that it sought in May 2021: full CRM and sales or bookings data on the 44 identified customers on the PureCloud List.

**B.    Talkdesk Previously Provides Discovery On Former Genesys Employee Sales Histories And Talkdesk's Sales to Genesys Customers, But Later Refuses to Supplement That Information.**

In the same attempt to secure from Talkdesk relevant damages information to combat Defendants' specious attacks on Genesys' damages, Genesys specifically sought supplementation of prior discovery under Federal Rule of Civil Procedure 26(e). [Ex. D, p. 3]. While Genesys maintains that the Defendants are obligated to supplement **all** prior discovery responses, as is required of them by the Federal Rules of Civil Procedure 26(e), the key damages discovery responses that Genesys requested supplementation of were Interrogatories 6 and 8 and Requests for Production 15 and 18. Counsel for Genesys explained to counsel for Talkdesk:

> David,
>
> Genesys' prior discovery requests also cover the type of information we are seeking, and thus we would ask Talkdesk to supplement the following responses consistent with rule 26(e).
>
> Specifically, Genesys' sixth interrogatory sought information on business obtained by Talkdesk that came from former Genesys customers since September 1, 2018. Talkdesk responded and identified several such customers up to that point in time (May 2019). Further, Genesys' eighth interrogatory sought information on revenue generated by the Talkdesk employees who had previously worked for Genesys. Talkdesk responded and identified such information up to that point in time. Lastly, Genesys' fifteenth and eighteenth requests for production sought documents depicting customers or potential customers or accounts called upon by the named individual Defendants, as well as those individual Defendants' sales histories. Talkdesk responded and produced responsive documents up to that point in time.

[Ex. D]. Specifically, in responding to those discovery requests in May 2019, Talkdesk produced information on the Genesys customers it had sold to since September 1, 2018, and the sales histories of the raided Genesys employees. [Ex. E, p. 7-8, 19-20; *see also* Ex. F, p. 8, 10, 24-25].

But in April 2021, when asked by Genesys to supplement these four discovery responses, Talkdesk responded that it did not believe it needed to supplement its prior discovery responses because that discovery occurred during the preliminary injunction phase of the case. [Ex. D, p. 1-3].

5

When this Court granted Genesys' motion to commence discovery on March 7, 2019, it did not limit the applicability of that discovery *only* to preliminary injunction and jurisdictional matters, it simply permitted the parties to begin discovery early to address those issues. [Dkt. 37]. Nothing in that Order limited the application of the expedited discovery to the merits of the case and the Court did not exempt either party from compliance with Rule 26(e). *Id.*

Notably, Talkdesk uses this supplementation argument only where it suits its strategy, as it has previously supplemented discovery from that period of the case where it thought it beneficial. For example, on February 19, 2021, Defendants served a letter supplementing employee information that had been requested in Interrogatory 5 served on March 6, 2019 and responded to by Talkdesk on May 31, 2019. [Ex. G; *see also* Exs. E, F]. Talkdesk specifically acknowledged in that letter, less than two months before it refused to supplement the information at issue in this motion, that it was supplementing discovery from the preliminary injunction phase of the case, noting:

> During recent depositions an interrogatory response from Talkdesk was referenced (Interrogatory Response Number 5) that was previously provided by Talkdesk on May 32 [sic], 2019 **during the preliminary injunction and motion to dismiss phases** of the case. The information in that chart is outdated. Accordingly, **please find below a revised chart amending the information previously provided in that interrogatory response**.

[Ex. G (emphasis added)]. Similarly, on November 5, 2020, Defendants produced a Joint Defense Agreement after counsel for Genesys had explained it was responsive to its prior discovery requests from the preliminary injunction phase of the case. [Ex. H].[1]

### C. Statement of Compliance With Local Rule 37-1.

As previously noted, the parties initially met to confer over this dispute on April 28, 2021, during which conference counsel for Genesys, John Maley and Thomas Payne, conferred with counsel for Defendants, David Moreland, in an attempt to resolve the dispute. [*See* Exs. C, D]. The parties

---

[1] Genesys has omitted the document attached to this email as it is marked confidential and is not relevant to resolution of the dispute at issue in this motion.

6

exchanged proposals on the issue of damages discovery but were not able to reach a resolution. [Ex. C]. After receiving the summary judgment order in this case, Mr. Maley contacted Magistrate Judge Lynch regarding this dispute and a conference was held on March 17, 2022. Pursuant to the Court's March 18, 2022 order, the parties again met, Mr. Maley, Mr. Payne, Mr. Moreland and also Warren Thomas, counsel for Defendants, to discuss these issues. Genesys made a final narrowed proposal, further reducing its request from 44 customers on the PureCloud List to 35, but did not receive a response to that proposal.

