**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

GENESYS CLOUD SERVICES, INC.,    )
                                 )
                    Plaintiff,   )
                                 )
         vs.                     ) Civil Case No. 1:19-CV-695-TWP-DML
                                 )
TALKDESK, INC., et al.,          )
                                 )
                    Defendants.  )

### DEFENDANTS' MOTIONS IN LIMINE

Comes now Defendants Talkdesk, Inc., Ralph Manno, Michael Strahan, and Mark Hertel ("Defendants"), by counsel, and request the following *in limine* relief and exclusions in advance of the upcoming trial in this action:

I.   **MIL NO. 1: Preclude Genesys from introducing evidence, argument, or inferences relating to damages for which Genesys has failed to provide adequate disclosures.**

Rule 26(1)(A) requires the plaintiff to disclose a *computation* of "each category of damages claimed … including materials bearing on the nature and extent of injuries suffered" and to timely supplement the Rule 26 disclosures over the course of the case. Fed. R. Civ. P. 26(a)(1), 26(e). This requirement is not satisfied by merely reciting conclusory allegations or possible categories of harm. Instead, courts routinely preclude assertions of damages where the plaintiff only provides "categories of damages that they seek" as opposed to a disclosure providing a "computation of those damages." *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-CV-268 JD, 2017 WL 3016385, at *2 (N.D. Ind. July 17, 2017); *Miller v. Polaris Lab'ys, LLC*, No. 1:11-CV-01004-TWP-DML, 2016 WL 1639087, at *4 (S.D. Ind. Apr. 26, 2016) (Pratt, J.).

This is for good reason. "The word 'computation' [in Rule 26] contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages," and instead requires disclosure of "the basic method or formula by which [the Plaintiff] contends its damages should or will be calculated." *Jones v. Wal-Mart Stores, Inc.*, No. 2:15-CV-1454-LDG-GWF, 2016 WL 1248707, at *3 (D. Nev. Mar. 28, 2016) (collecting cases); *Tovar Snow Pros., Inc. v. ACE Am. Ins. Co.*, No. 20-CV-01060, 2021 WL 4745376, at *4 (N.D. Ill. Oct. 12, 2021). Further, "[t]he disclosure should be more specific and in greater detail the closer it is made to the end of discovery and the trial date." *Jones*, 2016 WL 1248707, at *3.  And "the computation is especially necessary when plaintiff seeks complex damages such as lost profits.'"[1] *Gumwood*,

---

[1] MIL No. 2 further explains why references to alleged "lost profits" or "lost sales" should be excluded.

2017 WL 3016385, at *2 (quoting *Robinson v. Champaign Unit 4 Sch. Dist.*, 412 F. App'x 873, 878 (7th Cir. 2011)).

Accordingly, undisclosed and "black box" damage claims—which merely cite possible categories of damages but fail to set out the Plaintiff's actual computations (including methodology)—are automatically excluded in this Circuit absent a showing that the lack of disclosure is substantially justified or harmless.  *See, e.g.*, *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011) (affirming exclusion of damages claim under Rule 26 where Plaintiff set forth a ballpark estimate of damages but "nothing in the record—not even Draiman's declaration—shines light into the black box of [the Plaintiff's] damages calculation process."); *Gumwood*, 2017 WL 3016385, at *2.

Here, Genesys has failed to satisfy the computation requirement of Rule 26 for all but three of its claims (as outlined below), and Genesys cannot justify its failures.  Indeed, after well over two years of discovery, and express notice from Defendants that Genesys's allegations of harm were unsupported and inadequate, Genesys still consistently refused to provide *computations* of its alleged damages for most of its claims.  In most cases, Genesys has **not even provided** *a specific number* to support a computation.  And in other instances—where Genesys has disclosed a number—it has done so without providing ***any methodology or actual computation*** to support how it arrived at these "black box" dollar amounts. Such choices to withhold damage computations and supporting documentation of damages were at Genesys's "own peril, and the proper result is the exclusion of any evidence of damages." *See, e.g.*, *Miller*, 2016 WL 1639087, at *4.

In addition to not being substantially justified, Genesys's failure to provide its methodology, computations, and evidence is not harmless.  The purpose of Rule 26's

2

computation requirement is to put Defendants on notice of how the Plaintiff is computing its purported damage claims so that Defendants may respond during discovery—not at trial. *See, e.g., Gumwood*, 2017 WL 3016385, at *3 n.1. Indeed, "[w]ithout an idea of where the … numbers were coming from," Defendants are "unable to investigate and raise arguments against the claimed damages." *Dynegy*, 648 F.3d at 514–15 (concluding such omission of computation was "not harmless"); *see also Gumwood*, 2017 WL 3016385, at *6. (noting that allowing undisclosed damages theories at trial "would be extremely prejudicial"); *Miller*, 2016 WL 1639087, at *4. If Genesys were allowed to proceed at trial on such conclusory and unsupported damages claims, Defendants would not know *until trial* how Genesys seeks to compute damages for each count in this case, including all counts against the individual Defendants. It would of course be prejudicial to Defendants to be required to respond to Genesys's myriad of undisclosed and non-computed damages assertions for the first time at trial. Thus, because of the lack of justification and the prejudice that would result, automatic exclusion is warranted.

A brief outline of salient facts is provided below:

- Genesys's initial complaint (D.I. 1) was filed on February 15, 2019. It did not include any disclosure of alleged damages or any computation relating thereto.

- Genesys's initial disclosures pursuant to Rule 26 were initially served on June 12, 2019. Again, Genesys did not include any measure or computation of purported damages. *See* Ex. A.

- Pursuant to the case management order, Genesys provided a document titled "special statement of damages" (the "SSD") on December 1, 2020. As detailed below, that disclosure did *not* provide any computations of harm as required by Rule 26. Instead, it simply listed potential categories of harm and, in limited instances, provided ballpark estimates of harm based on allegedly forthcoming expert reports. *See* Ex. B.

- On December 2, 2020, Genesys submitted its Third Amended Complaint ("TAC"), now the present operative complaint. D.I. 235.[2]  In that complaint, Genesys dropped its contract claims against Hertel, dropped its unjust enrichment claim, and added breach of contract claims against Strahan and Manno relating to allegations of "working while employed," "failure to return documents," "failure to spend substantially all time working for Genesys while employed," and breach of confidentiality.  Genesys also added a claim for "conspiracy" and "aiding and abetting breach of fiduciary duty" against the Defendants.  As before, Genesys did not include any statement of or computation for any damages for any claims in the case, including the new ones.  Indeed, no numerical amount of alleged harm is disclosed in the TAC, much less any computation of damages.

- On January 4, 2021, Defendants responded directly to Genesys's December 2020 SSD, making clear that Genesys's damage assertions were wholly inadequate and did not provide any calculations or methodology to support its assertions.  Defendants expressly informed Genesys, *inter alia*, that (i) its "pie-in-the sky demands [were] not tied to specific and provable harm"; (ii) "Genesys makes sweeping assertions of damages without seeking to provide causal links between the allegedly wrongful acts or the legal remedy sought"; and (iii) "Genesy does not point to any business lost because of the departure of these employees, and Genesys has not provided any evidence of its calculation of actual amounts to hire or re-train employees who departed for Talkdesk." EX. C.[3]

- Liability discovery ended in this case on February 19, 2021. D.I. 225. Cross-motions for summary judgment relating solely to liability issues were then filed on June 10 and July 14, prior to the end of damages discovery. D.I. 253, 270.

- Genesys then served two expert reports on damages on June 28, 2021. Contrary to Genesys's assertion in its December 2020 that expert reports would be forthcoming to provide a computation of its several items of purported damages, including on repeated allegations of "lost profits" discussed in more detail below, the expert reports Genesys provided focused exclusively on two narrow bases of alleged harm: (i) alleged damages relating to Genesys's "raiding" claim (count 35) and (ii) alleged damages relating to Genesys's "trade secret" misappropriation claim as to Talkdesk (count 32), but *solely relating to the alleged PureCloud list*, not to any other purported trade secret claim.[4]  *See*

---

[2] The Court granted Genesys's motion for leave to amend on and entered the December 2020 proposed complaint on February 9, 2021. D.I. 234, 235.

[3] Genesys's Statement of Claims (D.I. 244, filed May 14, 2021) also failed to address any of the defects raised in Talkdesk's response to the SSD. Despite the Court's requirement that the Statement of Claims state "specific[] … legal theories," Genesys's Statement of Claims never even refers to theories of "unjust enrichment," "lost profits" or "disgorgement." *See* D.I. 210 at 2; D.I. 244.

