UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GENESYS CLOUD SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Case No.: 1:19-CV-00695-TWP-DML |
| TALKDESK, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**GENESYS OPPOSITION BRIEF TO DEFENSE
MOTION IN LIMINE**

John R. Maley
Thomas C. Payne
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:     (317) 236-1313
Facsimile:      (317) 231-7433
Email:           jmaley@btlaw.com
                    tpayne@btlaw.com

Kathleen M. Anderson
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:     (260) 425-4657
Facsimile:      (260) 424-8316
Email:           kanderson@btlaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

Page

A.   INTRODUCTION .................................................................................................3

B.   DISCUSSION ......................................................................................................4

    1.   Limine No. 1 – Damages.............................................................................4

        A.   Contract, Interference, Conspiracy, Aiding & Abetting, Misappropriation Claims..................................................................5

        B.   Raiding and Trade Secrets v. Talkdesk .............................................6

        C.   Breach of Fiduciary Duty...................................................................7

        D.   Punitive Damages ..............................................................................7

    2.   Limine No. 2 – Lost Profits and Lost Sales ................................................9

    3.   Limine No. 3 – Unjust Enrichment .............................................................9

    4.   Limine No. 4 – Talkdesk Financial Information .........................................9

    5.   Limine No. 5 – Attorneys' Fees ................................................................11

    6.   Limine No. 6 – "Double Damages"...........................................................11

    7.   Limine No. 7 – Specificity........................................................................11

    8.   Limine No. 8 – Experts .............................................................................12

    9.   Limine No. 9 – Expert Reliance................................................................12

    10.  Limine No. 10 – Legal Conclusions .........................................................12

    11.  Limine No. 11 – Talkdesk Enforcement...................................................12

    12.  Limine No. 12 – Arguments etc.................................................................12

    13.  Limine No. 13 – Interference.....................................................................12

    14.  Limine No. 14 – Discovery Disputes ........................................................12

    15.  Limine No. 15 – Experts ...........................................................................13

    16.  Limine No. 16 – Confidential Designations..............................................13

17.    Limine No. 17 – Insurance/Indemnity ............................................................. 13

18.    Limine No. 18 – Confidentiality Designations .............................................. 13

## A.    INTRODUCTION

After 200 pages of briefing and lengthy oral argument, the Court issued a thorough summary judgment opinion granting in part and denying in part motions for summary judgment filed by both sides.  [ECF351]  At summary judgment Defendants asserted some of the same arguments raised here, claiming Genesys has no damages.  [ECF271; 290]  The Court disagreed in its 43-page opinion.  [ECF351].  The Court wrote, for instance, on multiple occasions, "The amount of damages must be determined by the trier of fact."  [ECF351, pp. 21, 23, 25, 30, 42]

Unsatisfied, Defendants moved for reconsideration, seeking to re-litigate the Court's exacting work at summary judgment based on massive briefing and lengthy oral argument.  [ECF366]  On reconsideration Defendants pivoted, however, now claiming factual issues as to whether Genesys was harmed.  [ECF366, pp. 10-12 (all under the heading, "*There is a genuine dispute of fact regarding harm to Plaintiff*")].  The Court disagreed once again with Defendants, denying reconsideration in a 10-page opinion.  [ECF380]  The Court reiterated that Genesys was harmed and that the amount of damages is for the trier of fact.

Again unsatisfied, Defendants now misuse the pre-trial limine process for a third round of argument, trying in an over-sized 37-page brief to belatedly and without merit raise discovery/disclosure arguments on damages.  These assertions are both untimely and unsupported. Genesys properly disclosed its damages, including with detailed expert reports from retained witnesses.  Genesys has sustained damages on all claims, and also pleaded and stills seeks post-verdict injunctive relief.  So Defense Limine No. 1 and No. 2 should be denied, as explained further below.

As for the remaining 16 separate limine items, many are unfounded, and others are unnecessary and uncontested, such as No. 17 on insurance or indemnity.  Each is addressed below.

