# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS CLOUD SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Case No. 1:19-CV-695-TWP-DML |
| | ) |
| TALKDESK, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN OF PLAINTIFF'S DESIGNATED DEPOSITION TESTIMONY

Defendants Talkdesk, Inc. ("Talkdesk"), Ralph Manno ("Manno"), Michael Strahan ("Strahan"), and Mark Hertel ("Hertel") (collectively "Defendants"), by counsel, submit this reply brief in support of their motion to exclude certain of Plaintiff Genesys' designations of deposition testimony. (D.I. 425).

## I.    Genesys agrees that certain of its designations should be excluded[1]

Genesys has agreed that the following deposition portions should be excluded:

- Mervyn Alamgir: 16:6-9, 32:1-4, 33:6-9;
- Shauna Geraghty: 37:9;
- Tiago Paiva: 79:6-8[2], 84:20-22, 85:15-86:11, 86:15-22;
- Taylor Knudson: 51:12-52:5, 72:23-73:3;

---

[1] Defendants reserve the right to raise further issues with Genesys' designations as the issues for trial in this case are narrowed.  Consistent with these objections, Defendants intend to object to certain counter-designations that Genesys provided after the filing of this motion (if not resolved).

[2] Genesys agreed to exclude "lines 6 and 7 of page 79" (D.I. 457 at 13), but presumably intended to include line 8 as the phrase "production item that I have on the screen here" makes no sense out of context. (Ex. A at 79:8).

- Jessica Lu: 16:22-24[3], 27:1-2, 53:18-54:3; and
- Janice Rapp: 16:11-17:10, 18:5-14, 19:6-21:2, 24:2-10.

As both parties agree that the above identified portions of deposition testimony should be excluded, Defendants' reply brief addresses the other portions that remain disputed.

## II. Genesys' Deposition Designations From Mervyn Alamgir Should be Excluded[4]

### a. Testimony regarding legal conclusions

Genesys designated testimony from Mr. Alamgir at 39:21-25 and 41:4-8, where he was asked to make legal conclusions regarding whether Talkdesk employees had a legal "duty to work in the best interest" of Talkdesk, and if it is improper to "steal data." This testimony is inadmissible, as explained in Defendant's MIL No. 10. (*See* D.I. 409 at 28 (citing *RAP Indy, LLC v. Zurich Am. Ins. Co.*, No. 1-19-CV-04657-JRS-MJD, 2021 WL 5029520, at \*1 (S.D. Ind. Sept. 15, 2021) (disallowing "testimony as to legal duties or any opinions that a party violated (or did not violate) those legal duties"))). Genesys fails to distinguish the cited case law and instead makes a number of arguments to avoid the plain inadmissibility of this testimony. Each argument fails. *First*, Genesys argues that Mr. Alamgir was presented as "an expert in the contact center industry" – not true. As this Court has recognized, Mr. Alamgir is expected to provide expert testimony on the subject of lead generation software and the availability of prospective customer information and customer lists within the contact center industry. (D.I. 455 at 5-6). The existence of legal duties and the propriety of "steal[ing] data" fall well outside Mr. Alamgir's scope of expertise. *Second*, Genesys claims this testimony is relevant to its conspiracy claim. Genesys fails to explain how Mr. Alamgir's conjecture makes it more or less likely that the conspiracy

---

[3] In view of this, Defendants withdraw their objection to 16:3-21 and 16:25-17:4.

[4] The deposition transcript of Mr. Alamgir is attached hereto as Ex. A.

1

occurred, particularly when Mr. Alamgir joined Talkdesk well after the alleged conspiracy transpired. (Ex. A at 7:20-22). This testimony should be excluded.

### b. Testimony on Talkdesk's lead generation and advertising/marketing budget

Defendants object to the following testimony as irrelevant and bearing a substantial risk of confusing the jury: 11:9–24; 14:18–15:15; 15:20–16:14; 17:23–19:1; 19:6–11; 20:20–21:6; 21:20–25; 22:4–18; 29:15–30:11. Genesys argues this testimony is relevant to its claims and damages, casting it as detailing facts on money spent by Talkdesk on lead generation. This wholly ignores Defendants' objection that the costs and budgets that Mr. Alamgir testified about are well beyond the scope of his expert opinions, instead veering into irrelevant software costs, employee salaries, and benefit information. Moreover, any testimony on the cost of software used by Mr. Alamgir's groups is minimally, if at all, probative, and instead risks severely prejudicing Defendants. Indeed, the testimony that Defendants object to relates to costs for the entire *advertising/marketing* group, not just the lead generation databases that Mr. Alamgir opines on. The jury will have no way of deducing from the testimony designated by Genesys the amount of money spent by Talkdesk specifically on its lead generation activities, and instead will be confused into erroneously thinking that the entirety of the cited costs are directed to lead generation. Genesys' brief exemplifies the danger of confusion, as it purposefully describes 6sense as "lead generation software" when it in fact has a broad range of robust marketing applications and features well beyond simply providing a database of customer information. *See, e.g.*, https://6sense.com/who-we-help/marketing/. This testimony is not relevant to damages, but even if there were some relevance, it would be substantially outweighed by the risk of jury confusion. Therefore, this testimony is inadmissible under FRE 402 and 403.

