UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GENESYS CLOUD SERVICES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Case No. 1:19-CV-00695-TWP-MKK |
| TALKDESK, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REVISED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW[1]**

Defendants previously moved for summary judgment on each of the claims that it now seeks judgment as a matter of law under Fed. R. Civ. P. 50(a). That summary judgment motion was denied, as was their motion for reconsideration. The current motion is to be analyzed under the same summary judgment standard, taking the evidence and all inferences favorably for non-movant Genesys. Faced with the same strong evidence – plus new evidence disclosed at trial – this motion too must be denied. Indeed, the Court – having heard most of Genesys' claims, determined that sufficient evidence has been presented to meet the higher burden for punitive damages. This case must be heard by the jury.

**I. LEGAL STANDARD**

The standard for judgment as a matter of law "mirrors the standard for granting summary judgment." *Pandya v. Edward Hosp.*, 1 Fed.Appx. 543, 545 (7th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). Thus, the Court examines the record in its entirety and views the evidence in the light most favorable to the nonmoving

---

[1] Genesys submits this revised memorandum in response to Defendants' Rule 50 motions, to address only those claims for which Defendants chose to move for judgment as a matter of law.

1

party. *Id.* After doing so, the Court determines "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support [a] verdict." *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 207 F.3d 938, 941 (7th Cir. 2000) (quotations omitted).

Genesys has provided a sufficient evidentiary basis for each of its claims against each Defendant. The motion must be denied and the jury should decide these claims to verdict.

## II. DISCUSSION

### A. Genesys Survives A Rule 50 Motion On Its Non-Testimony Evidence Alone.

Before introducing any witness testimony at trial, the evidence was already sufficient to defeat a Rule 50 motion. Notably, the Court ruled in Genesys' favor on summary judgment with respect to nine claims. Further, it denied the Defendant's motion for summary judgment with respect to 17 out of the remaining 18 claims. Further, at the opening of trial the parties submitted 44 factual stipulations, and Genesys admitted into evidence without objection, more than 100 exhibits, including dozens of the same exhibits used to support Genesys' summary judgment arguments.

With the backdrop of the Court's rulings on summary judgment, the nature of Genesys' exhibits, many of which are Defendants' own emails demonstrating liability, and the demanding standard required to grant a Rule 50 motion (same standard as summary judgment) the record evidence before the Court – even before a single witness took the stand – is more than sufficient to deny a Rule 50 motion.

But further, over the course of three days of expansive witness testimony, including testimony from the individual defendants, Talkdesk's CEO Tiago Paiva, Talkdesk's Head of Talent Shauna Geraghty, and several others, Genesys has furthered its case. The motion must be denied.

### B. Genesys Has Introduced Sufficient Evidence On Its Misappropriation of Trade Secret Claims Against Talkdesk, Manno, and Strahan.

The elements of a claim under the Defend Trade Secrest Act (DTSA) and Indiana Uniform Trade Secrets Act (IUTSA) are similar; key to each is the existence of a trade secret and its

2

misappropriation. *Hartford Steam Boiler Inspection & Ins. Co. v. Campbell*, 2021 WL 1225951, at *5 (S.D. Ind. Mar. 31, 2021). Under both statutes, information is a "trade secret" if the owner makes a reasonable effort to maintain its secrecy and it derives economic value or potential value from not being generally known to or readily ascertainable by others. 18 USC § 1839(3)(A); Ind. Code § 24-2-3-2. Further, under both statutes "misappropriation" is defined as either the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent...." 18 USC § 1839(5)(A)-(B); Ind. Code. § 24-2-3-2. Indiana courts require the owner of a trade secret to take "reasonable" steps to maintain the secrecy of the information; "overly extravagant" measures and "[a]bsolute secrecy" are not required. *Hunting Energy Services, Inc. v. Kavadas*, 2018 WL 4539818 (N.D. Ind. Sept. 20, 2018) (citing *N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 427 (Ind. Ct. App. 2004)). The court in *Zemco Mfg., Inc. v. Navistar Int's Transp. Corp.*, 759 N.E.2d 239, 246 (Ind. Ct. App. 2001) identified examples of reasonable steps an trade secret owner may take, including 1) requiring employees to sign confidentiality agreements; 2) placing warnings on documents; 3) segregating information; and 4) keeping secret documents under lock. *Id.* at 247.

