## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

GENESYS CLOUD SERVICES, INC.,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀Case No. 1:19-cv-00695-TWP-MKK
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
TALKDESK, INC.,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MARK HERTEL,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Defendants.⠀⠀⠀)

## ORDER ON POST-TRIAL MOTIONS

This matter is before the Court on the parties' Renewed Motions for Judgment as a Matter of Law (the "Renewed Motions") (Filing No. 615; Filing No. 617) and Defendants Talkdesk, Inc. ("Talkdesk") and Mark Hertel's ("Hertel") Motion to Amend Judgment (Filing No. 619). In 2019, Plaintiff Genesys Cloud Services, Inc. ("Genesys") initiated this lawsuit against its competitor, Talkdesk, and three of its former employees, Hertel, Ralph Manno ("Manno"), and Michael Strahan ("Strahan") (collectively, "Defendants") for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, and tortious interference with contract, among other things. Following cross-motions for summary judgment, several claims and questions of damages were tried by a jury. The jury rendered its verdict in favor of Genesys as to some claims and Defendants as to others (Filing No. 556). The Court then issued a Final Judgment closing the action (Filing No. 598). The pending Motions quickly followed. For the following reasons, the Court **denies** both Renewed Motions and **grants in part and denies in part** Defendants' Motion to Amend Judgment.

## I.⠀⠀⠀⠀BACKGROUND

This background section is not intended to provide a comprehensive explanation of all the facts of this case. Only those facts relevant to the pending Motions are set forth. Genesys and

Talkdesk are competitors in a highly competitive industry referred to as call center as a service or "CCaaS." Genesys is a large, established player in the CCaaS industry. In late 2016, Genesys acquired an Indiana company in the CCaaS industry, Interactive Intelligence. At the time, Manno, Strahan, and Hertel (the "Individual Defendants") were employees of Interactive Intelligence.

In 2018, Talkdesk wanted to grow its business, so it began looking for potential employment candidates across the CCaaS industry, including those at Genesys. During the summer of 2018, Manno had discussions with the CEO of Talkdesk about joining Talkdesk and leading its sales team. After committing to Talkdesk but while still employed by Genesys, Manno had discussions with Strahan and Hertel about leaving Genesys to join Talkdesk. Strahan and Hertel also discussed leaving Genesys for Talkdesk. Talkdesk extended official employment offers to the Individual Defendants, which they all accepted. Manno, Strahan, and Hertel then began recruiting efforts for Talkdesk while still employed at Genesys. The Individual Defendants all began their official employment with Talkdesk on October 1, 2018. Between September 2018 and early February 2019, Talkdesk hired fifteen Genesys employees, including nine mid-market sales employees, including Manno, Strahan, Hertel, and Danielle Morales ("Morales").

In February 2019, Genesys brought this lawsuit against Strahan, Hertel, and Morales (Filing No. 1). In March 2019, Genesys amended its Complaint to add Talkdesk as a defendant (Filing No. 22). In July 2019, Genesys again amended its Complaint, adding Manno as a defendant (Filing No. 89). Genesys requested a preliminary injunction, which the Court denied (Filing No. 199). Then on February 9, 2021, Genesys filed its Third Amended Complaint—the operative pleading in this matter (Filing No. 235). In the Third Amended Complaint, Genesys asserted thirty-nine claims against the five defendants for misappropriation of trade secrets, breach of contract, breach of fiduciary duty of loyalty, and tortious interference with contract, among other things.

The two claims asserted against Morales (Counts 38 and 39) were dismissed by stipulation of the parties (Filing No. 251). The parties filed cross-motions for summary judgment on the thirty-seven counts, and the Court granted in part and denied in part those motions (Filing No. 348).

After additional protracted, hard-fought litigation, the following claims were tried by a jury: (1) misappropriation of trade secrets against the Defendants; (2) raiding against Talkdesk; (3) civil conspiracy against the Defendants; (4) aiding and abetting a breach of the fiduciary duty of loyalty against the Defendants; (5) breach of contract based on a confidentiality provision against Manno and Strahan; and (6) tortious interference with contract against Manno and Talkdesk. Summary judgment was granted in favor of Genesys on its claims for (1) breach of contract based on faithful-service and non-competition provisions against Manno and Strahan; and (2) breach of fiduciary duty of loyalty against the Individual Defendants. Thus, the amount of damages on these claims were put to the jury for determination.

On the sixth day of trial, after Genesys and the Defendants had each rested their cases-in-chief, the parties orally moved for judgment as a matter of law and tendered written briefs to the Court. Argument was heard, and the Court directed counsel to file their tendered briefs on the docket and gave them leave to file response briefs no later than the following morning. The parties filed their tendered briefs on the docket as Motions (Filing No. 543; Filing No. 544) on March 7, 2023, and they filed their response briefs the following morning (Filing No. 551; Filing No. 552). On the seventh day of trial, March 8, 2023, outside the presence of the jury, the Court denied the parties' Motions for Judgment as a Matter of Law and determined that all claims should proceed to the jury (Filing No. 351).

The jury returned a verdict in favor of Defendants on the trade secret claims, the raiding claim, and the civil conspiracy claims (Filing No. 556 at 1–7, 9). The jury returned a verdict in

favor of Hertel on the claim for aiding and abetting Manno's and Strahan's breaches of fiduciary duty, and in favor of Strahan on the claim for aiding and abetting Hertel's breach. *Id.* at 16, 18.

The jury returned a verdict in favor of Genesys on its aiding and abetting claim and tortious interference claim against Talkdesk. *Id.* at 8–10. The jury awarded compensatory damages and unjust enrichment damages against Talkdesk for aiding and abetting Manno's and Strahan's breaches of fiduciary duty, but no damages for aiding and abetting Hertel's breach, and the jury awarded no damages for Talkdesk's tortious interference. *Id.* at 8–11. The jury also concluded that Manno and Strahan breached the confidentiality provision of their employment agreements, that Manno aided and abetted Strahan's and Hertel's breaches of fiduciary duty, and that Strahan aided and abetted Manno's breach of fiduciary duty, but the jury awarded no damages against Manno or Strahan on these claims. *Id.* at 13–16. The jury awarded Genesys damages against Manno and Strahan for breach of the faithful-service provisions of their employment agreements, but the jury awarded no damages against Manno or Strahan for breach of the non-competition provision, and it awarded no compensatory damages on the breach of fiduciary duty claims against the Individual Defendants, except for a punitive damages award against Manno. *Id.* at 12, 15, 17.

Soon after the jury returned their verdict, Genesys filed its Renewed Motion for Equitable Relief (Filing No. 568) and its Notice of Election of Remedies (Filing No. 570). Shortly thereafter, Genesys filed a Notice of Withdrawal of Post-trial Motions as to Defendant Michael Strahan Only Due to Death (Filing No. 593). In its Notice, Genesys explained that Strahan had sadly passed away and that Genesys would be withdrawing its post-trial motions as to Strahan and seeking his formal dismissal from this case. *Id.* The parties subsequently filed a Stipulation of Dismissal of all claims against Strahan with prejudice, with each side to bear their own costs and fees (Filing No. 595). The claims against Strahan are therefore not implicated in the instant Motions.

