## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GENESYS CLOUD SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-00695-TWP-MKK |
| | ) | |
| TALKDESK, INC., | ) | |
| MARK HERTEL, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON RENEWED MOTIONS FOR EXPERT FEES AND BILLS OF COSTS

This matter is before the Court on Plaintiff Genesys Cloud Services, Inc.'s ("Genesys")

Renewed Motion for Expert Expenses (Filing No. 662) and Bill of Costs (Filing No. 664), and

Defendants' Talkdesk, Inc. ("Talkdesk") and Mark Hertel's ("Hertel") Renewed Motion for an

Award of Costs and Expert Witness Expenses (Filing No. 666) and Bill of Costs (Filing No. 665).

For the following reasons, the parties' cross-motions for expert expenses are **granted in part** and

**denied in part**, and the parties' Bills of Costs are both **denied**.

## I.     BACKGROUND

This background section is not intended to provide a comprehensive explanation of all the

facts of this case. Only those facts relevant to the pending motions are set forth here.

Genesys and Talkdesk are competitors in the call center industry. Genesys is a large,

established player in the industry. In late 2016, Genesys acquired an Indiana company at which

Ralph Manno ("Manno"), Michael Strahan ("Strahan"), and Hertel were employees. In 2018,

Talkdesk wanted to grow its business, so it began looking for potential employment candidates

across the call center industry, including those at Genesys. During the summer of 2018, Manno

spoke with Talkdesk's CEO about joining Talkdesk and leading its sales team. After committing to

Talkdesk but while still employed by Genesys, Manno had discussions with Strahan and Hertel about leaving Genesys to join Talkdesk. Strahan and Hertel also discussed leaving Genesys for Talkdesk. Talkdesk extended official employment offers to Manno, Strahan, and Hertel, which they all accepted. The three men then began recruiting efforts for Talkdesk while still employed at Genesys. They all began their official employment with Talkdesk on October 1, 2018. Between September 2018 and early February 2019, Talkdesk hired fifteen Genesys employees, including Manno, Strahan, Hertel, and Danielle Morales ("Morales").

In February 2019, Genesys brought this lawsuit against Strahan, Hertel, and Morales (Filing No. 1). Genesys amended its complaint three times to add Talkdesk and Manno as defendants (Filing No. 22; Filing No. 89). On February 9, 2021, Genesys filed its Third Amended Complaint, which remains the operative pleading (Filing No. 235). In each complaint, Genesys alleged that this Court had federal question jurisdiction over this action based on Genesys's claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 and supplemental jurisdiction over the remaining state law claims (Filing No. 235 ¶ 23).

Genesys asserted thirty-nine claims for: (i) misappropriation of trade secrets by all Defendants; (ii) tortious interference with contract by Talkdesk and Manno; (iii) raiding by Talkdesk; (iv) constructive fraud by Manno, Strahan, and Hertel; (v) civil conspiracy by Talkdesk, Manno, Strahan, and Hertel; (vi) breach of the fiduciary duty of loyalty by Manno, Strahan, and Hertel; (vii) aiding and abetting breach of the fiduciary duty of loyalty by Talkdesk, Manno, Strahan, and Hertel; and (viii) various types of breach of contract by Manno and Strahan. The only two claims against Morales were later dismissed by stipulation (Filing No. 251).

On summary judgment, the Court found in favor of Genesys, as to liability only, on nine claims: six breach of contract claims against Manno and Strahan based on non-competition,

"faithful service during employment," and "surrender of records" provisions; and three breach of fiduciary duty claims against Manno, Strahan, and Hertel. However, the Court also found in favor of Defendants on seven claims: four breach of contract claims against Manno and Strahan based on non-solicitation and "preparing to compete" provisions; and three constructive fraud claims against Manno, Strahan, and Hertel. The Court denied summary judgment on the remaining twenty-one claims for: trade secret misappropriation, raiding, tortious interference with contract, civil conspiracy, aiding and abetting breaches of the fiduciary duty of loyalty, and breach of contract based on a confidentiality provision. Prior to or during trial, Genesys withdrew its two trade secret claims and one tortious interference claim against Hertel. The jury was thus left to resolve nineteen claims, as well as damages for the nine claims resolved in Genesys's favor on summary judgment.

Following a seven-day trial, the jury returned its verdict. The jury rendered a verdict against Genesys and in favor of Defendants on all trade secret claims, all civil conspiracy claims, the raiding claim against Talkdesk, and the aiding and abetting claim against Hertel. The jury found in favor of Genesys on the two breach of contract claims against Manno and Strahan based on a confidentiality provision and the aiding and abetting claims against Manno and Strahan, but the jury awarded zero dollars in damages for those claims. The jury found in favor of Genesys on only two claims against Talkdesk; tortious interference, for which the jury awarded zero dollars in damages; and aiding and abetting, for which the jury awarded a total of $271,372.00 in unjust enrichment damages[1] and $196,079.00 in compensatory damages.[2]

---

[1] The jury awarded Genesys $230,666.00 in unjust enrichment damages for Talkdesk's aiding and abetting Manno's breach of his fiduciary duty, and $40,706.00 in unjust enrichment for Talkdesk's aiding and abetting Strahan's breach of his fiduciary duty, totaling $271,372.00 (Filing No. 556 at 8, 20).

[2] The jury awarded Genesys $166,667.00 in compensatory damages for Talkdesk's aiding and abetting Manno's breach of his fiduciary duty, and $29,412.00 in compensatory damages for Talkdesk's aiding and abetting Strahan's breach of his fiduciary duty, totaling $196,079.00 (Filing No. 556 at 8).