### III. DISCUSSION

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). For discovery purposes, "[r]elevancy is construed broadly and encompasses any matter that bears on, or reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Hunt v. Hubler Chevrolet, Inc.*, No. 1:18-CV-01505, 2019 WL 1043163, at *2 (S.D. Ind. Mar. 4, 2019) (quotations and citations omitted).

The Court enjoys significant discretion in ruling on a motion to compel. *Gile v. United Airlines,* 95 F.3d 492, 495-96 (7th Cir. 1996). In exercising that discretion, the Court must carry out the "strong public policy in favor of disclosure of relevant materials." *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002) (citing Fed.R.Civ.P. 26(b)(2)). As the objecting party, it is Talkdesk's burden to show why Genesys' requests are improper. *Hunt*, 2019 WL 1043163, at *2.

### A. The Court Should Compel Talkdesk To Produce Sales Or Bookings Data And CRM Data Related To The Narrowed Request Of 44 Customers On The Stolen PureCloud List.

CRM and sales or booking data is plainly relevant to Genesys' calculation of its damages. Indeed, Talkdesk argues that Genesys has not shown any lost sales resulting from Defendants' conduct and this discovery is relevant to that issue. [*See e.g.*, Dkt. 271 at 19, 34; Dkt. 290 at 18]. CRM

7

and sales or booking data is also proportional to the needs of the case. Again, Talkdesk repeatedly attacks Genesys' extensive damages and the information Genesys seeks to compel is narrow (only 44 companies) and vital to Genesys' calculation of damages.

Courts routinely compel production of sales-related information in similar cases. In *Share Corp. v. Momar Inc.*, No. 10-CV-109, 2011 WL 2600740, at *3 (E.D. Wis. June 29, 2011), the court granted a plaintiff's motion to compel sales data, including copies of "all call reports, call logs, solicitation efforts, sales reports, and other documents that reflect either the calling upon or the sale of product to the customers listed on the attached Exhibits [sic] A." Genesys' requests are similar, and if anything more narrow, than those compelled in *Share Corp. v. Momar Inc.*

In *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1995 WL 743813, at *1 (N.D. Ill. Dec. 12, 1995), the Court held that a plaintiff was entitled to documents in defendant's possession that would assist plaintiff in determining, "how, and to what extent, its losses were caused by Defendants' use of confidential information to convert customers" noting, "[t]he purpose of discovery is to uncover exactly the type of information sought by [plaintiff]." *Id.* Defendants in that case argued that the plaintiff was not entitled to the information because it "is still unable to specifically identify lost customers or diminished competitive product sales attributable to wrongful conduct of Defendants." *Id.*

Similar here, while Talkdesk attacks the damages Genesys has suffered as a result of Defendants' wrongdoing, Genesys seeks this information to fully calculate those damages resulting from Defendants' wrongdoing, including the use of Genesys' confidential trade secret information. *See also Auge v. Stryker Corp.*, No. 14-CV-1089, 2018 WL 4854634, at *2 (D.N.M. Oct. 5, 2018) (granting plaintiff's motion to compel supplemented sales data related to defendant's sales of products purportedly misappropriated from plaintiff); *Milliken & Co. v. Evans*, No. 7:14-CV-4422-BHH, 2016 WL 11530305, at *5 (D.S.C. July 22, 2016) (holding that defendant's customer information – including

8

identification of **all customers** – was relevant and discoverable and granting plaintiff's motion to compel in a trade secret misappropriation case because such information allowed plaintiff to determine whether, and to what extent, defendant targeted plaintiff's customers).

Further, Genesys' request is reasonable given the scope of this case. Genesys' request is to compel Talkdesk's production of CRM Data and sales or booking data sought in Requests for Production 29 and 30, but limited to the 44 customers previously identified. [Ex. C, p. 3-4].

**B.     The Court Should Compel Talkdesk To Supplement Its Discovery Responses Consistent With Rule 26(e).**

Talkdesk has an obligation to supplement all discovery under Rule 26(e):

**(e) Supplementing Disclosures and Responses.**

> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
>> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>>
>> **(B)** as ordered by the court.

As this Court already ruled, Rule 26(e) applies through trial and is not limited to the discovery period. *See* Dkt. 362 at 2 (the duty to supplement "extends to the time of trial; the duty does not end at the discovery deadline.")[2]

In *Humphrey v. City of Anderson*, 1:19-cv-764, 2021 WL 1740070, at *2 (S.D. Ind. Mar. 19, 2021), the Court explained, in compelling production of documents after the close of discovery, that "the

---

[2] Notably, this Court already disagreed with the argument that preliminary injunction discovery need not be supplemented, finding in its March 18, 2022 Entry: "as to any dispute about the duty to supplement defendants' earlier discovery responses, that duty extends to the time of trial; the duty does not end at the discovery deadline. The court rejects the defendants' argument that that principle doesn't apply here because the discovery requests at issue were served during the first phase of discovery on preliminary injunction and personal jurisdiction issues rather than after the resolution of those issues and the adoption of a case management plan. It was clear to the court that some of the discovery during that first phase necessarily focused on merits issues in the case, and the court sees no basis for some exception to the duty to supplement." [Dkt. 362, 2-3].