[4] Defendants do not agree that the methodologies used by Genesys's experts to calculate damages are proper.  However, because the methodologies and computations were *actually disclosed* for these assertions of damages, Defendants were able to respond by objecting to the methodologies through its

D.I. 322-1 at 6 ("I was asked … to provide an assessment of HR-related damages … as a result of the raid"); D.I. 323-05 ¶ 11 ("I have been asked to determine damages … due to … alleged misappropriation of Genesys' confidential list").

- Expert and damages discovery ended on September 19, 2021.  On this last day of discovery, Genesys filed a supplemental Rule 26 disclosure, which did not provide any further insight into its assertions of damages. Instead, it simply incorporated by reference its December 2020 SSD.  EX. D at 8.

In sum, Genesys had multiple opportunities over two years to formulate specific allegations of harm and to provide its computation of damages as required by Rule 26.  Despite this, Genesys chose not to do so.  Indeed, in its SSD, which Genesys cited as the information source for its damages claims, Genesys failed in most instances to *provide any amounts*, did not provide *any computations* relating to its damage assertions, failed to provide details surrounding *how* it was computing its damages, and cited *no evidence* to support its assertions. Genesys instead caveated that "[f]urther damages discovery and analysis is needed to calculate these damages" or that undisclosed "[r]etained damages experts" would support its conclusory assertions of damages. Yet Genesys never supplemented this disclosure to provide the missing amounts, computations, methodology, or evidence.[5]

It is Genesys's burden to provide a computation of damages that it intends to prove at trial—not Defendants burden to "sniff out" Genesys's methodologies and computations. Nonetheless, although the computation requirement of Rule 26 is an independent requirement

---

own expert and Defendants' pending *Daubert* motion. *See* D.I. 320, 321, 333. No such opportunities existed for Defendants to provide rebuttal evidence or contest computations withheld from disclosure by Genesys, putting a fine point on the harm caused by Genesys's failure to comply with Rule 26.

[5] Defendants have always maintained there are no damages in this case, confirmed by Genesys's failure to come forward with damage computations for most claims. Nonetheless, the Federal Rules do not allow Genesys to avoid setting out damage computations with plans to surprise Defendants at trial or ask the jury to award damages based on emotions, speculation, confusion of issues, or some other improper basis.

from Genesys's obligation to provide fulsome responses to Defendants' discovery in the case

See *Boldstar Tech., LLC v. Home Depot USA, Inc.*, No. 07-80435-CIV, 2008 WL 11320010, at

*2 (S.D. Fla. Feb. 28, 2008) (noting a party cannot make Rule 26 disclosures contingent on

opponent's discovery and are required to respond with information within its control).

Defendants *also* propounded interrogatories seeking "all contentions of harm caused by any

Defendant to Genesys as asserted by You in this case, including but not limited to, as specifically

outlined in Your December 1, 2020 statement of special damages…." Ex. E at 1.  In response,

Genesys again made broad-brush, conclusory allegations of harm, including for alleged "lost

profits" ("lost sales"), but Genesys again failed to provide any numerical computation or

methodology identifying what damages it asserted stemmed from the alleged wrongdoing.  Thus,

like with its other disclosures, Genesys did not provide any methodology or attempt to compute

its damages in these discovery responses.

     Because Genesys never disclosed the required computation of damages for the vast

majority of its counts in this case, evidence and argument as to those damages claims should be

excluded under Rule 37(c), as outlined below:

    **A.**     **Genesys should be precluded from asserting any measure of damages for its remaining breach of contract claims (counts 3, 4, 5, 7, 18, 19, 21, & 22); tortious interference with contract claims (counts 1 & 34); conspiracy claims (counts 12, 24, 30, & 36), aiding and abetting breach of fiduciary duty claims (counts 13, 25, 31, & 37), and trade secret misappropriation claims as to the individual Defendants (counts 9, 10, 16, 17, 26, & 27).**

    Genesys did not provide even ballpark figures—much less the computation required

under Rule 26—for the damages asserted for most of the counts in this case.  Specifically,

Genesys has *never* notified Defendants of a specific amount of damages it intends to prove as to

its remaining breach of contract claims as to Manno and Strahan (counts 3, 4, 5, 7, 18, 19, 21, &

22); tortious interference with contract claims as to Manno and Talkdesk (counts 1 & 34); conspiracy claims as to all Defendants (counts 12, 24, 30, & 36); aiding and abetting breach of fiduciary duty claims as to all Defendants (counts 13, 25, 31, & 37); and misappropriation of trade secrets as to Manno (counts 9 & 10), Strahan (counts 16 & 17), and Hertel (counts 26 & 27).[6]  For these counts, exclusion of Genesys's undisclosed damages computations should be automatic because of the prejudice to Defendants and lack of justification in Genesys's omission. *See Gumwood*, 2017 WL 3016385, at *2, *Miller*, 2016 WL 1639087, at *4; *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *see also In re Gorilla Companies, LLC*, 454 B.R. 115, 120 (D. Ariz. 2011) (finding abuse of discretion to allow evidence of non-computed damages), *amended on reh'g in part,* No. 10–CV-01029, 2011 WL 2357825 (D. Ariz. June 14, 2011).

Genesys's SSD did not tie any alleged measure of damages to any of these specific counts. Nor did it provide any computation, methodology, or evidence showing how Genesys calculates damages for the counts. Instead, Genesys made only conclusory allegations that "Defendants' conduct has caused Genesys to suffer damages," referenced possible types of damages that it might seek to prove, and stated that further discovery and analysis was necessary "to calculate these damages":

> (5) Unjust enrichment from other confidential information and trade secrets. This includes unjust enrichment of Talkdesk's receipt and use of Genesys' confidential trade secret information and circulation of the same throughout its organization. This includes the value that Talkdesk derived from recruiting sales employees whom it knew were strong performers for Genesys, thereby saving personnel and turnover costs. This also includes the value Talkdesk earned from the activities Manno, Strahan, and Hertel undertook for Talkdesk while still on Genesys

---

[6] Ms. Distler's report is solely related to Talkdesk—not the individual Defendants.  She opines as to a hypothetical negotiation *between* only Genesys and Talkdesk as corporate Defendant.

payroll. **Further damages discovery and analysis is needed to calculate these damages.**

(7) Damages resulting from Manno and Strahan's failure to provide their reasonable best efforts and faithful service to Genesys. This includes but is not limited to lost revenue, lost business opportunities, lost goodwill, lost value of proprietary materials and other property, damages to business and community reputation, and money spent to investigate and to attempt to mitigate the damage of Manno's and Strahan's misconduct. **Further damages discovery and analysis continues to calculate these damages.**

(8) Disgorgement of Talkdesk's profits. **Further damages discovery is needed to calculate these damages.**

(9) Damages resulting from Talkdesk's strengthened competitive position in the CSaaS market, a position reached by way of its unlawful activities in this case. **Further damages discovery and analysis is needed to calculate these damages.**

*See* Ex. B at 2–3 (emphasis added). And despite Defendants expressly informing Genesys that the damages were <u>not</u> supported, Genesys has not supplemented these vague assertions or disclosed expert opinions to support them in the 18 months since its SSD Letter was served.

Likewise, Genesys's response to Defendants' Interrogatory No. 6—which sought "the bases for all contentions of harm"—failed to identify any specific amount of damages, much less a computation showing how Genesys derived the alleged harm. Again, Genesys simply listed types of harm that it might seek to prove and concluded that each type of harm "relates to nearly all of Genesys's claims, including its breach of contract claims, breach of fiduciary duty claims, trade secret misappropriation claims, interreference with contract claims, and raiding claims."

*See* Ex. E at 2–4. And while Genesys included a general assertion that it would "provide documentation related to these damages," it has never done so.[7]

Courts in the Seventh Circuit automatically exclude damages evidence and argument where a plaintiff fails to substantiate their damages claims in a timely Rule 26(a)(1) disclosure and the non-disclosure was not justified or harmless. See, e.g., *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).[8]  For example, in *Miller v. Polaris Laboratories, LLC*, this Court prohibited the plaintiff from presenting evidence or argument about compensatory and punitive damages calculations after it failed to meet its Rule 26 obligation to supplement the damages claim with calculations and documents. 2016 WL 1639087, at *4 (agreeing with defendant that plaintiff's failure was at her "own peril"); *see also Barlow v. Gen. Motors Corp.*, 595 F. Supp. 2d 929, 936–937 (S.D. Ind. 2009).[9]  Other courts have done the same.  *Gumwood*, 2017 WL 3016385, at *7; *Dynegy*, 648 F.3d at 514.