## B.   DISCUSSION

### 1.   Limine No. 1 – Damages

Defendants devote 14 pages to the their first limine motion complaining – on the eve of the final pre-trial and long after the close of discovery without any prior motion to compel – about damages disclosures, citing inapposite cases.  Procedurally, if Defendants had issues with discovery disclosures they could have – per Rule 37 and Local Rule 37-1 – had good faith conferences with counsel and then brought their discovery motion.  No such meet-and-confer conference or discovery motion was pursued by Defendants.

Indeed, "A motion in limine is a request for the court's guidance concerning an evidentiary question." *Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)).  "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct.  A motion in *limine* weeds out evidence that is not admissible for any purpose." *Washington Frontier League Baseball, LLC v. Zimmerman,* 2018 WL 3120623, at *3 (S.D. Ind. June 26, 2018); *Scott v. Wabash Nat'l Corp.,* 2007 WL 9773388, at *5 (N.D. Ind. Nov. 5, 2007) (denying a motion in limine that the court determined was a discovery-related issue since a motion to compel is not the proper forum to raise discovery disputes); *Cooper Indus., Inc. v. Juno Lighting, Inc.*, 1986 WL 7060, at *4 (N.D. Ill. June 19, 1986) (denying a motion in limine that the court characterized as "essentially a discovery dispute"); *Carver v. Petry*, 2013 WL 160277, at *2 (E.D. Ky. Jan. 15, 2013) ("[i]n reality, the present issue is a dispute which would have been better presented during the period of discovery as either a motion to compel or a motion for a protective order").

Moreover, Defendants complain even though Genesys provided a three-page damages disclosure almost three years ago back in December of 2020 as part of its Rule 26(a)(1) disclosures, Genesys supports its damages claims with two separate experts who submitted lengthy, detailed, and

well-reasoned Rule 26(a)(2) expert reports [ECF322-1, 323-5, 322-7].   Genesys damages experts submitted detailed damages opinions of $1.2 million to $1.81 million stemming from the Talkdesk/Manno/Strahan/Hertel actions in their raid of the mid-market sales team and accompanying claims.   [ECF322-1] (Dineen Report), and of at least $2.0 million for misappropriation of the PureCloud List.   [ECF323-5] (Distler Report).

Furthermore, the Court addressed defense arguments on damages at summary judgment, ruling damages were to be determined at trial.   [ECF351, pp. 21, 23, 25, 30, 42 ("The amount of damages must be determined by the trier of fact")].   Indeed, it is undisputed that Genesys lost valued sales employees due to Defendants' wrongdoing.   [ECF261-30, Ex.724, pp.150:7-151:8, 162:5-22].   Following the exodus of Genesys employees to Talkdesk in 2018, Genesys scrambled to refill a depleted mid-market team without leadership in the most important quarter of the year.   [ECF261-31, Ex.727, pp.47:16-18, 156:4-19; ECF261-32, Ex.731, pp.139:24-144:20; ECF259-9, Ex.730, pp.150:18-152:8].   Genesys expended costly resources to replace the employees who left for Talkdesk. [ECF261-31, Ex.727, p.166:13-22; ECF261-32, Ex.731, pp.142:23-144:20].   Genesys paid the individual Defendants their full compensation while they were secretly working for Talkdesk's benefit. [ECF265, Ex.738, ¶7].   Furthermore, Genesys pleads and seeks injunctive relief on its claims. [ECF220 (Third Amended Complaint)].   Genesys will renew that request after the jury verdict.

### A.   Contract, Interference, Conspiracy, Aiding & Abetting, Misappropriation Claims

Defendants erroneously assert that Genesys did not provide disclosures as to these claims. But damages expert Professor Dineen provides expert damages projections of $1.2 million - $1.81 million as to the claims involving the extensive raiding of Genesys' mid-market sales team, deriving from the multiple actions and multiple claims involving stealing Genesys leaders and personnel. Dineen's opinions are not limited to a specific legal theory, but to the damages caused by the Defendants' actions in targeting and taking Genesys talent.   Per his report, "Barnes & Thornburg LLP

('Counsel') has retained me . . . to assist with the quantification of Human Resource ('HR') related damages claimed by Genesys Cloud Services . . . ."  As he testified in his deposition, "I am assessing HR-related damages and unjust enrichment as a result of these employees leaving Genesys for Talkdesk, as a result of the raid, or if it's called unlawfully raided, however it's phrased."  [Dineen Dep., p.24].