Genesys also argues that the testimony on Talkdesk increasing its budget for lead generation is somehow relevant to its allegation that "Talkdesk stole Genesys' PureCloud List as a means to cut corners in developing its own sales leads." (D.I. 457 at 3). But again Genesys fails to explain how Talkdesk increasing its budget for lead generation and marketing (well after the relevant 2018 timeframe) makes it more likely that Talkdesk misappropriated the PureCloud List. The dispute regarding the PureCloud List is not whether Talkdesk possessed it, but whether the list or the information contained within it is confidential or trade secret. Mr. Alamgir's testimony has no relevance to the confidentiality of the PureCloud List, nor to any other claim.

### c.  Testimony regarding PureCloud List

Defendants object to the testimony at 38:6-18 as it asks for information not within Mr. Alamgir's personal knowledge, rendering his answers irrelevant. This testimony would instead have the prejudicial effect of causing the jury to improperly assume that the "facts" posited in Genesys' counsel's questions are true. The jury must determine the truth of these alleged "facts" based on the evidence and testimony of witnesses with personal knowledge – not based on the argumentative questioning of Genesys' counsel.

## III.    Genesys' Deposition Designations From Shauna Geraghty Should be Excluded[56]

### a.  Testimony regarding legal conclusions

For the same reasons as Mr. Alamgir, the testimony of Ms. Geraghty regarding the duties of employees and alleged confidential information should be excluded. (Ex. B at 10:5–9, 11:12–19, 18:16–19:4, 26:20–28:2). Genesys argues that the testimony is "plainly relevant" but once again

---

[5] The deposition transcript of Ms. Geraghty is attached hereto as Ex. B.

[6] Genesys has indicated that it expects to call Ms. Geraghty as a live witness in its case-in-chief. If it does so, Defendants object to any designations of Ms. Geraghty being played to the jury.

ignores the clear case law disallowing such testimony. *RAP Indy, LLC*, 2021 WL 5029520, at *1. These are questions for the jury to decide based on the facts and evidence presented at trial, not on the lay testimony of Ms. Geraghty. Further, Genesys does not explain how Ms. Geraghty's personal opinion on various duties or expectations of employees makes it more likely that Talkdesk conspired or aided the individual Defendants in recruiting, raiding, or misappropriating information from Genesys. This complete lack of probative value is substantially outweighed by the prejudicial implication in Genesys' questioning that Talkdesk had specific legal duties which it ignored.[7] This testimony should be excluded.

Defendants object to 16:19-17:1 as improper and prejudicial. Genesys' counsel should not be allowed to present the jury with his own inaccurate interpretation of Mr. Strahan's testimony. The jury needs to hear Mr. Strahan himself and determine what his testimony means. And as Ms. Geraghty doesn't remember the conversation, her testimony has no probative value. This testimony should be excluded under FRE 402 and 403.

### b. Testimony containing argumentative questioning

Defendants ask the Court to exclude the argumentative questioning at 48:9-19. Genesys remarkably argues that asking Ms. Geraghty if she had "any regrets about her professional conduct in the recruitment of those Genesys personnel" is not argumentative. The question speaks for itself. Genesys' counsel heavily implied to Ms. Geraghty that she acted unprofessionally and should regret her actions. This is the same type of question a parent asks their child after catching them misbehaving – it is not really a question, but instead a statement

---

[7] For example, at 18:16-19:4, Genesys' counsel clearly implies that Mr. Paiva should have directed Talkdesk's recruitment team to ensure that the Genesys recruits didn't provide Talkdesk with Genesys confidential information. Mr. Paiva had no such duty, but the question will imply to the jury that he did.

that the child (Ms. Geraghty) should regret what they've done and apologize. Additionally, courts exclude these types of questions as being irrelevant or alternatively excludable under FRE 403. *See, e.g., Burns v. Levy*, No. CV 13-898 (CKK), 2019 WL 6465142, at *12 (D.D.C. Dec. 2, 2019) (excluding "Do you regret what you wrote in the summative assessment?"). Ms. Geraghty's lack of regret and belief that she acted professionally is not a fact of consequence to any of Genesys' claims and would only serve to confuse or prejudice the jury.