### i. Genesys' Personnel Information, Uber Win Report, and Discounting Information Are Trade Secrets.

First, Genesys takes reasonable steps to keep this information secret. Indeed, this information is all contained in Genesys' systems and both Genesys witnesses and others, such as Morales and Hertel, testified that such information is contained within Genesys' IT systems behind login and password and dual factor authentication. Cory Sanders testified to Genesys' secure IT systems and expert Rebecca Green opined that such protections were reasonable. Genesys took additional steps to keep this information secret. For example, Cory Sanders testified that Genesys restricts access to its sales database (where information such as Genesys' discounting practices are contained) and Jessica Coburn testified that personnel information is likewise only accessible to certain employees. The Uber

win report is emblazoned with a "CONFIDENTIAL" disclaimer, and lastly Jessica Coburn testified that Genesys requires its employees to sign employment agreements covering this type of information. Such information is of the exact type found to be reasonable. *See Zemco Mfg., Inc. v. Navistar Int's Transp. Corp.*, 759 N.E.2d 239, 246 (Ind. Ct. App. 2001). The trade secret information is not publicly known, as explained above. But even if parts of it were, such as parts of the Uber win report, this does not remove it from protection as a trade secret.

As noted above, the information has value. As demonstrated by the evidence, each trade secret has economic value or potential value from not being generally known to or readily ascertainable by others. Talkdesk (through its agents, including Tiago Paiva and Shauna Geraghty), Manno, and Strahan used personnel information to recruit and hire 6 account executives from Genesys. The evidence from the individual defendants, Paiva, and Geraghty show that it was the personnel information disclosed by Manno and Strahan that allowed them to so quickly build a team with the former Genesys account executives.[2] Paiva disclosed the Uber win report to an investor who remarked "wow" and Manno was thanked for disclosing the useful discounting information. All had economic value or potential value from not being generally known.

---

[2] Courts have found that personnel information, including employee compensation and performance information, can be a trade secret. *See TFC Partners, Inc. Stratton Amenities*, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) ("employee compensation structures" held to be trade secrets); *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, 737 F. Supp. 2d 1257, 1267 (E.D. Wash. 2010) (employee compensation information held to be trade secrets); *Snelling Servs., LLC v. Diamond Staffing Servs., Inc.*, 2013 WL 3947175, at *10 (Cal. Ct. App. July 30, 2013) ("We are not persuaded by defendants' argument that because employees can disclose their compensation to whomever they want, employee compensation is not a trade secret as a matter of law."); *Movement Mortg., LLC v. McDonald*, 2018 WL 6733953, at *7 (W.D.N.C. Nov. 6, 2018), report and recommendation adopted, 2019 WL 452773 (W.D.N.C. Feb. 5, 2019) (plaintiff adequately alleged the existence of trade secrets described as "compilations of identifying information about its employees, their skill sets and training, and specifics about compensation and bonus structure.")

### ii. Genesys' Personnel Information, Uber Win Report, and Discounting Information Were Misappropriated.

Much of the same evidence supports a finding that the information was misappropriated.

As to Genesys' trade secret personnel information, Strahan and Manno disclosed and used that information without Genesys' consent when they used it to recruit "the worthwhile Genesys players" to come work with them at Talkdesk. Notably, Strahan disclosed and used the information of Tews, among other Genesys employees. Manno disclosed and used personnel information of Mark Hertel and Michael Strahan, including their Genesys earnings. Talkdesk likewise used this information without Genesys' consent, indeed they used it to hire 6 Genesys account executives, as testified to by at least Hertel and Shauna Geraghty.