Following the dismissal of Strahan, the Court granted in part and denied in part Genesys' Renewed Motion for Equitable Relief (Filing No. 597), holding that in the absence of compensatory damages for Manno's and Hertel's breaches of their fiduciary duties, Genesys was entitled to disgorgement damages (Filing No. 597 at 18). The Court also found Genesys' election of compensatory/punitive damages against Manno and unjust enrichment damages against Talkdesk was permissible. *Id.* at 18–19.

The Court entered Final Judgment on August 14, 2023 (Filing No. 598), and the parties timely filed their Renewed Motions for Judgment as a Matter of Law and Motion to Amend Judgment (Filing No. 615; Filing No. 617; Filing No. 619). The parties also filed various motions for fees and costs, which the Court denied without prejudice to refile pending resolution of the instant Motions (Filing No. 643). Tragically, on March 5, 2024, the parties notified the Court of the passing of Defendant Manno (Filing No. 641). The parties have stipulated to the dismissal of all claims against Manno with prejudice, with each side to bear their own costs and fees (Filing No. 649).

The Renewed Motions and Motion to Amend are now ripe for the Court's review.

## II.   <u>LEGAL STANDARDS</u>

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the Court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an

"extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 07-cv-1630, 2009 WL 799546, at *3 (S.D. Ind. Mar. 24, 2009).

> Rule 50 of the Federal Rules of Civil Procedure allows a district court to enter judgment against a party who has been fully heard on an issue during a jury trial if a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. In deciding a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence only to determine whether the jury's verdict could reasonably be based on that evidence.

*Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (citations and quotation marks omitted).

> Under Rule 50, both the district court and an appellate court must construe the facts strictly in favor of the party that prevailed at trial. Although the court examines the evidence to determine whether the jury's verdict was based on that evidence, the court does not make credibility determinations or weigh the evidence.

*Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011) (citations omitted). "Although the court reviews the entire record, the court 'must disregard all evidence favorable to the moving party that the jury [was] not required to believe.'" *Passananti*, 689 F.3d at 659 (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000)). If a Rule 50(a) motion for judgment as a matter of law is made at the close of evidence and not granted, the movant may renew the motion no later than twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b).

### III.   DISCUSSION

The Court will discuss each party's Renewed Motion for Judgment as a Matter of Law in turn, and then address Defendants' Motion to Amend the Judgment.

**A.   Genesys' Renewed Motion for Judgment as a Matter of Law**

Genesys renews its motion for judgment as a matter of law on its claim against Hertel for aiding and abetting breaches of fiduciary duty (Count 31) and civil conspiracy claims against Defendants (Counts 12, 30, and 36). Because all claims against Manno have been dismissed, Genesys' Renewed Motion is **denied** as to the civil conspiracy claim against Manno (Count 12). Accordingly, the Court will discuss only the aiding and abetting claim against Hertel and civil conspiracy claims against Hertel and Talkdesk.

**1.   Aiding and Abetting Against Hertel**

To succeed on its claim for aiding and abetting a breach of the fiduciary duty of loyalty, Genesys was required to prove (1) the party whom Hertel assisted breached a fiduciary duty owed to Genesys, (2) Hertel knowingly and substantially assisted the breach, and (3) Hertel was aware of his role when he provided the assistance. *Abrams v. McGuireWoods, LLP*, 518 B.R. 491, 500 (N.D. Ind. 2014); *see also Crown Holdings, LLC v. Berkley Risk Adm'rs Co. LLC*, No. 15-cv-13, 2016 WL 559213, at *2 (S.D. Ind. Feb. 12, 2016). On summary judgment, the Court concluded that Genesys established the first element of this claim by showing that Manno and Strahan breached their fiduciary duties of loyalty (Filing No. 351 at 30, 33). Genesys argues that the evidence at trial conclusively established the remaining two elements—Hertel's substantial assistance and his awareness of his role in the breaches.

**a.   Substantial Assistance**

Genesys argues that at trial, Hertel admitted that he assisted Manno's breach of his duty of loyalty by helping him recruit two individuals for Talkdesk (Filing No. 574 at 102–03; Filing No.

576 at 42, 74) and that he assisted Strahan's breach by discussing leaving Genesys and working together to design compensation packages (Filing No. 574 at 103–04, 108–10; Filing No. 575 at 11–13). Genesys argues that Hertel also provided substantial assistance by identifying several potential candidates to Talkdesk's Vice President of Talent (Filing No. 574 at 118) "joining [Manno and Strahan] on strategy calls with Talkdesk" (Filing No. 616 at 4).

In response, Defendants argue that Genesys has not conclusively shown that Hertel's assistance was "substantial." (Filing No. 630 at 8.) Defendants note that "Genesys's evidence of 'substantial' assistance is largely drawn from the same emails that were present on the summary judgment record (or testimony that merely restates or confirms those emails)," and consistent with the Court's summary judgment ruling, a reasonable jury could find that Hertel did not provide "substantial" assistance. *Id.* at 8.

Pursuant to the legal standard of Rule 50, the Court must construe the facts strictly in favor of Defendants because they were the prevailing party at trial, and although the Court examines the evidence to determine whether the jury's verdict was based on that evidence, the Court does not make credulity determinations or weigh the evidence. The Court considers whether a reasonable jury would have a legally sufficient evidentiary basis to find for the party on that issue. Keeping this strict standard in mind, the Court agrees with Defendants. While Genesys may have identified conduct that arguably assisted Manno and Strahan in breaching their fiduciary duties, Genesys has not explained how this assistance was undisputably "substantial." *See Buchanan v. Vowell*, 926 N.E.2d 515, 523 (Ind. Ct. App. 2010) ("What counts as substantial aid or encouragement no doubt depends heavily on the facts.'" (quoting 2 Dan B. Dobbs, *The Law of Torts* § 340, at 938 (2001)); *Pinkney v. Thomas*, 583 F. Supp. 2d 970, 978–79 (N.D. Ind. 2008) (denying summary judgment in action under 42 U.S.C. § 1983 because jury must decide whether defendant provided "substantial"

assistance to officer by holding the plaintiff in a way that allowed the defendant to repeatedly strike the plaintiff and prevented the plaintiff from moving or deflecting the strikes).

A reasonable jury could conclude that Hertel did not "substantially" assist Manno's breach by talking with two individuals about joining Talkdesk, emailing Talkdesk a list of candidates, and joining a strategy call. A reasonable jury could also conclude that Hertel did not "substantially" assist Strahan's breach by talking with him about leaving Genesys and joining the same strategy call. Genesys' Renewed Motion as to Count 31 is therefore **denied**.

 **b.** <u>Awareness of Role in Breach</u>

Because the jury could have reasonably concluded that Hertel's assistance was not "substantial," the jury's verdict on Count 31 must be upheld. But for the sake of thoroughness, the Court will address Genesys' argument as to the third element—Hertel's awareness of his role in helping Manno and Strahan breach their fiduciary duties of loyalty. Genesys argues:

> Hertel admitted at trial that he knew that when he was "working for Genesys in 2018, [he] owed Genesys a duty of loyalty" and "had a duty to Genesys not to compete against Genesys while [he was] on team Genesys." Hertel therefore knew that Strahan (who, like Hertel, was a Genesys Area Sales Director) and Manno (his and Strahan's boss at Genesys) likewise had duties of loyalty that barred them from competing against Genesys while they worked there.

([Filing No. 616 at 4](#)).