As to the claims resolved in Genesys's favor on summary judgment, the jury awarded: zero dollars for Manno and Strahan's breach of contract based on the non-competition provision; zero dollars for Strahan and Hertel's breach of fiduciary duty; $37,032.00 against Manno and $37,274.00 against Strahan for breach of contract based on the "faithful service" provision; and zero dollars in compensatory damages, but $37,032.00 in punitive damages, against Manno for breach of the fiduciary duty of loyalty (Filing No. 556 at 12, 15).

Soon after the jury returned their verdict, Genesys filed a Renewed Motion for Equitable Relief (Filing No. 568) and Notice of Election of Remedies (Filing No. 570). Shortly thereafter, Genesys filed a Notice of Withdrawal of Post-trial Motions as to Defendant Michael Strahan Only Due to Death (Filing No. 593). In its Notice, Genesys explained that Strahan had sadly passed away and that Genesys would be withdrawing its post-trial motions as to Strahan and seeking his formal dismissal from this case. *Id.* The parties subsequently filed a Stipulation of Dismissal of all claims against Strahan with prejudice, with each side to bear their own costs and fees as to those claims (Filing No. 595). The Court acknowledged the dismissal and then ruled on Genesys's request for equitable relief and election of remedies.

As to the election of remedies, the Court permitted Genesys to elect the jury's award of $271,372.00 in total unjust enrichment damages against Talkdesk on its aiding and abetting claims (Filing No. 597 at 6). The Court also permitted Genesys to elect $37,032.00 in compensatory damages against Manno for breach of contract based on the "faithful service" provision. *Id.* at 7.

In its Renewed Motion for Equitable Relief, Genesys argued that it was entitled to the equitable relief of disgorgement of salary related to Manno's and Hertel's breach of their fiduciary duty of loyalty, and it requested a permanent injunction (Filing No. 568). The Court held that Genesys was entitled to disgorgement from Manno in the amount of $143,589.60 and from Hertel

in the amount of $57,465.25 for their breaches of fiduciary duty of loyalty, but as to Manno, Genesys must elect between the disgorgement award for breach of fiduciary duty and the compensatory damages award for breach of contract (Filing No. 597 at 18). The Court assumed that Genesys would elect the greater award of disgorgement against Manno and entered final judgment accordingly. *Id.* The Court also denied Genesys' request for a permanent injunction. *Id.*

On August 14, 2023, the Court entered its original Final Judgment, which entered judgment in favor of Genesys and against Manno for $143,589.60 in disgorgement and $37,032.00 in punitive damages for breach of the fiduciary duty of loyalty (Count 8); against Hertel for $57,465.26 in disgorgement for breach of the fiduciary duty of loyalty (Count 28); and against Talkdesk for $271,372.00 in unjust enrichment for aiding and abetting (Count 37) (Filing No. 598).

Following entry of the original Final Judgment, the parties filed Renewed Motions for Judgment as a Matter of Law and Motion to Amend Judgment (Filing No. 615; Filing No. 617; Filing No. 619). The parties also filed various motions for fees and costs (Filing No. 602; Filing No. 603; Filing No. 605; Filing No. 606; Filing No. 612), which the Court denied without prejudice to refile pending resolution of the renewed post-trial motions (Filing No. 643). Sadly, the parties subsequently notified the Court of the passing of Manno (Filing No. 641). The parties stipulated to the dismissal of all claims against Manno with prejudice, with each side to bear their own costs and fees as to those claims (Filing No. 649). On September 25, 2024, the Court denied the parties' post-trial motions, except to the extent that the Court would amend the Final Judgment to reflect that all claims against Manno were resolved through stipulation of dismissal with prejudice (Filing No. 658). The same day, the Court issued its Amended Final Judgment, which entered judgment in favor of Genesys against Hertel for $57,465.26 in disgorgement for breach of the fiduciary duty

of loyalty (Count 28); and against Talkdesk for $271,372.00 in unjust enrichment for aiding and abetting (Count 37) (Filing No. 659).

The parties promptly refiled the instant motions for fees and costs, followed by their Notices of Appeal (Filing No. 671; Filing No. 672; Filing No. 682). While on appeal, the parties finally found their way to a resolution of (almost) all issues. Genesys voluntarily dismissed, with prejudice, all of its claims against Talkdesk and Hertel, and confirmed that it no longer seeks costs or expenses from Hertel (Filing No. 691). Unfortunately, after six years of litigation, a seven-day jury trial, millions of dollars in legal fees, and the tragic passing of two parties, Genesys and Talkdesk were still unable to resolve the four instant motions which are now ripe for the Court's review.

## II.    LEGAL STANDARDS

### A.    Reasonable Expert Fees under Rule 26(b)(4)(E)

Federal Rule of Civil Procedure 26(b)(4)(E) provides, "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)." Rule 26(b)(4)(A) permits the deposition of "any person who has been identified as an expert whose opinions may be presented at trial."

"The mandatory language of the rule is tempered by two limitations: 1) the costs may not be imposed if doing so would result in manifest injustice, and 2) the expert's fees must be reasonable." *Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 975 (7th Cir. 2007); *see Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 851–52 (7th Cir. 2012) ("[U]nlike Rule 54, Rule 26 sets out a substantive standard—a reasonable fee for time spent in responding to discovery."). District courts have discretion and "flexible authorization" to "award a fee that appropriately compensates an expert witness." *Id.* at 852. "In general, where the parties offer little evidence to support their

positions, the court may use its discretion in determining the reasonableness of the charged fee." *Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 957 (N.D. Ill. 2012) (citation modified).

**B.      Costs under Rule 54(d)**

Federal Rule of Civil Procedure 54(d) provides, in relevant part, that "costs—other than attorney's fees—should be allowed to the prevailing party." "A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009) (per curiam); *see also Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991). "When one party gets substantial relief it 'prevails' even if it doesn't win on every claim." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999).