9

search for the truth does not end at the close of discovery" and "Federal Rule of Civil Procedure 26(e)) requires that a party who has made a disclosure under rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. **Nowhere in the Rule is it stated or implied that the obligation to supplement ceases with the passage of the discovery deadline**." (citing *Francis v. AIT Lab'ys*, No. 1:07-CV-0626-RLY-JMS, 2008 WL 2561222, at *1 (S.D. Ind. June 26, 2008) (emphasis added); *see also Scranton Gillette Communications, Inc. v. Dannhausen,* 1998 WL 566668 at *1 (N.D. Ill. 1998) ("[T]he duty to supplement discovery requests lingers on without subsequent solicitation.")

Also, Courts have acknowledged that even expedited preliminary injunction discovery needs to be supplemented later in litigation. In *Inventus Power v. Shenzhen Ace Battery,* No. 20-cv-3375, 2020 WL 8254383 (N.D. Ill. Nov. 12, 2020), the defendant requested a stay of its responses to expedited preliminary injunction discovery until after device inspection was complete, but the court denied the stay so that expedited discovery could proceed. The court noted, "[o]f course, if a later inspection of defendant's computer devices reveals additional information and documents responsive to plaintiffs' requests, defendant can – **and must** – supplement any prior responses under Rule 26(e)(1)." *Id.* at n. 2 (emphasis added).

In *SEC v. Wojeski,* 752 F.Supp.2d 220, 222 (N.D.N.Y 2010), the SEC moved for reconsideration of the court's denial of its motion for preliminary injunction aimed at freezing a trust's assets. The SEC argued that the trust had failed to disclose a key Annuity Agreement before the preliminary injunction hearing, producing a copy for the first time weeks after the hearing. *Id.* at 223-225. In analyzing the motion for reconsideration and related discovery dispute, the Court noted that

*prior to the preliminary injunction hearing,* the SEC sought discovery in various ways which would have covered the Annuity Agreement, but it was not provided by the trust. *Id.*

The Court specifically held "the fact that the decision on July 7, 2010 resolved the SEC's motion as to the Trust did not relieve Dunn [the Trust's attorney] or the Trust of its duty to supplement its responses to the subpoena whenever they discovered the Annuity Agreement documents." *Id.* at 227 (citing FRCP 26(e); C. Wright, A. Miller, & R. Marcus, *Federal Practice and Procedure* § 2049, p. 601 (1994); *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Restaurant Employees Int'l Union,* No. 00 Civ. 3613(LAP), 2004 WL 1943099, at *25 (S.D.N.Y. Aug. 27, 2004) ("the individual defendants and their counsel may not engage in parallel know-nothing, do-nothing, head-in-the-sand behavior in an effort consciously to avoid knowledge of or responsibility for their discovery obligations and to obstruct plaintiff's wholly appropriate efforts to prepare its case.") Thus, even where a party receives a favorable preliminary injunction ruling, as Talkdesk did in this case, it still has an obligation to later supplement discovery that occurred prior to that decision.

Pursuant to Rule 26(e), all Defendants, including Talkdesk, have a duty to supplement all discovery responses. Genesys seeks in this motion an order compelling Talkdesk to supplement its discovery responses from this case that were provided in 2019, including Interrogatories 6 and 8 and Requests for Production 15 and 18.

### C. The Motion Is Timely.

The Court found this dispute and motion timely in its March 18, 2022 Entry, noting that there is no bright line rule as to when a motion to compel must be brought and that it depends on the "facts and circumstances of the case" which in this case include "the damages discovery deadline was not until late September, 2021—a point at which all claims in the case were the subject of the parties' cross-motions for summary judgment, and the court's ruling on the motions for summary judgment did not address damages issues." [Dkt. 362 at 2]. Further, Genesys brought this dispute to the Court

immediately after receiving a ruling on the parties' cross-motion for summary judgment and more than 5 months remain before trial.[3]

Respectfully submitted,

/s/ *John R. Maley*
John R. Maley (14300-89)
Thomas C. Payne (34727-49)
BARNES & THORNBURG LLP
Telephone:	(317) 236-1313
Email:	jmaley@btlaw.com
	tpayne@btlaw.com

*Attorneys for Genesys Cloud Services, Inc.*

---

[3] Moreover, as set forth in detail in Genesys' Motion to Reconsider, [ECF367], neither the Federals Rules, Local Rules, Case Management Plan, nor any order in this case can place a deadline on when to move to compel. Pursuant to Fed. R. Civ. P. 83(b), "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."