---

[7] Even if Genesys had cited documents it contends supported its calculation of harm under Rule 33, which it did not, this still would have been insufficient. Simply disclosing "numerical information" is insufficient.  *See*, *e.g.*, *Dynegy*, 648 F.3d at 514 (finding "numerical information" and calculations "disclosed in spreadsheet form" insufficient); *Pittsfield Dev., LLC v. City of Chicago*, No. 17-CV-1951, 2021 WL 8314423, at *10 (N.D. Ill. Nov. 15, 2021) ("Rule 26(a)(1) required Development to provide a 'computation' of its damages in addition to—not in lieu of—the documents from which it was derived." (citing cases)).

[8] The court is given discretion, but not required, to consider the following four factors:"(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David*, 324 F.3d at 857.  If weighed, each also supports exclusion. Genesys could have and should have disclosed computations of damages. There is no basis for springing such computations on Defendants at trial. Such prejudice could not be cured absent disrupting the current trial schedule and requiring the parties to redo damages and expert discovery, further prejudicing Defendants.

[9] *But see Richards v. PAR, Inc.*, No. 1:17-CV00409-TWP-MPB, 2021 WL 4775350, at *6 (S.D. Ind. Oct. 13, 2021) (denying defendants' MIL to bar undisclosed emotional distress damages evidence because defendants "present[ed] no argument" they'd been harmed). This motion, however, explains how Defendants would be prejudiced by Genesys's nondisclosures.

The Court should reach the same result here. Genesys failed to supplement its damages disclosure to provide any computation of these damages, despite the benefit of further damages and expert discovery and Defendants' express notice that the disclosures were inadequate. Supplementation of Rule 26 disclosures must be done promptly, and Rule 26 does not permit Genesys to "hold back" its damages theories until the eve of trial. *Barlow* 595 F. Supp. 2d at 938. Allowing undisclosed damage computations at trial would prejudice Defendants by allowing Genesys to lay in the weeds during the case, express its intention to not proceed forward on certain theories of damages, and then spring undisclosed theories, computations, and evidence on Defendants at trial.[10]  This is the antithesis of what Rule 26 requires, and the result would be to strip Defendants of their rightful opportunity to develop rebuttal evidence and arguments to counter Genesys's undisclosed methodologies and calculations.  Further, Genesys also has *no justification* for holding back its damage calculations. Genesys claimed in December 2020 that it was calculating certain damages and that its damages would be determined by experts (that were never disclosed). Thus, Genesys <u>*elected*</u> to proceed only on those limited damage theories that it supported through expert reports, making its failure to disclose a computation of any other damage computations intentional and willful.  Automatic exclusion of damage arguments as to counts 1, 3, 4, 5, 7, 9, 10, 12, 13, 16, 17, 18, 19, 21, 22, 24, 25, 26, 27, 30, 31, 34, 36, and 37 is warranted.

---

[10] The prejudice is amplified further for complex damages claims, such as lost profits and lost sales. *See, e.g.*, *Gumwood*, 2017 WL 3016385, at *2.

**B.    As for Genesys's raiding claim (count 35) and trade secret misappropriation claims as to Talkdesk (counts 32 & 33), Genesys should be limited at trial only on the narrow damage claims disclosed by its expert witnesses; all other undisclosed computations as to these counts should be excluded from trial.**

In its SSD, Genesys also made the following conclusory assertions of harm, expressly

relying on forthcoming expert reports for computations and support:

(1) Actual losses, including lost profits resulting from the raid of 15 Genesys mid-market employees and related unlawful activities. Following the departure of 15 Genesys mid-market sales employees, Genesys suffered substantial lost sales in the fourth quarter of 2018. This loss was directly caused by not only the Defendants' departures but also their lack of good faith efforts to Genesys' business in the third quarter of 2018, during which time they were also performing duties for Talkdesk. **Retained damages experts have estimated these damages as reaching $3,000,000**, with further damages discovery and analysis still underway and potentially increasing this damages component.

(2) Damages resulting from Genesys' replacement of the raided personnel. This includes pre-departure costs, recruiting and selection costs, formal orientation and training costs, on-the-job training costs, lost productivity surrounding the vacant positions, and loss productivity during new hire ramp-up periods, and Talkdesk's unjust enrichment in saving costs associated with the hire of Genesys employees, including the cost of external headhunters and other recruiting costs. While further damages discovery and analysis is needed to refine these HR and Recruitment related costs, **retained damages experts have conservatively estimated these damages at $1,079,000.**

(3) Unjust enrichment resulting from Defendants' theft and extensive circulation of Genesys' PureCloud list and the use of the same against Genesys in the market. This also includes damages resulting from the extensive circulation of that list both throughout the Talkdesk organization and also outside of the Talkdesk organization. Further damages discovery and analysis is needed to refine this calculation, but **retained damages experts have estimated these damages as reaching $1,000,000.**

(4) A reasonable royalty for misappropriation of multiple Genesys' trade secrets and confidential information. While further damages discovery and analysis ongoing as to this calculation, **retained damages experts estimate a reasonable royalty of the PureCloud list alone at between $500,000 and $3,000,000, with other trade secrets royalties likely cumulatively exceeding $1,000,000.**

Ex. B ¶¶ 1–4.

While Genesys did submit expert reports as to *certain* purported damages, it did <u>not</u> provide expert reports relating to "lost profits," "lost sales," "unjust enrichment," or "other trade secret royalties."  Indeed, the expert reports served by Genesys were directed only to (1) a purported reasonable royalty that Talkdesk would have paid for the alleged misappropriation of the PureCloud list as asserted in Ms. Distler's report, and (2) damages allegedly caused by the raiding claim as asserted in Mr. Dineen's report. Accordingly, Genesys's assertion of damages relating to trade secret misappropriation as to Talkdesk (counts 32 & 33) and raiding (count 35) should be limited to the computations of damages expressly set out in the expert reports of Mr. Dineen and Ms. Distler (subject to Defendants' pending objections pertaining to Ms. Distler and Mr. Dineen).

That is, any other category of damages that Genesys asserted would later be explained by its "damages expert"—but were *never disclosed*—must be excluded.  This includes Genesys's claims of (i) any alleged lost revenue or lost profits, including "actual losses, including lost profits resulting from the raid,"[11] (ii) "other trade secret royalties likely cumulatively exceeding $1,000,000," and (iii) "unjust enrichment resulting from Defendants' theft and extensive circulation of Genesys' PureCloud list."[12]  Genesys elected to not proceed with these theories, and Rule 26 mandates exclusion.  This is particularly the case because the "[t]he Seventh Circuit has acknowledged that the computation 'is especially necessary when plaintiff seeks complex damages such as lost profits.'" *Gumwood*, 2017 WL 3016385, at *2 (quoting *Robinson*, 412 F. App'x. at 878) *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)

---

[11] The necessity of expert testimony for a "lost profits" or "lost sales" claim is outlined in MIL No. 2 below, which further outlines why those claims should be excluded.

[12] Genesys has also abandoned its unjust enrichment claim as outlined in MIL No. 3, below.

(upholding exclusion of lost profits evidence where the party failed to provide a computation

with supporting documents). Accordingly, Rule 37(c) mandates exclusion of these damage

claims based on Genesys's choice to <u>not</u> provide expert reports to support the alleged damages.

### C. Genesys should be precluded from asserting damages other than disgorgement—in equity to the Court—relating to its breach of fiduciary claims (counts 8, 15, & 28).