Further, he confirmed, "I believe if you're breaching your fiduciary duty and, for example, helping to recruit other people away from Genesys, that that is part of this overall damage assessment." [Dineen Dep., p.25].  And, he added, "The raid would comprise actions that would be taken – that would take place in order to carry out the raid.  It would consist of things like aiding and abetting.  So I think those would all – again, I'm not a lawyer, but I believe those would all fall under the process of the raid."  [Dineen Dep., p.26].  And he confirmed, "These are damages related to the departure of these nine employees.  My understanding is that Manno, Hertel and Strahan are also defendants, along with Talkdesk."  *Id.*[1]

Likewise, damages expert and distinguished economist Distler's trade secrets royalty opinion is not confined to Talkdesk's misappropriation.  It is a valuation of the asset stolen – the PureCloud List, with Strahan and Manno also misappropriated and Hertel had knowledge of the misappropriation, and are liable for full damages.

### B.    Raiding and Trade Secrets v. Talkdesk

Again, damages expert Professor Dineen provides expert damages projections of $1.2 million – $1.81 million as to the claims involving the extensive raiding of Genesys' mid-market sales team, deriving from the multiple actions and multiple claims involving stealing Genesys leaders and personnel.  Dineen's opinions are not limited to a specific legal theory, but to the damages caused by

---

[1] These deposition excerpts are attached as Exhibit A to this Brief.

the Defendants' actions in targeting and taking Genesys talent.  [Dineen Deposition Excerpts, above and at Exhibit 1].

Genesys acknowledges it does not advance damage claims for lost profits or lost sales at trial.

### C.    Breach of Fiduciary Duty

Defendants again erroneously assert that Genesys did not provide disclosures as to these claims.  Again, Damages expert Professor Dineen provides expert damages projections of $1.2 million – $1.81 million as to the claims involving the extensive raiding of Genesys' mid-market sales team, deriving from the multiple actions and multiple claims involving stealing Genesys leaders and personnel.  That includes breach of fiduciary duty.  Dineen's damages opinions are not limited to a specific legal theory, but to the damages caused by the Defendants' actions in targeting and taking Genesys talent.   [Dineen Deposition Excerpts, above and at Exhibit 1]. Moreover, there is no limitation to disgorgement damages – that is one of the available remedies.

### D.    Punitive Damages

Punitive damages are sought for each tort claim:  breach of fiduciary duty, interference with contract, raiding, and conspiracy/aiding and abetting breach of fiduciary duty an interference. [ECF220 (Third Amended Complaint)].  Punitive damages are the province of the jury.  The statutory limitation in Indiana is 3x compensatory damages.  Thus, Genesys properly disclosed its punitive damages claim as follows:  "Punitive damages, allowable up to three times the amount of compensatory damages awarded, and particularly recoverably in this case in which Talkdesk's Founder, Chairman of the Board, and CEO personally directed the illegal actions of Talkdesk and conspired with and aided and abetted the individual defendants."

Again, damages expert Professor Dineen provides expert damages projections of $1.2 million – $1.81 million as to the claims involving the extensive raiding of Genesys' mid-market sales team, deriving from the multiple actions and multiple claims involving stealing Genesys leaders and

personnel.  Talkdesk counters that damages opinion with an expert.  That damages battle will play out at trial.  The jury's determination of compensatory damages on each tort claim will then set the upper limit of each punitive damage award.

Defendants cite to an Indiana appellate decision, *Techna-Fit, Inc. v. Fluid Transfer Prod., Inc.,* 45 N.E.3d 399, 415 (Ind. Ct. App. 2015), but this case simply interprets Indiana's 3x compensatory damages cap.  The court held, "We interpret 'the amount of compensatory damages awarded in the action' under Indiana Code Section 34–51–3–4 to mean the amount of compensatory damages awarded for the claim or claims for which punitive damages were requested in a party's pleadings . . . ."