Genesys likewise denies that the testimony at 34:12-20 is argumentative or that is seeks an answer already answered. *First*, the argumentative nature is plainly obvious: "Doctor, I don't want you to speculate and say what might and would have. I'm asking direct questions." This bears no relevance to any fact or claim, and instead would only risk prejudicing the jury against Ms. Geraghty. *Second*, she had already answered this question mere seconds earlier:

> Q. Well, he's [Manno] the communicator on behalf of Mr. Strahan and Mr. Hertel in this email to the CEO of Talkdesk; correct?
> A. In this email, correct.

(Ex. B at 34:4-7). Ms. Geraghty giving additional context doesn't negate her answer.

### c. Testimony seeking speculation

At 35:6-11, Genesys asked Ms. Geraghty what she understands Manno to have said in a prior email. Genesys claims this is not speculation because "the question asked for Dr. Geraghty's understanding as to how she ***understood*** the e-mail." (D.I. 457 at 6) (emphasis added). But the transcript makes clear that Ms. Geraghty did *not* testify as to how she understood the email when she received it, but instead testified as to what she currently thinks Manno appeared to mean by his email: "[t]hat appears to be what Ralph's indicating." Her current speculation as to what Manno meant is irrelevant and inadmissible.

5

IV.     **Genesys' Deposition Designations From Tiago Paiva Should be Excluded[8]**

a.   **Testimony regarding confidential and trade secret information**

At 20:16-21:3 and 21:4-25, Genesys asks Mr. Paiva about the duties owed by Talkdesk

management, and about Talkdesk's "confidential information" and "trade secret information."

By their very definitions, these questions require Mr. Paiva to form legal conclusions as to what

duties Talkdesk's management team owes, and what information would be legally classified as

confidential or trade secret. Such questions are improper and should be excluded. (*See* D.I. 409

at 28-30). Further, this testimony lacks any relevance to Genesys' claims while posing a

substantial risk of confusing the jury. Whether Talkdesk has confidential or trade secret

information is not at issue and is wholly irrelevant to whether Genesys' own information

qualifies as confidential or trade secret. Nor is the expectation of Talkdesk's CEO that his own

employees keep certain information secret relevant to whether Genesys takes sufficient steps to

keep its own information secret. Genesys' final argument is that this testimony is probative of

Mr. Paiva's involvement in the alleged unlawful conduct. Genesys offers no explanation as to

how its probative, nor is there one – the duties/obligations of Talkdesk management and

employees does not make it more or less likely that Mr. Paiva was personally involved in any of

the alleged wrongdoing. This line of questioning is entirely irrelevant and should be excluded.

b.   **Testimony regarding Talkdesk equity funding and valuations**

The testimony of Mr. Paiva regarding Talkdesk's equity funding and valuations (11:7-11,

11:16-20, 12:11-14, and 13:8-13) is irrelevant and prejudicial. Genesys argues that Talkdesk not

seeking approval from its funder is probative of its raiding claim. How does this testimony make

---

[8] The deposition transcript of Mr. Paiva is attached hereto as Ex. C.

it more likely that Talkdesk "raided" Genesys with the specific intent of crippling Genesys? It doesn't. All it shows is that hiring decisions were not something Talkdesk's funding source was involved in. Next, Genesys argues that Talkdesk having a sales plan and sharing that with its funder demonstrates that Talkdesk was trying to "save costs and time by pilfering Genesys' sales team." (D.I. 457 at 7). There is no substance to this argument, nor does logic support this leap. There is no connection between Talkdesk sharing its sales plan with its funder and whether Talkdesk "raided" Genesys with an intent to cripple it. Indeed, Genesys's entire assertion that Talkdesk engaged in "pilfering" because it had a funding source is wild, unsupported speculation that fails to render this non-probative and prejudicial testimony relevant or admissible.

Likewise, Genesys broadly argues that Talkdesk's status as a funded startup makes it more likely that Talkdesk would "opt[] to steal talent and trade secrets from Genesys rather than invest to develop its own talent and sales processes." (D.I. 457 at 7). Genesys does not even try to support the accusation that funded startups are more likely to steal from competitors (nor could it), rendering this testimony irrelevant. As for relevance to punitive damages, funding and valuation that occurred four years ago is outdated and irrelevant to any potential punitive damages to be awarded at trial next year. But Talkdesk's funding will serve the prejudicial purpose of leading the jury to inflate damages as detailed in Defendants' MIL No. 4. For this reason, courts routinely exclude this type of testimony. (*See* D.I. 409 at 20; D.I. 439 at 9-11). Therefore, Mr. Paiva's testimony regarding funding should be excluded under FRE 402 and 403.

For the same reasons the testimony at 87:10-25 should not be admitted. This testimony pertains solely to the amount of money Talkdesk could theoretically afford to pay if an adverse judgment is rendered in this case. It is irrelevant and will prejudicially lead the jury to inflate any potential damages. This testimony should also be excluded under FRE 402 and 403.