As noted above, the Uber win report was disclosed without Genesys' consent by Talkdesk and Manno. Manno disclosed it to Talkdesk CEO Paiva, who in turn disclosed it to others within Talkdesk and also Talkdesk investors. Finally, Genesys discounting information was disclosed by Manno to Talkdesk without Genesys' consent. Genesys' damages on these claims are supported by Brian Dineen's calculation of both compensatory and unjust enrichment (as to Talkdesk) damages related to the loss of personnel, relevant to Genesys' personnel information. Genesys' damages from the misappropriation of the Uber win report and discounting information are the same as noted above in addressing Manno and Strahan's breaches of their employment agreement.

### C. Genesys Has Introduced Sufficient Evidence On Its Interference With Contract Claims Against Talkdesk.[3]

To prove that Talkdesk tortiously interfered with Genesys' employment agreements, Genesys must show: (1) the existence of a valid and enforceable contract; (2) the defendants' knowledge of the existence of the contract; (3) the defendants' intentional inducement of breach of the contract; (4) the

---

[3] Genesys has withdrawn its interference with contract claim against Ralph Manno.

absence of justification; and (5) damages. *Zimmer, Inc. v. Stryker Corp.*, 2016 WL 6476315 (N.D. Ind. Nov. 1, 2016) (citation omitted).

Again, the existence of a valid and enforceable contract is not in dispute. The evidence shows that Manno told Talkdesk's Head of Talent on June 25, 2018 that he had an employment agreement with Genesys that was "pretty clear on doing work for anyone else while employed…." Ex. 556. Strahan testified that thereafter, Talkdesk's Head of Talent Shauna Geraghty specifically asked Strahan if he had an employment agreement and he did not tell her no.

Talkdesk induced breaches of both Strahan and Manno's agreements. On notice of Manno's employment agreement and without receiving an assurance from Strahan that he did not have such an agreement,[4] Talkdesk intentionally induced several contractual breaches by Manno and Strahan. First, Talkdesk encouraged Manno and Strahan to recruit Genesys employees while both were still working for Genesys. That conduct is discussed in detail above.

Talkdesk also encouraged Manno and Strahan to use or provide Genesys' Confidential Information, inducing another breach. 166, Ex. 19, §8(c). For example, Talkdesk employees induced Manno to disclose Genesys' discounting practices, and Talkdesk (through its VP Manno) encouraged Strahan to provide the PureCloud List to Lisa Kelly. Notably, at no point while the individual Defendants were still employed by Genesys, did Talkdesk tell them not to send Genesys confidential information or recruit Genesys employees. Talkdesk's additional inducement, or in Strahan's words "facilitated" and "participated" of Strahan and Manno's breaches is discussed in more detail above and includes all activities undertaken in competition with Genesys while still employed. The record is replete with this evidence.

---

[4] Geraghty knew of the risk that Genesys would sue to enforce its employment agreements, as she advised Paiva that a public announcement about Talkdesk's raid should "shield the AEs from the spotlight/Genesys coming after them." Ex. 311.

Talkdesk was not justified in inducing these breaches. The overriding question on justification "is whether the defendant's conduct has been fair and reasonable under the circumstances." *Melton v. Ousley*, 925 N.E.2d 430, 441 (Ind. Ct. App. 2010). Talkdesk's conduct was inherently unfair and unreasonable under the circumstances. *Wade v. Culp,* 23 N.E.2d 615, 619 (Ind. Ct. App. 1939) ("When one has knowledge of the contract rights of another, his wrongful inducement of a breach thereof is a willful destruction of the property of another and cannot be justified on the theory that it enhances and advances the business interests of the wrongdoer."). In *Institute for Int'l Educ. of Students v. Qian Chen*, 380 F.Supp.3d 801, 808 (S.D. Ind. May 2, 2019), this Court found an absence of justification where the plaintiff alleged that its competitor "interfered with Plaintiff's exclusive recruiting contract with SAF-IUNS by commandeering SAF-IUNS employees, offices, email accounts, and other resources to recruit on behalf of [the competitor]…."