In response, Defendants cite evidence that neither Hertel, Manno, nor Strahan knew that the others owed duties of loyalty to Genesys ([Filing No. 630 at 3](#)–8). On reply, Genesys contends that the fact "[t]hat Hertel was aware, as a high-ranking Genesys employee, *he* has a duty of loyalty *necessarily implies* that he was likewise aware that Strahan . . . and Manno . . . also had duties of loyalty that barred them from competing against Genesys while they were employed at Genesys." ([Filing No. 634 at 3](#) (second emphasis added)). However, Genesys' argument is based on an inference that the jury was not required to draw to Genesys' favor.

At trial, Hertel testified that he did not understand the meaning or scope of his "fiduciary" duties, or what the term "fiduciary" meant (Filing No. 156–57). There was also no direct evidence that Hertel knew that his fiduciary duty arose from his "high-ranking" position within Genesys, as Genesys implies (Filing No. 634 at 3). More importantly, Hertel testified that he never "talk[ed] to anyone at Genesys about whether Manno or Strahan had a fiduciary duty while at Genesys"; was never told by Manno or Strahan "that they believed they had a fiduciary duty to Genesys while they were at Genesys"; and did not "think that Mr. Manno or Strahan were breaking any fiduciary duties to Genesys." (Filing No. 577 at 157). Strahan likewise testified that he did not understand what a fiduciary duty of loyalty meant or know that Manno or Hertel owed those duties (*id.* at 100), and Manno testified that he did not believe he breached his duty of loyalty to Genesys and had not considered whether Strahan or Hertel also owed duties (*id.* at 228–29). Based on this evidence, a reasonable jury could have declined to infer that Hertel was aware that Manno or Strahan owed fiduciary duties of loyalty to Genesys simply because he knew that *he* owed that duty to Genesys.

The Court will not speculate on how the jury viewed this evidence, nor will the Court make credibility determinations or weigh the evidence on a Rule 50(b) motion. The Court determines that it is appropriate to leave the jury verdict undisturbed because, based on this evidence, a reasonable jury could conclude that Hertel was not aware that he was assisting Manno or Strahan in breaching their duties of loyalty to Genesys. For this additional reason, Genesys' Renewed Motion as to Count 31 is **denied**.

### 2.   Civil Conspiracy Against Hertel and Talkdesk

Genesys also renews its request for judgment as a matter of law on its civil conspiracy claims (Filing No. 616 at 5). Genesys argues that the unrebutted evidence conclusively established that Genesys satisfied each of the four elements of a civil conspiracy claim: (1) an object to be

accomplished; (2) a meeting of the minds on the object or course of action; (3) one or more overt acts; and (4) damages proximately caused by those acts. *Carmichael v. Separators, Inc.*, 148 N.E.3d 1048, 1058 (Ind. Ct. App. 2020).

Genesys argues that "[t]here can be no serious dispute as to the first, third, and fourth elements (object, overt act, and damages)" and "the object of Defendants' conduct is obvious—to quickly and cheaply build Talkdesk's salesforce by using *Genesys* salesmen to recruit individuals (including other Genesys employees) to Talkdesk." ([Filing No. 616 at 5](#)) (emphasis in original). In response, Defendants argue that Genesys waived any argument that its civil conspiracy claims were based on breaches of contract or fiduciary duties, and that there was no evidence that Defendants knew the object or means of the alleged conspiracy were unlawful. The Court declines to address Defendants' waiver argument, as the issue of whether Genesys conclusively satisfied the second element of civil conspiracy (a meeting of the minds) is dispositive.

Genesys identifies several portions of testimony that arguably show a meeting of the minds as to Defendants' shared objective of using Genesys employees to recruit for Talkdesk. Genesys first cites a July 2018 email from Manno to Talkdesk's CEO, which Genesys argues is "an email agreeing that the [Individual Defendants] would 'recruit the worthwhile Genesys players.'" ([Filing No. 616 at 6](#)). However, Manno's trial testimony rebuts this argument:

> Q.  . . .[Y]ou tell him that, "I want to be able to have the RVPs start when I do, and if we can get them offers with me, they can then recruit the worthwhile Genesys players." Did I read that correctly?
>
> A.  You did.
>
> . . . .
>
> Q.  And that's, in fact, what Mr. Strahan and Hertel and you did, you recruited worthwhile Genesys players to Talkdesk; agree?
>
> A.  I didn't recruit any of the sales folks.

Q.  Mr. Hertel and Mr. Strahan were sales folks?

A.  Account executives.

Q.  You did recruit the two area directors to Talkdesk from Genesys?

A.  Partially, yes.

Q.  Partially. Here, you're brokering their deal; correct?

A.  They made their own decision, Counselor. They wanted to come over. That was their stipulation.

. . . .

Q.  You were the one relaying the package from Mr. Strahan and Hertel to the CEO of Talkdesk; correct?

A.  Sure. You could call me a messenger.

Q.  Just a messenger?

A.  Correct.

Q.  That's it?

A.  I'm given some name [*sic*]. You said I was brokering; right?

Q.  Yes.

A.  Like a messenger.

(Filing No. 576 at 30–31). The jury was entitled to believe Manno's testimony that he was merely conveying information from Genesys employees to Talkdesk, rather than agreeing to recruit for Talkdesk or use Genesys employees to recruit for Talkdesk. Manno similarly testified that he only "brokered" a deal between Talkdesk and an employee of another competitor (Filing No. 576 at 40).

Genesys also cites an August 2018 email from Strahan, on behalf of himself and Hertel, to Manno, stating "'Mark and I are both pumped for the opportunity, we're confident we can get eight to ten productive [sales employees] in place in three or four months. If we can iron out these final details, you have both of our commitments to move forward.'" (Filing No. 575 at 13). However,

the jury could have read this email as only showing an agreement between Strahan and Hertel. This email does not necessarily demonstrate an agreement between the three Individual Defendants, or between the Individual Defendants and Talkdesk.

Additionally, Strahan, like Manno, testified that he did not believe that he was recruiting any employees for Talkdesk and was instead merely providing information.

> Q.  And those were three of the nine Genesys executives that you recruited for Talkdesk while still on the payroll of Genesys; agree?
>
> A.  I don't feel as though I recruited them. I put them through or submitted their information so that the Talkdesk recruiting team could recruit them, but I wouldn't consider my activities as recruitment.
>
> . . . .
>
> Q.  Now, let's turn to a different topic, the Talkdesk team, Ms. Geraghty, VP of Talent, her recruiting team. They supported you, Mr. Manno, and Mr. Hertel in recruiting Genesys sales executives to join Talkdesk; correct?
>
> A.  I don't view her as supporting us. She was reading -- leading, so I would say incorrect. She was responsible for recruiting and building the sales team.

([Filing No. 577 at 105](#)–06, 120, 125).

Hertel also testified that he did not talk about his "recommendations" with Manno, Strahan, or Talkdesk's CEO before his first day at Talkdesk, and that he did not "recruit anyone on behalf of Talkdesk" prior to his first day there. *Id.* at 153–55. Hertel testified that he did not consider his conversations with Genesys employees to be recruitment. *Id.* at 147, 165.