Rule 54(d) creates a strong presumption in favor of awarding costs to the prevailing party. *See Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *Sanglap v. LaSalle Bank, FSB*, 194 F. Supp. 2d 798, 801 (N.D. Ill. 2002). "[T]he presumption of awarding costs to a prevailing party can be overcome, however, and . . . one situation in which it is often overcome is when the case results in a mixed outcome, where each side prevails in some respects." *Culp v. Caudill*, 140 F.4th 938, 944 (7th Cir. 2025). The district court has considerable discretion when awarding costs. *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 453 (7th Cir. 1998) (applying abuse of discretion standard); *see also O'Regan v. Arb. Forums, Inc.*, 246 F.3d 975, 989 (7th Cir. 2001) (internal quotation marks and citation omitted) (a district judge's "award of costs is the type of discretionary ruling to which [the Seventh Circuit] give[s] 'virtually complete' deference").

### III.      DISCUSSION

The Court will address the parties' cross-motions for expert fees before turning to their competing Bills of Costs.

**C.** **Cross-Motions for Expert Fees**

Genesys seeks a total of $31,622.50 in expert fees, and Defendants seek $10,200.00. The parties dispute whether the other's fees are reasonable, and Defendants further argue that Genesys's renewed motion for expert fees is untimely. The Court will address the timeliness of Genesys's renewed motion and then discuss each expert's fees in turn.

### 1. **Timeliness of Genesys's Renewed Motion**

Defendants contend that Genesys did not file its original motion for expert fees within fourteen days of the original Final Judgment, as required by Local Rule 54-1, and that the timeliness of Genesys's renewed motion "does not obviate that Genesys missed the original deadline." (Filing No. 669 at 2–3 (citing S.D. Ind. L.R. 54-1(a))). Genesys responds that Local Rule 54-1 and Federal Rule of Civil Procedure 54 relate only to requests for attorneys' fees, and that Rule 26 does not impose a specific deadline by which to request expert fees. Genesys argues that its original motion was therefore not untimely, and, in any event, its renewed motion was timely filed after entry of the Amended Final Judgment (Filing No. 678 at 2–3).

The Court declines to deny Genesys's renewed motion as untimely. Genesys correctly notes that Local Rule 54-1 and Federal Rule 54 relate to attorneys' fees. Rule 26, by contrast, does not impose a deadline by which to request expert fees. *See Chambers v. Ingram*, 858 F.2d 351, 361 (7th Cir. 1988) (request was not untimely where the request for fees was included in the prevailing plaintiff's bill of costs filed within 30 days of the district court's entry of judgment); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 & n.37 (5th Cir. 1995) (reversing denial of motion for fees filed nine months after entry of final judgment). Although more extensive delays have warranted denials of fees, Genesys's twenty-eight-day delay is not so extensive. *Contrast Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1011–12 (10th Cir. 1996) (affirming denial of motion for expert fees filed nine and a half months after entry of final judgment).

Moreover, Genesys's original motion for expert fees was denied as moot without prejudice to refile, so the timeliness of Genesys's original motion is irrelevant. Defendants offer no authority whatsoever supporting their position that the timing of Genesys's earlier motion dictates the timeliness of its instant motion. Genesys filed the instant Renewed Motion for Expert Expenses twelve days after a ruling on the post-judgment motions and the entry of the Amended Final Judgment—one day before Defendants filed their Renewed Motion. The Court finds that Genesys's Renewed Motion was timely filed.

### 2. **Rebecca Green (Genesys's Expert)**

Genesys requests $6,600.00 in fees incurred by Rebecca Green ("Green"), comprised of $1,100.00 for "deposition prep and conference call with counsel" (two hours, billed at $550.00 per hour) and $5,500.00 for Green's attendance at her deposition (Filing No. 663-1 at 4–5). Defendants do not dispute the reasonableness of Green's hourly rate or the time spent on preparation. They do, however, argue that Green's fee of $5,500.00 for a three-hour remote deposition is unreasonable, and that Green's fees are not recoverable because some of her opinions were excluded under *Daubert*. On reply, Genesys asserts that Green charged a reasonable flat fee of $5,500.00 for her deposition, and that her fees are recoverable because only some of her opinions were excluded.

The Court begins by addressing Green's flat fee of $5,500.00. In its reply, Genesys offers no evidence confirming that Green in fact charged a flat fee of $5,500.00 for her deposition. Genesys offers only a form engagement letter from Green stating her *current* flat fee ($6,500.00). Nevertheless, assuming that Green charged a flat fee of $5,500.00 in this case, Genesys makes no attempt to show that this flat rate is reasonable. Genesys's asserts only that "[t]his case was document-intensive, presented complex and technical issues, and involved multiple claims against multiple defendants," without any further analysis. (Filing No. 678 at 6).

Courts generally consider flat fees for an expert witness's time to be unreasonable. *See Mendez-Caton v. Caribbean Family Health Ctr.*, 340 F.R.D. 60, 67 (E.D.N.Y. 2022) (finding $9,000.00 flat rate to be unreasonable, and the court awarded a reasonable portion); *Nnodimele v. City of New York*, No. 13-CV-3461, 2015 WL 4461008, at *2 (E.D.N.Y. July 21, 2015); *Korabik v. Arcelormittal Plate LLC*, 310 F.R.D. 205 (E.D.N.Y. 2015) (finding $2,500.00 flat rate to be unreasonable and limiting compensation to hourly rate); *Burgess v. Fischer*, 283 F.R.D. 372 (S.D. Ohio 2012) (finding $2,000.00 flat rate to be unreasonable and limiting compensation to hourly rate); *Massasoit v. Carter*, 227 F.R.D. 264, 266–27 (M.D.N.C. 2005) (finding $2,000.00 flat rate to be unreasonable); *Mannarino v. U.S.*, 218 F.R.D. 372 (E.D.N.Y. 2003) (finding $3,000.00 flat rate to be unreasonable). This Court finds that Green's flat fee of $5,500.00 is unreasonable, and limits Green's fees for deposition to a reasonable portion for her attendance and administrative time (considering that this case is document-intensive, presented complex and technical issues, and involved multiple claims against multiple defendants) to six hours, billed at her hourly rate of $550.00, which totals $3,300.00.