In its SSD, Genesys outlined only *disgorgement of salary* as its asserted damages relating

to the individual Defendants' breach of fiduciary duties:

> (6) Disgorgement of compensation paid to Manno, Strahan, and Hertel that was
> fraudulently induced by those Defendants and not earned while they secretly
> served as Talkdesk's recruiting team and otherwise performed duties for the
> benefit of Talkdesk while employed by Genesys, in breach of their fiduciary
> duties of loyalty owed to Genesys. Genesys calculates these damages based on the
> parties' 2018 salaries and for the extended period from when Manno, Strahan, and
> Hertel committed to Talkdesk and began breaching their fiduciary duty, up until
> their October 1, 2018 start date for Talkdesk. **These damages based on salary
> alone are estimated at $103,140 for Manno, $90,375 for Strahan, and $89,313
> for Hertel.**

These are the *only* numerical figures and purported computation provided by Genesys on the

Defendants' breach of fiduciary duty claims.[13]  Thus, Genesys should be limited to asserting only

this type and amount of damages for the breach of fiduciary counts.[14]  Further, because "a claim

for breach of fiduciary duty is an equitable claim," the remedy of disgorgement is exclusively a

---

[13] While Genesys made a passing reference to Talkdesk's profits as a remedy for the alleged breaches of
fiduciary duty, it did not attempt to support such a claim. *See* Ex. B ¶ 3. Nor could it.  In Indiana, the
remedy of disgorgement applies to *an agent's compensation* "during the period of employment in which
the agent was also breaching his fiduciary duty." *SJS Refractory Co., LLC v. Empire Refractory Sales,
Inc.*, 952 N.E.2d 758, 768 (Ind. Ct. App. 2011).  There is no support for disgorging a *corporation's* profits
based on a breach of fiduciary duty.  Accordingly, evidence or argument relating to Talkdesk's sales,
profits or equity value is irrelevant to Genesys's claims in the case, and would be highly prejudicial,
inviting the jury to artificially inflate any potential damages award based on speculation and irrelevant
evidence, such as Talkdesk's overall value.  *See Edson*, 2017 WL 2255954, at *5.

[14] Defendants dispute that disgorgement is warranted, or that the amount is correct.

matter for the Court to resolve. *Wenzel v. Hopper & Galliher, P.C.*, 830 N.E.2d 996, 1001 (Ind. Ct. App. 2005) (citing *G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 244 (Ind. 2001)) ("Disgorg[ement] … is an equitable, not legal remedy."). Thus, damages arguments or evidence relating to Genesys's breach of fiduciary duty claims should not go to the jury. Instead, the Court can entertain argument on the disgorgement issue at a time of its choosing and through post-trial briefing. And because the Court determined liability on the fiduciary duty claims, it is in the best position to determine whether disgorgement of salaries of the individual Defendants is a proper equitable remedy, and if so, in what amount.

> **D. Genesys should be precluded from asserting any measure of punitive damages because it did not compute actual damages relating to the underlying claim or for the alleged punitive damages.**

In its TAC, Genesys pled general punitive damages. D.I. 235 at 67, 78, 85, 93. In its SSD, Genesys focused on trebling punitive damages based on its aiding and abetting breach of fiduciary and conspiracy counts. As with its other cursory damage claims, however, the punitive damage claims have been over-generalized statements of possible recovery—not computations and support for the asserted damages:

> (12) Punitive damages, allowable up to three times **the amount of compensatory damages awarded,** and particularly recoverably in this case in which Talkdesk's Founder, Chairman of the Board, and CEO personally directed the illegal actions of Talkdesk and conspired with and aided and abetted the individual defendants.

Ex. B at 3. And beyond this, no other specifics, evidence or alleged computations have been provided.

Accordingly, Genesys's request for punitive damages should be precluded because it has failed to provide computations of both the alleged punitive award or any computation of the specifically asserted underlying tort claims. *See Techna-Fit, Inc. v. Fluid Transfer Prod., Inc.*,

45 N.E.3d 399, 414–16 (Ind. Ct. App. 2015) ("[Plaintiff] sought punitive damages only on its breach of fiduciary duty claim … thus, as a matter of pleading and practice, punitive damages are limited to a multiple of the compensatory damages awarded on the breach of fiduciary duty claim."). As to the latter, Genesys has not attempted to support *any* claim for compensatory damages relating to the punitive damage claims—including the underlying aiding and abetting or conspiracy claims—with specific computations or supporting details as required by Rule 26 (see Section A above).

In *Miller*, this Court addressed these same failures by a plaintiff and precluded *both* compensatory and punitive damage assertions because the Plaintiff failed to provide the required computations of either type of damages under Rule 26. 2016 WL 1639087, at *4. Thus, Defendants ask for this same relief here. As before, Genesys's lack of computation is prejudicial because it provides no notice to Defendants as to what evidence and methodology Genesys seeks to rely on to prove punitive damages—or any computation of the compensatory base from which it stems. Thus, automatic exclusion of the punitive damage assertions is warranted for the same reasons outlined as to the undisclosed compensatory claims.

## II.    MIL NO. 2: Preclude Genesys from introducing any evidence, inference, or argument pertaining to alleged "lost profits" or "lost sales."

As stated in MIL No. 1, Genesys chose to not proceed with expert testimony or other support for its "lost profits" or "lost sales" damages assertion, warranting automatic exclusion of the damages claim at trial. In addition, Defendants are concerned that Genesys may seek to elicit lay testimony to support an inference or argument that Genesys lost some particular sale (or sales in a particular quarter—e.g., fourth quarter of 2018 or the first quarter of 2019) based on alleged

acts of Defendants.[15]  Thus, preclusion of any witness testimony or argument tending to suggest

any "lost sales" or "lost profits" should be excluded for at least three reasons beyond the reasons

already outlined in MIL No. 1:

First, Genesys "has the burden of demonstrating the loss attributable to defendant's

competition versus the loss attributable to other potential causes of declines in revenue."

*Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152 JD, 2018 WL 276324, at *3 (N.D. Ind. Jan. 3,

2018).  The path to do so would be through expert analysis, and Genesys stated in its December

2020 letter that it would provide expert witnesses to calculate its "lost profits" or "lost sales," but

failed to do so.  Genesys cannot dispute that the selection of contact center software by a

customer involves a multitude of factors.  Nor can Genesys dispute that the reasons why a

customer may choose to purchase a Genesys product, or the timing of that choice, are decisions

within the knowledge of the customer—not Genesys.  Despite this, Genesys chose not to disclose

an expert in an attempt to prove damages from any alleged lost sale.  Instead, one of Genesys's

disclosed experts found just <u>the opposite</u>: "To date, I am not aware of any Genesys lost

customers to Talkdesk." D.I. 323-05 at 34.[16]

Thus, Genesys has no expert to tie any purported lost sale, much less a quarterly loss of

---

[15] For example, during summary judgment, Genesys provided a conclusory declaration from Genesys VP Alex Ball that vaguely referenced a "seven-figure loss." *See* D.I. 261-34 ¶ 7. Genesys also made conclusory assertions in its MSJ that it "lost sales" in the fourth quarter of 2018 through 2019 because of the loss of sales associates.  D.I. 266 at 21, 39. Like its other damages theories, Genesys has never provided computation of any lost sale, tried to tie any specific lost customers or lost revenue to alleged improper acts, attempted to translate "lost sales" to net profits, or provide expert testimony to support any such assertions.

[16] Genesys's employees testified that Genesys re-assigned customer accounts following the departure of certain Genesys employees, and Genesys touted extraordinary sales numbers following the departure of the individual Defendants to Talkdesk. D.I. 274-21 at 53:3–57:12; 121:1–122:23; 157:11–158:16; 159:12–160:2; 161:18–162:16.

general revenue, to any facts in this case. Without such an expert, Genesys cannot demonstrate the nexus required between the alleged lost profits or sales and any improper acts (as opposed to for example other, lawful conduct or independent choices of customers). Genesys invites mere speculation or conjecture to serve in place of the required nexus.

On this point, the *Zimmer* court makes clear that *even when* an expert opinion is provided, speculative evidence is insufficient to support the claim. There, a party served an expert report asserting lost profits as the measure of damages for a claimed breach of a covenant not to compete. *Zimmer*, 2018 WL 276324, at *3. The court excluded the expert report because it provided "no explanation of how to distinguish lost profits that resulted from Defendants' alleged wrongdoing" from other acts including lawful conduct. *Id.* Quoting Supreme Court precedent, the *Zimmer* court explained that "[t]he first step in a damages study is the translation of a *legal theory of the harmful event* into an analysis of the economic impact of that event." *Id.* Accordingly, Genesys should be precluded from attempting to establish any lost sales or profits when it specifically chose to withhold the required expert testimony (and other required information) to support the claim. *See Cook Inc. v. Endologix, Inc.*, No. 1:09-CV-01248-TWP, 2012 WL 4514036, at *7 (S.D. Ind. Oct. 1, 2012) (Pratt, J.) (precluding expert from testifying as to lost profits analysis or calculations that were not included in report).

Second, without a supporting computation and expert economic analysis, evidence or argument about lost profits would simply be based on the speculation, inviting the jury to award an impermissible damages award not within the scope of the evidence of record. *See*, *e.g.*, *Prudential Ins. Co. of Am. v. Exec. Ests.*, Inc., 369 N.E.2d 1117, 1133 (Ind. Ct. App. 1977).