Defendants then cite to *Miller* in which no damages claim was ever disclosed beyond "more than $300,000" with no further information.  That is not the situation here, in which Genesys has disclosed damages with multiple experts.  *See Roberts v. Tim Dahle Imports, Inc.*, 2022 WL 1787709, at *1 (D. Utah June 1, 2022) (distinguishing *Miller*, writing that "Punitive damages are similarly left to the discretion of the jury and are not subject to concrete rules or calculation"; "the court is persuaded by the above-cited authorities that conclude that a precise calculation of emotional distress and punitive damages is not required by Rule 26(a)").[2]

---

[2] The *Roberts* court's full discussion of authority against disclosures requiring a precise punitive damage number or calculation provides:  "Punitive damages are similarly left to the discretion of the jury and are not subject to concrete rules or calculation.  *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 16, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) (The issue of punitive damages "has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case." (citation omitted)); *Missouri Pac. Ry. Co. v. Humes*, 115 U.S. 512, 521, 6 S.Ct. 110, 29 L.Ed. 463 (1885) ("The discretion of the jury in [awarding punitive damages] is not controlled by any very definite rules; yet the wisdom of allowing such additional damages to be given is attested by the long continuance of the practice."). Accordingly, other district courts have ruled that parties are not required to disclose a calculation for punitive damages because they are inherently vague and entrusted to the discretion of the jury.  *See Melo-Fernandez v. Bearden*, CV 20-0081, 2020 WL 7353880, at *3 (D.N.M. Dec. 15, 2020) ("[C]omputations of . . . punitive damages are issues for the factfinder and are not discoverable."); *McCrary v. Country Mut. Ins. Co.*, No. 13-cv-507, 2014 WL 314777, at *2 (N.D. Okla. Jan. 28, 2014) ("In considering a punitive damage award, the jury usually considers the net worth of the wrongdoer, and net worth is generally determined from financial records that are in the possession of the Defendant.  A party is not required to provide a calculation of damages when that calculation depends on information in the possession of another party."); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011) (denying motion to compel a computation of a plaintiff's punitive damages on the basis that it is an issue for the factfinder); *E.E.O.C. v. Gen. Motors Corp.*, No. 3:06-cv-19, 2009 WL 910812, *3 n.1 (S.D. Miss. Apr. 1, 2009) (finding that "a claim for punitive damages, as it is an issue for the jury, is . . . not amenable to a specific calculation under Rule 26 and, therefore, that the EEOC is not barred from seeking such damages based on its failure to provide a specific computation in its disclosures"); *Richards v. Convergys Corp.*, Nos. 2:05-CV-00790-DAK, 2:05-CV-00812 DAK, 2007 WL 474012, 2007 U.S. Dist. LEXIS 1513 at *3 (D. Utah Jan. 8, 2007)

Accordingly, the defense argument fails.

2.      **Limine No. 2 – Lost Profits and Lost Sales**

Genesys does not advance a damages claim for lost profits or lost sales.  But it is undisputed that Genesys suffered a significantly reduced quarter of sales in the quarter after the raid, and with respect to the damages opinions set forth by Professor Dineen from the loss of personnel, this remains relevant evidence.  Genesys will not, however, request damages for lost profits or lost sales.  The immediate decrease in sales remains relevant that the loss of so many mid-market sales leaders and personnel at once was negatively impactful, and is appropriately considered by the jury including for punitive damages.

3.      **Limine No. 3 – Unjust Enrichment**

Although Genesys does not advance separate legal claims of unjust enrichment, the damages that Professor Dineen labeled as "unjust enrichment" are benefits that accrued to Talkdesk from tortious conduct and misappropriation of trade secrets, and are properly in play.

4.      **Limine No. 4 – Talkdesk Financial Information**

Talkdesk financial information is probative for punitive damages against Talkdesk.  The Court has ruled that multiple tort claims against Talkdesk are for the jury.  If the jury finds for Genesys on one or more of those claims, punitive damages are recoverable.