### c.   Testimony regarding discovery disputes

As for the testimony of Mr. Paiva at 66:7-68:7, Talkdesk withdraws its objection to 66:7-67:10[9] but continues to object to 67:11-68:7. Genesys claims this testimony shows that "Talkdesk was a startup company who cut corners and took risks in an attempt to grow quickly by stealing Genesys information and personnel." (D.I. 457 at 9). But the use of outside counsel instead of inhouse counsel is in no way indicative of cutting corners, nor is Mr. Paiva lack of personal involvement in handling Talkdesk's preservation efforts. Genesys cites to no legal proposition to support such accusations.  Nor does this testimony make it more likely that Talkdesk misappropriated Genesys information or personnel. The only effect of this testimony would be to prejudice the jury into thinking Talkdesk did not comply with discovery and withheld or destroyed evidence. This testimony should be excluded under FRE 402 and 403.

### d.   Testimony regarding Mr. Paiva's preparation for the deposition

Defendants object to Mr. Paiva's testimony at 7:17-24, 8:25-9:3, and 9:7-10 as it lacks any probative value and risks substantial prejudice. The Court will provide the jury with instructions that the deposition clips constitute witness testimony given under oath, rendering testimony from Mr. Paiva on the same subject unhelpful to the jury. As for Mr. Paiva meeting with counsel and reviewing materials, not only does this invade the attorney-client privilege, it has no probative value while creating a substantial risk of the jury misinterpreting the routine act of witness preparation as indicative of guilt or anything else. This testimony should be excluded.

---

[9] Defendants maintain that a prima facie case of "raiding" cannot be based on "off-hand remarks" and the jury instructions should have an express instruction making this clear.

### e.   Testimony regarding Talkdesk seeking legal counsel

Mr. Paiva's testimony at 9:15-22, 9:24-10:1, 10:12-15, 10:16-11:4, and 11:5-6 is irrelevant, prejudicial, and impermissibly seeks privileged attorney-client communications. This testimony relates to whether Mr. Paiva or Talkdesk sought legal counsel regarding the hiring of certain Genesys personnel. Genesys argues this questioning is admissible because Mr. Paiva "confirmed he did not seek legal advice" and that whether Talkdesk sought legal advice is nonprivileged. (D.I. 457 at 10). Both arguments fail. First, Mr. Paiva did *not* confirm that Talkdesk did not seek legal advice, but instead testified that he did "not recall if we had any conversations with legal counsel." (Ex. C at 11:5-6). Second, whether Talkdesk communicated with its legal counsel about the legality of hiring Genesys personnel is textbook attorney-client privileged communications. *See United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007).

And even if this testimony didn't violate Talkdesk's privileges, it is irrelevant. Genesys claims that a lack of a general counsel demonstrates "poor corporate governance" resulting in stealing talent and trade secrets from Genesys. There is no support for the notion that companies without general counsel are more likely to steal. Further, the relevant questions remaining are whether Talkdesk "raided" Genesys' employees for the primary purpose of destroying Genesys and whether certain information is confidential/trade secret. Talkdesk's lack of a general counsel (and other testimony on corporate governance) has *no* relevance to Talkdesk's intent, *no* relevance to whether hiring Genesys employees amounts to "raiding," and *no* relevance to the confidentiality of the information at issue.

9

### f.   Testimony asking for Mr. Paiva's speculation on meaning of emails

Defendant's object to 20:1-4, 32:13–15, 35:6–8, 44:14–17, and 75:6–16 as seeking speculation outside of Mr. Paiva's personal knowledge.[10] With regards to the testimony on whether Mr. Paiva is aware that other companies in the CCaaS industry use employment agreements with restrictive covenants, Mr. Paiva answered "I imagine some companies will do that, yes." (Ex. C at 20:1-4). Mr. Paiva's "imagin[ing]" of other employment agreements is nothing but a speculative assumption. But even if Mr. Paiva had answered that he had personal knowledge, his knowledge at the time of the deposition is irrelevant. Only Mr. Paiva's knowledge at the time of hiring the Genesys employees would be potentially relevant. The remaining testimony all asked Mr. Paiva what he thought other people meant or intended in emails they (*not* Mr. Paiva) wrote. Genesys claims this testimony sought Mr. Paiva's understanding of other people's emails at the time he received them, but that is not true. At 32:13-15, Genesys' counsel simply asked whether Manno was "referring to Talkdesk." Mr. Paiva does not know what Manno meant – only Manno does. The same flaw applies to 44:14-17, where Mr. Paiva is again asked to interpret what "we" means in an email from Manno. Mr. Paiva made clear that he was speculating based on his current reading of the email: "Following this email, yes." Genesys can ask Manno what he meant instead of presenting Mr. Paiva's speculation as evidence. As for 75:6-16, Genesys again casts it as asking for what Mr. Paiva had understood an email from Strahan to mean. But here too Mr. Paiva's testimony makes it explicit that he is speculating based on his current reading of the email: "I mean, I can read and make

---

[10] Defendants no longer seek to exclude 19:15–20 (or 19:21), 19:22-25, and 20:5-15

assumptions. I don't know exactly what he was referring to with the 'of course.'" Mr. Paiva's

speculative interpretation of an email by Strahan is irrelevant and inadmissible.