Like the competitor in that case, Talkdesk interfered with Manno and Strahan's employment agreements by commandeering Genesys employees and resources to recruit on its behalf and indeed to engage in work duties on its behalf. *see also Europlast, Ltd. v. Oak Switch Sys., Inc.,* 10 F.3d 1266, 1274 (7th Cir. 1993) (a competitor may "woo an at-will employee away from his employer" provided he is not inducing the employee to, for example, reveal confidential information of the employer). Talkdesk cut corners in an attempt to build its sales organization on Genesys' dime by commandeering Genesys' employees and resources and using them for its own benefit while they continued to be paid by Genesys, causing Genesys to suffer damages resulting from Talkdesk's inducement of Manno and Strahan's breaches as presented by the opinion of Dr. Brian Dineen.

**D.     Genesys Has Introduced Sufficient Evidence On Its Raiding Claim Against Talkdesk.**

Indiana courts have recognized a raiding claim where a competitor raids an entity's workforce with the intent to cripple its business. *See CDW LLC v. NETech Corp.*, 722 F.Supp.2d 1052, 1063 (S.D. Ind. 2010) (finding that an allegation of "raiding" was actionable where it allegedly had a purpose of

7

destroying a competing business). This has been recognized as a form of unfair competition, which in Indiana "does not describe a single course of conduct and is not defined by a specific number of elements." *Howmedica Osteonics Corp.*, 2018 WL 3130969 at *7. Further, Indiana courts recognize that the intent to cripple a business can shown by evidence demonstrating an intent to cripple **a segment of a larger business**. *See CDW LLC*, 722 F.Supp. 2d at 1055-56, 1063-64 (intent was to destroy "CDW's business in Indiana" where competitor raided employees of Indianapolis branch of CDW, despite the company employing over 6,150 people and generating over $7.6 billion in sales).

Genesys has presented evidence in its case that Talkdesk raided Genesys' mid-market sales organization with an intent to cripple that segment of Genesys' business. Jessica Coburn testified that 33 employees were employed within mid-market before the raid – 9 suddenly left for Talkdesk (27 percent). Ex. 79. The evidence, taken in light most favorable to Genesys, demonstrates that the raid was part of Talkdesk's plan to cripple Genesys' mid-market sales group by poaching its leadership and relying on those leaders to bring with them the "worthwhile Genesys players." Ex. 169. Indeed, this was part of Talkdesk's plan to "dance on genesys' grave" which Paiva hoped to accomplish by hiring most of its sales team from Genesys. Ex. 299; 297.

Notably, Danielle Morales and Michael Strahan both testified that during the time of Talkdesk's raid, Talkdesk CEO Paiva had to approve every sales hire. CEO Paiva admitted that Talkdesk did not bother publicly posting any of the positions it filled with raided Genesys employees and did not use outside recruiters – indeed the evidence shows that it did not have to as it was using Genesys' own personnel for its recruiting work. This evidence, when viewed in light most favorable to Genesys, demonstrates an intent to cripple Genesys' mid-market sales organization, which caused Genesys significant damages as set forth in Dr. Dineen's opinion.

### III. CONCLUSION

Genesys has provided sufficient evidence in its case-in-chief to clear the low bar for defeating a Rule 50 motion. Indeed, in granting Plaintiff's motion to introduce Talkdesk financial information for punitive damages purposes, the Court cited the breadth of Genesys' evidence in this case in concluding that Genesys had provided a colorable claim for punitive damages. Here, all evidence must be taken in the light most favorable to Genesys. The evidence is sufficient to support a verdict on each of Genesys' remaining claims and the Defendants' Rule 50 motion should be denied.

Respectfully submitted,

GENESYS CLOUD SERVICES, INC.

By its Attorneys,

*s/ John R. Maley*
John R. Maley
Thomas C. Payne
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Email: jmaley@btlaw.com
tpayne@btlaw.com

Kathleen M. Anderson
BARNES & THORNBURG LLP
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone: (260) 425-4657
Facsimile: (260) 424-8316
Email: kanderson@btlaw.com