Regardless of whether the Individual Defendants in fact recruited employees for Talkdesk, the jury was permitted to believe the testimony that the Individual Defendants believed that Talkdesk—not them and not other Genesys employees—was doing all the recruiting. As such, the jury could have reasonably concluded that there was no meeting of the minds as to a common objective of "using *Genesys* salesmen to recruit individuals . . . to Talkdesk." ([Filing No. 616 at 5](#)) (emphasis in original).  Genesys' Renewed Motion is therefore **denied** as to Counts 30 and 36.

13

**B.**     **Defendants' Renewed Motion for Judgment as a Matter of Law**

Defendants renew their motion for judgment as a matter of law as to "all claims relying on claims of harm relating to Manno and/or Hertel" (Counts 3, 4, 6, 7, 8, 13, 28, 34, and 37), all claims against Manno and Hertel for which the jury awarded zero damages (Counts 3, 4, 8, 13, and 28), the claim against Manno for breach of contract based on a confidentiality provision (Count 8), the claim against Talkdesk for tortious interference with Manno's and Strahan's contracts (Count 34), and the claims for aiding and abetting breaches of fiduciary duty against Manno and Talkdesk (Counts 13 and 37). Because all claims against Manno have been dismissed, Defendants' Renewed Motion is **denied as moot** as to the claims against Manno (Counts 3, 4, 6, 7, 8, and 13). The Court will only address Defendants' arguments regarding damages and their request for judgment as a matter of law on the claims against Talkdesk (Counts 34 and 37).

**1.**     **All Claims Awarding Damages and Vicarious Claims**

Defendants first argue that Genesys did not present any evidence of the harm attributable to each Individual Defendant, so any compensatory damages award based on any Individual Defendant's conduct is speculative (Filing No. 618 at 4–5). Defendants therefore contend that they are entitled to judgment as a matter of law on all claims against Manno and Hertel, "as well as any amounts derived by the jury through vicarious claims against Talkdesk relating to those.

Genesys raises two arguments in response. First, Defendants' arguments "no longer have any practical relevance" because "[t]he Court's final judgment does not award any compensatory damages at all, but instead awards Genesys unjust enrichment against Talkdesk and disgorgement against Manno and Hertel," which Defendants do not argue lacked adequate evidentiary support (Filing No. 629 at 9). Second, Genesys' human resources expert, Dr. Brian Dineen, presented a damages opinion that related to claims asserted against each Individual Defendant, so the jury had sufficient evidence upon which to apportion damages. *Id.* at 9–10.

On reply, Defendants argue that its compensatory damages arguments are not moot for three reasons: Defendants' pending Motion to Amend argues that "disgorging Manno and Hertel's profits was inappropriate"; the parties' competing motions for costs require "a determination of who the prevailing party is; and Genesys seeks attorneys' fees "based on 'successfully enforcing' Sections 7 and 8 of Manno's agreement" (Filing No. 637 at 13). Defendants then rebut the argument that Dr. Dineen provided sufficient evidence to support the jury's damages awards. *Id.* at 14–15.

As to mootness, the Court agrees with Genesys. Genesys elected to recover disgorgement damages against Manno and Hertel and unjust enrichment damages against Talkdesk, rather than the compensatory damages that Defendants now challenge, and the parties' other post-trial motions do not necessitate a substantive ruling on the compensatory damages issue. Defendants' Motion to Amend does not argue that the disgorgement awards were "inappropriate" in and of themselves; the Motion to Amend instead asks that Genesys be forced to elect between the disgorgement awards and unjust enrichment awards (Filing No. 620 at 12–17). The Court sees no reason why it must decide whether the compensatory damages awards against Manno or Hertel were appropriate in order to resolve the separate issue of election of damages. Genesys' concern about the parties' motions for costs is likewise misplaced, since "[a] party prevails for purposes of Rule 54(d) when a *final judgment* awards it substantial relief," and as Genesys notes, the Final Judgment in this case does not award any compensatory damages. *Smart v. Local 702 Int'l Brotherhood of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009); (Filing No. 598). Further, because Manno is deceased and all claims against him have been dismissed with prejudice, the concerns about Genesys' enforcement of his employment agreement are moot. Because Defendants' arguments are moot, the Court need not decide whether the jury's compensatory damages awards were based on sufficient evidence. Defendants' Renewed Motion, as to the compensatory damages awards, is **denied as moot**.

## 2.  **Tortious Interference Against Talkdesk**

Defendants also argue they are entitled to judgment as a matter of law on the claim of tortious interference with contracts against Talkdesk (Count 34) because Genesys failed to proffer evidence proving three of the elements of that claim. A claim for tortious interference with a contract requires "(1) the existence of a valid and enforceable contract; (2) the defendants' knowledge of the existence of the contract; (3) the defendants' intentional inducement of breach of the contract; (4) the absence of justification; and (5) resultant damages." *Zimmer, Inc. v. Stryker Corp.*, No. 14-CV-152, 2016 WL 6476315, at *4 (N.D. Ind. Nov. 1, 2016) (internal citation and quotation marks omitted). Defendants contend Genesys failed to offer evidence as to the second, third, and fourth elements—knowledge of the contract's existence; intentional inducement; and absence of justification. Defendants also briefly argue that the jury's finding of zero damages warrants judgment as a matter of law in their favor.

As an initial matter, the Court notes that Defendants erroneously contend "[b]ecause claims against Strahan were withdrawn, the only breach of contract from which tortious interference could spring is related to Manno's breach of contract." (Filing No. 618 at 9 n.9.)  The fact that the claims against Strahan (and now Manno) have been dismissed does not moot Genesys' claims against Talkdesk for tortious interference with Strahan's and Manno's contracts. As Genesys correctly notes, it was not required to sue the Individual Defendants for breach of contract in order to sue Talkdesk for tortious interference, even though both claims require proving that the Individual Defendants breached their contracts (Filing No. 629 at 5 n.1). Defendants have therefore waived any arguments as to Genesys' claim against Talkdesk for tortious interference with Strahan's employment agreement. However, because there is substantial overlap between the evidence of tortious interference with Manno's contract and Strahan's contract, the Court will discuss Talkdesk's tortious interference with both contracts.

### a.  <u>Knowledge of the Existence of Manno's and Strahan's Contracts</u>

Defendants first contend that Talkdesk, at most, "may have had knowledge that Manno had an agreement that prohibited him from doing work for Talkdesk while employed by Genesys," and that Talkdesk might only have "inferred" that Manno or Strahan had employment agreements with Genesys "at some point." (<u>Filing No. 618 at 8</u>.) "A nebulous idea of a contract that may or may not have existed does not amount to knowledge of specific provisions, or even the term and thus applicability of a contract that existed with a predecessor company to Genesys." *Id.*

Defendants respond by pointing to evidence that Manno specifically told Talkdesk that he had an employment agreement that "pretty clearly" prohibited working for anyone else (<u>Filing No. 576 at 13</u>, 266); that Strahan "conspicuously" failed to answer "no" when asked by Talkdesk whether he had an employment agreement with Genesys (<u>Filing No. 575 at 15</u>–16); and that Talkdesk expects its employees not to recruit for competitors (<u>Filing No. 574 at 15</u>–17).

Construing this evidence strictly in favor of Genesys as the prevailing party at trial, the Court agrees with Genesys that this evidence is sufficient to support a reasonable jury finding that Manno and Strahan had contracts with Genesys that prohibited them from recruiting or working for Talkdesk while still employed at Genesys.