Defendants next argue that it would be manifestly unjust to permit recovery of Green's fees because some of her opinions were excluded by the Court under *Daubert* ([Filing No. 669 at 11](#)). Defendants cite several cases in which courts disallowed fees for experts who were precluded from testifying at trial. *Id.* at 11–12. Pursuant to recent Seventh Circuit precedent, though, the Court may not exclude Green's fees solely because some of her opinions were not presented at trial. In *Crabtree v. Experian Information Solutions, Inc.*, 948 F.3d 872 (7th Cir. 2020), the plaintiff argued that the district court erred by awarding expert fees under Rule 26(b)(4)(E) before ruling on the plaintiff's *Daubert* motion to exclude that expert's testimony. *Id.* at 884. The Seventh Circuit stated that this argument "misses the mark" because "the Rule applies to any expert whose opinions *may*

be presented at trial. The clear import of Rule 26 is that the district court generally must order a party to pay for the cost of deposing its adversary's expert regardless of whether the expert's opinion ultimately is presented at trial." *Id.* (citation modified) (emphasis in original).

Further, Genesys is correct that in Defendants' cited cases, the experts were entirely precluded from testifying, and in cases where an expert's opinions were only partially excluded, courts have permitted recovery under Rule 26. *See, e.g.*, *Catapult Commn'cs Corp. v. Foster*, No. 06 C 6112, 2010 WL 659075, at *3 (N.D. Ill. Feb. 19, 2010) ("[P]arties can recover fees for time spent responding to discovery, even where the expert's testimony has been partially excluded."); *Fairley v. Andrews*, No. 03 C 5207, 2008 WL 961592, at *5 (N.D. Ill. Apr. 8, 2008) (finding no manifest injustice would results from awarding fees for expert, even though two parts of expert's opinion were struck). The Court will therefore allow Genesys to recover Green's reasonable fees even though some of her opinions were ultimately excluded from trial.

Genesys may recover $4,400.00 of Green's fees, which includes $1,100.00 for her deposition preparation and $3,300.00 for her attendance at the deposition.

### 3. **Jeremy York (Genesys's Expert)**

Genesys seeks $1,562.50 in fees incurred by Jeremy York ("York"), comprised of $250.00 for "Genesys/Talkdesk Meeting 5/27/21" (one hour, billed at $250.00 per hour) and $1,312.50 for York's attendance at the deposition (5.25 hours, billed at $250.00 per hour) (Filing No. 663-1 at 20–21). Defendants argue that York's one-hour entry for the "meeting" is too vague to be deemed reasonable (Filing No. 669 at 8), but the Court disagrees. The timing of the "Genesys/Talkdesk Meeting" indicates that it related to York's upcoming deposition, so his fees incurred for that time are recoverable. Talkdesk does not dispute the reasonableness of York's fee for his attendance at his deposition, so Genesys may recover all $1,562.50 of York's fees.

11

#### 4. **Brian Dineen (Genesys's Expert)**

In its supporting brief, Genesys requests $2,400.00 in fees incurred by Brian Dineen ("Dineen"), which includes $1,300.00 for Dineen's attendance at his deposition and $1,100.00 in unspecified "deposition preparation." (Filing No. 663 at 4). Defendants challenge only the $1,100.00 in preparation fees. Defendants argue that Genesys fails to explain which billing entries from Dineen comprise that $1,100.00 in preparation fees. Two entries totaling $600.00— September 2, 2021 ($400.00): "deposition prep"; and September 7, 2021 ($200.00): "deposition prep pre-phone call with team"—plainly relate to deposition preparation (Filing No. 663-1 at 3). Defendants assume that the remaining $500.00 is comprised of two other entries describing standard deposition preparation tasks—August 13, 2021 ($200.00): "meeting with John"; and August 31, 2021 ($300.00): "read defense expert deposition script." (Filing No. 669 at 7).

Although Genesys fails to itemize the specific fees incurred for "deposition preparation," it is clear (even to Defendants) which of Dineen's entries reflect time spent on deposition preparation. The Court therefore allows Genesys to recover all $2,400.00 of Dineen's fees.

#### 5. **Carrie Distler, Martin Griffin, and Jason Tolmaire (Genesys's Expert)**

Genesys requests a total of $21,060.00 in fees incurred by FTI Consulting (Filing No. 663 at 3–4). That amount includes $10,755.00 incurred by expert Carrie Distler ("Distler") (23.9 hours, billed at $450.00 per hour); and $10,305.00 incurred by her assistants, Martin Griffin ("Griffin") and Jason Tolmaire ("Tolmaire") (22.9 total hours, also billed at $450.00 per hour). Talkdesk objects to the reasonableness of Distler's fees and, for separate reasons, her assistants' fees.