Similarly, an award of lost profits in Indiana must be "confined to lost net profits" [17] —values that cannot be established through conclusory assertions of the value of a particular sales deal or high-level quotas or raw revenue numbers. *Id.*; *see also Helena Agri-Enterprises, LLC v. Jones,* 149 N.E.3d 282, 301 (Ind. Ct. App. 2020) ("If a party is seeking damages for lost profits, the award must be confined to lost net profits"), *transfer denied,* 157 N.E.3d 526 (Ind. 2020).

Finally, any attempt by Genesys to have its lay witnesses opine on alleged "lost profits" or "lost sales" would be improper. An analysis that the losses were caused by the Defendants, to the exclusion of other possible causes, and a computation of "lost net profits," would be economic analyses requiring specialized knowledge falling under FRE 702.[18] Under FRE 701, however, lay witnesses may not offer testimony based on "scientific, technical, or other specialized knowledge" to ensure that the reliability requirements of FRE 702 are not "evaded through the simple expedient of proffering an expert in lay witness clothing." FRE 702 (advisory committee's note to the 2000 amendment). Thus, any mention by lay witnesses of alleged "lost profits," "lost revenue," or "lost sales" losses would be improper and should be excluded from trial under FRE 401, 701, 403, and Fed. R. Civ. P. 37(c).

### III.   MIL NO. 3: Preclude any evidence or argument at trial regarding "unjust enrichment" or damages relating to "unjust enrichment."

In addition to the reasons set forth in MIL No. 1, Genesys also should be precluded from introducing evidence or argument at trial regarding "unjust enrichment" because Genesys does

---

[17] Consequential damages are limited to *net profits* under Indiana law. *See Helena,* 149 N.E.3d at 301. No computation or expert opinion has been disclosed showing how Genesys's alleged "lost profits" or "lost sales" would or could relate to "lost net profits."

[18] As noted, no expert opinion has ever been produced by Genesys seeking to tie any purported loss of sales, much less a quarterly loss of general revenue, to any specific actions in this case. Genesys's disclosed experts found the opposite. D.I. 323-05 at 34.

not have any pending claims for unjust enrichment, unjust enrichment is not the measure of Genesys's trade secret damages, and Genesys's expert report on "raiding" erroneously seeks those damages along with compensatory damages.

First, Genesys removed its claim for unjust enrichment from its TAC, eliminating a basis for the requested relief.  *See* ECF No. 235. Claims are "withdrawn as to all matters not restated in the amended pleading." See *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961).  Therefore, Genesys has no pending cause of action for "unjust enrichment."

Second, as noted previously, Genesys never disclosed a computation of unjust enrichment damages, instead simply demanding "$1,000,000" based on the estimate of "retained experts," who were subsequently never disclosed. *See* Ex. B ¶¶ 3, 5.  This precludes assertion of the theory as discussed in MIL No. 1.

Third, Genesys's purported expert on the "raiding" claim (Dineen) erroneously included a theory of unjust enrichment in his expert report, along with a claim to compensatory damages. Specifically, Dineen opined as to the benefit allegedly gained by Talkdesk in alleged hiring and training Genesys employees as a proposed basis for his damages computation. *See* D.I. 322-01 at 23. However, Indiana law (and tort law in general) precludes recovery of <u>both</u> compensatory damages and unjust enrichment damages.[19]  Instead, a Defendant must *elect* to receive one or the other, but not both.  *See* Restatement (Second) of Torts § 903 (1979) (tortfeasor is liable "to the other, at the latter's election, either for the damage done to the other's interests or for the value of the benefit received through the commission of the tort").  So, even if unjust enrichment is a

---

[19] Notably, Genesys did not disclose unjust enrichment as an alleged measure of raiding damages in the SSD. *See* Ex. B at ¶ 5 (demanding "unjust enrichment from other confidential information and trade secrets" – not the alleged raid).

measure of "raiding" damages under Indiana law, Genesys's attempt to request "unjust enrichment" damages in addition to compensatory damages through Dineen's expert testimony is contrary to law and could lead to jury confusion, as well as an impermissible double recovery.

Fourth, Genesys has argued that unjust enrichment can be the measure of damages for its trade secret misappropriation claims. *See* Ex. B ¶ 3, 5.  But Distler, Genesys's expert on trade secret damages, only provided an opinion about a reasonable royalty.  *See* D.I. 323-5 ¶ 11. A reasonable royalty is permitted as a measure of trade secret damages when "neither damages nor unjust enrichment are provable." Ind. Code § 24-2-3-4. Accordingly, Genesys's choice to pursue a reasonable royalty on the alleged trade secret claim is an admission that unjust enrichment and damages are not provable, as well as a decision to exclude other damage remedies, including unjust enrichment.

For these reasons, evidence or argument about "unjust enrichment" should be precluded from trial as irrelevant, prejudicial, confusing, and inconsistent with any cognizable theory of recovery in the case.

### IV.    MIL NO. 4:  Preclude Genesys from mentioning Talkdesk's financial status, including its enterprise value or valuation, any equity fundraising efforts, number or names of outside investors, or sales or profits made by the company.

Throughout this case, beginning with its complaint, and as recently as the summary judgment briefing, Genesys has made references to Talkdesk's financial status and enterprise valuation, asserting that, *e.g.*, Talkdesk is "valued at more than $3 billion, has more than 1,400 employees, and has secured over $268 million in total funding." D.I. 266 at 1. Now, Genesys appears geared to discuss Talkdesk's financial status with the jury to (speculatively) assert that Talkdesk's valuation or sales success are related to the issues and damages in this case.

Any reference to Talkdesk's financial status or investors would be irrelevant and highly prejudicial, warranting exclusion under Rules 402 and 403. No expert testimony links any portion of Talkdesk's funding or value to any alleged wrongs in this case, and there has been no disclosures of alleged damages relating to such assertions (see MIL No. 1 above). So Genesys cannot show that any portion of Talkdesk's enterprise value is due to any events at issue, and the only purpose of offering this evidence would be to confuse the jury or lead them into awarding speculative damages based on irrelevant information not supported by relevant evidence. This Circuit has held that statements regarding a corporate defendants' size or profits, untethered to any issues in this case, tend to improperly inflate the jury's perception of damages and prejudice Defendants. *See Edson v. Dreyer & Reinbold, Inc.*, No. 1-15-CV-00861-TWP-MJD, 2017 WL 2255954, at *5 (S.D. Ind. May 23, 2017) (Pratt, J.); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992) (holding that net worth of a corporation was not a basis for calculating punitive damages).  Thus, because Talkdesk's revenues, sales, and equity valuation is irrelevant to any issues in this case and prejudicial to Defendants,[20] Genesys and its witnesses should be precluded from introducing such information at trial.

### V.    MIL NO. 5:  Preclude Genesys from asserting to the jury that it is entitled to or should be awarded attorneys' fees in this matter.

Genesys asserted a claim for attorneys' fees based on violation of specific provisions of Mr. Manno's and Mr. Strahan's former Interactive Intelligence employment agreements.  *See* D.I. 266 at 2, 21, 35. Defendants ask the Court to preclude Genesys from asserting to the jury that it is entitled to attorneys' fees in this case, whether such assertion is based on contractual

---

[20] In line with this, the Magistrate recognized that Genesys does not have damages theories based on revenues of Talkdesk employees.  D.I. 392 at 6.

language or otherwise.[21]  Entitlement to an award of attorneys' fees and/or the applicability and

enforceability of an attorney fees provision in a contract is an issue for the Court to resolve.  *See*,

*e.g.*, *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 211 (Ind.

2019). Accordingly, assertions of attorney's fees are not relevant to any issue that will be

decided by the jury, and courts routinely exclude this kind of evidence and argument. *See e.g.*

*Jordan v. Enrique Ventura*, No. 4:17-CV-4011, 2019 WL 1199517, at *1 (W.D. Ark. Mar. 13,

2019); ("The Court finds that any mention of attorney's fees will only serve to confuse and

inflame the jury to make a decision on an improper basis"); *Hernandez-Sabillon v. Naturally*

*Delicious, Inc.*, No. 9:15-CV-80812, 2015 WL 10550934, at *3 (S.D. Fla. Dec. 23, 2015).

Genesys and its counsel and witnesses should be precluded from referring to any asserted

entitlement to an award of attorneys' fees.