Indeed, Seventh Circuit Pattern Instruction 3.13 provides that Defendant's financial condition should be considered if the jury finds that punitive damages are appropriate.  Defendants cite to *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508 (7th Cir. 1992), but the majority of courts interpret *Zazu's* statement on financial information to be non-binding dictum.  As was written 25 years after the 1992 *Zazu* opinion:

---

(denying motion to compel a calculation of noneconomic and punitive damages); *see also* FED. R. CIV. P. 26 advisory committee's note to 1993 amendment ("[A] party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person.").

The majority of district courts, however, have found that *Zazu's* musings on punitive damages are indeed *dictum*. For example, in *Jones v. Scientific Colors, Inc.,* 2001 WL 902778 (N.D. Ill. July 3, 2001), the district court sustained a magistrate judge's order compelling the corporate defendant to produce financial information related to a claim for punitive damages. While acknowledging the decisions in *Yund* and *Pivot Point,* the court in *Jones* found that *Zazu* was not controlling precedent but, instead, *dictum.* The court did not, however, provide any analysis regarding how it reached this conclusion. The subsequent district court decisions relying upon *Jones* for the proposition that *Zazu* is not controlling precedent add nothing to the lack of analysis in *Jones* relegating *Zazu's* punitive damages analysis to *dictum. See e.g., Isbell v. John Crane, Inc.,* 74 F.Supp.3d 893, 898–99 (N.D. Ill. 2014) (agreeing with *Jones* that *Zazu's* punitive damages analysis was *dictum*); *E.E.O.C. v. Staffing Network, L.L.C.,* 2002 WL 31473840 (N.D. Ill. Nov. 4, 2002) (same). Further complicating the issue is the fact that other district courts decline to follow *Zazu* not because its punitive damages analysis is *dictum,* but rather because the punitive damages claims in the cases involved individual persons, not corporations; state law claims, not federal; or specific statutes, not federal common law. *See e.g., Sanders v. Jackson,* 209 F.3d 998, 1002 (7th Cir. 2000) (discussing the Federal Debt Collection Practices Act's 'net worth' provision as it relates to punitive damages); *Kemezy v. Peters,* 79 F.3d 33, 36 (7th Cir. 1996) (discussing the appropriateness of evidence of an *individual* defendant's wealth for purposes of calculating punitive damages); *In re Aqua Dots Products Liability Litigation,* 270 F.R.D. 322, 325 (N.D. Ill. 2010) (considering whether a defendant's wealth is a proper consideration for purposes of calculating punitive damages related to a claim made under *state* law).

*Donald v. Wexford Health Sources, Inc.,* 266 F. Supp. 3d 1097, 1099-1100 (C.D. Ill. 2017) ("This Court concludes that, in a case where punitive damages are sought against a corporate defendant, *Zazu's* statement that the defendant's financial condition is irrelevant to punitive damages is *dictum*").

The *Wexford Health* opinion concluded:

> The general rule, as stated by the Supreme Court in *Newport v. Fact Concerts,* 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), is that "'[e]vidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded ...'" *See also* Restatement (Second) of Torts § 908(2) (1979); D. Dobbs, Law of Remedies § 3.9, pp. 218–219 (1973). Other than the *dictum* in *Zazu,* there is no opinion from the Seventh Circuit modifying or qualifying this general rule under the circumstances of this case. Accordingly, as a general rule, a defendant's wealth can be considered when evaluating punitive damages. It is therefore "relevant" within the meaning of Rule 26(b).

266 F. Supp. 3d at 1102.

As for this Court's decision in *Edson v. Dreyer & Reinbold, Inc.,* 2017 WL 2255954, at *5 (S.D. Ind. May 23, 2017), it concludes that "evidence of DRI's financial condition may be admissible if Edson introduces evidence that DRI engaged in the discriminatory conduct with malice or with

reckless indifference to her federally protected rights."  Although the Court there held that relevancy and admissibility of financial condition is best determined at trial, in this case the Court has deep knowledge already of extensive evidence Talkdesk's actions (e.g., "dance on their graves") sufficient to allow financial evidence of Talkdesk from the outset.  Indeed, this Court wrote in *Edson,* "If evidence of punitive damages has been presented to the jury, the Court will likely allow testimony regarding DRI's financial information."  Such evidence is already before the Court and will be presented to the jury as well through multiple witnesses and documents.