Finally, Genesys misleads in how they present the testimony at 35:6-8. Genesys claims that

Mr. Paiva testified "that he 'assume**[d]**' the 'two RVPs' Manno referenced in a July 12, 2018 e-

mail were Strahan and Hertel." (D.I. 457 at 11) (emphasis added). But what Mr. Paiva actually

testified was that "Reading this, I assume so." When read without Genesys' misleading editing, it

is clear that Mr. Paiva was *not* testifying about any assumptions he may or may not have made

when he first received the email, but was instead testifying as to his current assumptions based

on his reading of the email at the deposition and his current knowledge. Mr. Paiva's reading of

Manno's email is both speculative and irrelevant, warranting exclusion.

### g.   Testimony relating to a separate, unrelated lawsuit

The testimony at 22:1–6, 22:8–15, 22:15–23:9, 25:3–6, and 65:5–14 relates to a separate,

unrelated lawsuit between Talkdesk and Ms. Rapp. It is well established that evidence of

another, unrelated lawsuit is both irrelevant and highly prejudicial. (*See* D.I. 409 at 31). As in

Genesys' response to Defendants' MILs, Genesys fails to distinguish the caselaw cited, but

instead offers a citation to a single non-analogous case. In *Hickey v. Myers*, the plaintiff was an

individual suing his former employer (SUNY Coblestone) for retaliation based on his speaking

about racial discrimination at the school. No. 09-CV-01307 MAD/DEP, 2013 WL 2418252, at

*1 (N.D.N.Y. June 3, 2013). Defendants wanted to introduce evidence of a prior lawsuit filed by

plaintiff against his former employer, claiming that it was relevant as the plaintiff had threatened

SUNY Coblestone officials by touting the earlier suit in an effort to "extort officials into

retaining him in his position" and that this was directly relevant to defendants' grounds for firing

the plaintiff. *Id*. at *3. The court allowed the evidence to be admitted for the sole purpose of

"proving that Plaintiff used the threat of litigation to intimidate others and in acknowledgment of his alleged failings as an administrator." *Id*. at *5. Here there is no such connection between this case and the separate lawsuit against Ms. Rapp. Therefore, this testimony is irrelevant and prejudicial and should be excluded under FRE 402 and 403.

### h.  Testimony with argumentative or confusing questions

Defendants seek to exclude the argumentative questioning by Genesys' counsel at 33:13-14. Mr. Paiva was asked about an email exchange between Manno and himself, where as part of the interview process Mr. Paiva asked Manno what his sales plan would be for Talkdesk. Mr. Paiva explained that "You ask every sales leader to provide you a plan, to tell you how many people he needs to make sure you are aligned. It's very common to repeat this conversation for anyone in any industry." (Ex. C at 33:8-12). Genesys' counsel then responds "Well, we'll let the judge and jury be the deciders of how common that is," before proceeding to ask a follow-up question. (Ex. C at 33:13-14). The quoted portion which Defendants seek to exclude is argumentative – Genesys didn't even try to deny it in their response brief. The commentary of Genesys' counsel is entirely irrelevant and will only act to prejudice the jury. The implied message is clear: Genesys' counsel doesn't believe Mr. Paiva. But determining the credibility of Mr. Paiva's testimony is a job for the jury to determine based on the testimony and evidence itself, and should not be improperly influenced by the personal opinion of Genesys' counsel.

The questioning at 42:11-16 is jumbled and unclear, thus negating any probative value of the testimony. While Genesys' counsel know what he intended to ask, the question is incomprehensible: "So here we have Mike Strahan, who was a regional vice president reporting to Ralph Manno, working with Ralph Manno while they are both – and Mr. Hertel is still employed by Genesys on packages for them at Talkdesk, agree?" The jury will not be able to

understand this question, and it is not clear that Mr. Paiva understood the question to mean what Genesys has now explained the intent of the question was. Any probative value is substantially outweighed by the risk of confusing the jury, thus warranting exclusion under FRE 403.

Defendants object to the testimony at 71:20-73:7 as it irrelevant. Genesys has not alleged that information on whether Genesys white-label rebrands is confidential or trade secret. As summary judgment has been granted on Genesys' breach of fiduciary duty claim, and this simple message is not part of Genesys' damages theory, this testimony is irrelevant to any remaining claim. Further, this lack of probative value is substantially outweighed by the risk of confusing the jury on the issues. Therefore this testimony should be excluded under FRE 402 and 403.