### b.  <u>Intentional Inducement of Breach</u>

Defendants next argue that Genesys did not offer evidence to show that Talkdesk "intentionally" induced breaches of Manno's or Strahan's employment agreements. Defendants note that Talkdesk's Vice President of Talent testified that she did not intend to have Manno or Strahan do anything that would breach their contractual obligations to Genesys (<u>Filing No. 578 at 47</u>–48), and argues that the evidence shows that Talkdesk "merely took referrals from Mr. Manno and Mr. Strahan and interviewed some of those candidates" (<u>Filing No. 618 at 9</u>).

In response, Genesys identifies several of the actions that Talkdesk took to "encourage," "facilitate," and "participate" in the breaches of Manno's and Strahan's employment agreements, including "(1) making Manno a Talkdesk hiring manager" (Filing No. 574 at 33), "(2) building an expedited Talkdesk hiring process for Manno's and Strahan's recruits" (Filing No. 576 at 43–44), "(3) approving Manno's and Strahan's recruits" (Filing No. 574 at 35–37).

The Court again agrees with Genesys. The jury was permitted to discount the testimony of Talkdesk's Vice President of Talent and, based on the evidence of Talkdesk's actions, conclude that Talkdesk intended to induce the breaches of Manno and Strahan's employment agreements.

### c.   <u>Absence of Justification</u>

With respect to the fourth element of tortious interference, Defendants argue that the Indiana Supreme Court recently "recognized a split as to the standard for absence of justification" (Filing No. 618 at 9) (citing *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 215 (Ind. 2019)). But even assuming Defendants' reading of this case were correct,[1] Defendants' Renewed Motion does not argue that the definition of "justification" in the final jury instructions was erroneous, so the sole issue is whether the jury had a legally sufficient evidentiary basis to find that Talkdesk's conduct was not "justified," as defined in the instructions. Final Instruction No. 34 stated: "[f]or Talkdesk's conduct to be justified, it must have been done for a legitimate reason and not solely to injure and damage Genesys. The overriding question is whether Talkdesk's conduct was fair and reasonable under the circumstances." (Filing No. 560-2 at 35).

At trial, the parties stipulated that "in 2018, Talkdesk wanted to grow its enterprise business, so it began looking for potential employment candidates across the CCaaS industry,

---

[1] The Indiana Court of Appeals recently interpreted *American Consulting* as identifying "two ways" of proving the absence of justification, rather than recognizing a split as to which standard is applicable. *Kapitus Servicing, Inc. v. First Fin. Bank, N.A.*, No. 23A-CT-2239, 2024 WL 3567444 (Table) (Ind. Ct. App. July 29, 2024).

including those at Genesys and other companies," and testimony from several witnesses confirmed that Talkdesk sought to grow and compete in the CcaaS industry (Filing No. 618 at 10). "Thus," Defendants contend, "Talkdesk's recruiting and hiring employees with experience in the industry is unquestionably bona fide competition, and Genesys provides no evidence that could outweigh such a fundamentally legitimate business interest." *Id.* In response, Genesys argues "Talkdesk did far more than 'seek[] to hire experienced talent from competitors,'" and "worked with Manno and Strahan to surreptitiously recruit valuable talent to Talkdesk *even while Manno and Strahan were employed with Genesys* and thus still under contractual and fiduciary duties to provide faithful service to, and not to compete with, Genesys." (Filing No. 629 at 9 (emphasis in original).)

The Court again agrees with Genesys. While Talkdesk may have had a legitimate motivation to recruit and hire employees from competitors within its industry, that rationale does not necessarily apply to Talkdesk's decision to induce Manno and Strahan to breach their employment agreements with Genesys. There was sufficient evidence to support a finding that Talkdesk's conduct in inducing breaches of Manno's and Strahan's contracts was done solely to injure and damage Genesys and was not fair or reasonable under the circumstances (*see* Filing No. 576 at 263–65 (Talkdesk executive emailing Talkdesk CEO, asking "How long before we can dance on Genesys' grave?!" and CEO replying "You can do it already. They're all giving notice tomorrow," referring to Manno, Strahan, and Hertel)).

### d. Damages

Lastly, Defendants argue they are entitled to judgment as a matter of law on Count 34 because the jury awarded Genesys zero damages, and Genesys thus failed to prove an essential element of its claim. As the Court explains in more detail in its discussion of the Motion to Amend Judgment, judgment as a matter of law is not a proper remedy for an inconsistent judgment and, in any event, the jury could have reasonably concluded that Genesys was damaged by Talkdesk's

tortious interference but entitled to zero compensation for those damages.  Defendants' Renewed Motion is therefore **denied** as to the tortious interference claim.

### 3.  <u>Aiding and Abetting Against Talkdesk</u>

Defendants next challenge the aiding and abetting claim against Talkdesk (Count 37) on two grounds. Defendants first argue, as they have many times before, that aiding and abetting the breach of a fiduciary duty is not a recognized cause of action under Indiana law. Second, Defendants argue that the jury lacked a sufficient basis on which to conclude that Talkdesk knowingly and substantially assisted the breaches. The Court will address each argument in turn.

### a.  <u>Whether Claims for Aiding and Abetting Breach of Fiduciary Duty Are Recognized Under Indiana Law</u>

Defendants "again take issue with the aiding and abetting a breach of fiduciary duty of loyalty claims because such cause of action is not recognized under Indiana law." ([Filing No. 618 at 11](#)–12). Defendants argue that although this Court allowed the aiding and abetting claims to survive summary judgment, the Indiana Court of Appeals has held that Indiana does not currently recognize such a claim, and other federal courts have refused to recognize such a claim ([Filing No. 618 at 12](#)). Genesys responds by arguing that this Court correctly held that the Indiana Supreme Court would recognize a claim for aiding and abetting the breach of a fiduciary duty, and that this holding comports with a long history of Indiana precedent recognizing similar claims.

In its Entry on Cross-Motions for Summary Judgment, the Court explained that although the Indiana Court of Appeals has stated that "Indiana does not recognize such a cause of action," *Crystal Valley Sales, Inc. v. Anderson*, 22 N.E.3d 646, 656 (Ind. Ct. App. 2014), "Indiana recognizes claims for aiding and abetting torts," so the Indiana Supreme Court likely would recognize such a cause of action ([Filing No. 351 at 31](#) n.2). The Court cited two cases, *Abrams v.*

*McGuire Woods LLC*, 518 B.R. 491 (N.D. Ind. 2014), and *Crown Holdings, LLC v. Berkley Risk Administrators Company, LLC*, No. 15-cv-13, 2016 WL 559213 (S.D. Ind. Feb. 12, 2016).

In *Abrams*, the Northern District of Indiana predicted that "even if it hasn't yet recognized the cause of action, the Indiana Supreme Court would do so." 518 B.R. at 499. The *Abrams* court explained, "as the Seventh Circuit has observed, aiding and abetting liability is not a separate or independent tort, but rather a theory for holding a person liable who knowingly assists ('aids and abets' in legal parlance) a wrongdoer," and "Indiana courts recognize liability for breach of fiduciary duty" and "also recognize aiding and abetting liability for torts in general." *Id.* In *Crown Holdings*, this Court found it similarly persuasive that Indiana courts have historically recognized claims for aiding and abetting various intentional and negligence torts. 2016 WL 559213, at *2.