##### a. **Distler**

Talkdesk contends that four of Distler's time entries do not relate to her deposition or deposition preparation and should be disallowed:

(i)   August 30, 2021 ($1,440.00): "Prepared expert responsive report; Prepared for deposition; Internal team discussions and related follow-up"

(ii)  August 31, 2021 ($1,530.00): "Reviewed rough transcript of Maness; prepared for deposition; drafted expert report"

(iii) September 1, 2021 ($540.00): "Prepared for deposition; drafted expert response report"

(iv)  September 3, 2021 ($225.00): "Teleconference with Counsel and Client"

(Filing No. 663 at 3–4). Genesys responds that these fees all relate to deposition preparation and are the same type of preparation fees for which Defendants seek recovery (Filing No. 678 at 7).

As to the first three entries, the Court need not decide whether they are related to Distler's deposition because they must be disallowed for a more straightforward reason—there is no evidence that those fees were incurred. Although Genesys recites the entries for these fees in its brief, those entries are not found in FTI's invoices (see Filing No. 663-1 at 6–19). Absent any evidence that these fees were actually incurred, the Court finds these fees to be unreasonable.

The Court will, however, permit Genesys to recover the fees for Distler's "teleconference with counsel and client." Given the timing of the teleconference, the Court takes Genesys at its word that the teleconference related to Distler's upcoming deposition.

The Court therefore disallows recovery for the $3,510.00 in fees for which there is no evidence, and allows Genesys to recover the remaining $7,245.00 of Distler's fees.

### b.  Griffin and Tolmaire

Defendants next argue that the $10,305.00 incurred by Distler's assistants, Griffin and Tolmaire is not recoverable. Defendants primarily assert that Rule 26 provides for payment of a reasonable fee to "the expert," not his or her assistants. Defendants primarily rely on the Northern District of Illinois's decision to disallow assistants' fees in *Profile Product, LLC v. Soil Management Technologies, Inc.*, 155 F. Supp. 2d 880, 887 (N.D. Ill. 2001).

In response, Genesys asserts that "every court to consider this proposition has *rejected* it," and that assistants' fees are recoverable (Filing No. 678 at 5 (emphasis in original)). In another case from the Northern District of Illinois, *Catapult Communications Corp. v. Foster*, the court disagreed with *Profile Products* and awarded assistants' fees because "[i]f the [assistant] had not engaged in this activity, the expert would have done so." 2010 WL 659075, at *3.[3]

However, there does not appear to be a clear consensus on whether Rule 26 permits recovery of assistants' fees. *Compare Starwood Hotels & Resorts Worldwide, Inc. v. Am. HVAC, Inc.*, No. 08-cv-3124, 2010 WL 11497059, at *2–3 (N.D. Ga. Nov. 16, 2010) (disallowing reimbursement of fees incurred by expert's associates); *Morales-Arcadio v. Shannon Produce Farm, Inc.*, No. CV605-062, 2007 WL 9709805, at *4 (S.D. Ga. Nov. 14, 2007) ("[The expert] may not charge plaintiffs for his associate's time spent in helping him prepare for the deposition."); *Advanced Telemedia, L.L.C. v. Charter Commn'cs, Inc.*, No. CIVA105CV2662, 2006 WL 3422669, at *14 (N.D. Ga. Nov. 27, 2006) ("[L]ooking to the plain language of Rule 26, the court concludes that there is nothing to indicate that the rule contemplates fees for administrative help by an expert's associates."); *with Catapult Commc'ns Corp.*, 2010 WL 659075, at *3; *Fischer-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 334 (D. Del. 2003) (awarding fees for time spent by expert and associates in complying with discovery requests).

Absent a binding interpretation from the Seventh Circuit or Supreme Court, the Court finds that Genesys's reading of Rule 26(b)(4)(E) is adequately supported by caselaw and better serves Rule 26's general purpose of avoiding unfairness in bearing the costs of expert discovery. Genesys's position is also not inconsistent with the plain language of Rule 26(b)(4)(E), which provides for

---

[3] Genesys cites another case as having rejected *Profile Products*, but that case discussed expert fees in class actions. *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2006 WL 452419, at *3 (N.D. Ill. Feb. 21, 2006).

payment of a reasonable fee to the expert "*for time* spent in responding to discovery," not necessarily the expert's time. Fed. R. Civ. P. 26(b)(4)(E) (emphasis added).

Beginning with Tolmaire, the Court finds that his fees are reasonable. Tolmaire's tasks of "participate[] in team discussion to prepare Distler for deposition" and "review[] Maness deposition" plainly relate to preparation for Distler's deposition preparation. *Id.* at 11, 19. The time spent on each task (1.2 hours and 2 hours, respectively) and hourly rate also appear to be reasonable given the subject of the deposition preparation.

Griffin's entries present some complications, as they are all block-billed. As Defendants note, neither Griffin's invoices nor Genesys's brief clarifies how much of Griffin's block-billed time was spent on deposition-related tasks (Filing No. 663-1 at 7, 9, 11, 17, 19). Nevertheless, as Genesys notes, block billing is not prohibited by the Seventh Circuit. *Farfaras v. Citizens Bank & Trust Co.*, 433 F.3d 558, 569 (7th Cir. 2006). When reviewing block-billed entries, a court must consider whether entries are "sufficiently detailed to permit adequate review of the time billed to specific tasks" and whether that time was reasonably necessary. *Cintas Corp. v. Perry*, 517 F.3d 459, 469 (7th Cir. 2008). Here, Genesys has provided sufficient information for the Court to reasonably determine that roughly half of Griffin's time was spent on deposition-related tasks.[4] The Court therefore reduces Griffin's fees from $8,865.00 (19.7 hours billed at $450.00 per hour) to $4,432.50 (9.85 hours billed at $450.00 per hour).