### VI.    MIL NO. 6: Preclude any evidence or argument that Genesys is entitled to "double damages."

During discovery, Genesys asserted that the Defendants were liable for double damages

because their alleged "willful and malicious." trade secret misappropriation. *See* Ex. B at 3.

While both the IUTSA and DTSA allow for an award of up to double damages, it is *the Court*

that must assess and decide on whether double damages are appropriate—not the jury.  *See* Ind.

Code § 24-2-3-4(c); 18 U.S.C. § 1836 (b)(3)(C); *Proofpoint, Inc. v. Vade Secure*, Inc., No. 19-

CV-04238-MMC, 2021 WL 5407521, at *2 (N.D. Cal. Nov. 18, 2021) (denying a motion for

---

[21] Also, basing a claim for (exorbitant) attorneys' fees on a liquidated damages clause, as Genesys appears
to be doing here, is impermissible under Indiana law. Such an award would be an unenforceable penalty
because it is disproportionate to the amount of any potential loss, and Genesys has failed to prove either a
loss or a nexus between that loss and the fee provisions. *See Gershin v. Demming*, 685 N.E.2d 1125, 1128
(Ind. Ct. App. 1997); *see also Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d
208, 213 (Ind. 2019); *Corvee, Inc. v. French*, 943 N.E.2d 844, 847 (Ind. Ct. App. 2011).

exemplary damages after a jury trial).  Thus, assertions of "double damages" are not relevant to any jury question in this case and would tend to confuse or mislead the jury, prejudicing Defendants. *See* F.R.E. 402, 403; *see also* *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1268 (7th Cir. 1992).

VII.   **MIL NO. 7: Require Genesys to identify "with specificity" prior to trial the information disclosed during discovery that it intends to assert as "confidential" or "trade secret" information.[22]**

Defendants request that Genesys be required to identify to Defendants "with specificity" and sufficiently in advance of trial the specific information (that it previously identified during discovery) that it intends to assert at trial constitutes a trade secret or confidential information. The bases for this request are as follows:

At the outset of fact discovery, Defendants served Interrogatory No. 1, which demanded that Genesys "*Describe with specificity* the information You contend constitutes a trade secret." *See* Ex. F at 1. Genesys responded with 31 pages of attorney argument and assertions, citing to general and non-specific information, including the following sweeping categories:

- "Genesys employee personnel information, including employee performance, satisfaction, compensation, evaluation, and employee sales responsibility information."

- "Genesys customers and prospects, including product offerings, renewal dates, pipeline status of prospects, and customer satisfaction."

- "Genesys' non-public pricing and discount information."

- "Genesys' non-public marketing and sales information."

- "Genesys' non-public product infrastructure information."

---

[22] As noted in MIL No. 1, Defendants submit that the only trade secret misappropriation or confidential claim that Genesys may proceed on relates to the PureCloud list. If Genesys is allowed to proceed on other bases, Genesys should be required to provide notice as set forth in this MIL.

Further—ignoring that information shared with customers is "readily ascertainable and is not a trade secret" (*Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553, 556 (S.D. Ind. 1988))—Genesys characterized a multitude of documents and other information as "trade secret," asserting that *types of information* to/from customer was "confidential" or "trade secret," including general references to "customer NPS data," "customer and prospect information," "infrastructure and architectural design," and other general assertions.[23]

Such vague categories of information are inadequate to support a *prima facie* claim of trade secret misappropriation or put Defendants on notice as to what Genesys contends are its alleged trade secrets.  *See Magnesita*, 2018 WL 6435648, at *13; *IDX*, 285 F.3d at 583. Accordingly, Defendants request that Genesys be precluded from asserting trade secret status as to documents without pointing to the specific information that it previously identified in response to Interrogatory No. 1. *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, No. CV-078-298-ABC-MANX, 2010 WL 11505684, at *13 (C.D. Cal. Jan. 25, 2010), *aff'd in part*, 526 F. App'x 761 (9th Cir. 2013) (limiting plaintiff's evidence of trade secrets at trial to the categories of information disclosed and remaining in the case following summary judgment). For example, while Genesys asserted broadly that customer information in the NPS data was "trade secret," it never identified any *specific customer information* in that document that could not readily be ascertained from customers, instead pointing to the entire document.  These types of assertions are impermissible. *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).

---

[23] Genesys's MSJ likewise claimed unbounded protection over general categories of information and knowledge, including "opinion(s)" (D.I. 266 at 27); "personnel information" (*id*. at 28); "pricing and discount information" (*id*. at 29); "sales deal information" (id. at 32); "NPS Data" (id. at 34); and "financial information" (id. at 34).  Genesys should be precluded from making such generalized claims of "trade secret" or "confidential" information at trial.

Similarly, Genesys's generalized assertion that information within documents—including pointing generally to Genesys personnel, product marketing, and architecture—fails to meet the threshold specificity requirement.  *Id.*  And statements that an individual Defendants' general knowledge or "experience" gained at Genesys constitutes confidential or trade secret information likewise should be precluded.  *McGlothen v. Heritage Env't Servs., L.L.C.*, 705 N.E.2d 1069, 1072 (Ind. Ct. App. 1999) ("[A]n employer is not entitled to protection from an employee's knowledge, skill, or general information acquired through experience or instruction while in the employment.").

Thus, Defendants request notice of the "trade secret" and "confidential" allegations that Genesys intends to present at trial, which should reflect the realities of the extensive record developed in this case.  For example, in its preliminary injunction order, this Court found that the "evidence currently before the Court raises doubt that the information Genesys seeks to protect as trade secrets is indeed secret and not public." D.I. 199 at 14.  And this Court recently noted in its summary judgment order, for example, the Genesys "financial letter" contents were "made known publicly," "Genesys advertises its pricing publicly, including its one-month free offers," and Hertel "never accessed" his email files from Genesys. D.I. 348 at 15.  Thus, Defendants are entitled to know what positions Genesys intends to maintain on the "trade secret" and "confidential" issues in light of this record.

Moreover, Defendants are entitled to such notice.  Both trade secret law, as well as Genesys's obligations to supplement its discovery disclosures, require Genesys to disclose in advance of trial the specific information it will assert as constituting "confidential" or "trade secret" information. *See Wyatt Tech.*, 2010 WL 11505684 at *13; *Magnesita Refractories Co. v. Mishra,* No. 2:16-CV-524-PPS-JEM, 2018 WL 6435648, at *13 (N.D. Ind. Dec. 7, 2018); *IDX*

*Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).[24]  However, as noted, in

doing so Genesys <u>not</u> assert *new assertions* not previously provided in response to Defendants'

Interrogatory No. 1.  That is, unless Genesys previously set out "specifics" as to its alleged trade

secret protection during discovery*, it should be precluded from asserting such specifics now*

under F.R.E. 401, 403, and FRCP 37(c). Defendants of course cannot now seek discovery

regarding specific information that Genesys failed to point to during discovery, making new

disclosures highly prejudicial to Defendants.  Accordingly, while Genesys should be required to

provide Defendants with a list of its "trade secret" and "confidential" information that it intends

to assert at trial, it should likewise be required to conform such assertions to "specific" instances

of information that it previously identified to Defendants during discovery.

### VIII.   MIL NO. 8: Limit the testimony of Genesys's retained expert witnesses to the contents of their expert reports; limit Genesys's Rule 26(a)(2)(C) expert witnesses to the subject matter set forth in their expert disclosures.[25]

Genesys's retained experts should be limited to the contents of their respective expert

reports. It is settled law that an "expert may not testify beyond the scope of his or her expert

report."  *Cook*, 2012 WL 4514036, at *6–7 (Pratt, J.); Fed. R. Civ. P. 26(a)(2)(B). Accordingly,

the Court should preclude each of Genesys's retained experts—Brian Dineen, Carrie Distler,

Rebecca Green and Jeremy York—from testifying beyond the scope of their expert reports.[26]

---

[24] Indeed, the specific information alleged against each Defendant will need to be incorporated into the Court's jury instructions, the joint issue instruction, and proposed verdict forms.

[25] Defendants maintain their objections as to each of Genesys's retained and non-retained experts as set forth in Defendants' *Daubert* filings. *See* D.I. 320, 321.