**5.      Limine No. 5 – Attorneys' Fees**

Genesys will not present attorneys' fees evidence to the jury, but instead post-verdict to the Court.

**6.      Limine No. 6 – "Double Damages"**

Under federal and state trade secret statutes, if willful and malicious misappropriation exists an award of up to twice the amount of damages or royalties may be awarded.  Ind. Code § 24-2-3-4(c); 18 U.S.C. § 1836 (b)(3)(C).  Nothing in either statute says that this exemplary award is not to be determined by the jury.  Both statutes say the Court may award various damages (including royalties), and also say the Court may award exemplary damages for willful and malicious misappropriation. And, in *Mangren Rsch. & Dev. Corp. v. Nat'l Chem. Co.,* 87 F.3d 937, 946 (7th Cir. 1996), the Seventh Circuit affirmed a jury's exemplary damages award under the similar Illinois Trade Secrets Act, which has the same exemplary damages language as the Indiana and federal statutes.

**7.      Limine No. 7 – Specificity**

In its Supplemental Trial Brief filed today, Genesys has narrowed and identified the specific trade secrets and confidential information it is proceeding with at trial.

8.      **Limine No. 8 – Experts**

Genesys will not elicit opinions from its disclosed experts beyond those disclosed, as it expects of Defendants likewise.

9.      **Limine No. 9 – Expert Reliance**

Defendants' limine motion is overbroad in seeking to limit what Genesys experts can testify to.  Genesys will not elicit opinions beyond those disclosed.  They will identify evidence they rely upon for their opinions, as well as any assumptions as is commonplace.

10.     **Limine No. 10 – Legal Conclusions**

Genesys will not elicit legal conclusions from experts.  The defense effort to keep witnesses from using terms like confidential or raid is unsupported.

11.     **Limine No. 11 – Talkdesk Enforcement**

Talkdesk's actions in enforcing contract and trade secrets against its workforce are probative, and should not be excluded in limine at the least.

12.     **Limine No. 12 – Arguments etc.**

This is an overbroad, better-for-trial objection from Defendants.  Genesys trial counsel are experienced and know the Rules of Evidence and Seventh Circuit Standards of Professional Conduct. Counsel will put evidence before the jury, not procedural history of the case.  As for any witness under the control of Talkdesk that they choose not to call, that is likewise a trial determination of potential adverse inferences.

13.     **Limine No. 13 – Interference**

Genesys will not advance claims dismissed.

14.     **Limine No. 14 – Discovery Disputes**

Genesys will put evidence before the jury, not discovery disputes.

15. **Limine No. 15 – Experts**

Pursuant to Fed. R. Evid. 703:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Indeed, "hearsay and third-party observations that are of a type normally relied upon by an expert in the field are properly utilized by such an expert in developing an expert opinion." *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987).

The defense motion is non-specific, and any objections are best raised during expert testimony. *United States v. Carmichael*, 2018 WL 1140391, at *1 (S.D. Ind. Mar. 2, 2018) ("The court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded").

16. **Limine No. 16 – Confidential Designations**

Concerns about any exhibits with confidentiality designations can be addressed either from a limiting instruction or redaction.

17. **Limine No. 17 – Insurance/Indemnity**

Genesys will not reference insurance or indemnity, or the lack thereof.

18. **Limine No. 18 – Confidentiality Designations**

Defendants apparently seek to silence witnesses from referencing a pre-existing confidentiality label on an exhibit. Any concerns on this front are best addressed at trial, including by cross-examination. A confidential designation can be relevant evidence of efforts taken to keep information protected from disclosure.

Respectfully submitted,

GENESYS CLOUD SERVICES, INC.

By its Attorneys,

_s/ John R. Maley_
John R. Maley
Thomas C. Payne
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:     (317) 236-1313
Facsimile:     (317) 231-7433
Email:         jmaley@btlaw.com
               tpayne@btlaw.com

Kathleen M. Anderson
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:     (260) 425-4657
Facsimile:     (260) 424-8316
Email:         kanderson@btlaw.com

DMS 23323082.1

14