## V.     Genesys' Deposition Designations From Taylor Knudson Should be Excluded[11]

### a.   Testimony regarding Talkdesk's funding or valuation

For the same reasons explained above, the portion of testimony at 22:16-22 regarding Talkdesk's equity funding and valuations should be excluded. Talkdesk being a funded startup does not make it more likely that it misappropriated information from or raided Genesys, and instead will only serve to prejudice Talkdesk by causing the jury to improperly inflate any potential award of damages. This testimony should be excluded under FRE 402 and 403.

### b.   Testimony on irrelevant discovery-related disputes

Defendants object to the testimony at 37:14-38:14 as being both irrelevant and impermissibly inquiring into discovery-related issues. Genesys first argues that the testimony is not related to any discovery-related issues, but the inclusion of 38:10-14 belies that argument. Asking Ms. Knudson about whether she has "memorialize[d]" her communications with the

---

[11] The deposition transcript of Ms. Knudson is attached hereto as Ex. D.

individual defendants is irrelevant to any claim. Genesys next argues that Ms. Knudson's testimony that she communicated with Defendants via phone, text, and email is relevant, but fails to explain how. Testimony that a recruiter communicated with recruits through different modes of communication is probative of nothing, instead touching on impermissible discovery issues, and should be excluded under FRE 402 and 403.

### c.   Testimony comprised solely of reading emails into the record and speculation

Defendants object to the testimony at 60:23-61:6 and 71:5-72:6 as Ms. Knudson is merely reading emails into the record. Genesys agrees but argues that the testimony should still be allowed as it provides context for later questioning. While the emails themselves may be necessary context for follow-up questions, Ms. Knudson's reading aloud of them is not. Defendants do not object to the use of the underlying emails at trial, which will provide the jury with any requisite context. Additionally, the questioning at 71:25-72:6 calls for speculation. Ms. Knudson makes it clear that she does not have personal knowledge of who made the referenced statement and instead speculates: "I mean, its most likely from Ralph or Mike or Mark. Which one, I'm not sure. **That's my guess.**" (Ex. D at 72:4-6) (emphasis added). Therefore, these portions of testimony should be excluded.

### d.   Testimony seeking speculation

Defendants object to the following portions of testimony as they constitute speculation not based on the personal knowledge of Ms. Knudson: 47:15-17 and 61:23-62:3.[12] At 47:15-17, Ms. Knudson was asked "who at this point was making the decision to hire someone like Craig Holloway?" Her answer was "I *guess* Mike." (Ex. D at 47:17) (emphasis added). Genesys cannot

---

[12] Defendants withdraw their objection to Ms. Knudson's testimony at 54:2-19.

in good faith argue that Ms. Knudson's self-admitted "guess" is not speculation. This testimony

should be excluded under FRE 602. As for 61:23-62:3, Genesys argues that Ms. Knudson

testified as to how she understood the email when she received it. But the question itself does not

ask that, nor does Ms. Knudson's response indicate that she was testifying to her prior

interpretation. The question asks "So to you as the recruiter on this, what did Manno mean when

he said he was going to push hard on 13 and 14?" Ms. Knudson's current speculation on what

Manno meant in his email is inadmissible and should be excluded under FRE 602.

> e.  **Testimony regarding where Mr. Paiva lives**

Defendants object to 65:20-21 as being irrelevant, pertaining solely to where Mr. Paiva

lives. Genesys argues, without any explanation, that Mr. Paiva living in San Francisco is a fact of

some consequence to Genesys' claims. This plainly irrelevant testimony should be excluded.

## VI.   Genesys' Deposition Designations From Jessica Lu Should be Excluded[13]

> a.  **Testimony regarding irrelevant employment agreements and duplicative of this Court's instructions**

Defendants object to the testimony at 56:14-58:21 as being irrelevant and potentially

confusing to the jury, as the testimony relates only to Ms. Lu's employment agreement with

Talkdesk and various Talkdesk policies. Ms. Lu's employment agreement is not at issue in this

case. As for Talkdesk's policy regarding the use of confidential/trade secret information,

Genesys argues this is relevant to their allegations that Talkdesk disregarded this policy and

encouraged the former Genesys employees to share confidential or trade secret information. But

whether Talkdesk violated its own policy is not at issue, nor does it make it more likely that

---

[13] The deposition transcript of Ms. Lu is attached hereto as Ex. E.

Talkdesk sought out Genesys' confidential or trade secret information. That is a question the jury must determine on the evidence, not based on irrelevant policies.

Defendants object to 6:8-18 as irrelevant. This line of question does nothing more than confirm that Ms. Lu understands she is under oath and must tell the truth. The Court will provide the jury with an instruction explaining that the deposition clips are of witnesses under oath, rendering this testimony duplicative. Genesys argues that this testimony is probative of Lu's preparation and truthfulness, but it is not. Nowhere in this line of questioning does Genesys' counsel ask about Ms. Lu's preparation. As for truthfulness, the jury will know she was under oath per the Court's instruction. Ms. Lu's further confirmation serves no purpose where no party or witness denies she was under oath and required to give truthful testimony.