Genesys identified just a few of the many cases in which Indiana courts have recognized liability for aiding and abetting tortious conduct. *See, e.g.*, *Springbrook Village Batesville LLC v. Se. Ind. Title Inc.*, 195 N.E.3d 398 (Ind. Ct. App. 2022), *transfer denied*, 208 N.E.3d 1255 (Ind. 2023); *Buchanan*, 926 N.E.2d at 521; *A.S. v. LaPorte Reg'l Health Sys., Inc.*, 921 N.E.2d 853, 860 (Ind. Ct. App. 2010); *Hellums v. Raber*, 853 N.E.2d 143, 1446 (Ind. Ct. App. 2006); *Boyle v. Anderson Fire Fighters Assoc. Local 1262, AFL-CIO*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986). As early as 1866, the Indiana Supreme Court held that it was "sound law" to hold a third party liable for aiding and abetting the tort of assault and battery. *Little v. Tingle*, 26 Ind. 168, 169 (Ind. 1866). In 1882, the Indiana Supreme Court applied the same principal to the tort of trespass. *McNaughton v. City of Elkhart*, 85 Ind. 384, 390–91 (Ind. 1882). And in 1928, the Indiana Appellate Court recognized "[i]t is also the law that a third party, who has aided and abetted the trustee in carrying out [a] fraudulent scheme, may be joined as a defendant in the same action." *Sharts v. Douglas*, 163 N.E. 109, 112 (Ind. App. 1928); *see also Wash. Frontier League Baseball,*

*LLC v. Zimmerman*, No. 14-cv-1862, 2015 WL 7300555, at * (S.D. Ind. Nov. 18, 2015) (Pratt, J.)

(citing *Sharts*, 163 N.E. at 112) (stating "Indiana may recognize a claim against a third-party, non-

fiduciary for aiding and abetting another party's breach of its fiduciary duty" but holding that the

complaint did not adequately allege such a claim).

Under the *Erie* doctrine, this Court must "predict what the state's *highest* court will do."

*Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (emphasis added). While

the recent decisions from the Indiana Court of Appeals stating that Indiana had not *yet* recognized

aiding and abetting claims, this Court is not bound by those decisions. "An overly rigid deference

to the decision of an intermediate appellate court can easily distract a federal court from the

constitutionally-based north star of its inquiry: what would the highest court of the state do if the

present case was now before that court?" *Green Plains Trade Group, LLC v. Archer Daniels

Midland Co.*, 90 F.4th 919, 928 (7th Cir. 2024). In determining whether the Indiana Supreme Court

would recognize a claim for aiding and abetting the breach of a fiduciary duty, this Court is more

persuaded by Indiana's long history of cases recognizing aiding and abetting liability for torts, than

it is by two recent intermediate appellate cases and the federal district court decisions relying on

those two cases. Consistent with its prior ruling, the Court finds that the Indiana Supreme Court

would recognize a claim for aiding and abetting the breach of a fiduciary duty and therefore **denies**

Defendants' request for judgment as a matter of law on that basis.

### b.   Whether the Evidence Was Sufficient to Support a Jury Finding of "Knowing" and "Substantial" Assistance

Defendants alternatively argue that Genesys did not offer sufficient evidence showing that

Talkdesk "knowingly" and "substantially" assisted the Individual Defendants in breaching their

fiduciary duties. Defendants contend that "the only evidence of record on this issue" shows that

Talkdesk did not know that the individual defendants "had a fiduciary duty or that their actions

would cause a breach thereof," and that Talkdesk did not take any affirmative actions to assist the breaches of fiduciary duties (Filing No. 618 at 14). In its response, Genesys cites portions of the "overwhelming evidence" showing that Talkdesk provided "substantial assistance" and knew that the Individual Defendants owed Genesys fiduciary duties while still employed there.

Bearing in mind the strict standard under Rule 50, the Court concludes that the jury had a sufficient evidentiary basis to conclude that Talkdesk knowingly and substantially assisted the Individual Defendants in breaching their fiduciary duties of loyalty. At trial, Talkdesk's CEO testified that he knew the Individual Defendants were employed by Genesys when they began planning to move to Talkdesk in August 2018 (Filing No. 575 at 12). Talkdesk's CEO also testified that he expects Talkdesk's executives to serve Talkdesk while employed there, and Talkdesk's Vice President of Talent testified that she expects Talkdesk employees not to recruit for a competitor while employed there (Filing No. 576 at 256–57; Filing No. 574 at 15–17). There was also ample evidence that Talkdesk knew that the Individual Defendants continued to work for Genesys through late September 2018 (Filing No. 576 at 263). Although this evidence is circumstantial, it is sufficient for the jury to conclude that Talkdesk knew that the Individual Defendants owed Genesys a fiduciary duty of loyalty.

Genesys also elicited testimony that Talkdesk placed Manno in the position of a hiring manager while he was still working for Genesys (Filing No. 574 at 33), implemented an "expedited" recruitment process for the recruits that the Individual Defendants identified (Filing No. 576 at 43), authorized Strahan to extend employment offers to Genesys employees on behalf of Talkdesk (Filing No. 576 at 61–62), and offered its in-house recruiting team to support the Individual Defendants' recruiting efforts (Filing No. 574 at 139). Based on this evidence of conduct by Talkdesk, the jury could have reasonably concluded that Talkdesk "substantially" assisted the

Individual Defendants' breaches of their fiduciary duties of loyalty. The Court therefore **denies** Defendants' Renewed Motion as to the aiding and abetting claim against Talkdesk (Count 37).

## C.     Defendants' Motion to Amend Judgment

In their Motion to Amend Judgment, Defendants request that the Court amend the Final Judgment to: remove the punitive damages award against Manno on Count 8; enter judgment in favor of Manno on Counts 3, 4, and 6, and in favor of Talkdesk on Count 34; strike the claims for aiding and abetting breaches of fiduciary duties (Counts 13, 31, and 36); and order Genesys to elect between the unjust enrichment damages awarded against Talkdesk for aiding and abetting breach of fiduciary duties and the disgorgement damages awarded against Manno and Hertel for the breaches of their fiduciary duties.

In light of the dismissal of all claims against Manno, the Court **denies as moot** Defendants' Motion to Amend with respect to Counts 3, 4, 6, 8, and 13, but **grants** Defendants' Motion to Amend to the extent that the Court will amend the Final Judgment to reflect that all Counts against Manno have been resolved through stipulation of dismissal with prejudice. The Court will address Defendants' remaining arguments in turn.

### 1.     Reversal of Judgment as to Claim with Zero Damages

Defendants request that the Court reverse the jury's verdict on the aiding and abetting a breach of fiduciary duty claim against Talkdesk because Genesys did not prove the damages element of those claims.

In its Order dated April 15, 2024, the Court explained:

[P]ursuant to Seventh Circuit caselaw, the trial court cannot cure an inconsistent jury verdict by amending the final judgment or through judgment as a matter of law. *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005) ("A new trial on all claims is the appropriate remedy (rather than judgment as a matter of law) in a case in which the jury has returned inconsistent verdicts."); *Turyna v. Martam Constr. Co., Inc.*, 83 F.3d 178, 181 (7th Cir. 1996) (denying Rule 59€ motion to amend judgment and set aside punitive damages award, and remanding for new

trial). If an inconsistency is brought to the court's attention only after the jury has been discharged, as is the case here, then the court must either reconcile the perceived inconsistency or, if irreconcilable, order a new trial. *Continental Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747, 754, 756 (7th Cir. 2020) ("Once the moment for using Rule 49 passed, all that was left was a possible motion under Rule 59(a) for a new trial."); *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998) ("If inconsistency escapes notice until after the jury has disbanded, the proper thing to do is hold a new trial.").