Defendants also argue that Distler, Griffin, and Tolmaire's fees are unreasonable because they exceed the three-to-one ratio that many courts employ in determining the reasonableness of

---

[4] In all but one entry, Griffin block-billed only two tasks—one apparently related to deposition preparation, and one not. In Griffin's September 7, 2021 entry (Filing No. 663-1 at 17), Griffin block-billed for three tasks, but one of those tasks ("requested documents from Counsel") could not reasonably have taken more than a few minutes, so the Court reasonably infers that Griffin effectively split his time between two tasks—one related to deposition preparation and one not. The Court therefore awards Genesys half of all of Griffin's block-billed time.

expert fees. *See Se-Kure Controls, Inc.*, 873 F. Supp. 2d at 956 (explaining that courts in the Seventh Circuit often find that a ratio of three to one, preparation to deposition time, is reasonable). Although the original amount of total preparation time requested by Genesys (42.7 hours) is more than ten times the length of Distler's deposition (4.1 hours), the reduced amount of time the Court is awarding (25.05 hours) is much more reasonable. Although this amount still exceeds a three-to-one ratio, that ratio is not binding and is merely a tool courts may use in assessing reasonableness. Given the complicated, novel, and case-specific issues in this case, the Court finds that the total amount of time permitted by the Court (25.05) is proportionately reasonable. The Court therefore awards Genesys a total of $13,117.50 in FTI Consulting's fees, comprised of $7,245.00 for Distler's fees, $1,440.00 for Tolmaire's fees, and $4,432.50 for Griffin's fees.

### 6.  Robert Maness (Defendants' Expert)

Defendants seek $10,200.00 in fees incurred by their expert, Robert Maness ("Maness") (Filing No. 667 at 16–17). In response, Genesys does not contest the reasonableness of Maness's fees and instead "simply asks for equal treatment," in that the Court should award both sides fees under Rule 26 (Filing No. 670). As confirmed above, Genesys is entitled to its reasonable expert fees, so Defendants are, too. Based on the invoices submitted by Defendants and lack of opposition by Genesys, Defendants are entitled to recover all $10,200.00 in Maness's reasonable fees.

### 7.  Total Recoverable Expert Fees

For the reasons discussed above, Genesys is entitled to recover a total of $21,480.00 in expert fees ($4,400.00 for Green; $1,562.50 for York; $2,400.00 for Dineen; and $13,117.50 for FTI Consulting), and Defendants are entitled to recover $10,200.00 in expert fees for Maness.

## D.  Competing Bills of Costs

Both sides have filed Bills of Costs, asserting that each "prevailed" under Federal Rule of Civil Procedure 54(d). District courts have considerable discretion in awarding or denying costs

in mixed outcome cases like this one. *See Testa v. Vill. of Mundelein*, 89 F.3d 443, 447 (7th Cir. 1996) (finding that because of the "mixed outcome of the civil rights and malicious prosecution claims, the decision requiring each party to bear its own costs" was within the discretion of the district court); *see also Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999) ("Courts have especially broad discretion to award or deny costs in mixed result cases, including cases in which liability was established but recovery was nominal relative to what was sought." (citation modified)); *Ello v. Brinton*, No. 14-CV-299, 2019 WL 6975093, at *1 (N.D. Ind. Dec. 20, 2019) ("[I]n a case with mixed results, the district court retains especially broad discretion to award or deny costs.").

Here, there was certainly a mixed outcome. As explained above, Genesys began with thirty-nine claims against five defendants. At summary judgment, the Court found in favor of Genesys on nine tort and contract claims, found in favor of Defendants on seven tort and contract claims, and allowed the bulk of the claims to proceed to trial (Filing No. 351 at 41–42). Of the claims not resolved on summary judgment, the jury found in Genesys's favor on six but awarded damages for only one (Filing No. 556 at 8, 10, 13, 15–16). And as for the claims resolved in Genesys's favor on summary judgment, the jury awarded damages for three, and the Court permitted equitable recovery for one more. *Id.* at 12, 15; (Filing No. 597 at 12). So of thirty-nine claims, only four yielded relief. The jury awarded Genesys, at most, $382,710.00 in damages.[5] The original Final

---

[5] $37,032.00 (compensatory damages against Manno on Count 7) + $37,032.00 (punitive damages against Manno on Count 8) + $37,274.00 (compensatory damages against Strahan on Count 22) + $271,372.00 (unjust enrichment damages against Talkdesk on Count 28) = $382,710.00.

Judgment awarded $509,458.85 in damages for three claims[6] ([Filing No. 598](#)), and the Amended Final Judgment reduced those damages to $328,837.25 for two claims[7] ([Filing No. 659](#)).

The type of claims on which Genesys succeeded, as well as the amount of damages Genesys received compared to what it requested, are also relevant to the Court's analysis. It is clear from Genesys's settlement demands and trial arguments that its trade secret and raiding claims against Talkdesk were the heart of this action. In pretrial filings, Genesys estimated its damages resulting from Talkdesk's alleged raiding at over four million dollars, and damages resulting from Talkdesk's misappropriation of trade secrets at upwards of five million dollars ([Filing No. 409-3 at 3](#)). In closing arguments at trial, Genesys sought only $50,000.00 from Hertel, up to $250,000.00 from Strahan, and up to $300,000.00 from Manno, emphasizing that "Talkdesk is the primary wrongdoer here." ([Filing No. 579 at 51](#)–52, vol. 7-1491:22–1492:3). Against Talkdesk, Genesys sought $822,000.00 in unjust enrichment for Talkdesk's alleged raiding and between $2 million and $3.3 million in compensatory damages for alleged trade secret misappropriation. *Id.* at 74, vol. 7-1514:16–22. On top of that, Genesys asked the jury to award exemplary damages (*i.e.*, double damages) for Talkdesk's alleged trade secret misappropriation, as well as punitive damages. On the topic of punitive damages, Genesys asked the jury, "What's Talkdesk worth now? Ten billion? Two billion? Let's say 1 percent of that. There's a calculation you could do." *Id.* at 51, vol. 7-1491:16–21. In other words, Genesys sought between $20 million and $100 million in punitive damages against Talkdesk. Genesys's total requested damages against Talkdesk therefore ranged from $2,822,000.00 to $107,422,000.00. In the end, Genesys received $271,372.00, not for trade

---

[6] $143,589.60 (disgorgement damages against Manno on Count 8) + $37,032.00 (punitive damages against Manno on Count 8) + $57,465.25 (disgorgement damages against Hertel on Count 37) + $271,372.00 (unjust enrichment damages against Talkdesk on Count 28) = $509,458.85.