[26] Genesys has asserted that Dineen's testimony may be used to support theories beyond the "raiding" count.  *See* D.I. 284 at 42 n.15. But any attempt to expand the scope or usage of Dineen's report is impermissible.  Dineen's report was expressly limited to assessing damages as to Genesys's raiding claim; it does not identify any measure of damages for other claims.  Moreover, Mr. Dineen confirmed

Likewise, Genesys served a Rule 26(a)(2)(C) disclosure on March 22, 2021 that disclosed the opinions of three non-retained experts: Jessica Coburn, Alex Ball, and Cory Sanders. *See* D.I. 334-1. Non-retained experts likewise cannot testify beyond the scope of the facts and opinions disclosed under Rule 26(a)(2)(C). *See Hirlston v. Costco Wholesale Corp.*, No. 1-17-CV-04699-TWP-MPB, 2020 WL 6047913, at *6 (S.D. Ind. Oct. 13, 2020).  Therefore, the Court should preclude each of Genesys's non-retained experts from testifying beyond the scope of the Rule 26(a)(2)(C) disclosure document that Genesys served on March 22, 2021.

### IX.   MIL NO. 9: Preclude Genesys's experts from offering testimony, repeating the allegations of Genesys witnesses or counsel, and from restating the contents of documents.

Defendants have separately sought to preclude Genesys's expert witnesses from testifying in this case based on the Court's gatekeeping role under *Daubert*.  To the extent the Court finds that the experts may testify, Genesys's expert witnesses should be precluded from testifying to the allegations of Genesys's witnesses or counsel. Genesys's expert disclosures recite allegations pulled directly from Genesys's pleadings. But expert opinions that "merely parrot[] information" provided by a party are "generally excluded." *State Farm Fire & Cas. Co. v. Electrolux Home Prod.*, Inc., 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013).  Likewise, expert testimony cannot be used to circumvent the rules of evidence by repeating the allegations of counsel. *See In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992); *In re TMI Litig.*, 193

---

this during his deposition, agreeing: "I am assessing HR-related damages and unjust enrichment … as a result of the raid." D.I. 335-1 at 24:7–10.  He also confirmed that he was had not attempted to compute the measure of harm resulting from any allegations of breach of contract, breach of fiduciary duty, or other counts in the case. D.I. 335-1 at 24:12–28:23. Thus, if presented at trial, each would be a new theory previously undisclosed and for which Defendants have had no opportunity to respond.

F.3d 613, 705 (3d Cir. 1999).[27] Thus, to the extent Genesys's experts testify, they should not be allowed to testify as to the following sections of Genesys's expert reports, which simply parrot the pleadings and other documents from this case, or make similar argumentative statements:

1. **York Report:** pp. 10–20 (reciting various uncited Genesys allegations, including that information is "confidential trade secret information" on p. 17);

2. **Dineen Report:** pp. 16–17, and 19–21 (reciting lists of allegations from Genesys's motion for summary judgment);

3. **Green Report:** pp. 12–15 (reciting various factual allegations and the content of various documents), pp. 20–24, and 26–32 (reciting allegations copied from Genesys's TAC); and

4. **Genesys's Rule 26(a)(2)(C) Disclosures:** p. 2 (reciting what various Genesys documents state); p. 4 (reciting what information was allegedly considered "confidential" or "highly confidential").

## X.   MIL NO. 10: Preclude Lay or Expert Opinion testimony on legal conclusions.

Both lay and expert testimony about legal conclusions are inadmissible as not helpful to the trier of fact. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *see also  Becker v. City of Evansville, No.* 3-12-CV-00182-TWP-MPB, 2016 WL 6395868, at *6 (S.D. Ind. Oct. 28, 2016) (noting "it is the Court's responsibility alone to instruct the jury on the law" and limiting expert testimony to prevent testimony about legal conclusions at trial); *RAP Indy, LLC v. Zurich Am. Ins. Co., No.* 1-19-CV-04657-JRS-MJD, 2021 WL 5029520, at *1 (S.D. Ind. Sept. 15, 2021) (disallowing "testimony as to legal duties or any opinions that a party violated (or did not violate) those legal duties").  Defendants accordingly outline the following assertions that should be precluded at trial:

---

[27] *amended*, 199 F.3d 158 (3d Cir. 2000).

**A.  No testimony as to whether any Genesys information is a "trade secret"**

The Court should preclude lay or expert testimony as to whether Genesys information is a "trade secret." Genesys has disclosed expert reports where the expert asserts in conclusory fashion that the information at issue in this case is "trade secret" information.  *E.g.*, D.I. 322-7 at 3; D.I. 323-5 ¶ 29; 322-1 at 4; D.I. 322-5 at 4. But the determination of whether information is a trade secret is for the court or jury to decide. *The Finish Line, Inc. v. Foot Locker, Inc.*, No. 1:04-CV-877-RLY-WTL, 2006 WL 146633, at *10 (S.D. Ind. Jan. 18, 2006).  Accordingly, district courts preclude opinion testimony that information is a trade secret. *See HighMark Digital, Inc. v. Casablanca Design Centers, Inc.*, No. 18-cv-06105-SJO-JPR, 2020 WL 2114940, at *8 (C.D. Cal. Mar. 26, 2020) (prohibiting expert witness from "present[ing] the legal conclusion that" the matter at issue "constitute[d] trade secrets"); *CDA of Am. Inc. v. Midland Life Ins. Co.*, No. 01-CV-837, 2006 WL 5349266, at *6 (S.D. Ohio Mar. 27, 2006).  Similarly, the Court should preclude Genesys's witnesses from referring to Genesys's information as "trade secrets," "trade secret information," "proprietary" information, or similar.

**B.  No expert testimony or lay testimony that Genesys's information is "confidential," "highly confidential," or "confidential information."**

Similarly, Genesys's expert disclosures include voluminous testimony with conclusory assertions that Genesys's information is "confidential" or "highly confidential."  But expert testimony is only admissible when it will "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702; *see, e.g., Taylor v. Illinois Cent. R. Co.*, 8 F.3d 584, 586 (7th Cir. 1993).  Further, courts exclude expert testimony on the meaning of contract terms as unhelpful to the jury and as embracing legal conclusions. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, No. 1:04-CV-01587-TAB-RL, 2007 WL 831613, at *3 (S.D. Ind. Mar. 5,

2007). Here, the jury must determine if Genesys has proven that information is not available or readily ascertainable in the industry and is thus "confidential" pursuant to Manno and Strahan's contract. Thus, conclusory testimony that any Genesys information is "confidential" or "confidential information" apart from Court's instruction would not help the jury and is inadmissible. FRE 702.

### C.  No testimony that "raiding" or a "raid" occurred.

Genesys and its lay and expert witnesses should be precluded from stating or opining that a "raid" actually occurred. To the extent Indiana law recognizes "raiding" claims, those claims are subsets of the tort of unfair competition. *The Finish Line, Inc. v. Foot Locker, Inc.*, No. 1:04CV877RLYWTL, 2006 WL 146633, at *9 (S.D. Ind. Jan. 18, 2006); *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 71 F. Supp. 3d 866, 893 (S.D. Ind. 2014). Whether a raid occurred is a legal conclusion, and testimony that a "raid" occurred would invade the province of the jury.  Thus, passing usage of the terms "raid" or "raiding" should be precluded. *Good Shepherd Manor Foundation*, 323 F.3d at 564.  Moreover, testimony that a "raid" occurred would be confusing to the jury and prejudicial to Defendants because the definition of a "raid" under Indiana law is not commensurate with colloquial definitions of "raid."[28] FRE 403.

---

[28] For example, one definition for "raid" in Merriam Webster is: "the recruiting of personnel (such as faculty, executives, or athletes) from competing organizations." (https://www.merriam-webster.com/dictionary/raid). But Merriam Webster's "raid" would not be a "raid" under Indiana law because Indiana law also requires, *inter alia*, that the purpose of the activity be to destroy the competitor. *The Finish Line*, 2006 WL 146633, at *9.

XI.     **MIL NO. 11:  Preclude Genesys from referencing unrelated contractual enforcement efforts taken by Talkdesk, including employment lawsuits.**

Throughout this case, Genesys has referenced Talkdesk's prior action against a former employee, which was prosecuted in California and is now resolved. *See e.g.* D.I. 266 at 7, 42. Such actions by Talkdesk—based on contracts, employees, and facts completely unrelated to this action—are irrelevant and prejudicial to the merits of this case. Courts generally "exclude evidence of other lawsuits, even if such lawsuits are related to the case before it" because such evidence is highly prejudicial and irrelevant. *See Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16-CV-489, 2019 WL 3307850, at *7 (W.D. Va. July 22, 2019)[29] (collecting cases); FRE 401, 403. As such, the Court should preclude Genesys from mentioning any prior or current legal actions taken by Talkdesk.