### b. Testimony seeking speculation

Defendants object to 26:22-27:5[14] and 27:7-13 as seeking speculation and not being based on Ms. Lu's personal knowledge. At 26:22-27:5, Ms. Lu is asked why Ms. Morales came to Talkdesk. Ms. Lu's answers were "I **guess** its leadership" and "**I don't know who**, but like, a boss from, like, Genesys came over and then – **I've been told that's probably why she came.**" (emphasis added). At 27:7-13, Ms. Lu was asked if she knew who that boss was. She answered "Not exactly." When further pressed, she speculates that it was probably Manno, Strahan, or Hertel since those were the "bosses" that came from Genesys. It is clear that Ms. Lu does not have personal knowledge as to why Ms. Morales joined Talkdesk, but is instead speculating and relaying what she has heard from some unknown third-party (i.e., hearsay). Genesys makes a throw-away argument that Ms. Lu's "understanding of what motivated Morales… is not

---

[14] Both Defendants and Genesys inadvertently referenced "26:22-27", but both correctly discussed the substance of 26:22-27:5.

speculation" (D.I. 457 at 16), but the question didn't ask for her "understanding," Genesys' counsel asked "And what made her eventually opt in, if you know?" (Ex. E at 26:22-23). Ms. Lu answered with guesses, not her personal understanding. But even if she had, Genesys' argument that Ms. Lu's "understanding of what motivated Morales is highly relevant" has no basis. What claim would Ms. Lu's understanding of Morales' motivation to join Talkdesk be relevant to? None. This testimony should be excluded under FRE 402, 403, 602, and 802.

Defendants object to the testimony at 40:12-16 as irrelevant and potentially prejudicial. The mode of communication used by Ms. Lu is not probative of any relevant issue. To the extent Genesys wants to present this testimony in support of an argument that there are communications that were never produced, this would be improper. (*See* D.I. 409 at 33; D.I. 425 at 5 n. 2).

## VII.   Genesys' Deposition Designations From Danielle Morales Should be Excluded[15]

### a.   Testimony that's duplicative of this Court's instructions

Defendants object to the testimony at 5:20-23 as irrelevant and duplicative for the same reasons explained above – the Court will provide the jury with instructions that the deposition clips constitute witness testimony given under oath. Echoing those same instructions will do nothing but waste the time of the jury, the Court, and all parties involved. Nor is the testimony probative of Ms. Morales preparation, as the cited testimony doesn't inquire into her preparation.

### b.   Testimony seeking legal conclusions and irrelevant facts

Defendants object to the following portions of designated testimony as improperly seeking legal conclusions while also assuming facts not in evidence: 27:1-29:6, 57:8-58:1, and 82:6-9. Genesys argues that Ms. Morales' testimony at 27:1-29:6 includes the following

---

[15] The transcript of the April 22, 2019 deposition of Ms. Morales is attached hereto as Ex. F. The transcript of Ms. Morales' November 2, 2020 deposition is attached hereto as Ex. G.

testimony that is relevant to Genesys' claims: (1) "the steps she has taken to comply with her

Talkdesk employment agreement," (2) "when she started working at Talkdesk," and (3) "why

there was a delay between when she signed her Talkdesk offer letter and when she began." First,

Ms. Morales did not testify as to the steps she has taken to comply with her Talkdesk

employment agreement. When asked if she had attempted to comply with it, she answered "I

suppose so, yes." (Ex. G at 27:19). Genesys' description stretches the truth to the point of

breaking. Second, this testimony has no relevance to any of Genesys' claims. Whether Ms.

Morales complied with her Talkdesk employment agreement does not relate to whether the

Defendants complied with their own employment agreements with Genesys, or if Talkdesk

encouraged any breaches of said agreements. And the dates Ms. Morales signed an offer letter

and started with Talkdesk are of no consequence.

As for the line of questioning at 28:21-29:6 asking for Morales' personal opinion on

whether undertaking certain activities for the benefit of Talkdesk while still employed by

Genesys is "improper," Genesys argues that (1) this isn't seeking a legal conclusion but instead

"Morales' own understanding of what type of competition is and is not proper," and (2) her

personal opinion is highly relevant as Genesys claims "others engaged in such conduct." These

arguments fail. Whatever fine line Genesys seeks to now draw between "improper" activity and

activity that violates a contractual or fiduciary duty, they failed to do so with their questioning.