(Filing No. 644 at 2–3). Because amendment of the judgment is not a proper remedy for an inconsistent verdict, Defendants' request for an amendment must be **denied**. However, the Court's inquiry does not end there:

Seventh Circuit caselaw further indicates that once an inconsistency is brought to the court's attention, it would be error for the court to allow the inconsistent verdict to stand, even where no party has sought the appropriate remedy—a new trial. *Turyna*, 83 F.3d at 181 ("When Martam raised its objection to the verdict in the Rule 59€ motion, thereby calling the court's attention to the problems with the verdict, . . . the court should have ordered a new trial on Count II."); *Stone v. City of Chicago*, 738 F.2d 896, 899 (7th Cir. 1984) ("We recognize that when jury verdicts are logically incompatible, thereby indicating that the jury was confused or abused its power, the district court errs when it fails to order a new trial."); *In re Testosterone Replacement Therapy Products Liability Litigation*, No. 14 C 1748, 2017 WL 6569632, at *8 (N.D. Ill. Dec. 22, 2017) ("Neither party contends that the Court lacks authority to order a new trial on its own motion, and the Court appears to have satisfied the requirements of Rule 59(d). In addition, the Court concludes that it would be committing error if it did not order a new trial . . . ." (citing *Stone*, 738 F.2d at 899)); *see also Deloughery*, 422 F.3d at 617 ("'As a rule civil juries must return consistent verdicts.'" (quoting *Will v. Comprehensive Acct. Corp.*, 776 F.2d 665, 677 (7th Cir. 1985))).

*Id.* at 3. Fortunately, after a careful consideration of the Final Instruction and verdict in this case, the Court finds that the jury's verdict on Count 34 is reconcilable, so a new trial is not required.

"A jury determination of damages is entitled to great deference when challenged on appeal." *Flores v. Gutierrez*, 951 N.E.2d 632, 636 (Ind. Ct. App. 2011) (citing *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001)).

Damages are particularly a jury determination. Appellate courts will not substitute their idea of a proper damage award for that of the jury. Instead, the court will look only to the evidence and inferences therefrom which support the jury's verdict. We will not deem a verdict to be the result of improper considerations *unless it cannot*

> *be explained on any other reasonable ground*. Thus, if there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed.

*Sears Roebuck & Co.*, 742 N.E.2d at 462 (emphasis added) (quoting *Prange v. Martin*, 629 N.E.2d

915, 922 (Ind. Ct. App. 1994) (citations omitted)). The Indiana Supreme Court has further noted:

> Our inability to actually look into the minds of the jurors is, to a large extent, the reason behind the rule that we will not reverse if the award falls within the bounds of the evidence. We cannot invade the province of the jury to decide the facts and cannot reverse unless the verdict is clearly erroneous.

*Id.* (quoting *Annee v. State*, 271 N.E.2d 711, 713 (Ind. 1971)).

At first glance, the jury's verdict on Count 34 appears to be inconsistent. The Final

Instruction for Count 34 identified the five elements of Genesys' tortious interference claim against

Talkdesk, including "(5) Genesys was damaged as a result." (Filing No. 560-2 at 34 (Final

Instruction No. 33)). The jury was further instructed, "[i]f after you consider all of the evidence

you find that Genesys has proven *each* of these elements in accordance with the legal requirements

as I describe them to you, *then your verdict must be for Genesys* . . . . If, on the other hand, you

find that Genesys has not proven *one or more of these elements*, then your verdict *must be for the

Defendant*. *Id.* (emphases added). It would therefore appear inconsistent to find in favor of

Genesys, which necessarily implies a finding that Genesys "was damaged," but award Genesys

zero dollars in damages (Filing No. 556 at 10–11).

However, the Final Instructions also indicate that the jury need not award Genesys

compensatory damages even if it found that Genesys "was damaged". The jury was instructed that

if it found for Genesys on Count 34, it must "consider the amount of monetary damages, *if any*, to

be awarded to Genesys by following the instructions that I will give you relating to damages, *if

any*." (Filing No. 560-2 at 34 (Final Instruction No. 33) (emphases added). The Court further

instructed the jury that it if found for Genesys, "then you *may* award such damages *as will*

*reasonably compensate Genesys* for the *actual loss* it has sustained from that breach of its employment agreement." *Id.* at 51 (Final Instruction No. 50) (emphases added). It does not appear that the jury disregarded the Court's instructions by finding in favor of Genesys but awarding zero damages.

Indiana caselaw confirms that a verdict finding liability but awarding zero damages is not necessarily irreconcilable, even where damages is an element of the claim at issue. *See, e.g.*, *Flores*, 951 N.E.2d at 636 (denying motion to correct error and affirming verdict in personal injury action awarding plaintiff zero damages but finding defendant liable); *Every Meadows, LLC v. McKnight Excavating, Inc.*, 953 N.E.2d 1279 (Table), 2011 WL 4104835, at *6–8 (Ind. Ct. App. Sept. 15, 2011) (unpublished) (denying motion to correct error and affirming verdict in breach of contract action awarding plaintiff zero damages but finding defendant liable); *Prime Choice Servs., Inc. v. Schneider Logistics Transloading & Distrib., Inc.*, 861 F.3d 633, 635 (7th Cir. 2017) (holding the district court was wrong to set aside jury verdict of liability but zero damages because "a rational jury could find that a zero damages award would . . . fairly compensate Schneider; to put it more bluntly, the jury could find that Schneider deserved no more"). In this case, the jury could have reasonably concluded that Genesys was harmed by Talkdesk's tortious interference, but that Genesys deserved no compensation for those damages.

At trial, Genesys sought two types of damages related to the Individual Defendants' breaches: unjust enrichment and "human resources" damages (Filing No. 579 at 51). Genesys' human resources expert, Dr. Dineen, testified that Talkdesk was enriched by approximately $822,188.00 because of the recruiting information that Manno, Strahan, and Hertel shared with Talkdesk. Dr. Dineen based this unjust enrichment damages on his opinion of what he believed Talkdesk would have otherwise needed to pay headhunters to obtain that information (Filing No.

575 at 247). Dr. Dineen also opined that Genesys incurred approximately $392,156.00 in "human resources" damages as a result of Manno, Strahan, Hertel, and six other Genesys employees leaving to work for Talkdesk. He explained that the $392,156.00 was comprised of damages related to recruiting and selection of replacements, *id.* at 218; orientation and formal training of replacements, *id.* at 220; informal training, *id.* at 223–25; and lost productivity, *id.* at 235.