[7] $57,465.25 (disgorgement damages against Hertel on Count 37) + $271,372.00 (unjust enrichment damages against Talkdesk on Count 28) = $328,837.25.

secret misappropriation or raiding, but for aiding and abetting other defendants' breach of their fiduciary duties. Genesys's ultimate award against Talkdesk is less than ten percent of its most modest damages request, and one quarter of one percent of its ideal award.

In consideration of the mixed results in this complicated case, the Court finds that each party should bear their own costs. Based on the modest number of claims on which Genesys succeeded and the relatively nominal amount of damages Genesys was awarded, the Court cannot say that Genesys "prevailed" in this case. However, because Talkdesk was found liable for aiding and abetting breaches of the fiduciary duty of loyalty, and Hertel was found liable for breaching his fiduciary duty, Talkdesk and Hertel cannot be said to have "prevailed," either.

Courts in the Seventh Circuit have regularly required parties to bear their own costs in mixed outcome cases. *See, e.g.*, *Culp v. Woods*, No. 19-CV-106, 2023 WL 4014181 (N.D. Ind. June 15, 2023), *affirmed in relevant part*, 140 F.4th 938 (7th Cir. 2025); *Testa v. Vill. of Mundelein*, No. 92 C 2316, 1995 WL 383181 (N.D. Ill. June 23, 1995), *affirmed in relevant part*, 89 F.3d 443 (7th Cir. 1996); *Hugunin v. Land O'Lakes, Inc.*, No. 11 C 9098, 2015 WL 12834301, at *3 (N.D. Ill. Nov. 9, 2015) ("[T]he more common result in a mixed result case is that neither side recovers costs."); *Lally v. City of Chicago*, No. 10 C 5011, 2013 WL 1984422, at *12 (N.D. Ill. May 13, 2013) ("[T]his case was very clearly a mixed result case and thus would be an appropriate occasion to deny each side's bill of costs."); *Ellis v. Cnty. Club Hills*, No. 06 C 1895, 2012 WL 4009701, at *1–2 (N.D. Ill. Sept. 12, 2012) (finding that "summary judgment for the City, not guilty as to one police officer, and a nominal damages award ($1) against the other" constitutes mixed results, and "neither Defendants nor Plaintiff prevailed as to a 'substantial' part of the litigation").

Genesys argues that the United States Supreme Court has held that "prevailing party" "simply refers to the party that 'has been awarded *some relief* by the court,'" and that even "'an

award of nominal damages suffices under this test.'" ([Filing No. 670 at 7](#) (emphasis in original) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603–04 (2001) (discussing awards of attorneys' fees under the Fair Housing Amendments Act and Americans with Disabilities Act))). Genesys essentially argues that the Court must find that it is a "prevailing party" if it was awarded any relief at all. However, the Seventh Circuit has explained that there is no such bright-line rule under Rule 54 for mixed outcome cases. *Culp*, 140 F.4th at 944–45. So while nominal damages *may* be enough to support a designation of "prevailing party," they are not necessarily enough in mixed outcome cases.

A wealth of analogous cases confirm that in this case, it is appropriate to have the parties bear their own costs. Most recently, the Seventh Circuit affirmed a district court's order denying competing bills of costs in *Culp v. Caudill*, 140 F.4th 938 (7th Cir. 2025). In *Culp*, plaintiffs Carl and Roberta Culp filed several claims against multiple defendants, including claims for excessive force, intentional and negligent infliction of emotional distress, assault and battery, criminal mischief, and violations of federal anti-discrimination statutes. *Id.* at 940. The district court granted summary judgment in favor of defendants on all claims except Carl Culp's excessive force claim and both plaintiffs' state law claims against two defendants. *Id.* Those claims were tried by a jury, which returned a verdict in favor of defendants on all claims except for one of Roberta Culp's battery claim against one of the defendants. The jury awarded Roberta one dollar in nominal damages. *Id.* The district court found that the case involved a mixed outcome and that both sides should pay their own costs. *Id.* at 944. On appeal, the Seventh Circuit noted that it has "repeatedly recognized that the district court retains 'especially broad discretion to award or deny costs in mixed result cases . . . including cases in which liability was established but recovery was nominal

relative to what was sought.'" *Id.* at 945 (omission in original) (quoting *Gavoni*, 164 F.3d at 1075). The Seventh Circuit found no abuse of the district court's discretion. *Id.*

The Seventh Circuit reached the same conclusion in *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999). In that case, the plaintiff, Perlman, worked for a real estate firm. After he left the firm, a dispute arose regarding his compensation. *Id.* at 852. Perlman sued five defendants, including the firm, for breach of contract. However, because most of the parties were citizens of the same state, diversity jurisdiction was lacking. "To get around this problem—and to treble the stakes— Perlman contended that he [was] a victim of 'racketeering' entitled to collect under the Racketeer Influenced and Corrupt Organizations Act (RICO)." *Id.* The district court therefore exercised federal question jurisdiction over the RICO claim and supplemental jurisdiction over Perlman's breach of contract and consumer fraud claims. *Id.* The defendants filed a counterclaim regarding $300,000.00, which defendants contended was a loan to Perlman, rather than a bonus.