XII.    **MIL NO. 12:  Preclude arguments, statements, or inferences regarding Defendants' selection of counsel, manner or selection of witnesses, or arguments and inferences relating to witnesses or evidence not introduced in the case.**

The Court should exclude any remarks or testimony concerning Defendants' trial strategy, including that Defendants or their attorneys: (a) have sought to prevent disclosure of alleged facts or discovery of evidence during pre-trial discovery or during trial through the assertion of objections, instructions from counsel, privileges or the filing of this motion *in limine* or any other motion; (b) should stipulate to purported facts in the presence of the jury; (c) have documents or information within their files that have not been produced, that should be delivered to Defendants, or shown to the jury; (d) filed any motions or motions for summary judgment in this case that were denied; (e) have not called to testify any witness equally available to either

---

[29] *Order clarified*, No. 7:16-CV-489, 2019 WL 4197221 (W.D. Va. Sept. 4, 2019).

side; or (f) made comments or statements during the course of depositions, other than questions to witnesses, or formal objections to questions. Genesys should also be prohibited from referencing or commenting on fee arrangements relating to the defense of this case, purported costs incurred by Plaintiff in prosecuting this case, or the costs Defendants have incurred in defense of Genesys's claims. Such statements are irrelevant and prejudicial.  *See*, *e.g.*, *Miller*, 2016 WL 1639087, at *4.

Defendants also move to exclude any comments or testimony that the probable testimony of a witness, who is absent, unavailable, or not called to testify in the cause, would be of a certain nature. *See* FRE 401–403. *See Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 WL 6606044, at *3 (N.D. Ind. Nov. 20, 2014); *Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993). Further, the Court should instruct Genesys and its counsel not to tender, read from or refer to any statement or report not admitted previously in evidence, and not to suggest to the jury what would have been the testimony of any witness not actually called.

## XIII.    MIL NO. 13: Preclude evidence or argument that alleged misappropriation of trade secrets supports Genesys's claims for tortious interference with contract.

Genesys asserts that the alleged misappropriation of trade secrets by former Genesys employees constitutes tortious interference with contract. *See* Ex. F at 66–67. However, the Court has held that tortious interference claims based upon the misappropriation of trade secrets or confidential information are preempted by the Indiana Uniform Trade Secret Act.  D.I. 156 at 29 (Order on Motion to Dismiss). Accordingly, alleged misappropriation of trade secrets is irrelevant to the tortious inference with contract claims and evidence or argument to the contrary should be precluded. F.R.E. 401, 403.

XIV.   **MIL NO. 14: Exclude any reference to discovery disputes between the parties, including assertions relating to requests for information sought or produced during the case by either party.**

The Court should preclude any reference to discovery disputes between Defendants and Genesys.  These disputes, including assertions of missing or non-existent evidence, "have no relevance to the issues the jury needs to decide" and would be prejudicial to the parties.  *Nelson v. Santander Consumer USA, Inc.*, No. 11-CV-307-BBC, 2013 WL 12234542, at *6 (W.D. Wis. June 5, 2013); *see also* FRE 402, 403; *Davis v. Lakeside Motor Co.*, No. 3:10-CV-405 JD, 2014 WL 6606044, at *1 (N.D. Ind. Nov. 20, 2014).

XV.   **MIL NO. 15: Preclude Genesys experts from introducing evidence or argument as to hearsay statements.**

Genesys's expert reports refer to hearsay statements from "exchanges" or "conversations" with Genesys employees and representatives.  *See e.g.,* D.I. 323-5 ¶ 9, D.I. 322-5 at 4. This "evidence" is inadmissible hearsay, and an unreliable basis for an expert opinion. *See State Farm Fire & Cas. Co. v. Electrolux Home Prod.*, Inc., 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013). To the extent that Genesys argues that experts may rely on hearsay, Genesys has failed to establish the prerequisite that the hearsay statements are the type of statements reasonably relied on by experts in the field. F.R.E. 703. Indeed, Genesys's experts do not even identify the source of the hearsay statements in most instances,[30] much less develop a record that the source may be properly relied on pursuant to Rule 703.  Therefore, Genesys should be precluded from introducing hearsay statements referred to by its experts.

XVI.   **MIL NO. 16: No confidentiality designations on trial exhibits or referring to**

---

[30] This failure alone should preclude reliance on the statements. FRE 702

> **confidentiality designations under the protective order.**

Genesys should be precluded from referring to the confidentiality designations under the protective order or using trial exhibits marked with those designations because such confidentiality designations are irrelevant and highly prejudicial. FRE 401, 403. Since the confidentiality designations were created after litigation began, those designations are "absolutely irrelevant" and therefore inadmissible. FRE 401; *see In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-CV-4301, 2014 WL 505234, at *7 (S.D.W. Va. Feb. 5, 2014) ("[w]hether a party designates a document as confidential during the litigation process is absolutely irrelevant").

Even if some relevance was assumed, the limited probative value of the labels would be outweighed by the severe risk of "confusing and misleading the jury on the issue of whether Plaintiffs' took reasonable steps to maintain the confidentiality of their trade secrets." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-CV-01370-EJD, 2018 WL 1569703, at *5 (N.D. Cal. Mar. 30, 2018). Limiting instructions would likely be ineffective to cure this prejudice too because the instructions would only draw the jury's attention to the irrelevant and misleading document designations. Thus, exclusion of protective order designations from trial is also warranted under FRE 401 and 403. *Id.*; *In re Ethicon*, 2014 WL 505234, at *7.

## XVII.   MIL NO. 17:  Preclude any reference to purported insurance or indemnity obligations that may result in another party or third-party being financially responsible for any award of damages in this case

During discovery, Plaintiff sought information relating to potential indemnity obligations and insurance.  The existence or non-existence of either, however, is irrelevant to any issue in this case and, moreover, may be highly prejudicial to Defendants by suggesting to the jury that a party may or may not ultimately be responsible for a judgment in the action.  Moreover, evidence

of liability insurance is inadmissible to prove that party acted wrongfully – and Genesys has not

suggested that this evidence would be offered for any other reason. FRE 411. Thus, reference to,

suggestion of, or inquiry into this irrelevant subject matter should be excluded from trial. *See*

*VanGilder v. Baker*, No. 403-CV-55-JVB-APR, 2008 WL 2225647, at *3 (N.D. Ind. May 27,

2008) (granting a motion in limine to exclude evidence of insurance when the proponent failed to

show how it would be used in accordance with the second sentence of FRE 411).

XVIII.   **MIL NO. 18: Preclude arguments, opinions, or inferences that documents that bear a confidentiality designation are *ipso facto* "confidential," "proprietary," or "trade secret."**

Despite not being familiar with the substance of certain documents, Genesys witnesses

(including purported experts) have concluded that documents that bear a confidentiality or

internal distribution marking are *ipso facto* "confidential," "proprietary," or "trade secret."  Such

statements should be precluded.  A witness should not speculate as to whether information in a

document is provided to or already known in the industry if the witness has no understanding of

the information in the document. Indeed, documents cited to by Genesys that bear confidentiality

designations are available in the public domain, as is the information that is contained in such

documents. D.I. 199 at 12–14. Thus, speculative assertions that a document contains

"confidential," "proprietary" or "trade secret" simply because it bears a confidentiality

designation should be precluded under Rules 401 and 403 as not helpful to the jury, lacking

probative value, and seeking to shift Genesys's burden of proving that a trade secret exists to

Defendants. *See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind.

Ct. App. 2001).

DATE: July 25, 2022                              Respectfully submitted,

                                                          */s/ David S. Moreland*

James P. Strenski, #18186-53
Paganelli Law Group
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Telephone: 317-550-1855
Email: jstrenski@paganelligroup.com

David S. Moreland (*pro hac vice*)
John W. Harbin (*pro hac vice*)
Warren J. Thomas (*pro hac vice*)
Laken E. Adkins (*pro hac vice*)
Steven M. Philbin (*pro hac vice*)
Lee G. Hamilton (*pro hac vice*)
Meunier Carlin & Curfman LLC
999 Peachtree St. NE, Suite 1300
Atlanta, GA 30309
Telephone: 404-645-7700
Email: dmoreland@mcciplaw.com
        jharbin@mcciplaw.com
        wthomas@mcciplaw.com
        ladkins@mcciplaw.com
        sphilbin@mcciplaw.com
        lhamilton@mcciplaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ David S. Moreland*

David S. Moreland