What is "improper" could easily mean what would violate a fiduciary or contractual duty. It is

well established that such testimony on legal conclusions or legal duties is inadmissible. (*See*

D.I. 409 at 28. But even if Ms. Morales was testifying as to her so-called "understanding of

what…is not proper," there is substantial risk of prejudice to Talkdesk as the jury will almost

inevitably interpret this testimony as Ms. Morales making the legal conclusion that these

activities violate fiduciary duties or contractual obligations. The jury must decide whether these activities are improper themselves based on the facts and evidence presented to them, not Ms. Morales' personal lay opinion. This danger substantially outweighs any probative value of this testimony, as there is none. Ms. Morales is no longer a defendant, and her actions are not the basis of any claim. Nor do her opinions make any fact of consequence more or less probable. This testimony should be excluded.

At 57:8-58:1, Ms. Morales is asked how Genesys protected is "confidential information." Genesys ignores that by asking explicitly about "confidential information," they necessarily forced Ms. Morales to make a legal conclusion as to what Genesys information is or is not confidential. As detailed in Defendants' MIL No. 10, any testimony by a lay witness using the term "confidential" is improper as what is confidential is a legal conclusion or the jury to determine. (*See* D.I. 409 at 29-30; D.I. 439 at 14-15). Even colloquial uses would prejudice Defendants by causing jury confusion as to the issues for resolution. Further, such testimony on information that is colloquially considered confidential, but not legally, would be irrelevant to Genesys' claims. Only information determined to be legally confidential is relevant to this case.

As for the testimony at 82:6-9, this plainly seeks a legal conclusion by Ms. Morales:

Q. Would you agree that this is Genesys' confidential information about its customers?
A. Yeah, I would say yes. It's just a list of actual customers then their contract date.

Asking whether certain information is confidential is seeking a legal conclusion that only the jury must make, and thus inadmissible. Genesys promises not to tell the jury this is "dispositive" on whether the PureCloud List is confidential, and additionally offers that a limiting instruction "[i]f needed…could be issued." (D.I. 457 at 19), but these promises do nothing. Nor is this testimony relevant. Whether the PureCloud List is confidential or not depends on whether its information is readily ascertainable from other sources. Ms. Morales' personal lay opinion does

not relate to this factual issue and is thus irrelevant. And even if there was some small amount of probative value, it would be substantially outweighed by the danger of the jury relying on this testimony instead of the facts and evidence in their determination of whether the PureCloud List is confidential. This testimony should be excluded in its entirety.

### c. Testimony seeking speculation

Defendants object to 46:7-19 and 57:21-58:1 as calling for speculation by Ms. Morales on subjects outside of her personal knowledge. Genesys claims that Ms. Morales had personal knowledge that Hertel and Mano had access to her sales performance, pipeline, and compensation information, but that is information that only Hertel and Manno would *know*. Ms. Morales may believe, assume, or have been told that they have access, but she could not have personal knowledge about what information her boss (and her boss' boss) had access to. Genesys is free to ask Manno and Hertel for this information. Likewise, Ms. Morales cannot have personal knowledge as to whether Genesys required all of its employees to sign employment agreements with confidentiality provisions, or that such agreements are "pretty much" everywhere. While she may have knowledge about her own employment agreements, she does not have personal knowledge regarding the employment agreements of the entire Genesys employee base. And while Ms. Morales has worked at Genesys and Talkdesk, Genesys provides no support for its claim that Ms. Morales has worked at enough companies in the call center industry to make the claim that "pretty much" all of them require employment agreements with confidentiality provisions. As Ms. Morales' statements are far broader than her own personal knowledge, they necessarily required extrapolation and speculation on her part. Therefore, this testimony should be excluded under FRE 602.

## VIII.   CONCLUSION

Defendants respectfully request that the Court grant Defendants' motion.


DATE:  October 25, 2022                    Respectfully submitted,

                                           */s/ David S. Moreland*

                                           James P. Strenski, #18186-53
                                           PAGANELLI LAW GROUP
                                           10401 N. Meridian St., Suite 450
                                           Indianapolis, IN 46290
                                           Telephone: 317-550-1855
                                           Email: jstrenski@paganelligroup.com

                                           David S. Moreland (*pro hac vice*)
                                           John W. Harbin (*pro hac vice*)
                                           Warren J. Thomas (*pro hac vice*)
                                           Laken E. Adkins (*pro hac vice*)
                                           Steven M. Philbin (*pro hac vice*)
                                           Lee G. Hamilton (*pro hac vice*)
                                           MEUNIER CARLIN & CURFMAN LLC
                                           999 Peachtree St. NE, Suite 1300
                                           Atlanta, GA 30309
                                           Telephone: 404-645-7700
                                           Email: dmoreland@mcciplaw.com
                                                   jharbin@mcciplaw.com
                                                   wthomas@mcciplaw.com
                                                   ladkins@mcciplaw.com
                                                   sphilbin@mcciplaw.com
                                                   lhamilton@mcciplaw.com

                                           *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ David S. Moreland*
David S. Moreland