Defendants presented competing evidence that Talkdesk was not unjustly enriched and that Genesys actually saved money by replacing the nine employees who left to work for Talkdesk. Defendants' economics expert, Dr. Robert Maness ("Dr. Maness"), testified that Talkdesk was not unjustly enriched by the recruiting information it received because Talkdesk employed salaried recruiters and would not have hired headhunters to obtain the information provided by the Individual Defendants (Filing No. 578 at 210). And as to the human resources damages, Dr. Maness testified that Genesys saved nearly $700,000.00 in salary expenses by replacing the nine employees who left for Genesys, which exceeds the $392,156.00 that Genesys allegedly incurred in replacing them (Filing No. 578 at 208, 236).  On cross-examination, Genesys' expert, Dr. Dineen conceded that "the salaries were lower among the replacements than they were among those who left." (Filing No. 575 at 266.) Defendants also elicited testimony that Genesys did not incur any additional costs to replace the nine employees who left, since Genesys used in-house, salaried recruiters to secure replacements (Filing No. 574 at 51–53; Filing No. 575 at 94–95).

Based on this evidence, a reasonable jury could have agreed with Defendants that Talkdesk was not unjustly enriched, and that while Genesys may have incurred "human resources" damages—thus satisfying the damages element—Genesys was not entitled to compensation, since it benefited more than it suffered. The jury's verdict can be reconciled, so a new trial is not needed.

The Seventh Circuit affirmed this same rationale and conclusion in *Continental Vineyard, LLC v. Vinifera Wine Co., LLC*, 973 F.3d 747 (7th Cir. 2020). The parties in *Continental* were business partners-turned-competitors in the wine industry. Plaintiff Gerald Forsythe hired defendant Randy Dzierzawski as the president of Forsythe's vineyard and winemaking business, Continental Vineyard. *Id.* at 750. As president, Dzierzawski met with a representative for the Meijer grocery store chain about Continental developing a custom wine for Meijer stores. Dzierzawski was in favor of the partnership, but Forsythe forbade it, so Dzierzawski secretly formed his own wine company, Vinifera. *Id.* Vinifera obtained wines from third parties for Meijer and eventually began sourcing wines from Continental. When Dzierzawski told Forsythe about Vinifera, Forsythe and Continental sued for a variety of torts, including breach of fiduciary duties, unfair competition, unjust enrichment, and usurpation of corporate opportunity. *Id.*

A jury found the *Continental* defendants liable for unfair competition, but it "left the damages section on the verdict form blank." *Id.* at 751. Like the parties here, Continental did not object to the jury's verdict when it was read. Several weeks later, Continental filed a motion for a new trial arguing, in part, that by awarding zero damages, the jury necessarily found that plaintiffs had not been injured, making the verdict irreconcilably inconsistent. *Id.* at 751, 757. The district court denied the motion, concluding that the verdict was not irreconcilable because the defendants' evidence showed that "Vinifera provided considerable benefits to Continental, even while it was engaged in the objectionable operations." *Id.* at 753. The Seventh Circuit affirmed:

> Although the verdicts at first glance appear to be inconsistent, a closer look shows that they can be reconciled. The jury apparently concluded that, although Dzierzawski through Vinifera had competed with Continental unfairly, Continental ultimately gained more than it lost from Dzierzawski's conduct. . . . The jury thus could have determined that the amount of lost profits was negative; that is to say, that Continental's profits grew rather than declined as a result of Dzierzawski's conduct. Because the verdicts can be resolved, the district court was correct to uphold the jury's verdict and deny Continental's motion for a new trial.

*Id.* at 757.

The reasoning in *Continental* applies equally here. Based on the evidence presented at trial, the jury could have reasonably concluded that Genesys was harmed by Talkdesk's tortious interference with Manno and Strahan's contracts but "ultimately gained more than it lost" from those breaches. *Id.* at 757. Mindful of the great deference owed to jury verdicts, the Court concludes that the jury's verdict on Count 34 is not irreconcilably inconsistent and must stand.

### 2.   Removal of Aiding and Abetting Claims

Defendants argue that the Court must strike the aiding and abetting claim against Talkdesk from the judgment because claims for aiding and abetting the breach of a fiduciary duty are not recognized under Indiana law. As a general matter, Rule 59(e) cannot be used to rehash previously rejected arguments. "Amendment of the judgment is proper only when 'the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact.'" *Stragapede v. City of Evanston*, 865 F.3d 861, 868 (7th Cir. 2017) (quoting *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996)). Defendants have not demonstrated that the Court committed a manifest error of law in deciding that the Indiana Supreme Court would recognize a claim for aiding and abetting the breach of the fiduciary duty of loyalty. Defendants simply rehash their previously rejected arguments and disagree with the Court's conclusion. Defendants' request to strike the aiding and abetting claims is therefore **denied**.

### 3.   Election of Damages for Aiding and Abetting or Breaches of Fiduciary Duty

Defendants next argue that if the Court does not strike the aiding and abetting claims, then the Court should require Genesys to elect between the unjust enrichment damages awarded against Talkdesk for aiding and abetting breaches of fiduciary duty and the disgorgement awards against the Individual Defendants for those breaches. Defendants argue that both types of damages arise

from the same underlying breaches, so allowing Genesys to recover both would constitute an impermissible double recovery.

The Court need not address the merits of Defendants' arguments because their concerns about double recovery are now moot. All claims against Strahan and Manno have been dismissed, so Genesys cannot recover damages for their underlying breaches of fiduciary duties as well as damages for Talkdesk's aiding and abetting those breaches. There likewise is no risk that Genesys will receive a double recovery for Hertel's breach of fiduciary duty since the jury awarded zero damages against Talkdesk for aiding and abetting Hertel's breach (Filing No. 556 at 9).

In sum, Genesys may only recover once related to Manno's breach of fiduciary duty ($230,666.00 in unjust enrichment against Talkdesk), once related to Strahan's breach ($40,706.00 in unjust enrichment against Talkdesk), and once related to Hertel's breach ($57,465.25 in disgorgement against Hertel). The Court therefore **denies** Defendants' request to require Genesys to elect between its unjust enrichment damages and disgorgement damages.

## IV.   CONCLUSION

Defendants have not demonstrated that the Court committed a manifest error of law, and the Court does not find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the respective parties on the issues tried. For the reasons explained above, Plaintiff's Renewed Motion for Judgment as a Matter of Law (Filing No. 615)  is **DENIED** and Defendants' Renewed Motion for Judgment as a Matter of Law (Filing No. 617) is **DENIED**. Defendants' Motion to Amend Judgment (Filing No. 619) is **GRANTED in part and DENEID in part**. The Motion to Amend Judgment is **granted** to the extent that the Court will **AMEND** the Final Judgment to reflect that all claims against Manno (Counts 1 through 13, inclusive) have been resolved through stipulation of dismissal with prejudice. Defendants' Motion to Amend Judgment is otherwise **denied**.

An amended final judgment will issue under separate order.

**SO ORDERED**.

Date: ___9/25/2024___

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

John R. Maley
BARNES & THORNBURG, LLP
jmaley@btlaw.com

Kathleen M. Anderson
BARNES & THORNBURG, LLP
kathleen.anderson@btlaw.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

James P. Strenski
PAGANELLI LAW GROUP
jstrenski@paganelligroup.com

David S. Moreland
MEUNIER CARLIN & CURFMAN LLC
dmoreland@mcciplaw.com

John W. Harbin
MEUNIER CARLIN & CURFMAN LLC
jharbin@mcciplaw.com

Lee Gerritt Hamilton
MEUNIER CARLIN & CURFMAN LLC
lhamilton@mcciplaw.com

Warren Thomas
MEUNIER CARLIN & CURFMAN LLC
wthomas@mcciplaw.com