All of Perlman's claims were tried by a jury. The jury awarded Perlman $1.4 million and ruled in his favor on the RICO claim. However, the jury found in defendants' favor as to the $300,000.00 loan and rejected Perlman's fraud claims. On post-judgment motions, the district court held that the RICO claim could not be sustained, awarded Perlman prejudgment interest on his $1.4 million award, and awarded Perlman $90,000.00 in costs under Rule 54. *Id.* at 859.

The Seventh Circuit vacated the district court's award of costs to Perlman, finding that "two features of this case support a conclusion that Perlman did not 'prevail,'" and that the district court should take a "fresh look" at the issue. *Id.* First, the Seventh Circuit noted that Perlman "lost on RICO and recovered only on state-law claims that would not have supported a federal suit. So Perlman is a loser on the question whether this was a federal case." *Id.* The court explained that 28 U.S.C. § 1332(b) stands for the "generalizable" principle that "if the outcome shows that the case

did not belong in federal court, then costs may be denied or shifted," and that applying this principle to Rule 54 "enables federal courts to protect themselves from suits in which federal claims have been trumped up only to impose upon federal jurisdiction." *Id.*

"Second, Perlman's modest recovery (modest in relation to his original demand, that is) implies that the defendants won more of the dispute than they lost." *Id.* The court noted that it had recently held that in several cases that "a litigant who wins less than 10% of his initial demand either is not a prevailing party . . . or should be treated *as if* he had not prevailed." *Id.* (emphasis in original). "What Perlman recovered is in the end substantially less than 7% of his claim, for he 'won' only the . . . claims with respect to which his interest was conceded by the defendants," and he lost "the two big-ticket items (RICO and punitive damages) and most of the major skirmishes." *Id.* The Seventh Circuit therefore held that "the nominal award of $1.4 million therefore substantially overstates the value of Perlman's victory . . . .The real stakes of this case always have been treble damages under RICO and punitive damages under state law, and on these Perlman lost." *Id.* The *Perlman* court concluded that although its decision did not "forbid[]" the district court from awarding Perlman's costs, except as to the five defendants who prevailed on all claims, the court's discretion to award costs "must be exercised with full understanding of the governing legal principles" elucidated in its opinion. *Id.* at 860.

Both "features" highlighted in *Perlman* are present here. Genesys lost outright on its federal trade secret claims, so it lost on "the question whether this was a federal case." *Id.* at 859. Second, and more importantly, Genesys's recovery against Talkdesk is nominal compared to its requested damages. While $271,372.00 is an objectively substantial award, it is at best less than ten percent of the amount Genesys sought against Talkdesk. Genesys lost outright on its "big-ticket items": its trade secret claims, including exemplary and punitive damages, and its raiding claim. *Id.* The Court

therefore declines to deem Genesys, or Talkdesk and Hertel (who lost to the tune of $271,372.00 and $57,465.25, respectively), a "prevailing" party under Rule 54.

Several other courts have likewise concluded that in cases like this, each side should bear their own costs. *See Gavoni*, 164 F.3d at 1075 (affirming order requiring parties to bear their own costs where the jury awarded each plaintiff between $2,000.00 and $2,500.00, which was "less than one percent of what she requested"); *Testa*, 89 F.3d at 447 (affirming order requiring parties to bear their own costs where plaintiff lost on his false arrest claim but received $1,500.00 for his malicious prosecution claim); *Thorncreek Apartments I, LLC v. Vill. of Park Forest*, 123 F. Supp. 3d 1012, 1016 (N.D. Ill. 2015) (ordering parties to pay their own costs where plaintiff "lost outright against most of the defendants," plaintiff's "many unsuccessful claims . . . took up a significant amount of time and money without producing anything in return," and plaintiff's success against some defendants "brought it only a tenth of what it sought from the jury"); *Gonzalez v. City of Elgin*, No. 06 C 5321, 2010 WL 4636638, at *2 (N.D. Ill. Nov. 8, 2010) (ordering parties to pay their own costs where jury found only three of seven defendants liable and awarded $53,500.00 in damages, which was "more than just nominal damages, but certainly not substantial").

"Sometimes in litigation, neither side wins. This is one of those times." *Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1143–44 (7th Cir. 1998). The parties vigorously litigated this action for several years, but, on balance, neither side "prevailed." Both party's Bills of Costs are **denied**.

## IV.    CONCLUSION

For the reasons explained above, Genesys's Renewed Motion for Expert Witness Expenses (Filing No. 662) and Talkdesk's Renewed Motion for an Award of Costs and Expert Witness Expenses (Filing No. 666) are both **GRANTED in part** and **DENIED in part**, and both parties' Bills of Costs (Filing No. 664; Filing No. 665) are **DENIED**.

Genesys is awarded expert fees in the amount of $**21,480.00** against Talkdesk,[8] and Defendants Talkdesk and Hertel are awarded expert fees in the amount of $**10,200.00** against Genesys. **Each party shall bear their own costs.**

**SO ORDERED**.

Date:    9/30/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Kathleen M. Anderson
BARNES & THORNBURG, LLP (Fort Wayne)
kathleen.anderson@btlaw.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

David Scott Moreland
Miller & Martin PLLC
david.moreland@millermartin.com

Fred Anthony Paganelli
PAGANELLI LAW GROUP
tony@tonypaganelli.com

James P. Strenski
Drewry Simmons Vornehm, LLP
jstrenski@dsvlaw.com

---

[8] As confirmed in the parties' Joint Statement of Positions and Stipulation of Dismissals, Genesys is no longer seeking fees or costs against Hertel (Filing No. 691).